## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dennis Gordan, John Hine, Donna Flieger, Patricia Hurley, Ronald Lindner, Janice Reynolds, and Sharon Jewell, individually and as Representatives of a class of similarly situated persons, and on behalf of the MassMutual Thrift Plan, | |
| Plaintiffs; | Case No: |
| v. | |
| Massachusetts Mutual Life Insurance Co, Roger Crandall, Stuart H. Reese; Robert O'Connell; Investment Fiduciary Committee; Plan Administrative Committee; Isadore Jermyn; Michael Fanning; MaryWilson Kibbe; Debra Palermino; Michael Rollings; Elaine Sarsynski; Richard Goldstein; Christine Fini; and John Does 1-20, | |
| Defendants. | |

## COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1.     Plaintiffs Dennis Gordan, John Hine, Donna Flieger, Patricia Hurley,

Ronald Lindner, Janice Reynolds, and Sharon Jewell, on behalf of the MassMutual

Thrift Plan (the "Plan"), seek to recover the financial losses suffered by the Plan and

to obtain injunctive and other equitable relief for the Plan from Massachusetts

Mutual Life Insurance Company, its operating divisions, subsidiaries, or affiliates

(collectively "MassMutual"), Roger Crandall, the current Chief Executive Officer of

Massachusetts Mutual Life Insurance Co., Stuart H. Reese, the Chief Executive
Officer of Massachusetts Mutual Life Insurance Co. from approximately June 2005
through January 2010, Robert O'Connell, the Chief Executive Officer of
Massachusetts Mutual Life Insurance Co. prior to June 2005, the Plan's Investment
Fiduciary Committee, the Plan Administrative Committee, and Individual
Defendants: Isadore Jermyn, Michael Fanning, Mary Wilson Kibbe, Debra
Palermino, Michael Rollings, Elaine Sarsynski, Richard Goldstein, Christine Fini,
and John Does 1-20 (who are members of the Defendant Committees or otherwise
believed to be fiduciaries to the Plan), based upon breaches of their fiduciary duties.

2.     The Plan is a unitary trust corpus in which each Plaintiff, and each
Plan participant or beneficiary, has an interest. Plan participants' and beneficiaries'
retirement savings are accounting entries until a withdrawal is made. Defendants
occupy the position of a common law trustee in connection with the Plan, its assets,
and its participants and beneficiaries.  Defendants' fiduciary decisions challenged in
this case were made on behalf of the Plan in its entirety.

3.     Defendants, for their employees' retirement plan, selected and retained
almost exclusively their own proprietary funds on which Defendants make a profit
and earn unreasonable compensation, without a prudent process for evaluating non-
proprietary funds.

4.     In particular, Defendants required Plan participants to select from
MassMutual "Separate Investment Accounts" and MassMutual's general account
(the Fixed Interest Account).  These investments are offered through a Group

Annuity Contract ("GAC"), which is a contract between "Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts and Massachusetts Mutual Life Insurance Company." The MassMutual CEO sets the terms of this contract.  It is re-evaluated, re-drafted, and re-issued annually.

5.     MassMutual's Thrift Plan contains unreasonably expensive and imprudent investment options.  The Plan's fiduciaries caused and continue to cause the Plan to pay multiples of the market rate for comparable services to institutional investors and other large ERISA retirement plans.

6.     MassMutual appointed its top executives as fiduciaries to the Plan—executives like the CEO, Chief Financial Officer ("CFO"), the Executive Vice President in charge of the Retirement Services Division, and the Executive Vice President of the Insurance Group. These executives are compensated handsomely with bonuses in the millions that are designed to "incent behavior to increase earnings" to MassMutual. *See* http://www.massmutual.com/mmfg/pdf/0965_001.pdf (last visited Oct. 7, 2013).

7.     As fiduciaries to the Plan, these executives, among others, must make decisions regarding the Plan that are solely and exclusively in the best interests of the Plan, not themselves or MassMutual.  Defendants are required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 *et seq.*, to act solely in the interest of the Plan's participants when making decisions with respect to selecting, removing, replacing, and monitoring the Plan's investments and service providers. Rather than fulfilling these fiduciary duties,

among the "highest [duties] known to the law," *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982), by offering Plaintiffs and the other participants in the Plan only prudent investment options and services at reasonable cost, Defendants selected for the Plan and repeatedly failed to remove or replace proprietary separate accounts managed and offered by MassMutual. These funds were not selected and retained as the result of an impartial or prudent process, but were instead selected and retained by Defendants as investment options in the Plan because Defendants benefited financially from the inclusion of these investment options. By choosing and then retaining these imprudent proprietary investment options, Defendants enriched themselves at the expense of the Plan.

8.      First, Defendants larded the Plan with excessive fees and unreasonably priced, proprietary investment options that were and are far more expensive and underperform other comparable investments available to the Plan. Second, MassMutual provided the administrative services to the Plan at multiples above the market rate for the same services. Finally, MassMutual maintained the Plan's investment in MassMutual's general account, allowing MassMutual disposable income to be used however it desires.

9.      In effectuating these breaches, MassMutual made the CEO responsible for appointing members to the named fiduciary committees for the Plan. The Investment Fiduciary Committee is partially responsible for selecting the investment options for the Plan. On this committee, the CEO appointed, among others, the CFO who, upon information and belief, is primarily responsible for

ensuring MassMutual reaches its profitability targets and whose multi-million dollar bonus is directly related to company profits.  The CEO also appointed to the Investment Fiduciary Committee the portfolio manager of three of the investment options in the Plan and the Vice-President of the MassMutual Subsidiary (Babson Capital Management) who is the sub-advisor for seven of the funds in the Plan.

10.     The CEO of MassMutual sets the terms of the Group Annuity Contract ("GAC"), which singularly sets the interest rate for the Plan's Fixed Interest Account, mandates that the Fixed Interest Account be invested in the MassMutual general account, sets the fees charged to the Plan, and the remaining investment options available to the Plan fiduciaries.

11.     The GAC also contains several draconian terms that force the fiduciaries to subordinate the best interests of the Plan and its participants to the financial interests of MassMutual.  For instance, paragraph 6.02 states that "it will be a breach of this Agreement for the Plan Sponsor to adopt any change or amendment that would have an adverse effect on MassMutual's administrative procedures or the financial experience of MassMutual."  Thus, while MassMutual may unilaterally modify the agreement to increase the fees charged or even implement a new charge or fee, the Plan fiduciaries cannot lower the Plan's fees without breaching the GAC.  *See* GAC ¶7.14. Further, the GAC prohibits certain communications to Plan participants by the fiduciaries: "it will be a breach of this Agreement for the Investor, Plan Sponsor or the Plan fiduciary to deliver any communication to Participants, either directly or indirectly, that is intended to

induce Participants to withdraw or transfer funds from the Guaranteed Interest Account to another investment option under the Plan (a 'Prohibited Communication')." GAC ¶6.03.  Again, the GAC attempts to bind fiduciaries into a position that is most beneficial to MassMutual at the expense of the Plan and its participants.

12.     This is blatant self-dealing.  Fiduciaries of comparably sized plans utilize institutional investment options that are diversified among providers.  In particular, a fiduciary will often outsource its retirement plan's fund selection process precisely to avoid the conflicts of interest alleged here. *See* Investment News, *Much Rides on suit for Ameriprise, ERISA funds*, available at http://www.investmentnews.com/article/20130113/REG/301139999 ("For instance, at TD Ameritrade Inc., the company's own 401(k) is run by Great-West Retirement Services, and assets are held by a Great-West affiliate. 'We do get questions from workers who say, "Wouldn't it make sense for us to hold those assets?"' said Skip Schweiss, president of TD Ameritrade Trust Co. 'This keeps us away from [a] potential conflict where we could be earning revenue on employee assets,' he said.").

13.     This is a civil enforcement action under 29 U.S.C. §§1104, 1106, 1109, and 1132. Plaintiffs bring this action on behalf of the Plan for losses to the Plan and for disgorgement of unlawful fees and profits taken by Defendants.

## Jurisdiction and Venue:

14.     Plaintiffs bring this action pursuant to 29 U.S.C. §1132(a)(2) & (3), which provides that participants may pursue civil actions on behalf of the Plan for

damages to remedy breaches of fiduciary duty as set forth in 29 U.S.C. §1109 and/or to obtain other appropriate equitable relief.

15.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1)(F).

16.     All Defendants are subject to nationwide service of process issued from this Court pursuant to 29 U.S.C. §1132(e)(2).

17.     Venue is proper in this Court pursuant to 29 U.S.C. §1132(e)(2) because the breaches of fiduciary duty giving rise to this action occurred in this district and the Defendants may be found in this district.

## PARTIES

### Plaintiffs:

18.     Plaintiff Dennis Gordan is a current participant in the Plan and a resident of Longmeadow, Massachusetts.

19.     Plaintiff John Hine is a current participant in the Plan and a resident of South Hadley, Massachusetts.

20.     Plaintiff Donna Flieger is a current participant in the Plan and a resident of Palm Coast, Florida.

21.     Plaintiff Patricia Hurley is a current participant in the Plan and a resident of Chicopee, Massachusetts.

22.     Plaintiff Ronald Lindner is a former participant in the Plan and a resident of West Springfield, Massachusetts.

23.     Plaintiff Janice Reynolds is a current participant in the Plan and a resident of Feeding Hills, Massachusetts.

24.     Plaintiff Sharon Jewell is a current participant in the Plan and a resident of Springfield, Massachusetts.

25.     Plaintiffs bring this action on behalf of the Plan pursuant to 29 U.S.C. §1132(a).

## The Plan

26.     The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. §1002(2)(A).

27.     The Plan is a "defined contribution plan" within the meaning of 29 U.S.C. §1002(34).

28.     The Plan has over 14,000 participants and over $1 billion in assets.

29.     Pursuant to 29 C.F.R. §2510.3-101(h)(1)(iii), the Plan owns an undivided interest in the underlying assets of MassMutual's general account and separate accounts.

30.     Specifically, the Plan has approximately 38 investment options available to participants, of which only one or two were not a MassMutual proprietary fund.  Within each investment option, the Defendants have caused the Plan to pay excessive and unreasonable administrative and investment management fees.

**Defendants:**

31.     MassMutual markets and sells employee-benefits insurance products and employee retirement investment products in all fifty states, including this district.  It maintains an extensive sales force throughout the United States and internationally.

32.     MassMutual is primarily run through its unincorporated operating divisions, including its Retirement Services Division.

33.     MassMutual, through its operating divisions and its subsidiaries, is a single, integrated organization.

34.     Pursuant to 29 U.S.C. §1002(16)(B), MassMutual is the Plan sponsor of the MassMutual Thrift Plan.

35.     MassMutual also serves as the Plan's investment manager, recordkeeper, and primary service provider, and thus is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A).

36.     29 U.S.C. §1002(21)(A) provides, in part, that "a person is a fiduciary with respect to a plan to the extent

(i)     he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(ii)     he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii)    he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105 (c)(1)(B) of this title."

37.     MassMutual is a Plan fiduciary pursuant to 29 U.S.C. §1002(21)(A) in that it or one of its operating divisions and/or employees:

A.     selects investment products, investment managers, and advisors for the Plan;

B.     possesses the authority and responsibility to select, retain or replace the investment products and investment managers for the Plan, including negotiating the fees for investment services;

C.     acts as an investment manager of Plan assets;

D.     appoints members of the named fiduciary committees;

E.     serves as the Plan's recordkeeper and primary administrative service provider; and

F.     enters into contracts with service providers on behalf of the Plan, including but not limited to the Group Annuity Contract most recently issued on December 13, 2011.

38.     The Plan appoints the CEO of MassMutual as the primary fiduciary to the Plan.  The CEO then appoints members to the two fiduciary committee Defendants, who are also named fiduciaries in the Plan document.

39.     Roger Crandall is the current Chief Executive Officer of Massachusetts Mutual Life Insurance Company.  He has been in this position since approximately January 2010.

40.     Prior to Mr. Crandall, Stuart Reese was the CEO from approximately June 2005 through January 2010.

41.     Prior to Mr. Reese, Robert O'Connell was the CEO.

42.     The CEO is a Plan fiduciary pursuant to 29 U.S.C. §1002(21)(A) in that

he:

      A.     appoints members of the named fiduciary committees;

      B.     monitors the fiduciary committees with respect to the decisions
            involving the Plan;

      C.     sets the terms of the Group Annuity Contract, most recently
            issued on December 13, 2011; and

      D.     approves all decisions of the fiduciary committees.

43.     Defendant Plan Administrative Committee is a named fiduciary to the

Plan. The Plan Administrative Committee is comprised of executives of

MassMutual or its subsidiaries or affiliates.  Christine Fini and Richard Goldstein

serve as members or delegates of this committee.  In addition, upon information and

belief, there are several additional members and delegates not yet known by

Plaintiffs and are referred to herein as John Doe Defendants 1-10.

44.     Defendant Plan Administrative Committee is a named fiduciary under

the Plan and is also a fiduciary pursuant to 29 U.S.C. §1002(21)(A) in that it:

      A.     enters into contracts with service providers on behalf of the
            Plan, including but not limited to the Group Annuity Contract
            most recently issued on December 13, 2011;

      B.     is responsible for the administration of the Plan;

    C.     is responsible for communications to Plan participants about, among others, the Plan, its investment options, and the fees charged; and

    D.     files reports with governmental agencies.

45.    Defendant Investment Fiduciary Committee is also a named fiduciary to the Plan. The Investment Fiduciary is comprised of executives of MassMutual or its subsidiaries or affiliates.  Individual Defendants Isadore Jermyn, Michael Fanning, Mary Wilson Kibbe, Debra Palermino, Michael Rollings, and other individuals not yet known to Plaintiffs served as a member or a delegate of the Investment Fiduciary Committee and are referred to herein as John Doe Defendants 11-20.

46.    Defendant Investment Fiduciary Committee is a named fiduciary under the Plan and is also a fiduciary pursuant to 29 U.S.C. §1002(21)(A) in that it:

    A.     develops investment policy guidelines;

    B.     recommends investment choices and options for the Plan to MassMutual;

    C.     appoints investment managers;

    D.     contracts with investment managers, including negotiating fees;

    E.     monitors and evaluates performance results;

    F.     ensures the investment policy guidelines are adhered to and objectives are met as is set forth in the Plan's Investment Policy Statement;

G.    provides fund mapping directions;

H.    advises the company and/or the CEO on the Group Annuity

       Contract;

I.     provides allocation instructions to the Plan administrator for the

       investment of Plan assets; and

J.     monitors and negotiates fees paid by the Plan.

47.    Defendant Elaine Sarsynski is a fiduciary to the Plan under 29 U.S.C.

§1002(21)(A) in that she has, among other things, discretionary authority and

responsibility over the administration of the Plan as the head of the MassMutual

department responsible for the Plan's recordkeeping and administrative services.

## DEFENDANTS' FIDUCIARY DUTIES

48.    Defendants are bound by ERISA's fiduciary duty that has been

characterized as "the highest known to law."  Defendants' fiduciary obligations

require that, at all times, they must:

A.    conduct themselves with the utmost good faith, loyalty and

       fidelity;

B.    act with the sole purpose of advancing the interests of the Plan,

       its participants and beneficiaries;

C.    without request, fully disclose to, and inform participants of, all

       material information and all information participants need to

       know to understand and protect their interests in the Plan;

D.    discharge their duties with the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying the reasonable cost of administering the Plan;

E.    ensure, at all times, that Plan assets are never used for the benefit of the plan sponsor or other fiduciaries;

F.    scrupulously avoid conflicts of interests, self-dealing and prohibited transactions;

G.    never use their authority, discretion and control in connection with the Plan to advance their own interest;

H.    account to the Plan for any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in the fiduciaries' business and/or for the fiduciary's benefit;

I.    compensate the Plan for any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in the fiduciaries' business and/or for the fiduciary's benefit;

J.    disgorge any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in the fiduciaries' business and/or for the fiduciary's benefit;

K.    even in the absence of a breach of fiduciary duty, account for any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in the fiduciaries' business and/or for the fiduciary's benefit;

L.    consider only the economic interests of the Plan in selecting Plan investment options;

M.    exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

N.    diversify the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;

O.    properly prescreen investment options so as not to include investment options that a responsible fiduciary would exclude;

P.    properly prescreen investment options and avoid placing on participants the unreasonable burden of having to screen investment options when they lack the resources and expertise to do so; and

Q.    use the enormous bargaining and purchasing power of an over billion dollar 401(k) plan to secure investment options in the wholesale, institutional investment marketplace and/or to secure additional investment advice or other extra services for participants so as to lower participants' cost of participation to wholesale levels if non-institutional investment vehicles are included.

49.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries. 29

U.S.C. §1105 states, in relevant part, that:

> In addition to any liability which he may have under any other
> provision of this part, a fiduciary with respect to a plan shall be liable
> for a breach of fiduciary responsibility of another fiduciary with respect
> to the same plan in the following circumstances:
>
> (1) If he participates knowingly in, or knowingly undertakes to
>
> conceal, an act or omission of such other fiduciary, knowing
>
> such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(1) in the
> administration of his specific responsibilities which give rise
> to his status as a fiduciary, he has enabled such other
> fiduciary to commit a breach; or
> (3) If he has knowledge of a breach by such other fiduciary,
> unless he makes reasonable efforts under the circumstances
> to remedy the breach.

## FACTS APPLICABLE TO ALL COUNTS

### MassMutual Received Excessive and Unreasonable Compensation

50.     ERISA requires that the Plan be established and maintained pursuant

to a written instrument. 29 U.S.C. §1102.  The Plan document is just one of many

documents or instruments governing the Plan under 29 U.S.C. §1104(a)(1)(D).

51.     Section 10.11 of the Plan document states that "all expenses of

establishing and administering the plan including expenses with respect to the

group annuity contract and fixed income account agreement shall be borne by the

employer as a further contribution to the plan."

52.     Section 10.03 of the Plan document also states that "persons employed by the Retirement Services Division of the Company shall be responsible for and shall perform all administrative duties contemplated by the Plan involving valuation, accounting and record keeping with respect to accounts of Plan Participants."

53.     Contrary to the Plan document, however, Defendants caused the Plan to pay, among other items, investment, administrative, and recordkeeping expenses to each investment option and to MassMutual.

54.     As referenced above, the Plan is also governed by a GAC, which was re-evaluated, re-drafted, and re-issued annually.

55.     Among other things, the GAC sets forth the 6-month crediting rate for the Plan's investment in MassMutual's general account the Fixed Interest Account. It also lists the Separate Investment Account options available to the Plan along with fee and expense limits to be paid to MassMutual.

56.     In particular, paragraph 1.03C of the GAC states: "MassMutual periodically withdraws a separate account investment management fee from each Separate Investment Account. This fee will be at a daily rate that on an annual basis does not exceed 2.0% of the average daily SIA Market Value of the applicable Separate Investment Account."  As explained below, a fee of 200 basis points, or 2%, is unreasonable and excessive for the services provided to the Plan.

57.     Further, paragraph 1.03D of the GAC states: "For each asset allocation and alternative equity separate investment account, MassMutual may periodically

withdraw a fee for ancillary separate account services. This fee will be at a daily rate that on an annual basis does not exceed 2.0% of the average daily SIA Market Value of the applicable Separate Investment Account." As explained below, this fee is also unreasonable and excessive for the services provided to the Plan.

58.  In contrast, the group annuity contract in effect for MassMutual's defined benefit plan contains a set investment management fee schedule with graduated break points for the separate accounts. The defined benefit contract contains no provision for the removal of a separate account services fee.

59.  Contrary to the Plan document, the fees the fiduciaries caused the Plan to pay, instead of MassMutual, were asset-based and, accordingly, increased as the amount of assets grew over time.

60.  Acting in their own interests instead of the best interests of the Plan, upon information and belief, Defendants failed to prudently monitor these excessive and/or prohibited fees for reasonableness, including understanding the nature or the amount of compensation paid for recordkeeping and administrative services through the investment options.

61.  In 2010, MassMutual was paid well over $5 million for providing services to the Plan, reaping, upon information and belief, substantial profits far in excess of other MassMutual Retirement Services clients.

62.  Defendants' asset-based compensation for recordkeeping services was excessive. The costs of recordkeeping services do not increase commensurately with

the amount of assets in the Plan. Ongoing increases in Plan assets caused recordkeeping fees to be unreasonable, and to consistently become more so.

63.     MassMutual received far in excess of reasonable compensation for the services provided as defined by 29 C.F.R. § 2550.408c-2 and the marketplace.

64.     Further, upon information and belief, MassMutual provided comparable recordkeeping and administrative services to other plan clients, including those far smaller than MassMutual's Thrift Plan, for less compensation than the Plan paid.

65.     Contrary to the duty of Plan fiduciaries to operate the Plan for the exclusive benefit of Plan participants, these administrative and recordkeeping fees directly benefitted Defendants.

### The Plan's Investment Options Assessed Fees That Were and Are Unnecessary, Excessive, and Unreasonable and Directly Benefit Defendants

66.     Upon enrollment, Plan participants may invest in one or more of the 38 investment options that Defendants selected for inclusion in the Plan. The vast majority of these options are MassMutual-owned separate accounts and mutual funds. The Fixed Interest Account is also an option, which invests directly in MassMutual's general account.

67.     MassMutual's subsidiaries, affiliates, or business units are the Plan's investment managers in 22 out of the 38 funds in the Plan. The remaining funds are sub-advised by a third party.

68.     MassMutual layered additional fees on top of the sub-advisory fee that at times were double or triple the fee charged by the person or entity selecting the actual investments (stock, bonds, etc.) for the Plan. A few examples from the Plan's investment options in 2012 are listed below with the amounts paid to the subadvisors, the amounts paid to MassMutual, and the percentage MassMutual's compensation exceeds the subadvisory fee.

| 2012 Funds | Subadvisory Fee | MassMutual Compensation | % MM Comp exceeds SA fee |
|---|---|---|---|
| MassMutual S&P 500 Index | 0.008% | 0.0720% | 899% |
| MassMutual S&P Mid Cap Index | 0.02% | 0.1708% | 887% |
| MassMutual Russell 2000 Small Cap Index | 0.02% | 0.1668% | 718% |
| MassMutual MSCI EAFE International Index | 0.03% | 0.2001% | 670% |
| MassMutual Premier Inflation-Protected and Income Fund | 0.07% | 0.3812% | 554% |
| MassMutual Premier Balanced Fund | 0.12% | 0.5149% | 447% |
| MassMutual Premier Core Bond Fund | 0.09% | 0.2905% | 324% |
| MassMutual Premier High Yield | 0.1697% | 0.3203% | 189% |
| MassMutual Select Blue Chip Growth | 0.29% | 0.4720% | 164% |
| MassMutual Premier International Equity | 0.42% | 0.6537% | 157% |
| MassMutual Premier Main Street Fund | 0.29% | 0.4202% | 145% |
| MassMutual Select Large Cap Value Fund | 0.33% | 0.4369% | 131% |
| MassMutual Select Growth Opportunities | 0.37% | 0.4807% | 130% |

| 2012 Funds | Subadvisory Fee | MassMutual Compensation | % MM Comp exceeds SA fee |
|---|---|---|---|
| MassMutual Select Fundamental Value Fund | 0.2827% | 0.3073% | 109% |

69.     As a result of managing the Plan for their own benefit at the expense of Plan participants, Defendants profited significantly.

70.     MassMutual offers other institutional clients lower-priced investment options with set fee schedules, which gradually decline as assets increase.  Further, MassMutual offers discounts to clients that depend on the size of assets invested, potential for additional assets in the future, and other facts and circumstances particular to a given client.  In addition, MassMutual offers discounts to family members and friends of MassMutual not otherwise available to investment clients. *See* MML Investors Services, LLC Part 2A of Form ADV.

71.     Upon information and belief, the Plan was not given any of these friendly discounts but instead it was forced to pay excessive, improper, and imprudent investment fees imposed for the benefit of Defendants.

72.     MassMutual received far in excess of reasonable compensation for the services provided as defined by 29 C.F.R. § 2550.408c-2 and the marketplace.

73.     Contrary to the duty of Plan fiduciaries to operate the Plan for the exclusive benefit of Plan participants, these investment fees directly benefitted Defendants.

74.     Each investment option in the Plan imposed excessive, unreasonable, and prohibited fees for the services provided to the Plan that, directly or indirectly,

benefitted Defendants. In exchange for the payment of such fees, the Plan did not receive additional investment advice or other services.

75.     These fees were unreasonable and imprudent in that the Plan could have invested directly with independent subadvisors and, in doing so, received the same or superior services while avoiding Defendants' additional, unreasonable fees.

76.     For each investment option, the subadvisor who actually managed the Plan's investment option offered equivalent investment management services for less than was ultimately paid by the Plan.

77.     The fees received by Defendants' related subadvisors were imprudent, excessive, unreasonable, and prohibited in that Defendants could have, and should have, secured lower fees by investing in a non-related subadvisor's institutional investment products or similar institutional investment products with equivalent services and dramatically lower fees.

78.     There are many non-MassMutual-branded, reasonably priced and well-managed investment options in the 401(k) plan marketplace available to the Plan. Such options include institutionally-priced mutual funds, exchange-traded funds, non-registered commingled funds, such as bank collective or common trusts and insurance company pooled separate accounts, and separately-managed single client funds.

79.     The Plan's investment option fees, moreover, are and were significantly higher than the fees available from alternative mutual funds, including Vanguard Institutional Funds, with similar investment styles that were

readily available as Plan investment options throughout the relevant time.  The chart below matches the Plan's investment option as of 2012 to the comparable Vanguard fund that was available to plans.  This chart demonstrates that most of the MassMutual fund options were at least four times as expensive as the comparable funds; some funds were as much as 10 times as expensive as the alternatives.

| Fund Name | Style | Plan Expense Ratio | Vanguard Equivalent | Vanguard Exp Ratio |
|---|---|---|---|---|
| MassMutual Select Destination Retirement 2010 Fund | Asset Allocation / Lifecycle | 0.84% | Target Retirement 2010 | 0.16% |
| MassMutual Select Destination Retirement 2015 Fund | Asset Allocation / Lifecycle | 0.85% | Target Retirement 2015 | 0.16% |
| MassMutual Select Destination Retirement 2020 Fund | Asset Allocation / Lifecycle | 0.87% | Target Retirement 2020 | 0.16% |
| MassMutual Select Destination Retirement 2025 Fund | Asset Allocation / Lifecycle | 0.90% | Target Retirement 2025 | 0.17% |
| MassMutual Select Destination Retirement 2030 Fund | Asset Allocation / Lifecycle | 0.90% | Target Retirement 2030 | 0.17% |

| Fund Name | Style | Plan Expense Ratio | Vanguard Equivalent | Vanguard Exp Ratio |
|---|---|---|---|---|
| MassMutual Select Destination Retirement 2035 Fund | Asset Allocation / Lifecycle | 0.92% | Target Retirement 2035 | 0.18% |
| MassMutual Select Destination Retirement 2040 Fund | Asset Allocation / Lifecycle | 0.93% | Target Retirement 2040 | 0.18% |
| MassMutual Select Destination Retirement 2045 Fund | Asset Allocation / Lifecycle | 0.94% | Target Retirement 2045 | 0.18% |
| MassMutual Select Destination Retirement 2050 Fund | Asset Allocation / Lifecycle | 0.93% | Target Retirement 2050 | 0.18% |
| MassMutual Select Destination Retirement Income Fund | Asset Allocation / Lifecycle | 0.80% | Target Retirement Income | 0.16% |
| MassMutual Premier Balanced Fund | Asset Allocation / Lifestyle | 0.68% | Balanced Index | 0.08% |
| MassMutual Premier Strategic Emerging Markets Fund | Emerging Market Equity | 0.99% | Emerging Mkt Index | 0.12% |
| MassMutual Premier High Yield Fund | High Yield Bond | 0.50% | High Yield Corporate | 0.13% |
| MassMutual Premier Core Bond Fund | Intermediate Term Bond | 0.39% | Total Bond Market | 0.07% |

| Fund Name | Style | Plan Expense Ratio | Vanguard Equivalent | Vanguard Exp Ratio |
|---|---|---|---|---|
| MassMutual Premier Inflation-Protected and Income Fund | Intermediate Term Bond | 0.45% | Inflation Protected Securities | 0.07% |
| Northern Trust Bond Index Fund | Intermediate Term Bond | 0.17% | Total Bond Market | 0.07% |
| International Growth | International / Global Large Core | 0.87% | Total International Index | 0.12% |
| MassMutual MSCI EAFE International Index | International / Global Large Core | 0.23% | Total International Index | 0.12% |
| MassMutual Select Overseas Fund | International / Global Large Core | 0.85% | Total International Index | 0.12% |
| MassMutual Premier Main Street Fund | Large Cap Core | 0.71% | Total Stock Market Index | 0.04% |
| MassMutual Select Focused Value Fund | Large Cap Core | 0.69% | Total Stock Market Index | 0.04% |
| MassMutual S&P 500 Index | Large Cap Core | 0.08% | Total Stock Market Index | 0.04% |
| MassMutual Premier Capital Appreciation Fund | Large Cap Growth | 0.71% | Growth Index | 0.08% |
| MassMutual Select Blue Chip Growth | Large Cap Growth | 0.76% | Growth Index | 0.08% |
| MassMutual Select Growth Opportunities | Large Cap Growth | 0.85% | Growth Index | 0.08% |

| Fund Name | Style | Plan Expense Ratio | Vanguard Equivalent | Vanguard Exp Ratio |
|---|---|---|---|---|
| MassMutual Premier Core Value Equity | Large Cap Value | 0.60% | Value Index | 0.08% |
| MassMutual Select Fundamental Value Fund | Large Cap Value | 0.59% | Value Index | 0.08% |
| MassMutual Select Large Cap Value Fund | Large Cap Value | 0.75% | Value Index | 0.08% |
| MassMutual Core Value | Large Cap Value | 0.60% | Value Index | 0.08% |
| MassMutual S&P Mid Cap Index | Mid Cap Core | 0.19% | Mid Cap Index | 0.08% |
| MassMutual Select Mid Cap Growth Equity II Fund | Mid Cap Growth | 0.74% | Mid Cap Growth | 0.10% |
| MassMutual Select Mid-Cap Value Fund | Mid Cap Value | 0.80% | Mid Cap Value | 0.10% |
| Oppenheimer Real Estate Fund | REITS | 1.13% | REIT Index | 0.08% |
| MassMutual Russell 2000 Small Cap Index | Small Cap Core | 0.19% | Small Cap Index | 0.08% |
| OFI Small Cap Core | Small Cap Core | 0.58% | Small Cap Index | 0.08% |
| MassMutual Select Small Cap Growth Equity Fund | Small Cap Growth | 0.85% | Small Cap Growth | 0.08% |

| Fund Name | Style | Plan Expense Ratio | Vanguard Equivalent | Vanguard Exp Ratio |
|---|---|---|---|---|
| MassMutual Select Small Company Value Fund | Small Cap Value | 0.90% | Small Cap Value | 0.08% |

80.     Large retirement plans have substantial bargaining power to negotiate lower fees for both investment management and administrative or recordkeeping services. "The fiduciaries also must consider the size and purchasing power of their plan and select the share classes (or alternative investments) that a fiduciary who is knowledgeable about such matters would select under the circumstances. In other words, the 'prevailing circumstances'—such as the size of the plan—are a part of a prudent decision-making process. The failure to understand the concepts and to know about the alternatives could be a costly fiduciary breach." F. Reish, *Just Out of Reish: Classifying Mutual Funds*, Plan Sponsor Magazine (Jan. 2011), available at http://www.plansponsor.com/MagazineArticle.aspx?id=6442476537.

81.     The DOL Study of 401(k) Plan Fees and Expenses has long touted the cost-saving benefits of moving from mutual funds to separate accounts, noting that expenses can be reduced by as much as 75%.  *See* Pensions & Welfare Benefits Admin., U.S. Dept. of Labor, *Study of 401(k) Plan Fees and Expenses*, at §2.4.1, Apr. 13, 1998, available at http://www.dol.gov/ebsa/pdf/401kRept.pdf.

## The Imprudence of the Fixed Interest Account

82.     The Fixed Interest Account, an investment in MassMutual's general account, was the Plan's largest investment option.  Generally, the Fixed Interest Account represented as much as 40% of the Plan's assets.

83.     MassMutual's general account is a pool of assets that MassMutual holds in its general investment account, and is comprised of various investments including commercial mortgages, publicly-issued bonds, asset-backed securities, and privately-issued debt securities. MassMutual uses the assets in its general account to pay claims on its insurance policies and annuity contracts.

84.     Defendants' inclusion of the Fixed Interest Account made their imprudence and self-dealing even worse by causing the Plan to be exposed to imprudent and undiversified risk, for which the Plan was not compensated.  In addition, the Fixed Interest Account charged unreasonable and excessive fees. These breaches cost the Plan millions of dollars in losses.

85.     The Fixed Interest Account not only subjected the Plan and its participants to excessive and undiversified risk, it also benefited Defendants by providing: (1) hundreds of millions of dollars of assets under management against which Defendants could assess fees; (2) Defendants with over $500 million dollars in working capital for their general account from MassMutual employees'

retirement savings; and (3) additional revenue through spread or other earnings hidden from participants.[1]

86.    The Fixed Interest Account is offered to the Plan through the GAC. Under the contract, the Plan's assets are deposited into MassMutual's general account.  In return, MassMutual agrees to pay a set 6-month interest rate on the amounts deposited.

87.    Defendants never describe to Plan participants the amount or the nature of fees deducted from the Fixed Interest Account.

88.    Upon information and belief, the fees charged to the general account investment product are based on profit targets. Further, MassMutual's general account investment product for 401(k) plans, like the one in this case, includes an 85 basis point risk charge and a recordkeeping charge that ranges from 30–90 basis points. The total of these two charges is between 115 to 175 basis points, which greatly exceeds the market rates for comparable products.

89.    Upon information and belief, MassMutual also retains, as additional revenue, the difference between what the investments in the general account actually earn versus what is credited to the Plan.  This is commonly referred to as spread earnings.  Spread earnings can be significant, reaching multiples of the 115–175 basis points fee.  These earnings, in addition to the layers of fees, are never disclosed to participants.

---

[1] A basis point is a unit of measurement for less than one percent. One hundred basis points equals one percent; thus, 85 basis points equals 0.85%.

90.     In addition to the undisclosed and excessive fees in the Fixed Interest Account, Defendants' representation that the promised interest rate along with the accrued principal is "guaranteed" is false and fraudulent.  Such false promises misleads participants into believing that their retirement savings are safe under all circumstances, when they are actually subject to the risks of MassMutual's business operations and solvency.  Prudent fiduciaries invest in separate accounts owned by the Plan and guarantee returns by contracting with multiple insurance companies as wrap providers with transparent and negotiated fees.

91.     Although MassMutual purports to "guarantee" an investment in the Fixed Interest Account against loss, that guarantee is backed only by the assets held in MassMutual's general account and is subject to MassMutual's general creditors.

92.     The Plan's investment in MassMutual's general account through the Fixed Interest Account was and remains a Plan asset.

93.     Acting in their own interests instead of the best interests of the Plan, Defendants failed to consider other available fixed income options that, unlike the Fixed Interest Account, diversified risk, are more transparent in their fees, passed along the full performance of the underlying investments, and provided market rates for all investment and administrative services.

94.     Indeed, the vast majority of large, defined contribution plans invest in Synthetic Guaranteed Investment Contracts ("Synthetic GICs") for their fixed

income, stable value option. Synthetic GICs offer distinct advantages over a general
account investment:

    A.    direct ownership of the underlying investment products by the
             Plan;

    B.    wrap contracts by multiple insurance companies or banks, which
             diversify the risk so the plan is not overly exposed to one
             insurer;

    C.    transparent fees;

    D.    full benefit of the performance of the investments; and

    E.    lower fees.

### The Unreasonably Priced, Proprietary Funds Significantly Underperformed and Were Otherwise Imprudent

95.    Defendants' self-dealing and conflicts of interest meant more than just
expensive fees for the Plan.  It also caused MassMutual employees and retirees to
have as options for their retirement assets imprudent and underperforming funds.

96.    For example, the Capital Appreciation Fund and the Large Cap Value
Fund have a history of significant underperformance for years, underperforming
their respective benchmarks and prudent investment options available to the Plan
by over $10 million each in the past six years alone.

97.    The Investment Committee documented what it believed to be prudent
guidelines and processes for monitoring, selecting, and terminating investment
options within the Plan.  This document is called the Investment Policy Statement

("IPS") and is considered a governing plan document under 29 U.S.C.

§1104(a)(1)(D).

98.     The IPS states: "[E]ach fund is expected to perform in the upper third of the respective style universe over the most recent five-year period."

99.     According to Morningstar, a respected and reliable source of independent investment analysis, and in violation of the IPS, not one fund in the Plan performed in the upper third of its style category for any consecutive five-year period.

100.    Defendants' complete failure of procedural and substantive prudence resulted in the Plan's investments significantly underperforming their benchmarks, or available prudent alternatives to the Plan, causing substantial losses to MassMutual employees and retirees.

## FRAUD AND CONCEALMENT

101.    Defendants have actively misled and/or have affirmatively concealed material information including:

> A.      that contrary to the Plan document, MassMutual was not paying the Plan's fees and expenses and instead participants were paying MassMutual unreasonable and excessive amounts through the investment options;
>
> B.      that MassMutual derived compensation from the Fixed Interest Account in the form of fees and spread revenue;

C.      the amount of fees and compensation paid to MassMutual from the Fixed Interest Account;

D.      that Defendants had engaged in a long campaign of self-interested transactions designed to reap prohibited profits from the Plan and its assets for Defendants and/or related entities;

E.      that Defendants earned excessive and prohibited profits from the Plan;

F.      that fees charged to and revenue derived from the Fixed Interest Account were actually fees contributing to a substantial profit to the benefit of Defendants;

G.      that the Plan was exposed to imprudent risk and lack of diversification through the Fixed Interest Account;

H.      that the Plan's size and asset value enabled Defendants to provide lower-priced investment options;

I.      that the fees charged and funneled to Defendants deprived participants of the opportunity to receive market returns;

J.      that the excessive fees and expenses assessed against their accounts, and paid to Defendants, substantially undermined the value of participants' retirement savings over time;

K.      that Plan service providers collected revenue or fees from the Plan, which included asset-based charges for recordkeeping

services which became increasingly unreasonable as assets in the Plan grew;

L.   Defendants concealed their excessive recordkeeping compensation in quarterly account statements to participants as to fees paid by the participants in any respect;

M.   how much each service provider is paid with Plan assets derived from participants' accounts;

N.   that the total amount paid to service providers is unreasonable in light of the services provided and incurred solely for Defendants' benefit;

O.   the true and accurate amount of recordkeeping and administrative fees that are assessed to the Plan;

P.   the true and accurate price, cost, and/or expense of the Plan's investment options; and

Q.   the true and accurate amount of fees paid to investment managers *for actual investment management services* (*i.e.*, the actual amount of investment management being purchased) in any Plan investment option.

102.   Because the Defendants actively misled participants, failed and refused to provide them with this information, and/or concealed this information from them, Plan participants have lacked the information necessary for them: (a) to understand and protect their interests in the Plan; (b) to have knowledge regarding

the Defendants' breaches of fiduciary duty; and (c) to have reason to believe they should make an inquiry about those breaches and the facts underlying them.

103.    Defendants know that Plan participants lack such information and knowledge.

104.    In their fiduciary roles, Defendants are the parties with the information necessary to know and understand whether the participants' rights and protections under ERISA are being, or have been, violated.  As ERISA fiduciaries, Defendants have an affirmative obligation to provide full and accurate information to the Plan participants regarding the administration of the Plan.

## CLASS ALLEGATIONS

105.    Pursuant to 29 U.S.C. §1132(a), actions for violations of the obligations defined in 29 U.S.C. §1109 may be brought on behalf of the Plan by the Secretary of Labor, plan participants, beneficiaries, or fiduciaries.

106.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Plan, themselves and all similarly-situated Plan participants and beneficiaries.  The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant or beneficiary, has an interest. Plaintiffs seek to represent the following class:

> All current and former participants and beneficiaries of the MassMutual Thrift Plan who were affected by the breach of fiduciary duties alleged in Plaintiffs' complaint, excluding those individuals who breached their fiduciary duties as alleged in Plaintiffs' complaint.

107.    Certification of this Class is proper under Rule 23(a) in that:

A.      Numerosity.  The members of the Class are so numerous that
        joinder of all members is impracticable.  Although the Plaintiffs
        do not know the exact number of members in the class, the
        Plan's public documents state that, at the end of the 2012 Plan
        year, there were 14,801 participants with account balances in
        the Plan.

B.      Commonality. Common issues of fact and law predominate over
        any issues unique to individual Class members.  As set forth in
        detail below, issues that are common to all Class members
        include, but are not limited to, that Defendants:

        i.      imprudently invested Plan assets in MassMutual
                separately-managed accounts which in turn invested in
                proprietary funds and/or similar investment products,
                thus imposing an additional layers of fees without
                providing any additional services of value;

        ii.     failed to discharge their duties solely in the interest of the
                Plan and its participants;

        iii.    failed to exercise the care, skill, prudence and diligence
                under the circumstances then prevailing that a prudent
                person acting in a like capacity and familiar with such
                matters would use in the conduct of an enterprise of a like
                character and with like aims;

iv.    used Plan assets in their own interest and not for the
       exclusive purpose of providing benefits to participants
       and beneficiaries and defraying the reasonable expenses
       of administering the Plan;

v.     failed to conduct themselves with the utmost good faith,
       loyalty and fidelity;

vi.    failed to prudently monitor recordkeeping fees for
       reasonableness;

vii.   fraudulently concealed excessive recordkeeping and
       administrative fees in their communications with Plan
       participants;

viii.  selected and retained investment options that imposed
       excessive and unreasonable fees, including fees for the
       benefit of Defendants;

ix.    failed to secure, for the unreasonable fees imposed upon
       the Plan, additional investment advice or other services
       for Plan participants;

x.     selected and retained Defendants' subsidiaries as
       investment managers of investment options so as to
       funnel additional and excessive fees to Defendants;

xi.    selected and retained MassMutual's Fixed Interest
       Account as a Plan investment so as to provide financial

and other benefits to Defendants and their subsidiaries while subjecting the Plan and its participants to excessive, undiversified and avoidable risk;

xii.    used their authority, discretion and control in connection with the Plan to advance their own interest;

xiii.    failed to compensate the Plan for any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in their business and/or for their benefit.

xiv.    failed to solicit competitive bids from prospective service providers for recordkeeping and administrative services;

xv.    failed, even in the absence of a breach of fiduciary duty, to account for any benefits, revenues and/or profits received from, or in respect of, any use of Plan assets in the fiduciaries' business and/or for the fiduciary's benefit;

xvi.    for the benefit of Defendants and to the detriment of the Plan, included the MassMutual's Fixed Interest Account as the Plan's largest investment option, and thereby caused well in excess of 500 million dollars of Plan assets to be used as working capital in MassMutual's general account;

xvii.    for the benefit of Defendants and to the detriment of the Plan, included virtually exclusively Defendants' separate

accounts and MassMutual's general account investments as Plan investment options, and thereby provided more than $1 billion in assets under management to Defendants and the MassMutual Retirement Business;

xviii. manipulated, misrepresented and/or disguised the nature of fees and expenses incurred by the Plan and that they were imposed for Defendants' benefit to the detriment of the Plan;

xix. in charging, causing to be charged or paid, and failing to monitor the fees and expenses of the Plan, failed to exercise the care, skill, prudence, and diligence that a prudent person would when acting in like capacity and familiar with such matters;

xx. engaged in prohibited transactions that they knew, or should have known, constituted direct, or indirect, furnishing of services between the Plan and Defendants;

xxi. engaged in prohibited transactions that they knew, or should have known, constituted direct, or indirect, transfer to, or use by, or for the benefit of Defendants, assets of the Plan;

xxii.   engaged in prohibited transactions when they dealt with the assets of the Plan in their own interest and for their own accounts;

xxiii.  engaged in prohibited transactions when in their individual and corporate capacities as officers, directors, employees and/or agents of Defendants, acted in transactions involving the Plan on behalf of Defendants whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries;

xxiv.   engaged in prohibited transactions when they received consideration for their own personal account from a party dealing with the Plan in connection with a transaction involving the assets of the Plan; and

xxv.    by the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, breached their fiduciary and other ERISA-imposed obligations to the Plan, Plan participants, and members of the Class.

C.    Typicality. The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant, has an interest. The claims brought by the Plaintiffs are typical of those of the absent Class members, in that:

      i.        Defendants owed the exact same fiduciary and other ERISA-based obligations to each Plan participant and beneficiary, and each member of the Class;

      ii.       Defendants' breach of those obligations constitutes a breach to each participant and beneficiary, and each member of the Class; and

      iii.     any recovery or other remedy secured in this action will inure to the benefit of the Plan.

D.     Adequacy of Representation.  The Plaintiffs are adequate representatives of the absent Class members and will protect such absent Class members' interests in this litigation.  The Plaintiffs do not have any interests antagonistic to the other Class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the Class's claims.  Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

108.   Class certification is also appropriate under Rule 23(b) in that, among other things:

A.     in the absence of certification, there is a risk of inconsistent adjudications with respect to individual class members;

B.     in the absence of certification, there is a risk that adjudications with respect to individual Class members would, as a practical

matter, be dispositive of the interests of the other members not

parties to the individual adjudications; and

C.      as set forth above, common issues of law and fact predominate

over any purely individual issues and thus a class action is

superior to any other method for adjudicating these claims.

## COUNT I:

### Imposition of Unreasonable Recordkeeping and Administrative Fees for The Benefit of Defendants

### (Breach of Duty of Loyalty and Prudence – 29 U.S.C. §1104(a))

109.    Plaintiffs restate and incorporate the allegations contained in the

foregoing paragraphs as though fully set forth here.

110.    Defendants are bound by ERISA's duty of undivided loyalty.

111.    Any form of self-dealing is a clear breach of the duty of undivided

loyalty. 29 U.S.C. §1104(a)(1)(A) requires that in discharging his or her fiduciary

duties, a fiduciary act with an "eye single" to the interests of the plan's participants

and beneficiaries.

112.    Defendants are also bound by ERISA's duty of prudence, which

requires all fiduciary decisions be made "with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

113.     Defendants violated the duties of loyalty and prudence by causing the Plan to invest virtually exclusively in MassMutual-owned investment options that paid unreasonable compensation to MassMutual for the services it provided to the Plan when the Plan document required these expenses to be paid by MassMutual. Defendants selected and retained these unreasonably-priced options in order to benefit themselves at the expense of the Plan.

114.     Defendants violated the duty of loyalty and prudence by failing to regularly monitor and evaluate the recordkeeping and administrative services provided to the Plan and compensation paid to MassMutual.  This includes issuing requests for proposals from non-MassMutual entities to ensure the Plan was paying a market rate for the recordkeeping and administrative services received.

115.     Defendants breached their duty of loyalty and prudence by applying different standards in managing the MassMutual Thrift Plan (a defined contribution plan) compared to the standards it applied in managing the MassMutual defined benefit and non-qualified plans.

116.     Defendants breached their duty of loyalty and prudence by causing the Plan to pay excessive and unreasonable recordkeeping and administrative expenses.

117.     Defendants breached their duty of loyalty and prudence by maintaining the Plan's investment in MassMutual's undiversified general account through the Fixed Interest Account.  This investment created a windfall of revenue for MassMutual that was excessive and unreasonable for the services provided. This revenue was hidden from participants and went unmonitored by the

fiduciaries, while exposing participants to excessive risk compared to available prudent alternatives that are diversified with multiple insurance companies.

118.    In taking the above actions, Defendants failed to discharge their duties with respect to the Plan solely in the interest of the Plan and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan. Defendants' acts violate standards in the industry and contradict the reasonable practices of other prudent fiduciaries.  Defendants acted for the purpose of benefitting themselves and MassMutual through the revenues derived from Plan services provided by MassMutual subsidiaries.

119.    Defendants therefore breached their fiduciary duty of loyalty and prudence under 29 U.S.C. §1104(a)(1).

120.    As a direct and proximate result of these breaches, the Plan and Class members lost millions of dollars in the form of higher fees than they would have otherwise experienced.

121.    Pursuant to 29 U.S.C. §§1132(a)(2) and 1109(a), the Defendants are liable to disgorge all fees, or in the alternative, excessive fees received from the Plan, directly or indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches of the duty of loyalty and prudence.

## COUNT II:

### Selection of Unreasonably-Priced and Imprudent Investment Options For The Benefit of Defendants and at The Expense of the Plan

### (Breach of Duty of Prudence and Loyalty – 29 U.S.C. §1104(a))

122.    Plaintiffs restate and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

123.    Defendants are bound by ERISA's duty of undivided loyalty.

124.    Any form of self-dealing is a clear breach of the duty of undivided loyalty. 29 U.S.C. §1104(a)(1)(A) requires that in discharging his or her fiduciary duties, a fiduciary act with an "eye single" to the interests of the plan's participants and beneficiaries. Defendants violated their duties of undivided loyalty to the Plan.

125.    Defendants are bound by ERISA's duty of prudence, which requires all fiduciary decisions be made "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

126.    By the foregoing conduct, Defendants breached their fiduciary duties by, without limitation:

    A.    selecting and retaining investment options that imposed excessive and unreasonable fees, including fees for the benefit of Defendants, when compared to the alternatives available to the Plan;

45

B.   selecting and retaining investment options that had nonexistent or inferior performance histories when compared to comparable investments available to the Plan at that time;

C.   subjecting the Plan to such unreasonably-expensive options when the Plan's enormous size and bargaining power enabled Defendants to secure the same investments at a fraction of the cost;

D.   applying different standards in managing the MassMutual Thrift Plan (a defined contribution plan), consisting of its employees assets, compared to the standards it applied in managing the MassMutual defined benefit plan, where the corporation is responsible for any shortfall.

E.   imposing excessive and unreasonable fees, *in addition to* those unreasonable and prohibited subadvisory fees, for the benefit of Defendants and their Retirement Business;

F.   failing to secure, for the unreasonable fees imposed upon the Plan, additional investment advice or other services for Plan participants;

G.   selecting and retaining investment options for reasons other than furthering the economic interests of the Plan;

H.   failing to properly prescreen investment options, selecting and retaining investment options that a responsible fiduciary would

exclude, and imposing on participants the unreasonable burden of having to screen investment options when they lack the resources and expertise to do so;

I.      selecting and retaining MassMutual subsidiaries as investment managers of some investment options so as to funnel additional and excessive fees to Defendants;

J.      selecting and retaining the Fixed Interest Account so as to provide financial and other benefits to Defendants while subjecting the Plan and its participants to excessive, undiversified and avoidable risk with a purpose of funneling additional and excessive fees to MassMutual to operate and grow its Retirement Business; and

K.      subjecting the Plan to the control and discretion of fiduciaries laboring under conflicts of interest and self-dealing.

127.    In taking the above actions, Defendants failed to discharge their duties with respect to the Plan solely in the interest of the Plan and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan. Defendants' acts violate standards in the industry and contradict the reasonable practices of other prudent fiduciaries.  Instead, Defendants acted for the purpose of benefitting themselves and MassMutual through the revenues derived from Plan services provided by MassMutual subsidiaries.

128.    Defendants therefore breached their fiduciary duty of loyalty and prudence under 29 U.S.C. §1104(a)(1).

129.    As a direct and proximate result of these breaches, the Plan and Class members lost millions of dollars in the form of higher fees and underperformed relevant benchmarks or prudent alternatives available to the Plan than they would have otherwise experienced.

130.    As a direct and proximate result of these breaches, the Plan and Class members lost millions of dollars in the form of lower performance and higher fees than comparable investments available to the Plan.

131.    Pursuant to 29 U.S.C. §§1132(a)(2) and 1109(a), the Defendants are liable to disgorge all excessive fees received from the Plan, directly or indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches of the duty of loyalty and prudence.

## COUNT III:

## Prohibited Transactions - 29 U.S.C. §1106(a)

132.    Plaintiffs restate and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

133.    As established above, Defendants are fiduciaries to the Plan.  As fiduciaries, they are parties in interest under 29 U.S.C. §1002(14).  Alternatively, Defendants are parties in interest because: (1) they provide services to the Plan

(under §1002(14)(B)); and (2) they are the employer whose employees are covered by the Plan (under §1002(14)(C)), among others.

134.    29 U.S.C. §1106(a)(1) provides, in part:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
> * * *
> (C) furnishing of goods, services, or facilities between the plan and a party-in-interest;
>
> (D) transfer to, or use by or for the benefit of a party-in-interest, of any assets of the plan;
> * * *

### Defendants' Violations of 29 U.S.C. §1106(a)(1)(C)

135.    As set forth in detail above, Defendants caused the Plan to engage in transactions, including, but not limited to:

A.    entering into contracts with MassMutual;

B.    amending those contracts with MassMutual;

C.    reissuing those contracts with MassMutual;

D.    evaluating the services provided by MassMutual to the Plan and deciding to retain and continue those services; and

E.    paying invoices and/or authorizing fees to be removed from Plan accounts.

136.    Defendants, in engaging in the transactions above, knew or should have known such transactions constituted the direct or indirect furnishing of services:

A.      between the Plan and MassMutual for recordkeeping, administrative, investment management and advisory services to the Plan;

B.      between the Plan and MassMutual in that MassMutual provided its own proprietary separate accounts as investment options within the Plan;

C.      between the Plan and MassMutual in that MassMutual issued the GAC;

D.      between the Plan and MassMutual in that MassMutual sets the crediting rate for the Fixed Interest Account, which is a Plan investment option;

E.      between the Plan and MassMutual in that MassMutual sets its own fees under the GAC; and

F.      between the Plan and MassMutual in that MassMutual or its subsidiaries or affiliates provided investment management services to the Plan's investment options.

137.    The total fees paid to MassMutual for its services to the Plan were unreasonable in light of the services provided.  Further, Defendants failed to negotiate additional services or rebates from MassMutual on behalf of the Plan.

138.    As set forth above, the Defendants did not compensate the Plan for the use of its assets.

**Defendants' Violations of 29 U.S.C. §1106(a)(1)(D)**

139.   As set forth in detail above, Defendants caused the Plan to engage in transactions, including, but not limited to:

    A.    entering into contracts with MassMutual;

    B.    amending those contracts with MassMutual;

    C.    reissuing those contracts with MassMutual;

    D.    evaluating the services provided by MassMutual to the Plan and deciding to retain and continue those services; and

    E.    paying invoices and/or authorizing fees to be removed from Plan accounts.

140.   Defendants, in engaging in the transactions identified above, knew or should have known such transactions constituted the direct or indirect transfer to, or use by, or for the benefit of MassMutual assets of the Plan in that, among other things:

    A.    through the Plan's Fixed Interest Account, MassMutual received and used well in excess of $500 million of Plan assets;

    B.    through MassMutual's separate accounts and the Fixed Interest Account, MassMutual received and used almost $1.5 billion from the Plan as assets under management; and

    C.    Plan assets were transferred to and used as assets under management of MassMutual, from which MassMutual

generated revenues and profits for the benefit of itself and

Defendants.

141.    The total fees paid to MassMutual for its services to the Plan were

unreasonable in light of the services provided.  Further, Defendants failed to

negotiate additional services or rebates from MassMutual on behalf of the Plan.

142.    As set forth above, the Defendants did not compensate the Plan for the

use of its assets.

143.    As a direct and proximate result of these breaches, the Plan and Class

members lost millions of dollars in the form of higher fees and lower returns than

prudent alternatives available to the Plan on their investments than they would

have otherwise experienced.

144.    Pursuant to 29 U.S.C. §§1109 and 1132(a)(2), Defendants are

personally liable to make good to the Plan the losses it experienced as a result of

Defendants' breaches of fiduciary duty and to disgorge all revenues and profits

MassMutual has received.

145.    Pursuant to 29 U.S.C. §§1109 and 1132(a), Defendants are personally

liable for any other available and appropriate equitable relief, including

disgorgement of all revenues and profits MassMutual has received; an accounting;

prospective injunctive relief and declaratory relief; attorney's fees; and any other

relief the Court deems appropriate.

146.    In the alternative and in addition to the foregoing, to the extent that

any Defendant is deemed not to be a fiduciary of the Plan, as a non-fiduciary, they

unlawfully received Plan assets as a party-in-interest and may be held liable because of its actual or constructive knowledge of the circumstances that created the unlawful transfer.

147. In the alternative and in addition to the foregoing, to the extent that any Defendant is deemed not to be a fiduciary of the Plan for all purposes, as a non-fiduciary, Defendants unlawfully received Plan assets as a party-in-interest and may be held liable because of its actual or constructive knowledge of the circumstances that created the unlawful transfer.

148. Defendants failed to prudently pursue compensation or other remedies for the Plan as a result of breaches of fiduciary duties committed by other Plan fiduciaries including former Plan fiduciaries.

149. Pursuant to 29 U.S.C. §1105, Defendants are jointly and severally liable for all such breaches, as well as all those committed by other fiduciaries, in that they:

    A.    knowing that their conduct was a breach of fiduciary duty, knowingly participated in the breach and/or knowingly undertook to conceal it;

    B.    by breaches of their duties of prudence, loyalty and other obligations under 29 U.S.C. §1104(a)(1) & (2), enabled other fiduciaries to commit a breach of fiduciary duty; and/or

C.     with knowledge of a breach or breaches by other fiduciaries,

including past fiduciaries, made no reasonable effort to remedy

such breaches.

## COUNT IV:

## Prohibited Transactions 29 U.S.C. §1106(b)

150.   Plaintiffs restate and incorporate the allegations contained in the

foregoing paragraphs as though fully set forth here.

151.   As established above, Defendants are fiduciaries to the Plan.

152.   29 U.S.C. §1106(b) provides, in part:

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan

## Defendants' Violations of 29 U.S.C. §1106(b)(1)

153.   As set forth above, Defendants dealt with the assets of the Plan in

their own interest and for their own account in that, among other things:

A.     as set forth above, Defendants transferred to MassMutual more

than $1 billion of Plan assets to run its for-profit investment

management companies and to generate additional revenues and profits for MassMutual;

B.    as set forth above, Defendants included and retained as Plan investment options virtually exclusively MassMutual separate accounts and/or direct investment in MassMutual's general account, and thereby funneled revenues and profits received from managing the investment of Plan assets to MassMutual;

C.    as set forth above, Defendants selected and retained MassMutual's Retirement Services Division as the Plan's recordkeeper and primary administrative service provider, charged excessive and unreasonable fees for those services, and thereby funneled to MassMutual unchecked revenues and profits generated from asset-based fees assessed against, and removed from, Plan assets; and

D.    as set forth above, Defendants caused or allowed MassMutual to retain float and other hidden sources of revenue produced by Plan assets for the profit of MassMutual.

### Defendants' Violations of 29 U.S.C. §1106(b)(2)

154.    Defendants, in their individual and corporate capacities, acted in transactions involving the Plan on behalf of MassMutual or one of its operating divisions, subsidiaries or affiliates, whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries in that:

A.     as set forth above, Defendants negotiated and amended the
Group Annuity Contract with MassMutual.  The interests of
MassMutual were to impose as high fees and rates as possible
along with negotiating other terms of the contract for their
business interests.  Conversely, the same Defendants also
negotiated on behalf of the Plan;

B.     as set forth above, Defendants selected and retained
MassMutual's Retirement Services Division as the Plan's
recordkeeper and primary administrative service provider.  The
interests of MassMutual were to impose as high fees as possible
for such services and were directly adverse to the interests of the
Plan to pay as low fees as possible; and

C.     Defendants selected, contracted with, amended contracts, and
retained MassMutual subsidiaries and affiliates as the
investment manager of the Fixed Interest Account and other
Plan investment options. The interests of MassMutual were to
impose as high investment management fees as possible, and
were directly adverse to the Plan's interest to pay as low
investment management fees as possible.

## Defendants' Violations of 29 U.S.C. §1106(b)(3)

155.    As set forth above, Defendants received consideration for their own

personal account from a party dealing with the Plan in connection with transactions

involving the assets of the Plan in that it:

A.    received excessive and unreasonable investment management

fees, assessed against and collected from Plan assets by reason

of the selection and retention of MassMutual separate accounts

and the placement of the Fixed Interest Account assets in

MassMutual's general account as investment options. Indeed, by

comparison, MassMutual's Retirement Services Division

charged outside retirement plan clients less than the Plan's fees;

B.    received excessive and unreasonable recordkeeping and

administrative fees assessed against and collected from Plan

assets;

C.    received revenue sharing payments from investment managers

of the Plan's investment options; and

D.    received float collected from Plan assets.

156.    As a result of these prohibited transactions, Defendants have received

unreasonable and improper revenues and profits.

157.    As a result of these breaches, the Plan suffered financial losses and

damages.

158.   Pursuant to 29 U.S.C. §§1109 and 1132(a)(2), Defendants are personally liable to make good to the Plan the losses it experienced as a result of Defendants' breaches of fiduciary duty and to disgorge all revenues and profits MassMutual has received.

159.   Pursuant to 29 U.S.C. §§1109 and 1132(a), Defendants are personally liable for any other available and appropriate equitable relief, including disgorgement of all revenues and profits MassMutual has received; an accounting; prospective injunctive relief and declaratory relief; attorney's fees; and any other relief the Court deems appropriate.

160.   In the alternative and in addition to the foregoing, to the extent that any Defendant is deemed not to be a fiduciary of the Plan, as a non-fiduciary, they unlawfully received Plan assets as a party-in-interest and may be held liable because of its actual or constructive knowledge of the circumstances that created the unlawful transfer.

161.   In the alternative and in addition to the foregoing, to the extent that any Defendant is deemed not to be a fiduciary of the Plan for all purposes, as a non-fiduciary, Defendants unlawfully received Plan assets as a party-in-interest and may be held liable because of its actual or constructive knowledge of the circumstances that created the unlawful transfer.

162.   Defendants failed to prudently pursue compensation or other remedies for the Plan as a result of breaches of fiduciary duties committed by other Plan fiduciaries including former Plan fiduciaries.

163.    Pursuant to 29 U.S.C. §1105, Defendants are jointly and severally liable for all such breaches, as well as all those committed by other fiduciaries, in that they:

>    A.    knowing that their conduct was a breach of fiduciary duty, knowingly participated in the breach and/or knowingly undertook to conceal it;

>    B.    by breaches of their duties of prudence, loyalty and other obligations under 29 U.S.C. §1104(a)(1) & (2), enabled other fiduciaries to commit a breach of fiduciary duty; and/or

>    C.    with knowledge of a breach or breaches by other fiduciaries, including past fiduciaries, made no reasonable effort to remedy such breaches.

**COUNT V:**

**Failure to Administer the Plan in Accordance With the Governing Plan Documents**

**(Breach of Fiduciary Duty – 29 U.S.C. §1104(a)(1)(D))**

164.    Plaintiffs restate and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

165.    Defendants are bound by ERISA's requirement to administer the Plan in accordance with the Plan documents, so long as the Plan documents do not violate ERISA.

166.    Paragraph 10.11(a) of the Plan document states "all expenses of establishing and administering the plan, including expenses with respect to the group annuity contract and fixed income account agreement shall be borne by the employer as a further contribution to the plan."

167.    In violation of this provision of the Plan, Defendants caused the Plan to pay expenses to MassMutual, including but not limited to the Separate Accounts the Fixed Interest Account investments.

168.    MassMutual did not pay the expenses with respect to the Group Annuity Contract as was required by the Plan document.

169.    In taking the above actions, Defendants failed to discharge their duties with respect to the Plan in accordance with the governing Plan documents as is required by 29 U.S.C. §1104(a)(1)(D).

170.    Defendants therefore breached their fiduciary duty under 29 U.S.C. §1104(a)(1)(D).

171.    As a direct and proximate result of these breaches, the Plan and Class members lost millions of dollars in the form of higher fees and lower returns than prudent alternatives available to the Plan on their investments than they would have otherwise experienced.

172.    Pursuant to 29 U.S.C. §§1132(a)(2) and 1109(a), the Defendants are liable to disgorge all fees received from the Plan, directly or indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches of their fiduciary duty.

## COUNT VI

### Failure to Monitor Fiduciaries – 29 U.S.C. §1104

173.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

174.   This Count alleges breach fiduciary duties against the following Defendants: MassMutual, Roger Crandall, Stuart H. Reese, and Robert O'Connell (collectively the "Monitoring Defendants").

175.   As alleged above, the Monitoring Defendants are fiduciaries pursuant to 29 U.S.C. § 1002(21). Thus, they are bound by the duties of loyalty, exclusive purpose, and prudence.

176.   As alleged above, the scope of the fiduciary responsibilities of the Monitoring Defendants includes the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

177.   A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

178.   The Monitoring Fiduciaries breached their fiduciary monitoring duties by, among other things:

A.   failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result

of their appointees' imprudent actions and inaction with respect
to the Plan;

B.    failing to monitor their appointees' fiduciary process, which
would have alerted any prudent fiduciary to the potential breach
because of the widespread use of proprietary funds from which
Defendants received unreasonable compensation in violation of
ERISA;

C.    failing to ensure that the monitored fiduciaries appreciated the
ready availability of comparable and better-performing
investment options that charged significantly lower fees and
expenses than the Plan's investment options; and

D.    failing to remove appointees whose performance was inadequate
in that they continued to maintain the imprudent, and
proprietary, options for participants' retirement savings in the
Plan during the Class Period, and who breached their fiduciary
duties under ERISA.

179.   As a consequence of the Monitoring Defendants' breaches of fiduciary
duty, the Plan suffered substantial losses. If the Monitoring Defendants had
discharged their fiduciary monitoring duties prudently as described above, the
losses suffered by the Plan would have been minimized or avoided. Therefore, as a
direct result of the breaches of fiduciary duty alleged herein, the Plan, and

indirectly the Plaintiffs and the other Class members, lost millions of dollars of their retirement savings.

180.   Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT VII:

## Other Remedies for Breach of Fiduciary Duty – 29 U.S.C. §1132(a)(3)

181.   Plaintiffs restate and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

182.   In addition to, and as an alternative to, the causes of action stated in herein, Plaintiffs seek further relief pursuant to 29 U.S.C. §1132(a)(3).

183.   Under 29 U.S.C. §1132(a)(3), a participant may enjoin any act, which violates ERISA, or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

184.   Defendants are fiduciaries to the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

185.   Defendants have exclusive discretion and control over the Plan's assets and are strictly obligated to exercise that control "for the exclusive purposes of

providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

186.   By accepting possession and control over Plan participants' assets, Defendants necessarily have also accepted the obligation to explain and account for every transaction, expenditure, application, and distribution of such assets.

187.   Although *only* Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

188.   Accordingly, Defendants occupy the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

189.   As set forth in detail above, Defendants have caused and/or allowed the Plan to pay – directly and via hidden sources of revenue such as float – excess fees and expenses to MassMutual.

190.   Litigating and resolving these issues will involve identifying and reconciling multiple transfers, payments, and flows of Plan assets that occurred while such Plan assets were within Defendants' possession and control.

191.   Defendants, and not the Plaintiffs, are the entities that have and/or should have specific and detailed information regarding how Plan assets have been treated and disbursed in this regard.

192.    An accounting is a particularly appropriate equitable remedy in circumstances where, as here, the underlying action and accounts are so complicated that a normal action for a fixed sum may not be practical.

193.    In such an accounting, in light of their possession and control of Plan assets and information about how Plan assets have been applied and distributed, Defendants must bear the burden of proving all Plan transactions and their propriety.

194.    Accordingly, the Court should order that Defendants render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of the Plan and its assets.

195.    Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to MassMutual and/or third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

196.    Plaintiffs respectfully request that the Court charge/surcharge against the Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

197.    Plaintiffs respectfully request that the Court order Defendants to disgorge all profits they received, including profits received by subsidiaries and affiliated companies, in respect of the Plan and all amounts credited to Defendants

for administrative costs which Defendants were obligated to pay and which Defendants assured Plan participants Defendants did pay.

198.    Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above and to cause them to cease so that the Plan's participants and beneficiaries will receive the full benefit of their retirement savings in the future.

WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- find and adjudge that Defendants must disgorge all revenues received from, or in respect of, the Plan;

- award actual monetary losses to the Plan;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and cause the Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plan all amounts involved in transaction which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- award to the Plaintiffs and the Class their attorneys fees and costs pursuant to 29 U.S.C. §1132(g);

- order costs and attorneys' fees pursuant to 29 U.S.C. §1132(g) and the common fund doctrine and/or under ERISA's fee shifting provision;

- order equitable restitution or other available equitable relief against the Defendants;

- order the payment of interest to the extent it is allowed by law; and

- grant any other and further relief the Court deems appropriate.

PLAINTIFFS DEMAND TRIAL BY JURY

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON, LLP

By:      /s/ Jerome J. Schlichter
         Jerome J. Schlichter (*pro hac vice pending*)
         Michael Wolff, (*pro hac vice pending*)
         Troy A. Doles, (*pro hac vice pending*)
         Heather Lea, (*pro hac vice pending*)
         Mark Boyko, (*pro hac vice pending*)
         100 S. Fourth St., Suite 900
         St. Louis, Missouri 63102
         Tel: (314) 621-6115
         Fax: (314) 621-7151
         jschlichter@uselaws.com
         mwolff@uselaws.com
         tdoles@uselaws.com
         hlea@uselaws.com
         mboyko@uselaws.com


         *Counsel for Plaintiffs*

         FAIR WORK, P.C.

By:      /s/ Stephen Churchill
         Stephen Churchill, BBO#564158
         Hillary Schwab, BBO#666029
         192 South Street, Suite 450
         Boston, MA 02111
         Tel: (617) 607-3260
         Fax: (617) 488-2261
         steve@fairworklaw.com

         *Local Counsel for Plaintiffs*