# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dennis Gordan, John Hine, Donna Flieger, Patricia Hurley, Ronald Lindner, Janice Reynolds, and Sharon Jewell, individually and as Representatives of a class of similarly situated persons, and on behalf of the MassMutual Thrift Plan, | |
| Plaintiffs; | |
| v. | Civil Action No. 3:13-cv-30184-MAP |
| Massachusetts Mutual Life Insurance Co, Roger Crandall, Stuart H. Reese; Robert O'Connell; Investment Fiduciary Committee; Plan Administrative Committee; Isadore Jermyn; Michael Fanning; Mary Wilson Kibbe; Debra Palermino; Michael Rollings; Elaine Sarsynski; Richard Goldstein; Christine Fini; and John Does 1-20, | **ORAL ARGUMENT REQUESTED** **LEAVE TO FILE EXCESS PAGES GRANTED ON JANUARY 8, 2014** |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

James O. Fleckner (BBO# 641494)
Alison V. Douglass (BBO# 646861)
Ai Tajima (BBO# 669182)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000


Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

I. The MassMutual Thrift Plan ............................................................................... 2

II. Plaintiffs' Allegations ........................................................................................ 6

ARGUMENT ................................................................................................................... 8

I. The Complaint Should Be Dismissed Because Plaintiffs' Claims Are Time-Barred......... 8

 A. All of Plaintiffs' Claims Are Barred by ERISA's Six-Year Statute of Repose....... 8

 B. Plaintiffs' Claims Are Also Barred by ERISA's Three-Year Statute of Limitations. ................................................................................................... 11

 C. Plaintiffs Fail to Adequately Plead Fraud or Concealment to Revive Stale Claims. ................................................................................................... 12

II. Plaintiffs Fail to State Claims for Breach of Fiduciary Duty under ERISA § 404........... 14

 A. The Complaint Omits the Language in the Plan Document that Completely Rebuts Plaintiffs' Claim that Defendants Did Not Administer the Plan in Accordance with the Governing Plan Documents. ................................... 15

 B. Plaintiffs Fail to State Claims for Disloyalty Because Defendants Followed the Plan and Applicable Congressional and Regulatory Guidance. ........................... 16

 C. Plaintiffs Fail to State Claims for Imprudence. .................................................... 20

  1. Plaintiffs Fail to State Breach of Fiduciary Duty Claims with Respect to the GIA............................................................................................ 20

  2. Plaintiffs Fail Ito State Breach of Fiduciary Duty Claims with Respect to the Plan's SIA Investment Options. ......................................................... 23

   a. Courts have routinely disposed of claims attacking the same plan attributes challenged here. ........................................................... 23

   b. The remaining prudence allegations are too conclusory to state a claim. ................................................................................................ 26

III. Plaintiffs Fail to State Prohibited Transaction Claims Under ERISA § 406. .................. 28

IV. Plaintiffs Fail to State Claims Against a Number of the Specific Defendants. ............... 29

 A. Plaintiffs Fail to State Any Claim as to Roger Crandall, Stuart H. Reese and/or Robert O'Connell. ........................................................................................... 31

  1. Plaintiffs State No Fiduciary Breach by the CEO Defendants. ................... 31

  2. Mr. O'Connell Is Not Subject to Any Claims Because He Left MassMutual More than Six Years Ago. ....................................................... 32

 B. Plaintiffs Fail to State Any Claim as to Elaine Sarsynski........................................ 33

C.      Plaintiffs Fail to State Any Claim as to MassMutual. .......................................... 34

CONCLUSION ........................................................................................................................... 35

## TABLE OF AUTHORITIES

CASES                                                                                   PAGE(S)

*Alves v. Harvard Pilgrim Healthcare Inc.*,
    204 F. Supp. 2d 198 (D. Mass. 2002) ....................................................................18

*Alves v. Harvard Pilgrim Healthcare Inc.*,
    316 F.3d 290 (1st Cir. 2003) .................................................................................18

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006) ..................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................14, 17

*Beddall v. State Street Bank and Trust Co.*,
    137 F.3d 12 (1st Cir. 1998) ...............................................................................2, 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................14, 16, 30, 32

*Cataldo v. U.S. Steel Corp.*,
    676 F.3d 542 (6th Cir. 2012) ................................................................................13

*In re Citigroup ERISA Litig.*,
    662 F.3d 128 (2d Cir. 2010) ..................................................................................35

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.*,
    74 F.3d 20 (1st Cir. 1996) ....................................................................................30

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) .........................................................8, 9, 10, 11, 19

*DiFelice v. U.S. Airways, Inc.*,
    397 F. Supp. 2d 758 (E.D. Va. 2005) .............................................................23, 34

*Dupree v. The Prudential Ins. Co. of Am.*,
    No. 99-8837-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ....................19, 20

*In re Dynegy, Inc. ERISA Litig.*,
    309 F. Supp. 2d 861 (S.D. Tex. 2004) .................................................................32

*Edes v. Verizon Comm's, Inc.*,
    417 F.3d 133 (1st Cir. 2005) ...............................................................................9, 11

*Epstein v. C.R. Bard*,
   460 F.3d 183 (1st Cir. 2006) ...................................................................13

*Faber v. Metro. Life Ins. Co.*,
   648 F.3d 98 (2d Cir. 2011) ......................................................................22

*Flacche v. Sun Life Assurance Co. of Can.*,
   958 F.2d 730 (6th Cir. 1992) ...................................................................34

*Fuller v. Suntrust Banks, Inc.*,
   1:11-CV-798-ODE, 2012 WL 1432306 (N.D. Ga. Mar. 20, 2012) ........................................11

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2011) ...............................................23, 24, 26, 33

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   134 S.Ct. 604 (2013) ...............................................................................17

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ................................................................................34

*Hull v. Policy Mgmt. Sys. Corp.*,
   No. CIV.A.3:00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) ................................31, 34

*J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*,
   76 F.3d 1245 (1st Cir. 1996) ...................................................................13

*John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*,
   510 U.S. 86 (1993) ..................................................................................22

*Kalish v. Franklin Advisers, Inc.*,
   742 F. Supp. 1222 (S.D.N.Y. 1990) ........................................................25

*Leber v. Citigroup, Inc.*,
   No. 07 Civ 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ........................27, 29

*In re Lernout & Hauspie Sec. Litig.*,
   286 B.R. 33 (D. Mass. 2002) .....................................................................2

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ..........................................................................34, 35

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ...........................................................4, 24, 25

*Mack Boring & Parts v. Meeker Sharkey Moffitt*,
   930 F.2d 267 (3d Cir. 1991) ....................................................................23

*In re McKesson HBOC, Inc. ERISA Litig.*,
    No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) .........................31, 32

*Mehling v. N.Y. Life Ins. Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ....................................................................................29

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)...............................................................................................................30

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)...............................................................................................................30

*Pension Benefit. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)...................................................................................................26

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005)....................................................................................31

*In re Prudential Ins. Co.of Am.SGLI/VGLI Contract Litig.*,
    No. 3:11-md-02208-MAP (D. Mass. Nov. 22, 2013)...................................................21, 22, 23

*Rederford v. U.S. Airways, Inc.*,
    589 F.3d 30 (1st Cir. 2009).....................................................................................................14

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)..............................................................................23, 24, 25, 26, 33

*Reso Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*,
    No. 11-CV-873-JPS, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011).....................................24

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)..............................................................................15, 16, 27, 32

*Schulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) ................................................................................................34

*Sepúlveda-Villarini v. Dept. of Educ. of P.R.*,
    628 F.3d 25 (1st Cir. 2010).....................................................................................................28

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996).............................................................................................2, 16

*Stargel v. SunTrust Banks, Inc.*,
    -- F. Supp. 2d --, 2013 WL 4775918 (N.D. Ga. Aug. 7, 2013).........................................10, 19

*In re Stillwater Capital Partners Inc. Litig.*,
    858 F. Supp. 2d 277 (S.D.N.Y. 2012)......................................................................................2

*Terry v. Bayer Corp.*,
   145 F.3d 28 (1st Cir. 1998)..................................................................30

*Tibble v. Edison Int'l*,
   639 F. Supp. 2d 1074 (C.D. Cal. 2009) ...............................................16

*Tibble v. Edison Int'l*,
   No. CV 07-5359 SVW (AGRx), 2010 WL 2757153 (C.D. Cal. July 8, 2010) .....................16

*Tibble v. Edison Int'l*,
   729 F.3d 1110 (9th Cir. 2013) ...........................................9, 10, 17, 25

*Town of Norwood v. New England Power Co.*,
   23 F. Supp. 2d 109 (D. Mass. 1998) ......................................................2

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
   524 F.3d 315 (1st Cir. 2008)................................................................8

*Turner v. Davis Select Advisers LP*,
   No. 4:08-cv-00421-AWT (D. Ariz. June 1, 2011)..................................25

*Tussey v. ABB, Inc.*,
   2:06-CV-04305-NKL, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012)................26

*Watson v. Consol. Edison of N.Y.*,
   594 F. Supp. 2d 399 (S.D.N.Y. 2009)..................................................13

*Watson v. Deaconess Waltham Hosp.*,
   298 F.3d 102 (1st Cir. 2002)...............................................................33

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993)....................................................................2

*White v. Marshall and Ilsley Corp.*,
   714 F.3d 980 (7th Cir. 2013) ..............................................................18

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   550 F. Supp. 2d 416 (S.D.N.Y. 2008)..................................................11

## STATUTES AND RULES

29 U.S.C. § 1002(18)(B) (ERISA § 3(18)(B))........................................28

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) .......................................30

29 U.S.C. § 1022(a) (ERISA § 102(a))..................................................12

29 U.S.C. § 1101(b)(1) (ERISA § 401(b)(1)).........................................16

29 U.S.C. § 1101(b)(2) (ERISA § 401(b)(2))......................................................................22

29 U.S.C. § 1101(b)(2)(B) (ERISA § 401(b)(2)(B)) .........................................................22

29 U.S.C. § 1104(a)(1)(A) (ERISA § 404(a)(1)(A)) .......................................................6, 7

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B))........................................................6, 7

29 U.S.C. § 1104(a)(1)(D) (ERISA § 404(a)(1)(D)) ..............................................7, 15, 18

29 U.S.C. § 1106(a) (ERISA § 406(a))...............................................................................7

29 U.S.C. § 1106(b) (ERISA § 406(b)) ..............................................................................7

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5))....................................................................28

29 U.S.C. § 1108(b)(8) (ERISA § 408(b)(8))...............................................................18, 28

29 U.S.C. § 1109(b) (ERISA § 409(b)) .............................................................................33

29 U.S.C. § 1113 (ERISA § 413)......................................................................................13

29 U.S.C. § 1113(1) (ERISA § 413(1)) ...............................................................................8

29 U.S.C. § 1113(2) (ERISA § 413(2)) .......................................................................11, 12

Fed. R. Civ. P. 8 ...............................................................................................................14

Fed. R. Civ. P. 9(b) ...............................................................................................12, 13, 14

Fed. R. Civ. P. 12(b)(6)................................................................................2, 8, 10, 14, 16

OTHER AUTHORITIES

29 C.F.R. § 2550.404c-1(b)(3)(ii)....................................................................................21

29 C.F.R. § 2550.404c-1(e)(1)(iii)....................................................................................21

A.M. Best, Guide to Best's Financial Strength Ratings, *available at*
    http://www.ambest.com/ratings/guide.pdf. ..................................................................2

Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment
    Company Institute, 42 Fed. Reg. 18,734 (Apr. 8, 1977) (PTE 77-3) ...............................19, 29

Class Exemption To Permit Sales of Employee Benefit Funding Contracts By Insurance
    Companies That Are Substantially Affiliated with Employers Maintaining the Plans,
    44 Fed. Reg. 46,365 (Aug. 7, 1979) (PTE 79-41) ...........................................................19, 28

DOL Opinion Letter 77-46 to Mr. Federic S. Kramer, Nat'l Ass'n of Mut. Sav. Bank
(Jun. 7, 1977), *available at*
http://www.fdic.gov/regulations/examinations/trustmanual/appendix_e/e_ao.html ...............21

H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5038 .......18, 21, 23

Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724
(proposed Mar. 13, 1991) .....................................................................................................19

Press Release, MassMutual Completes Acquisition of The Hartford's Retirement Plans
Business (Jan. 2, 2013) (on file with author), *available at*
http://www.massmutual.com/aboutmassmutual/newscenter/pressreleases/articledispla
y?mmcom_articleid=71c3afa00e1fb310VgnVCM100000d47106aaRCRD ............................2

Investment Company Institute, Defined Contribution/401(k) Fee Study (2009),
*available at* http://www.ici.org/pdf/rpt_09_dc_401k_fee_study.pdf ......................................25

## **INTRODUCTION**

The 68-page, 198-paragraph complaint submitted by Plaintiffs in this case ("Compl.") can be boiled down to one simple assertion:  that one of the nation's oldest and most stable mutually-owned insurance companies, MassMutual, should not have made available its award-winning, affiliated investment products and services for its own employees' 401(k) plan. However, nothing in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), prohibits the long-standing and common industry practice that is challenged here. To the contrary, Congress and the primary ERISA regulator, the U.S. Department of Labor ("DOL"), have expressly recognized and authorized this practice.  Moreover, the governing plan document here required these precise investments.  Against that backdrop, the Complaint fails to raise any inference of impropriety.

But the Court need not address the substance of the many unwieldy allegations in the Complaint because its claims are all time-barred.  As part of the careful balance that was struck in the enactment of ERISA, Congress specifically insulated plan fiduciaries against being sued after the expiration of six years from a fiduciary action, and further precluded plan participants from suing more than three years after learning of the fiduciary decision they challenge.  The use of MassMutual's proprietary investment funds and administrative services for its employees' 401(k) plan unquestionably began more than six years ago, at which time it was also disclosed to participants and the public alike.

Because all of the claims here are stale, and also because the Complaint otherwise fails to state a claim upon which relief may be granted, it should be dismissed in its entirety. Additionally, a number of specific defendants should be dismissed for the further reason that they cannot be liable given their lack of fiduciary status with respect to the challenged conduct.

## BACKGROUND[1]

### I.     The MassMutual Thrift Plan

MassMutual is a 163 year old, broadly-diversified financial services company.[2]  The

company's financial strength is rated in the highest category, A++, by A.M. Best Company.[3]

Through its numerous operating divisions and affiliates, MassMutual offers a broad spectrum of

products, including investment and retirement products and services.[4]  As of December 31, 2012,

MassMutual and its affiliates had more than $500 billion in assets under management.[5]  Some of

the retirement products MassMutual markets and sells are designed for employer-sponsored

retirement plans.  Compl. ¶ 31.  At the beginning of 2013, MassMutual's Retirement Services

("MMRS") division managed approximately $120 billion of retirement plan assets, servicing

approximately three million participants in 40,000 retirement plans.[6]  In 2012, MassMutual was

---

[1] In ruling on Rule 12(b)(6) motions to dismiss, courts routinely consider ERISA plan documents—even if not expressly referenced in the complaint—as well as public filings containing pertinent information.  *See, e.g.*, *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998); *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 37 (D. Mass. 2002); *Town of Norwood v. New England Power Co.*, 23 F. Supp. 2d 109, 112 (D. Mass. 1998), *rev'd on other grounds*, 202 F.3d 408 (1st Cir. 2000).  The Court may also consider "documents the authenticity of which are not disputed by the parties" and documents integral to Plaintiffs' claims under the Plan, including, in this case, the Plan's summary plan description ("SPD") and certain fee disclosures required under applicable DOL regulations.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  *Cf. Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) ("main problem of looking to documents outside the complaint—lack of notice to plaintiffs—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint") (internal quotations and citations omitted); *In re Stillwater Capital Partners Inc. Litig.*, 858 F. Supp. 2d 277, 284 (S.D.N.Y. 2012) ("[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . legally required public disclosure documents").

[2] *See* MassMutual 2012 Annual and Corporate Responsibility Report ("2012 Annual Report") at MM-DG-00002, MM-DG-00006, attached as Exhibit 1 to the Declaration of Alison V. Douglass ("Douglass Decl."), *available at* http://www.massmutual.com/mmfg/pdf/mm_annual_report.pdf.

[3] *See id.* at MM-DG-00008.  A.M. Best is a rating agency offering independent opinions on companies in the insurance industry.  The A++ rating is the highest in the financial strength ratings and is "[a]ssigned to companies that have, in our opinion, a superior ability to meet their ongoing insurance obligations."  A.M. Best, Guide to Best's Financial Strength Ratings, *available at* http://www.ambest.com/ratings/guide.pdf.

[4] *See* 2012 Annual Report at MM-DG-00006, Douglass Decl. Ex. 1.

[5] *See id.* at MM-DG-00008.

[6] *See* Press Release, MassMutual Completes Acquisition of The Hartford's Retirement Plans Business (Jan. 2, 2013) (on file with author), *available at* http://www.massmutual.com/aboutmassmutual/newscenter/pressreleases/articledisplay?mmcom_articleid=71c3afa00e1fb310VgnVCM100000d47106aaRCRD.

awarded *"Retirement Leader of the Year"* for industry leadership and excellence in retirement plan services by Fund Industry Intelligence (Euromoney Institutional Investor).[7]

MassMutual provides all of its products and services through a workforce of over 5,000 employees.[8]  Among the benefits that MassMutual offers to its employees is a "defined contribution" 401(k) plan, the MassMutual Thrift Plan (the "Plan").  Compl. ¶¶ 27, 34.  The Plan has over $1 billion in assets and 14,000 participants.  Compl. ¶ 28.

The Plan is governed by a written plan instrument, the MassMutual Thrift Plan. MassMutual Thrift Plan, January 1, 2012 Restatement ("Plan Document") at MM-DG-00029, Douglass Decl. Ex. 2 (summarizing the history of the Plan's establishment, amendments, and restatements).  Each plan participant can elect how much, if any, of his or her salary to contribute to an account established for him or her under the Plan.[9]  MassMutual also contributes to participants' Plan accounts, matching 100% of the first 5% of eligible compensation that the participant contributes to the Plan.[10]  In 2012, MassMutual contributed approximately $32 million in matching contributions based upon $69 million contributed by participants. MassMutual Thrift Plan Form 5500 for Year 2012 (Jul. 16, 2013) ("2012 Form 5500") at MM-DG-00117, Schedule H, Douglass Decl. Ex. 3.  Each participant chooses how to invest the amounts contributed to her Plan account among the investment options made available under the Plan.[11]

The Plan Document requires that the investment options available to participants will be

---

[7] *See* 2012 Annual Report at MM-DG-00009, Douglass Decl. Ex. 1.

[8] *See id.* at MM-DG-00018.

[9] *See* Plan Document at MM-DG-00041, § 3.01, Douglass Decl. Ex. 2.

[10] *See id.* at MM-DG-00045-00046, § 3.02(a)(2); MassMutual Thrift Plan Summary Plan Description for Employees, Effective January 1, 2013 ("2013 SPD") at MM-DG-00134, Douglass Decl. Ex. 4.

[11] *See* Compl. ¶ 66; 2013 SPD at MM-DG-00136, Douglass Decl. Ex. 4.

provided through a MassMutual Group Annuity Contract ("GAC").[12]   The Plan vests the

Investment Fiduciary Committee ("IFC") with responsibility for selecting the Plan's investment

options from those available through the GAC.   Compl. ¶ 9; Plan Document at MM-DG-00059,

§ 4.01(b)(1), Douglass Decl. Ex. 2.   The Plan currently offers 38 investment options, including a

guaranteed interest account ("GIA") and 37 separate investment accounts ("SIAs").   *See* Compl.

¶¶ 66-67.   Each of thirty-five of these SIAs is designed and required to invest exclusively in a

specific, no-load mutual fund that is registered with and overseen by the U.S. Securities and

Exchange Commission ("SEC"); two of the SIAs are accounts specially managed for the Plan.

Compl. ¶ 79.[13]

The Plan's investment options offer participants a broad range of choice on the

risk/return spectrum.[14]   The GIA offers a guaranteed rate of return backed by MassMutual's

superior financial strength.[15]   The GIA rate is set prospectively on a semi-annual basis and

communicated to participants in advance of any rate change.[16]   In 2013, the GIA paid a

guaranteed rate of return of 3.30%.[17]   The GAC sets a contractually-guaranteed minimum

---

[12] *See* Plan Document at MM-DG-00059, § 4.01(a), Douglass Decl. Ex. 2 ("The Company shall be a contractholder of one or more Group Annuity Contracts with Massachusetts Mutual Life Insurance Company for the investment of contributions under the Plan."); *id.* at MM-DG-00059, § 4.02 (requiring the investment of Plan assets in MassMutual SIAs and the GIA); MassMutual Thrift Plan Group Annuity Contract No. SF 001550, (December 12, 2011) (the "GAC") at MM-DG-00189, § G1.01, MM-DG-00191, § S1.01, Douglass Decl. Ex. 5.

[13] *See also* MassMutual Thrift Plan Participant Fees Disclosure Statement (Jun. 28, 2013) ("Participant Disclosures") at MM-DG-00198-00205, Douglass Decl. Ex. 6 (listing Plan options).   A no-load fund is one that does "not charge investors a fee to buy or sell shares.   Purchases and sales occur at net asset value, calculated daily.   A no-load fund covers its expenses by deducting them from the assets under management.   So if these assets appreciate 10% in a given year, and the expenses come to 1%, investors receive a net gain of 9%; if the assets decline 5% in the market, investors' net return is -6% that year."   *Loomis v. Exelon Corp.*, 658 F.3d 667, 669 (7th Cir. 2011).

[14] *See* 2013 SPD at MM-DG-00136, Douglass Decl. Ex. 4; Participant Disclosures at MM-DG-00197-00205, Douglass Decl. Ex. 6.

[15] *See* GAC at MM-DG-00189, § G1.01, Douglass Decl. Ex. 5; *see also supra* n.3 and accompanying text.

[16] *See* Participant Disclosures at MM-DG-00197, Douglass Decl. Ex. 6; *see also* Compl. ¶ 86 ("MassMutual agrees to pay a set 6-month interest rate. . .").

[17] *See* Participant Disclosures at MM-DG-00197, Douglass Decl. Ex. 6.

interest rate of 3.00% for the GIA.[18]

Through the SIAs, participants can invest in a broad array of index funds and actively-managed funds, as well as a suite of target date funds (the RetireSMART funds) that are specifically designed to aid participants in preparing for their anticipated retirement dates.[19] Each SIA allows exposure to a different asset class, including stocks, bonds, real estate, and commodities through a specific domestic and international fund.[20] Unlike the GIA, investors in the SIAs are not guaranteed a rate of return and instead bear the investment risk and potential reward of those investments (net of fees).[21] Sixteen of the Plan's SIAs are advised or sub-advised by one or more investment advisers that are not affiliated with MassMutual.[22] These unaffiliated investment advisers include some of the premier investment management firms in the world, such as Wellington Management, Northern Trust, TRowe Price, JPMorgan Chase, and PIMCO, among others.[23]

The Plan's wide range of SIA investment options offers a correspondingly wide range of expenses—expressed as a percentage of assets invested in each fund (commonly called an "expense ratio," and is an amount paid by the fund itself in the case of a mutual fund)—ranging from 0.08% for a fund designed to track the performance of the S&P 500 Index (the MassMutual Select S&P 500 Index Fund) to 1.13% for a sophisticated, actively-managed fund whose

---

[18] See GAC at MM-DG-00185, § 8.13, MM-DG-00189, § G1.01, Douglass Decl. Ex. 5.

[19] See, e.g., Compl. ¶¶ 4, 79; MassMutual Select Funds Prospectus, RetireSMART Funds (April 1, 2013) ("RetireSMART Prospectus") at MM-DG-00219, Douglass Decl. Ex. 7 (prospectus excerpt for MassMutual RetireSMART 2010 Fund).

[20] See Compl. ¶ 79; Participant Disclosures at MM-DG-00198-00205, Douglass Decl. Ex. 6; see also, e.g., MassMutual Select Funds Prospectus (Apr. 1, 2013) ("2013 Select Prospectus") at MM-DG-00225-00227, Douglass Decl. Ex. 8 (prospectus excerpt for MassMutual Select S&P 500 Index Fund).

[21] See Participant Disclosures at MM-DG-00198-00205, Douglass Decl. Ex. 6.

[22] See id.; see also, e.g., 2013 Select Prospectus at MM-DG-00227, Douglass Decl. Ex. 8 (prospectus excerpt for MassMutual Select S&P 500 Index Fund, sub-advised by Northern Trust Investments, Inc.).

[23] See Participant Disclosures at MM-DG-00198-00205, Douglass Decl. Ex. 6.

objective is to beat the benchmark for a particular market segment (the Oppenheimer Real Estate Fund). Compl. ¶ 79. The expenses associated with each of the 37 SIA investment options available under the Plan are fully disclosed to participants and, in the case of the 35 SIAs that invest in a single mutual fund, are also publicly available.[24]

## II.      Plaintiffs' Allegations

Plaintiffs are seven current or former Plan participants who purport to bring their claims on behalf of "the Plan, themselves and all similarly-situated Plan participants and beneficiaries." Compl. ¶ 106.

Notwithstanding the Plan's diverse offering of investment options, Plaintiffs broadly challenge the Plan as the product of self-interest and self-dealing by MassMutual and the individual Defendants. *See, e.g.*, Compl. ¶ 3. They allege that MassMutual, members of both the IFC and the Plan Administrative Committee ("PAC"),[25] the current and former Chief Executive Officers ("CEOs") of MassMutual, and the current head of MMRS breached ERISA fiduciary duties by seeking to enrich MassMutual and themselves at the expense of Plaintiffs and other Plan participants. *E.g.*, Compl. ¶¶ 1, 3.

Specifically, Counts I and II of the Complaint allege that Defendants breached their fiduciary duties of prudence and loyalty under ERISA §§ 404(a)(1)(A) and (B)[26] through the

---

[24] *E.g.*, Participant Disclosures at MM-DG-00198-00205, Douglass Decl. Ex. 6 (showing expense ratios for Plan investment options); 2013 Select Prospectus at MM-DG-00225, Douglass Decl. Ex. 8 (prospectus excerpt for MassMutual Select S&P 500 Index Fund showing fund expenses). Although the GAC authorizes an additional charge of up to 2.00% for each SIA, that charge was never assessed—nor could Plaintiffs allege otherwise, notwithstanding their allegations relating to the potential for such a charge. *See, e.g.*, Compl. ¶¶ 56-57.

[25] The PAC is responsible for Plan administration. Compl. ¶ 44(B).

[26] ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), state, in relevant part:

> (1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> > (A) for the exclusive purpose of:
> > > (i) providing benefits to participants and their beneficiaries; and
> > > (ii) defraying reasonable expenses of administering the plan;

6

"imposition of unreasonable recordkeeping and administrative fees" and the "selection of unreasonably-priced and imprudent investment options."  Compl. ¶¶ 109-31.  Counts III and IV allege that by entering into contracts with MassMutual, Defendants engaged in prohibited transactions under ERISA §§ 406(a) and 406(b).[27]  Compl. ¶¶ 132-63.  Count V alleges that Defendants violated ERISA § 404(a)(1)(D)[28] by allowing Plan expenses to be paid out of participant accounts.  Compl. ¶¶ 164-72.  Count VI alleges that the CEO Defendants "fail[ed] to monitor fiduciaries."  Compl. ¶¶ 173-80.  Count VII seeks "other remedies" for breach of fiduciary duty, including an accounting of all transactions, disbursements and dispositions in connection with the Plan and its assets; surcharge against Defendants; disgorgement of profits, including profits received by subsidiaries and affiliates; and further injunctive and other equitable relief.  Compl. ¶¶ 181-98.

---

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

[27] ERISA §§ 406(a) and (b), 29 U.S.C. §§ 1106(a) and (b), state, in relevant part:

(a) Transactions between plan and party in interest
Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
. . .
(C) furnishing of goods, services, or facilities between the plan and a party in interest;
(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan;
. . . .
(b) Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not—
(1) deal with the assets of the plan in his own interest or for his own account,
(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

[28] ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires a fiduciary to discharge her duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]."

## ARGUMENT

Plaintiffs' Complaint should be dismissed in its entirety because (i) all of Plaintiffs' claims are time-barred; (ii) Plaintiffs fail to state any valid claim for breach of fiduciary duties under ERISA § 404; (iii) Plaintiffs fail to state any valid claim for prohibited transactions under ERISA § 406; and (iv) Plaintiffs fail to state any valid claim against certain Defendants.

## I.   The Complaint Should Be Dismissed Because Plaintiffs' Claims Are Time-Barred.

The Complaint should be dismissed as untimely under both ERISA's six-year statute of repose and its three-year statute of limitations.[29]  Plaintiffs also fail to qualify for the exception to timeliness because they fail to adequately plead fraud or concealment.

### A.   All of Plaintiffs' Claims Are Barred by ERISA's Six-Year Statute of Repose.

ERISA § 413(1) provides a statute of repose that bars commencement of actions more than "six years after the last action which constituted a part of the breach or violation."  29 U.S.C. § 1113(1)(A).  Because the Complaint challenges decisions that Plaintiffs have alleged date back more than six years, Plaintiffs' claims are time-barred.

Two courts of appeal recently have held that claims such as these, which challenge plan investment structures established more than six years prior to suit, are barred by ERISA's six-year statute of repose.  In *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), the Fourth Circuit addressed a case in which the plaintiffs challenged, just as Plaintiffs do here, a plan's use of products and services offered by the financial services company that sponsored the plan.  The court affirmed dismissal of the plaintiffs' prohibited transaction claims because "[t]he only action that can support an alleged prohibited transaction is the initial selection of the affiliated

---

[29] "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings."  *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (internal quotations omitted).

funds," which, in that case, occurred more than six years before suit was filed. *Id.* at 341. The court similarly held that breach of ERISA fiduciary duty claims were untimely because the decision to include so-called proprietary funds was made more than six years before the complaint was filed. *Id.* at 342.

According to the Fourth Circuit, it made no difference that the proprietary funds remained as investment options during the repose period, and that participants continued to invest in them during those six years. *Id.* The claim was rooted in "attributes of the funds that existed at the time of the initial selection—[such as] their alleged poor performance and high fees relative to alternative available fund options," and was "simply another challenge to the initial selection of the funds." *Id.* at 341. Because the decision to use proprietary funds for the plan was made more than six years before the plaintiffs filed suit, the claims were time-barred. *Id.* at 342.

Similarly, in *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), *petition for cert. filed*, No. 13-550, 82 U.S.L.W. 3284 (U.S. Oct. 30, 2013), the Ninth Circuit, sitting *en banc*, held that the plaintiffs could not maintain breach of fiduciary duty claims relating to decisions to include mutual funds in a plan lineup because those decisions were made more than six years before the plaintiffs filed suit. *Id.* at 1120. In so holding, *Tibble* explained that a contrary ruling would "expose present Plan fiduciaries to liability for decisions made by their predecessors . . . which may have been made decades before and as to which institutional memory may no longer exist" and would undermine the value of repose. *Id.* As the Ninth Circuit observed, there is no reason to "expose present Plan fiduciaries to liability for decisions made by their predecessors" many years ago. *Id.*[30]

---

[30] The First Circuit has followed the same approach as *David* and *Tibble* in similar contexts. *See, e.g.*, *Edes v. Verizon Comm's, Inc.*, 417 F.3d 133, 139 (1st Cir. 2005) (ERISA claim accrued as of the initial decision, *i.e.*, when

The logic of the Fourth and Ninth circuits in *David* and *Tibble* has been applied to dismiss claims identical to those brought here at the pleadings stage. For example, in *Stargel v. SunTrust Banks, Inc.*, -- F. Supp. 2d --, 2013 WL 4775918 (N.D. Ga. Aug. 7, 2013), the "gravamen" of the plaintiffs' claim was that the defendants breached their fiduciary duties by selecting for a plan, and then failing to remove or replace, certain proprietary funds that allegedly performed poorly and charged high fees. *Id.* at *6. The *Stargel* plaintiffs attributed the high fees to the fact that the funds' advisers were affiliates of the plan sponsor. *Id.* The court granted the defendants' Rule 12(b)(6) motion to dismiss the breach of fiduciary duty claim as time-barred because it was clear from the pleadings that the decision to use proprietary funds was made more than six years prior to suit. *Id.* at *8-11. The court noted in particular that the complaint did not support a "new, independent breach . . . different from the original time-barred breach." *Id.* at *8. It also dismissed the prohibited transaction claim as untimely because the "last action taken" for purposes of the claim was "the original investment in the named funds and the initial offerings of those funds to plan participants." *Id.* at *14.

Here, it is clear from the Plan Document that Plaintiffs' claims concerning the selection of affiliated products and services are time-barred for the same reasons as in *David*, *Tibble* and *Stargel*: the decision to use MassMutual products and services was made more than six years ago. *See* MassMutual Thrift Plan, May 1, 2004 Restatement ("2004 Plan Document") at MM-DG-00288, § 4.01(a), Douglass Decl. Ex. 9 (requiring investment of Plan assets in a GAC issued by MassMutual); *id.* at MM-DG-00265, § 1.27 (defining the "Funds" to be available to the Plan as those offered under the GAC); *id.* at MM-DG-00288, § 4.02 (requiring the investment of Plan assets in MassMutual SIAs and the GIA); *id.* at MM-DG-00322, § 10.03 (requiring the use of

---

employees were hired and classified as to be paid through third-party payroll, not each time they received a third-party payroll check as a result of the allegedly wrongful classification).

MMRS for administrative services).  Plaintiffs apparently concede as much in the Complaint, by alleging a "long campaign of self-interested transactions."  Compl. ¶ 101(D).[31]  Accordingly, as in *Stargel*, *David*, and *Tibble*, all of Plaintiffs' claims are time-barred.[32]

**B.      Plaintiffs' Claims Are Also Barred by ERISA's Three-Year Statute of Limitations.**

Plaintiffs' claims also fail under ERISA's three-year statute of limitations because, as Plan participants and members of the general public, Plaintiffs have been well-aware of the challenged plan design for more than three years.

ERISA § 413(2) precludes claims that are filed more than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  In determining "actual knowledge," courts have "focused on whether documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether the individual plaintiffs actually saw or read the documents."  *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 Fed. App'x 31 (2d Cir. 2009).  The First Circuit has opined that it does "not think Congress intended the actual knowledge requirement [of the ERISA statute of limitations] to excuse willful blindness by a plaintiff."  *Edes*, 417 F.3d at 142.  "An ERISA plaintiff may not [] avoid the statute of limitations by refusing to read or examine information disclosing relevant facts."  *Fuller v. Suntrust Banks, Inc.*, No. 1:11-CV-798-ODE, 2012 WL 1432306, at *5 n.6 (N.D. Ga. Mar. 20, 2012) (internal quotations omitted).

---

[31] Similarly, the Plan provision that flatly rebuts Plaintiffs' claim in Count V that Defendants did not operate the Plan in accordance with the written document, as explained *infra* Section II.A, has been in the Plan for more than six years.  *See* 2004 Plan Document at MM-DG-00325-00326, § 10.11(a)-(b), Douglass Decl. Ex. 9.

[32] Plaintiffs' allegations that attempt an end run around ERISA's statute of repose also fail because they are not adequately pleaded.  For example, Plaintiffs assert that the Plan's contracts have been "amend[ed]" or "reissued" within the repose period.  Compl. ¶¶ 135, 139.  However, they do not, nor could they, point to any material change during that time that could plausibly be considered to give rise to a "new" breach.

Not only has the Plan Document specifically required the use of MassMutual products and services for many years,[33] but the use of these products and services has always been disclosed to Plan participants in the SPD, a document required by ERISA to be provided to participants.  *See* MassMutual Thrift Plan Summary Plan Description (June 2008) ("2008 SPD") at MM-DG-00375, MM-DG-00377-00379, Appendix A, Douglass Decl. Ex. 10 (identifying MMRS as administrator and identifying the affiliated investment options and their portfolio managers); ERISA § 102(a), 29 U.S.C. § 1022(a).[34]  Plaintiffs do not plead that any of the funds that have been offered to the Plan, or the fees assessed to the Plan, have changed materially during the last three years.

Accordingly, Plaintiffs' claims regarding the long-disclosed plan design and fees also fail under ERISA's three-year limitations period.

## C. Plaintiffs Fail to Adequately Plead Fraud or Concealment to Revive Stale Claims.

Plaintiffs' attempt to revive stale claims by alleging that "Defendants have actively misled and/or have affirmatively concealed material information" concerning the Plan's fees and investments also fails because such allegations are not adequately pleaded.

ERISA § 413(2) bars untimely claims "except . . . in the case of fraud or concealment." 29 U.S.C. § 1113(2).  To avail themselves of this exception in the First Circuit, Plaintiffs must meet Fed. R. Civ. P. 9(b) pleading requirements and "plead with particularity the facts giving

---

[33] *See supra* n.12.

[34] The challenged investments and the use of the MMRS GAC also have been disclosed in MassMutual's public filings, including the Plan's Form 5500, filed annually with the DOL.  *See, e.g.*, MassMutual Thrift Plan Form 5500 For Year 2006 ("2006 Form 5500") at MM-DG-00384, Schedule C, Douglass Decl. Ex. 11 (identifying MassMutual as recordkeeper); *id.* at MM-DG-00387-00391, Schedule D (identifying MassMutual as sponsor of investment options).  Similarly, the fees related to the challenged mutual funds held in the SIAs have also been publicly disclosed in SEC filings for well over three years.  *E.g.*, MassMutual Select Funds Prospectus (Apr. 1, 2010) ("2010 Select Prospectus") at MM-DG-00397, Douglass Decl. Ex. 12 (prospectus excerpt for MassMutual Select S&P 500 Index Fund, f/k/a MassMutual Select Indexed Equity Fund, showing fund expenses).

rise to the fraudulent concealment claim." *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996).[35] *See generally Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551-52 (6th Cir. 2012) (dismissing as untimely ERISA claims that lacked specific allegations of fraud or concealment); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 411 (S.D.N.Y. 2009) (same). It is well-settled that allegations subject to Rule 9(b) are insufficient unless the plaintiff specifies "the time, place, and content of an alleged false or fraudulent representation." *Epstein v. C.R. Bard*, 460 F.3d 183, 189-90 (1st Cir. 2006) (affirming dismissal of complaint).

For example, in *Cataldo*, the Sixth Circuit affirmed dismissal of ERISA breach of fiduciary duty claims as time-barred because plaintiffs only vaguely referenced "defendants" in their fraud allegations, and failed to identify the time, place, or maker of statements that Plaintiffs alleged concealed the existence of their claims as required by Rule 9(b). 676 F.3d at 551-52. Similarly, in *Watson*, the court dismissed breach of ERISA fiduciary duty claims because the complaint lacked sufficient allegations to toll the limitations period where plaintiffs failed to identify specific misleading statements, who made the misstatements, when plaintiffs learned of the alleged fraud, or facts creating an inference of fraudulent intent. 594 F. Supp. 2d at 411.

Like those cases, the Complaint here does not adequately plead *any* specific factual basis supporting an inference of fraud or concealment. The "Fraud and Concealment" section of the Complaint merely catalogues generic categories of allegedly hidden information and makes a bare assertion that "Defendants have actively misled and/or have affirmatively concealed" such information. Compl. ¶ 101. The Complaint does not specify when or where any

---

[35] According to the First Circuit, ERISA § 413 "incorporates the fraudulent concealment doctrine," so the pleading standard for that doctrine applies equally to allegations of "fraud or concealment under" ERISA's limitations provision. *J. Geils*, 76 F.3d at 1252-53.

misrepresentation or omission was made, fails to specify the content of any false or fraudulent representations, and relies entirely on unspecified conduct by "Defendants" collectively, without identifying any person or entity that allegedly concealed any information. Accordingly, Plaintiffs have not adequately pleaded fraud or concealment under Rule 9(b), and thus they cannot salvage their time-barred claims on that basis.[36]

## II.   Plaintiffs Fail to State Claims for Breach of Fiduciary Duty under ERISA § 404.

In addition to being untimely, Plaintiffs' breach of fiduciary duty claims should be dismissed because they fail to state a claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009) (same). To state a claim sufficient to survive dismissal, a plaintiff must provide "direct or inferential allegations respecting all the material elements" of her claims. *See Twombly*, 550 U.S. at 562. Even complaints pleading all the necessary elements should be dismissed if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of' . . . [demonstrating] 'entitlement to relief,'" particularly where there is an "obvious alternative explanation" for the challenged conduct. *Id.* at 678, 682.

Under Rule 12(b)(6), a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Allegations should not be credited if they are conclusory or contradicted by documents relied upon in the complaint. *Id.* (conclusory

---

[36] Indeed, Plaintiffs' fraud or concealment allegations fail even to meet notice pleading standards under Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of further factual enhancement" are insufficient) (internal quotations omitted). For that matter, the fact that total investment fees are fully disclosed is inconsistent with any attempt to conceal any alleged breach.

statements); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012)

(documents contradicting complaint).

> **A.     The Complaint Omits the Language in the Plan Document that Completely Rebuts Plaintiffs' Claim that Defendants Did Not Administer the Plan in Accordance with the Governing Plan Documents.**

The Complaint contains a number of claims based on statutory requirements divorced

from the terms of plan documents.  One count of the Complaint, however, squarely challenges

whether Defendants followed the Plan Document.  In Count V, the Complaint alleges that

Defendants violated the Plan Document by allowing participant accounts to pay Plan expenses.

Compl. ¶¶ 164-72.  This claim should be dismissed because the pleaded facts are all in

conformity with the terms of the Plan Document; the Complaint, instead, misconstrues the

import of those terms, in part by omitting the critical Plan language that authorizes the payment

of Plan expenses indirectly out of participant accounts.

All parties agree that ERISA § 404(a)(1)(D) requires plan fiduciaries to administer the

Plan in accordance with the Plan Documents.  The core conduct challenged in the Complaint—

use of MMRS services through the GAC and use of the GAC's investment options for the Plan—

was, in fact, mandated by the Plan Document.  Nonetheless, the Complaint alleges that

Defendants violated ERISA § 404(a)(1)(D) because, according to the Complaint, the Plan

Document states that "all expenses of establishing and administering the plan, including

expenses with respect to the group annuity contract and fixed income account agreement, shall

be borne by the employer as a further contribution to the plan."  Compl. ¶ 166 (quoting a portion

of Plan Document § 10.11(a) (Payment of Expenses)).  But the Complaint selectively quotes that

subsection of the document, and omits that the cited language is preceded by the express

modification, "[e]xcept as provided below."  The very next provision of the Plan Document

contains the language that unambiguously allows—indeed, requires—that the Plan pay expenses

from participant accounts, as is common in the industry:  "To the extent that expenses are not paid by the Employer, *they shall be deducted from Participant Accounts*."  Plan Document at MM-DG-00095, § 10.11(b), Douglass Decl. Ex. 2 (emphasis added).

Accordingly, Plaintiffs' claim of non-compliance with the Plan Document has no basis when the Plan section they identify is read in its entirety, as it must be.  *See Shaw*, 82 F.3d at 1220 (allowing consideration of full document because "otherwise, a plaintiff could maintain a claim . . . by excising an isolated statement from a document and importing it into the complaint").[37]  Because the Plan Document expressly authorizes the conduct that Plaintiffs challenge—the payment of Plan expenses out of participant accounts rather than directly from MassMutual—Count V fails.[38]

B.     **Plaintiffs Fail to State Claims for Disloyalty Because Defendants Followed the Plan and Applicable Congressional and Regulatory Guidance.**

Likewise, because other allegations in the Complaint confirm that the Plan was administered according to the requirements set forth in the Plan Document—and in a manner that was expressly contemplated and authorized by Congress and the DOL—Plaintiffs fail to plead valid claims for breach of the fiduciary duty of loyalty in Counts I and II.

To determine whether a claim is "plausible" under *Twombly*, a court considers the allegations in the context of the applicable substantive law.  The duty of loyalty under ERISA § 404(a)(1)(A) focuses on the fiduciary's motivation: "a breach of th[e] duty [of loyalty] requires

---

[37] *See also Schatz*, 669 F.3d at 55-6 n.3 (in reviewing Rule 12(b)(6) dismissal, court may "consider implications from documents attached to or fairly incorporated into the complaint . . . [k]nowing that the documents may trump the complaint's allegations if a conflict exists").

[38] Count V is also subject to dismissal on technical grounds.  Specifically, the fees challenged in the Complaint largely consist of the expense ratios of the mutual funds available to the Plan through the GAC.  Mutual fund expenses, however, are paid out of mutual fund assets.  *See, e.g.*, *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1082-83 (C.D. Cal. 2009).  ERISA makes clear that such assets are not plan assets.  *See* 29 U.S.C. § 1101(b)(1), ERISA § 401(b)(1) (mutual fund assets are not plan assets).

some showing that the fiduciaries' decisions were *motivated by* a *desire to serve the interests of [the company] over those of the beneficiaries*." *Tibble v. Edison Int'l*, CV 07-5359 SVW (AGRx), 2010 WL 2757153, at *24 n.19 (C.D. Cal. July 8, 2010) (emphasis added), *aff'd*, 711 F.3d 1061, 1068-69 (9th Cir. 2013), *aff'd en banc*, 729 F.3d 1110 (9th Cir. 2013).  Thus, to survive dismissal, a claim for disloyalty under ERISA must allege facts plausibly suggesting an improper motive or intent, rather than an "obvious alternative explanation" for the challenged conduct.  *Iqbal*, 556 U.S. at 682.

The facts alleged here do not give rise to any plausible inference of improper motivation. Instead, there is an obvious alternative explanation for the use of MassMutual products and services:  the Plan *required* it.[39]  Here, the Plan expressly provides that "persons employed by [MMRS] shall be responsible for and shall perform all administrative duties contemplated by the Plan . . . ."  Plan Document at MM-DG-00092, § 10.03, Douglass Decl. Ex. 2.  The Plan also expressly requires that Plan assets be invested in contracts issued by MassMutual, and that the "Funds" to be offered to Plan participants would be the "investment options available under [the GAC]."  *Id.* at MM-DG-00035, § 1.32, MM-DG-00059, § 4.01(a).  The Plan further provides that Plan assets shall be invested in MassMutual SIAs and the GIA.  *Id.* at MM-DG-00059, § 4.02.

---

[39] As the Supreme Court explained just last month, administering an ERISA plan in accordance with the governing plan document is at the very heart of a fiduciary's obligations under ERISA—that obligation is the "linchpin" of ERISA's statutory structure:

> The plan, in short, is at the center of ERISA.  Employers have large leeway to design [] plans as they see fit.  And once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to that written instrument.  This focus on the written terms of the plan is the linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place.

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S.Ct. 604, 612 (2013) (internal quotations and citations omitted).

Accordingly, the Complaint fails to state a disloyalty claim by alleging that Defendants selected MassMutual products and services for the Plan.  To the contrary, the obvious alternative explanation is that Plan fiduciaries followed the Plan mandate, as they must.  In this circuit, "there can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms."  *Alves v. Harvard Pilgrim Healthcare Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002), *aff'd*, 316 F.3d 290, 291 (1st Cir. 2003) ("agree[ing] with the district court's admirable discussion of the merits").  Indeed, had Defendants done what Plaintiffs seek in the face of these clear Plan mandates, they likely would have been sued for acting contrary to the Plan Document in violation of ERISA § 404(a)(1)(D).  As the Seventh Circuit recently reiterated, ERISA fiduciaries are not required to "sit[] on a razor's edge" where they are subject to suit no matter what action they take.  *Cf. White v. Marshall and Ilsley Corp.*, 714 F.3d 980, 987 (7th Cir. 2013) (internal quotations omitted).

The statutory exception to strict compliance with plan documents—when following the plain terms would not be "consistent with the provisions of [ERISA]," ERISA § 404(a)(1)(D)—does not apply here.  ERISA expressly authorizes an insurer like MassMutual to utilize its own products and funds for its own employee benefit plan.  As discussed more fully below in Section III, ERISA § 408(b)(5) expressly permits an insurance company to issue annuity and insurance contracts to a plan covering its own employees.  *See also* ERISA § 408(b)(8) (permitting a fiduciary to invest plan assets in an affiliated insurance company pooled separate account).  The stated congressional policy underlying these exemptions is that it would be "contrary to normal business practice" for an insurer like MassMutual to purchase the products of another insurance

or financial services company for its own in-house plan.[40]  The congressional exemption was designed to allow "banks, trust companies, and insurance companies" to continue their "common practice" of investing their plans' assets in their own pooled investment funds—precisely what Defendants have done here.[41]

The DOL has also long recognized that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."[42]  Consistent with this recognition, the DOL has determined in several contexts that a plan's investment in the sponsor's financial products is "in the interests of plans and of their participants and beneficiaries" and "protective of the rights of participants and beneficiaries of Plans."  Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734 (Apr. 8, 1977) ("PTE 77-3"); *see also* Class Exemption to Permit Sales of Employee Benefit Funding Contracts by Insurance Companies That Are Substantially Affiliated with Employers Maintaining the Plans, 44 Fed. Reg. 46,365 (Aug. 7, 1979) (extending "administrative relief previously provided for transactions involving 'in-house' plans of other types of financial institutions" to insurance companies) ("PTE 79-41").[43]

In sum, the Complaint fails to raise a sufficient inference of its core allegation, disloyalty, merely because Defendants implemented the Plan (i) in conformity with the terms of the

---

[40] *See* H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5094 ("ERISA Conf. Rep.") ("[I]t would be contrary to normal business practice to require the plan of an insurance company to purchase its insurance from another insurance company.").

[41] *Id.* at 5096.

[42] Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (proposed Mar. 13, 1991) (citing as an example Prohibited Transaction Exemption 77-3), discussed below at Section III, *infra*.

[43] MassMutual is not the only financial services company that offers its proprietary products to the employees participating in its own plan.  *See, e.g.*, *Dupree v. The Prudential Ins. Co. of Am.*, No. 99-8837 Civ.-JORDAN, 2007 WL 2263892, at *46 (S.D. Fla. Aug. 7, 2007) (judgment for insurer that utilized its own GAC and investment funds in its plan); *Stargel*, -- F. Supp. 2d --, 2013 WL 4775918, at *16 (dismissing claims against a financial services company that utilized its own funds for its employee plan); *David*, 704 F.3d at 342-43 (same).

governing Plan Document, (ii) utilizing a commonplace business practice, and (iii) in a manner that had been recognized and expressly authorized by Congress and the federal agency primarily responsible for ERISA regulation.  As explained by one court in another case where an insurer was sued for utilizing its own GAC and investment products in the plan covering its own employees, the fact that defendants "followed such a practice—the very result Congress [and the DOL] intended to approve by enacting the[se] exemptions—*does not give rise to an inference of disloyalty*."  *Dupree*, 2007 WL 2263892, at *45 (emphasis added).

### C.      Plaintiffs Fail to State Claims for Imprudence.

Plaintiffs' remaining allegations in Counts I and II, that the investment options offered to participants under the Plan breached the duty of prudence, also fail to state a claim.

### 1.      Plaintiffs Fail to State Breach of Fiduciary Duty Claims with Respect to the GIA.

Plaintiffs allege that the GIA exposed participants to imprudent and undiversified risk, and that Defendants benefited from GIA investments through the assessment of fees, the acquisition of $500 million in "working capital" for MassMutual's general account, and the retention of the "spread" between MassMutual's earnings on the general account and the rate paid on the GIA.  Compl. ¶¶ 82-94.  These allegations fail to state a claim as a matter of law.

*First*, Plaintiffs make no plausible allegation that the GIA exposed participants to undue risk.  No participant was required to invest in the GIA.  Participants who chose to invest in the GIA received a guaranteed rate of return.  *See* Participant Disclosures at MM-DG-00197, Douglass Decl. Ex. 6 (3.30% rate in 2013); GAC at MM-DG-00189, § G1.01, Douglass Decl. Ex. 5 (setting 3.00% minimum).  This guaranteed return is backed by the financial strength of MassMutual—a 163 year old company that is rated in the highest category, A++, by A.M. Best

Company.[44]  Plaintiffs do not and cannot plead that MassMutual has ever failed to meet its

obligations under the GIA.  The mere allegation that the risk profile of the GIA is different than

synthetic Guaranteed Investment Contracts (Compl. ¶¶ 90, 94(B))—which would not be at all

surprising given that the products are very different—does not render imprudent or disloyal the

decision by Plan fiduciaries to follow the Plan and allow Plan participants to elect to invest in the

GIA.[45]

    *Second*, Plaintiffs' allegation that the GIA's supposed risk and recordkeeping charges

"exceed[] the market rate for comparable products" (Compl ¶ 88) fails to state a claim.  Plaintiffs

fail to take into account the rate of return that the GIA pays is net of all expenses.[46]  Nor do they

even attempt to identify any "comparable products" backed by a 163 year old company, rated

A++ by A.M. Best, and paying an annual return in excess of 3.30% in today's low-interest rate

environment.

    *Third*, Plaintiffs' allegation that Defendants breached fiduciary duties by crediting to the

Plan the contractual interest rate on the GIA, but not crediting the Plan with any additional

earnings MassMutual earned in its general account (Compl. ¶ 89), also fails to state a claim

---

[44] *See supra* n.3.

[45] Plaintiffs' assertion that inclusion of the GIA in the Plan is imprudent because it exposed the Plan to "undiversified risk" (Compl. ¶ 84) is also meritless.  The GIA is an investment in MassMutual's general account and the Complaint admits that the general account is a diversified "pool of assets . . . comprised of various investments including commercial mortgages, publicly-issued bonds, asset-backed securities, and privately-issued debt securities."  Compl. ¶ 83.  Congress and the DOL routinely consider the underlying investments (*i.e.*, assets held in the general account) in evaluating whether diversification has been satisfied.  *See, e.g.*, ERISA Conf. Rep. at 305 ("generally a plan may be invested wholly in insurance or annuity contracts without violating the diversification rules, since generally an insurance company's assets are to be invested in a diversified manner"); DOL Opinion Letter 77-46 to Mr. Federic S. Kramer, Nat'l Ass'n of Mut. Sav. Bank (Jun. 7, 1977), *available at* http://www.fdic.gov/regulations/examinations/trustmanual/appendix_e/e_ao.html (same); 29 C.F.R. §§ 2550.404c-1(b)(3)(ii), (e)(1)(iii) ("a fixed rate investment contract of an insurance company" is a "look-through investment vehicle" for diversification purposes and the underlying investments of such vehicles are considered for diversification purposes).

[46] The GAC provides that the GIA fixed rate of return shall never fall below 3.00%, after expenses.  GAC at MM-DG-00189, § G1.01, Douglass Decl. Ex. 5.  In fact, participants who chose to invest in the GIA have, at times, received more than the guaranteed minimum 3.00% rate of return, but they can never receive less.  *See* Participant Disclosures at MM-DG-00197, Douglass Decl. Ex. 6 (GIA rate paid for 2013 was 3.30%).

under any legal theory developed "in the history of American jurisprudence"—as this Court

recently observed in a related context. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract*

*Litig.*, No. 3:11-md-02208-MAP, slip op. at 2 (D. Mass. Nov. 22, 2013).

Plaintiffs are not entitled to recover earnings on MassMutual's general account because

assets in an insurer's general account are not ERISA plan assets. ERISA specifically exempts

from its definition of "plan assets" the general account of an insurer that issues a "guaranteed

benefit policy" to a plan. ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2).[47] A "guaranteed benefit

policy" is defined as an "insurance policy or contract to the extent that such policy or contract

provides for benefits the amount of which is guaranteed by the insurer." ERISA § 401(b)(2)(B),

29 U.S.C. § 1101(b)(2)(B). In other words, a guaranteed benefit policy itself is an asset of the

plan, but the assets held by an insurer in its general account are not. *See Faber v. Metro. Life*

*Ins. Co.*, 648 F.3d 98, 102-07 (2d Cir. 2011) ("the funds in [insurer]'s general account are *not*

plan assets") (emphasis in original). The exclusion applies where the insurer, not the plan or its

participants, bears the investment risk. *See John Hancock Mut. Life Ins. Co. v. Harris Trust and*

*Sav. Bank*, 510 U.S. 86, 106 (1993).

Here, the GIA provides a guaranteed benefit as described in the GAC, with all the

prospective investment risk (upside and downside) borne by MassMutual, not the Plan

participants.[48] MassMutual is required to return the principal and the promised interest

regardless of the expenses MassMutual incurs in investing the assets that support the GIA and

regardless of the actual return on those assets within the general account. The interest rate is set

---

[47] ERISA § 401(b)(2) provides: "In the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not, solely by reason of the issuance of such policy, be deemed to include any assets of such insurer."

[48] *See* GAC at MM-DG-00189, § G1.01, Douglass Decl. Ex. 5.

prospectively on a semi-annual basis, and investors are guaranteed a minimum of 3% return.[49]

Plaintiffs can plead no cognizable legal injury based on receiving this fixed amount. As this

Court recently held, there is "[n]o case law . . . in the history of American jurisprudence"

entitling recipients of an insurance product paying a fixed rate to the investment returns on an

insurer's general account. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 3:11-

md-02208-MAP, slip op. at 1-2 (D. Mass. Nov. 22, 2013).[50]

       Accordingly, Plaintiffs' claims concerning the GIA should be dismissed.

### 2. Plaintiffs Fail to State Breach of Fiduciary Duty Claims with Respect to the Plan's SIA Investment Options.

       Plaintiffs' remaining allegations in Counts I and II, relating to the prudence of selecting

SIA investments, likewise fail to state a claim. Those allegations either raise claims that have

already been disposed of by other courts, or are otherwise insufficiently pleaded here.

#### a. Courts have routinely disposed of claims attacking the same plan attributes challenged here.

       In evaluating the selection of plan investments, courts are mindful that ERISA does not

prescribe any particular plan structure. "Nothing in [ERISA] requires plan fiduciaries to include

any particular mix of investment vehicles in their plan." *Hecker v. Deere & Co.*, 556 F.3d 575,

586 (7th Cir. 2011), *supplemented by* 569 F.3d 708 (7th Cir. 2009).[51] Courts routinely dismiss

claims under ERISA challenging plan fees where the plan investment lineups closely resemble

---

[49] *See id.*; *see also* Compl. ¶ 86.

[50] *See also Mack Boring & Parts v. Meeker Sharkey Moffitt*, 930 F.2d 267, 270-76 (3d Cir.1991) (affirming dismissal of action against insurer on the ground that insurer was not an ERISA fiduciary because the assets it maintained in a guaranteed benefit policy as general assets were not plan assets); ERISA Conf. Rep. at 296, Joint Explanatory Statement of the Conference Committee ("An insurance company . . . is not considered to hold plan assets if a plan purchases an insurance policy from it, to the extent that the policy provides payments guaranteed by the company.").

[51] *See generally DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 773 (E.D. Va. 2005) ("fiduciaries are entitled to substantial latitude[,] and their judgments must not be assessed using 20/20 hindsight"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) ("The fiduciary standard is flexible" and draws context from "the character and aims of the particular type of plan.") (internal quotations omitted).

the range of SIAs challenged here.

The expense ratios (fees) for the SIAs available under the Plan range from eight to 113 basis points (0.08% to 1.13% of fund assets). This range is almost identical to the one at issue in *Renfro*, 671 F.3d at 319. In *Renfro*, the Third Circuit affirmed dismissal of a complaint similarly alleging that the defendants "breached [their] fiduciary duties [of prudence and loyalty] in composing the mix and range of investment options." *Id.* at 326. The plan at issue in *Renfro* was larger than MassMutual's Plan by roughly 25%, and it offered predominantly mutual funds with slightly higher expense ratios than the SIAs, ranging in that case from 10 to 121 basis points. *See id.* at 319. Similarly, in *Hecker*, 556 F.3d at 583-86, the Seventh Circuit affirmed dismissal of claims that the defendants breached fiduciary duties by offering only mutual funds with expense ratios ranging from seven to 100 basis points. The court held that "no rational trier of fact could find, on the basis of the facts alleged in th[e] Complaint, that [defendants] failed to satisfy [the duty to furnish an acceptable array of investment vehicles]." *Id.* at 586.[52]

Plaintiffs' allegation that the investment options available in the Plan were more expensive than "comparable" Vanguard mutual funds (Compl. ¶ 79) also does not state a claim. As the Seventh Circuit has observed, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. Courts have specifically rejected analogous claims of fiduciary breach as to funds with higher expenses than Vanguard mutual funds. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345-46 (2d Cir. 2006) (upholding dismissal of

---

[52] *See also Loomis*, 658 F.3d at 673-74 (a plan that "offer[s] participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market" does not state a claim because such a plan "has left choice to the people who have the most interest in the outcome"). Plaintiffs' challenge to the advisory and sub-advisory components of the expense ratios of the funds held by the SIAs does not salvage their claim. *Cf.* Compl. ¶¶ 68, 75, 76. As the Seventh Circuit explained, in judging fiduciary conduct as to investment option selection, "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment." *Hecker*, 556 F.3d at 586.

Investment Company Act § 36(b) claims based on allegation that Vanguard offered a comparable

fund with cheaper fees); *Reso Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, No. 11-CV-

873-JPS, 2011 WL 5826034, at *8 (E.D. Wis. Nov. 18, 2011) (in same context, calling

comparisons to Vanguard "of little value").[53]

Plaintiffs' further allegations as to the types of funds used in the SIAs and the way that

expenses are assessed rehash additional theories that have been widely rejected by courts across

the country.  The allegation that Defendants breached ERISA fiduciary duties by not offering

alternatives to mutual funds (Compl. ¶¶ 81, 126(C)) is not only factually incorrect—because the

Plan offers non-mutual fund investments—but has also been squarely rejected by three Circuit

Courts of Appeals.  *See Loomis*, 658 F.3d at 675 (affirming dismissal of complaint alleging that

plan with $1 billion in assets should have offered separate accounts and commingled trusts

instead of mutual funds); *Tibble*, 729 F.3d at 1134-35 (rejecting argument that it is imprudent for

very large plans to offer mutual funds instead of commingled pools or separate accounts);

*Renfro*, 671 F.3d at 326-28 (affirming dismissal of complaint alleging that very large plan should

have insisted on better fee structure than that offered by mutual funds).  These courts have

recognized that mutual funds—the most widely utilized type of investment in 401(k) plans

today—offer unique benefits to plan investors, including strict regulatory oversight,

transparency, and ease of valuation.  *See Tibble*, 729 F.3d at 1134; *Loomis*, 658 F.3d at 671-72.[54]

Plaintiffs' allegation that the use of asset-based fees is imprudent (Compl. ¶ 59) also has

been rejected.  Appellate courts have consistently held that the fact that no-load mutual funds'

---

[53] *See also Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1231 (S.D.N.Y. 1990), *aff'd*, 920 F.2d 590 (2d Cir. 1991) ("there are . . . significant differences in structure, peculiar to the Vanguard family of funds, which lessen the value of the comparison"); *Turner v. Davis Select Advisers LP*, 4:08-cv-00421-AWT, slip op. at 14-15 (D. Ariz. June 1, 2011) (disregarding comparison to Vanguard funds because they "are known in the industry for having low fees").

[54] Investment Company Institute, Defined Contribution/401(k) Fee Study (2009) at 14, *available at* http://www.ici.org/pdf/rpt_09_dc_401k_fee_study.pdf.

fees are paid on an asset-basis does not give rise to an inference of imprudence given the wide-spread utilization of these products and the fact that other payment models might have their own flaws. *E.g., Loomis.*, 658 F.3d at 672-73 (rejecting allegations of imprudence of asset-based fees because "flat payments per participant may help some participants but hurt others, depending on the size of each participant's account"); *Renfro*, 671 F.3d at 326-28 (rejecting plaintiff's claim that asset-based fees are imprudent); *Hecker*, 556 F.3d at 585 (agreeing with lower court that asset-based fee arrangement with service provider "violates no statute or regulation").[55]

> **b.    The remaining prudence allegations are too conclusory to state a claim.**

Plaintiffs' remaining prudence allegations, concerning alleged underperformance of SIA options (Compl. ¶¶ 95-100), fail to state a claim because they are conclusory and contrary to the governing Plan Documents.

Plaintiffs assert that "not one fund in the Plan performed in the upper third of its style category for any consecutive five-year period" (Compl. ¶ 99) and that the Plan's Investment Policy Statement ("IPS") required removal of such funds from the Plan. But Plaintiffs' sweeping assertion is not supported by a single allegation about the performance history of any specific fund, its benchmark, or the magnitude of any purported underperformance. Moreover, Plaintiffs have once again contorted the import of a document upon which the Complaint relies. Contrary to their claim, the IPS does not require removal of funds that fail to outperform two-thirds of their peers. Instead, the IPS mandates an "in-depth review" of such funds by the Plan fiduciaries.[56] Plaintiffs fail to plead that such review did not occur. As the Second Circuit Court

---

[55] *See also Tussey v. ABB, Inc.*, No. 2:06-CV-04305-NKL, 2012 WL 1113291, at *9 (W.D. Mo. Mar. 31, 2012) (use of asset-based fees to fund plan expenses is both "common" and "acceptable" in investment industry).

[56] *See* Investment Policy Statement for the MassMutual DC Plans, as Amended and Restated Effective December 15, 2012, at MM-DG-00407-00408, Douglass Decl. Ex. 13.

of Appeals recently held, in affirming dismissal of ERISA claims alleging underperformance, the mere fact of underperformance does not plausibly imply that a plan fiduciary failed to adequately review an investment option.  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 722 (2d Cir. 2013) (12% decline in market value of portfolio, due to concentration in sub-prime securities, does not raise an inference that defendant failed to evaluate the fund).

The Complaint's further allegation that the Capital Appreciation Fund and the Large Cap Value Fund "have a history of significant underperformance for years, underperforming their respective benchmarks and prudent investment options available to the Plan by over $10 million each in the past six years alone" (Compl. ¶ 96) also is too conclusory to support a claim even as to those two funds.  *See, e.g.*, *Schatz*, 669 F.3d at 55-58 (conclusory and speculative allegations fail to state a claim).  Plaintiffs do not plead these two funds' respective benchmarks, or how or for what periods of time during the last six years either fund underperformed its benchmark.  Nor do Plaintiffs link such alleged underperformance to any Plan participant's investment—let alone any of the named Plaintiffs' investments—or allege that any member of the putative class was harmed by such investment.  In *Leber v. Citigroup, Inc.*, the court dismissed virtually identical claims that alleged "millions of dollars" in plan underperformance, holding that "plaintiffs' allegation that the committee defendants breached duties of prudence and care by selecting affiliated mutual funds that 'substantially under-performed similar products available from unaffiliated investment managers' is supported by nothing beyond plaintiffs' bare assertion," and, thus, could not support a claim for breach of fiduciary duty.  No. 07 Civ. 9329 (SHS), 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010).  Plaintiffs' allegations as to the Capital Appreciation Fund and the Large Cap Value Fund likewise fail here.[57]

---

[57] Since the Capital Appreciation Fund and the Large Cap Value Fund have been available as investment options in the Plan for more than six years, any claims as to their selection is specifically time-barred.  *See* 2006 Form 5500 at

* * *

Because none of Plaintiffs' allegations give rise to *any* plausible inference of breach of the fiduciary duties of loyalty, prudence, and fidelity to plan documents, Counts I, II and V should all be dismissed. *See Sepúlveda-Villarini v. Dept. of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (the "combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief").

### III.    Plaintiffs Fail to State Prohibited Transaction Claims Under ERISA § 406.

Similarly, Plaintiffs' allegations of prohibited transactions under ERISA § 406 fail to state a claim because ERISA expressly exempts from the prohibitions of § 406 the conduct challenged here, and Plaintiffs fail to plead that the relevant exemptions do not apply.

The retention of MMRS as a service provider to the Plan through the Plan's purchase of the GAC is expressly exempted from the prohibitions of §§ 406(a) and (b) by ERISA § 408(b)(5), which allows plans sponsored by insurance companies to buy the sponsor's insurance products, provided the plan pays no more than "adequate consideration."[58] ERISA § 3(18)(B) defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). The Complaint does not plausibly plead that the Plan paid more than fair market value for the GAC, nor could it. Accordingly, the purchase of the GAC is specifically exempt from any prohibited transaction.

MM-DG-00387-00388, Schedule D, Douglass Decl. Ex. 11. In the unlikely event that claims as to these two funds can proceed, that would not resurrect the remaining claims in the Complaint as to other investments, and the case should be correspondingly narrowed to focus only on those two funds.

[58] Specifically, ERISA § 408(b)(5) allows a fiduciary to obtain for a plan (1) "[a]ny contract for life insurance, health insurance, or annuities," (2) from an "insurer or insurers [that are] the employer maintaining the plan," (3) "which are qualified to do business in a State," (4) "if the plan pays no more than adequate consideration." 29 U.S.C. § 1108(b)(5). There is no allegation that MassMutual is not qualified to do business in the Commonwealth of Massachusetts. PTE 79-41 also allows the sale of annuity contracts by an insurance company to an affiliated plan so long as the plan pays no more than "adequate consideration." 44 Fed. Reg. at 46,369. ERISA § 408(b)(8) further exempts the purchase or sale of shares in a common or collective trust fund maintained by a party in interest, provided that the party receives only reasonable compensation, among other requirements. Because the Plan invests in pooled vehicles, the SIAs, this exemption is likewise available to the Plan. 29 U.S.C. § 1108(b)(8).

As to the SIAs that invest in mutual funds on a conduit (*i.e.*, one to one) basis, an additional regulatory pronouncement exempts the challenged conduct from ERISA's prohibited transaction rules.  PTE 77-3 permits "the acquisition and sale of shares of a . . . 'mutual fund' by an employee benefit plan which covers employees of the mutual fund or the mutual fund's investment adviser . . . ."[59]  PTE 77-3 includes four conditions, each of which is met under the allegations here.[60]  The Complaint does not allege that the Plan paid any advisory fees, redemption fees or sales commissions to MassMutual, nor does it allege that the Plan was treated less favorably than any other investor in the mutual funds.

Where, as here, the facts alleged are consistent with available exemptions, courts have dismissed ERISA prohibited transaction claims.  *See, e.g.*, *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) (dismissing claim because "[p]laintiffs do not allege that the fees paid by the Plans are not in compliance with the requirements of PTE 77-3, or that the Plans have had dealings with the . . . [f]unds on terms that are less favorable than are offered to other shareholders"); *Leber*, 2010 WL 935442, at *10 (dismissing claim because, "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which 'the restrictions of section [] 406 . . . shall not apply'").

For these reasons, Counts III and IV should be dismissed.

## IV.   Plaintiffs Fail to State Claims Against a Number of the Specific Defendants.

---

[59] PTE 77-3, 42 Fed. Reg. at 18,734.

[60] The four conditions are that "(a) The plan does not pay any investment management, investment advisory or similar fee to such investment adviser, principal underwriter or affiliated person . . . (b) The plan does not pay a redemption fee in connection with the sale by the plan to the investment company of such shares . . . (c) . . . the plan does not pay a sales commission . . . [and] (d) All other dealings between the plan and the investment company, the investment adviser or principal underwriter for the investment company, or any affiliated person of such investment adviser or principal underwriter, are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company."  *Id.* at 42 Fed. Reg. at 18,735.

A number of the Defendants also should be dismissed for the additional reason that the Complaint either fails to adequately allege that the defendant had ERISA fiduciary responsibility for the challenged conduct, or fails to sufficiently plead allegations supporting a claim of breach of any duty as to that defendant.

Claims for breach of fiduciary duty and prohibited transactions under ERISA §§ 404 and 406(b) may only be asserted against a party that is acting as a fiduciary as to the challenged conduct. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993) (affirming dismissal of claims under ERISA § 502(a)(3)). As the Supreme Court has stated: "In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "[F]iduciary status is not an all or nothing proposition." *Beddall*, 137 F.3d at 18. "[A] person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control." *Id.* (quoting 29 U.S.C. § 1002(21)(A)). The First Circuit has consistently held that fiduciary status under ERISA requires the possession of discretionary power. *See, e.g.*, *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998) (where administrator retained discretion, service provider was not a fiduciary); *Beddall*, 137 F.3d at 18 ("one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority"). Indeed, "discretion [is] a *sine qua non* of fiduciary duty" under ERISA. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (quotation omitted).

Courts routinely dismiss ERISA claims at the pleading stage where relevant fiduciary status is not properly pleaded. *See, e.g.*, *Pegram*, 530 U.S. at 231-34 (affirming dismissal);

*Beddall*, 137 F.3d at 20 (affirming dismissal).  This is consistent with the pleading standards that prohibit the mere assertion of "labels and conclusions."  *Twombly*, 550 U.S. at 555.

### A.      Plaintiffs Fail to State Any Claim as to Roger Crandall, Stuart H. Reese and/or Robert O'Connell.

Plaintiffs seek to hold current MassMutual CEO, Roger Crandall, and former MassMutual CEOs, Stuart H. Reese and Robert O'Connell (collectively, the "CEO Defendants"), liable for a purported failure to monitor Plan fiduciaries.  This claim fails as a matter of law.

### 1.      Plaintiffs State No Fiduciary Breach by the CEO Defendants.

Plaintiffs fail to plead any fiduciary status on the part of the CEO Defendants with respect to the challenged conduct.  Plaintiffs do not allege that the CEO Defendants had any discretionary fiduciary authority with respect to the selection of investment options for the Plan. Plaintiffs' only allegation with respect to the CEO Defendants is that they appoint fiduciaries to the Plan and allegedly set the terms of the GAC as counterparty to the Plan.  *See, e.g.*, Compl. ¶¶ 9-10.  Because the CEO Defendants are not alleged to have caused the Plan to enter the GAC, or are otherwise alleged to be responsible for selecting Plan investments, they cannot be liable for the activities challenged in Counts I-V of the Complaint.

Courts have repeatedly held that "ERISA does not attach liability for investment decisions to fiduciaries whose roles were limited to appointing, retaining and removing other fiduciaries."  *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473 (S.D.N.Y. 2005); *see also In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030RMW, 2002 WL 31431588, at *15-16 (N.D. Cal. Sept. 30, 2002) (board of directors whose responsibilities were limited to appointment and monitoring of plan fiduciaries are not liable for investment decisions); *Hull v. Policy Mgmt. Sys. Corp.*, No. CIV. A.3:00-778-17, 2001 WL 1836286, at *6 (D.S.C. Feb. 9, 2001) (company

executives with "only limited fiduciary duties" whose responsibilities did not extent to "investment decisions" for the plan were not liable for challenges to plan investments). Accordingly, the CEO Defendants cannot be held liable for purported losses incurred by the Plan as a result of the investment options offered under the Plan.

Indeed, Plaintiffs fail to state anything more than conclusory allegations that the CEO Defendants failed to monitor Plan fiduciaries.  This failure of pleading requires dismissal of Count VI.  Where a claim for breach of the duty to appoint plan fiduciaries contains no allegation that "any specific appointees were incompetent or otherwise subject to replacement for cause," or that the appointing defendants received "any notice of possible misadventure" by appointees, the claim should be dismissed.  *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 903-04 (S.D. Tex. 2004) (dismissing failure to monitor claim).  Plaintiffs here do not plead that committee members were incompetent; to the contrary, they make no specific allegations about any committee member at all.  Nor do they plead any notice of misadventure; to the contrary, the pleaded allegations of use of the MassMutual GAC, GIA, and other MassMutual investment products conforms precisely with the Plan Document's mandate.

As such, Plaintiffs' conclusory, non-specific allegations that the CEO Defendants failed to monitor Plan fiduciaries and failed to remove their appointees (Compl. ¶ 178) fail to state a claim.  *Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do"); *McKesson HBOC*, 2002 WL 31431588, at *15-16 (rejecting conclusory allegations that board of directors failed to monitor appointees).[61]

> **2.     Mr. O'Connell Is Not Subject to Any Claims Because He Left MassMutual More than Six Years Ago.**

---

[61] The allegations in Compl. ¶ 10 that the CEO Defendants took unilateral action to change the GAC terms, and to set fees and investment options, is unsupported by anything other than mere speculation and conclusion and cannot be credited on a motion to dismiss.  *See, e.g.*, *Schatz*, 669 F.3d at 55.

Defendant Robert O'Connell, a former MassMutual CEO, should be dismissed for yet another reason—he left the company in June 2005, more than eight years before suit was brought.  Compl. ¶¶ 40-41 (pleading that Mr. O'Connell was CEO prior to June 2005).  Under ERISA § 409(b), a person cannot be held liable for conduct occurring after he left his fiduciary role.  *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed . . . after he ceased to be a fiduciary.").  Because Mr. O'Connell had no responsibility whatsoever with respect to the Plan for more than six years before suit was brought—in a monitoring capacity or otherwise—he cannot be liable for any of the harm alleged in the Complaint.  *See Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 118 (1st Cir. 2002) (affirming dismissal of a claim against a defendant who ceased to be a plan fiduciary more than six years ago).

### B.      Plaintiffs Fail to State Any Claim as to Elaine Sarsynski.

Plaintiffs similarly cannot maintain their ERISA claims against Ms. Sarsynski.

Plaintiffs do not allege that Ms. Sarsynski was a named fiduciary of the Plan or that she had any discretionary authority with respect to the decision to utilize the challenged MassMutual products and services for the Plan.  Rather, the Complaint relies exclusively on the sole allegation that Ms. Sarsynski is "the head of the MassMutual department responsible for the Plan's recordkeeping and administrative services [MMRS]."  Compl. ¶ 47.

However, Plaintiffs themselves state that MMRS is merely the Plan's "recordkeeper" and "administrative service provider."  Compl. ¶ 153(C).  A plan's recordkeeper and administrative service provider is generally not a fiduciary at all, and particularly not with respect to the selection of plan investments or for the plan's services selected by other fiduciaries.  *See, e.g.*, *Hecker*, 556 F.3d at 583 (affirming dismissal of excessive fee claims against service provider

who did not control the plan fiduciary's "negotiation and approval" of its engagement).[62]  In the absence of any allegation that Ms. Sarsynski possessed discretionary authority with respect to the selection of investment products and services for the Plan or with respect to any fees paid by the Plan, Plaintiffs' fiduciary claims as to her fail as a matter of law, and she should be dismissed from the case.

### C.    Plaintiffs Fail to State Any Claim as to MassMutual.

Plaintiffs also fail to state a claim against MassMutual.

Plaintiffs plead no basis for MassMutual's fiduciary status apart from its role as plan sponsor.  The Supreme Court has repeatedly held that a employer sponsoring a plan and setting the terms of a plan document is not a fiduciary subject to suit for breach of ERISA fiduciary duty or the commission of a prohibited transaction solely on account of its plan sponsor status.  *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-891 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-46 (1999) (company cannot be subject to fiduciary liability simply by virtue of its role as plan sponsor).  Further, the doctrine of *respondeat superior* does not apply with respect to ERISA fiduciary duty claims.  *See DiFelice*, 397 F. Supp. 2d at 780.

Here, the Complaint affirmatively pleads that specific individuals—and not the company—have the relevant responsibilities to implement the Plan Document and make decisions for the Plan, including the duty to appoint and monitor all other Plan fiduciaries.  Compl. ¶ 42 (CEO appoints Plan fiduciaries).  Accordingly, because MassMutual is not alleged either to have made investment decisions for the Plan in a fiduciary capacity or to have appointed

---

[62] *See also Renfro*, 671 F.3d at 323 (affirming dismissal of claims against a service provider whose "limited role" as "delineated" in the service contract "does not encompass the activities alleged as a breach of fiduciary duty—the selection and maintenance of the mix and range of investment options included in the plan"); *Flacche v. Sun Life Assurance Co. of Can.*, 958 F.2d 730, 733-35 (6th Cir. 1992) (offering annuity contracts to fund a plan does not create a fiduciary relationship); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1130-32 (7th Cir. 1983) (insurer could not be held liable as an ERISA fiduciary for causing a plan to pay it allegedly "unreasonable compensation" where compensation was paid according to contracted rates).

those who were responsible for such decisions, it cannot be liable under ERISA for those investments.  *See Hull*, 2001 WL 1836286, at *6 (dismissing claims against plan sponsor who did not have the "authority to make investment decisions" because plaintiffs failed to plead "any fiduciary duty owed by [the company] to the Plan which would be implicated by the alleged wrongs").[63]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice in its entirety.

Dated:  January 14, 2014

Respectfully submitted,

DEFENDANTS.

By their attorneys,

/s/ James O. Fleckner
James O. Fleckner (BBO# 641494)
Alison V. Douglass (BBO# 646861)
Ai Tajima (BBO# 669182)
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
T: 617-570-1000
F: 617-523-1231
JFleckner@goodwinprocter.com
ADouglass@goodwinprocter.com
ATajima@goodwinprocter.com

---

[63] The final Count of the Complaint, Count VII, does not assert any separate breach of duty, but instead seeks additional remedies for the breaches alleged in Counts I-VI.  Since each of the predicate Counts fails for the reasons stated herein, Count VII should also be dismissed as to all Defendants.  *See, e.g.*, *In re Citigroup ERISA Litig.*, 662 F.3d 128, 145 (2d Cir. 2010) (dismissing derivative claims for complaint's failure to state underlying claims under ERISA).

## <u>CERTIFICATE OF SERVICE</u>

I, James O. Fleckner, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 14, 2013.

/s/ James O. Fleckner

70768058