UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENNIS GORDAN, et al.,

       Plaintiffs,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE CO., et al.,

       Defendants.

No. 13-CV-30184-MAP

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

SCHLICHTER, BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Michael A. Wolff (admitted *pro hac vice*)
Troy A. Doles (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Mark G. Boyko (admitted *pro hac vice*)
100 South Forth Street, Suite 900
St. Louis, MO, 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
mwolff@uselaws.com
tdoles@uselaws.com
hlea@uselaws.com
mboyko@uselaws.com

*Lead Counsel for Plaintiffs*

FAIR WORK, P.C.
Stephen Churchill, BBO#564158
Hillary Schwab, BBO#666029
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com

*Local Counsel for Plaintiffs*

**CONTENTS**

Authorities ................................................................................................................... ii

Argument ...................................................................................................................... 1

   I.  Standard of review ..................................................................................... 2

   II.  ERISA's fiduciary duties............................................................................ 3

   III. Plaintiffs' allegations of fiduciary breaches and prohibited transactions. ............... 7

   IV. ERISA's statute of limitations does not bar Plaintiffs' claims. ............................ 12

      A. The six-year limitation is inapplicable. ................................................ 13

      B. The three-year limitation is inapplicable. ............................................. 19

      C. Plaintiffs need not plead fraudulent concealment with particularity. .................. 21

   V.  Plaintiffs state valid claims for breach of fiduciary duties.................................... 22

      A. Defendants do not challenge Count I, regarding the excessive administrative fees................................................................................................ 22

      B. Defendants violated the Plan document (Count V) ............................................ 22

      C. "Following the Plan" is not an excuse for breaching ERISA's fiduciary duties. 23

      D. Defendants breached their duties. ....................................................... 25

         1. Fixed Interest Account (Count II) ................................................... 25

         2. Separate accounts (Count II) .......................................................... 28

   VI. Plaintiffs state prohibited transaction claims (Counts III and IV)......................... 31

   VII. The complaint plausibly alleges the liability of each Defendant. ........................ 32

Conclusion ................................................................................................................... 35

Request for Oral Argument ............................................................................................. 35

# AUTHORITIES

## Cases

*Amalgamated Clothing & Textile Workers Union v. Murdock,*
   861 F.2d 1406 (9th Cir. 1988) .................................................................................. 27

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................ 2, 24, 26, 29

*Beesley v. Int'l Paper Co.,*
   No. 06-703, 2007 U.S.Dist.LEXIS 62534 (S.D.Ill. Aug. 24, 2007) ....................... 30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 2

*Boeckman v. A.G. Edwards Inc.,*
   461 F. Supp.2d 801 (S.D.Ill. 2006) ...................................................................... 16

*Braden v. Wal-Mart, Inc.,*
   588 F.3d 585 (8th Cir. 2009) ............................................ 3, 4, 5, 23, 25, 27, 29, 30, 31, 33

*Brock v. Nellis,*
   809 F.2d 753 (11th Cir. 1987) .............................................................................. 20

*Brown v. Am. Life Holdings, Inc.,*
   190 F.3d 856 (8th Cir. 1999) .......................................................................... 20, 21

*Buccino v. Cont'l Assurance Co.,*
   578 F.Supp. 1518 (S.D.N.Y. 1983) ...................................................................... 16

*Bussian v. RJR Nabisco, Inc.,*
   223 F.3d 286 (5th Cir. 2000) .................................................................................. 5

*Caputo v. Pfizer, Inc.,*
   267 F.3d 181 (2d Cir. 2001) ................................................................................ 20

*Cataldo v. U.S. Steel Corp.,*
   676 F.3d 542 (6th Cir. 2012) ............................................................................... 21

*CIGNA Corp. v. Amara,*
   563 U.S. ___, 131 S. Ct. 1866 (2011) .................................................................. 13

*David v. Alphin,*
   704 F.3d 327 (4th Cir. 2013) .......................................................................... 17, 19

*David v. Alphin,*
   817 F.Supp.2d 764 (W.D.N.C. 2011) ................................................................... 17

*DiFelice v. U.S. Airways, Inc.,*
   497 F.3d 410 (4th Cir. 2007) ............................................................................ 5, 26

*Donovan v. Bierwirth,*
   680 F.2d 263 (2d Cir. 1982) .............................................................................. 4, 5

*Eaves v. Penn*,
   587 F.2d 453 (10th Cir. 1978)............................................................................. 24

*Edes v. Verizon Communs.*,
   417 F.3d 133 (1st Cir. 2005) ............................................................................... 20

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013) ......................................................................... 27, 28

*Fuller v. Suntrust Banks, Inc.*,
   ___F.3d ___, No. 12-16217, 2014 U.S.App.LEXIS 3610 (11th Cir. Feb. 26, 2014) .............. 19

*García-Catalán v. United States*,
   734 F.3d 100 (1st Cir. 2013) ..................................................................... 2, 17, 29

*George v. Kraft Foods Global, Inc.*,
   641 F.3d 786 (7th Cir. 2011)...................................................... 13, 19, 21, 22, 24, 30

*George v. Kraft Foods Global, Inc.*,
   814 F.Supp.2d 832 (N.D. Ill. 2011) ................................................................... 16

*Gipson v. Wells Fargo & Co.*,
   No. 08-4546, 2009 U.S.Dist.LEXIS 20740 (D.Minn. Mar. 13, 2009) .................................. 29

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
   931 F.Supp.2d 296 (D.Mass. 2013) ....................................................................... 4

*Gluck v. Unisys Corp.*,
   960 F.2d 1168 (3d Cir. 1992)............................................................................. 20

*Goldenberg v. Indel, Inc.*,
   741 F.Supp.2d 618 (D.N.J. 2010) ....................................................................... 32

*Grajales v. P.R. Ports Auth.*,
   682 F.3d 40 (1st Cir. 2012) ............................................................................... 2

*Hamilton v. Carell*,
   243 F.3d 992 (6th Cir. 2001).............................................................................. 35

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
   122 F.Supp.2d 444 (S.D.N.Y. 2000)....................................................................... 16

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000) ....................................................................................... 5

*Harris v. Koenig*,
   815 F.Supp.2d 26 (D.D.C. 2011) ........................................................................ 24

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009)........................................................................ 29, 30, 31

*Hoppe v. SmithKline Beecham Corp.*,
   437 F.Supp.2d 331 (E.D.Penn. 2006) ................................................................ 21, 22

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996)................................................................................ 5

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011).................................................................... 4, 13, 35

*In re Dynegy, Inc. ERISA Litig.*,
   309 F.Supp.2d 861 (S.D. Tex. 2004) ........................................................... 34

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
   286 F.R.D. 155 (D. Mass. 2012)................................................................... 27

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
   No. 11-2208-MAP, Doc. 205 (D. Mass. Nov. 22, 2013)................................. 11, 27

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996)........................................................ 20, 24, 25, 26, 27

*J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*,
   76 F.3d 1245 (1st Cir. 1996) .................................................................... 21

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
   510 U.S. 86 (1993)............................................................................... 3, 28

*Jones v. Bock*,
   549 U.S. 199 (2007)............................................................................ 12, 31

*Jones v. Harris Assocs. L.P.*,
   559 U.S. 335 (2010)................................................................................ 29

*Kanawi v. Bechtel Corp.*,
   No. 06-5566, 2007 U.S.Dist.LEXIS 97994 (N.D.Cal. May 15, 2007) ................... 30

*Krueger v. Ameriprise Fin., Inc.*,
   No. 11-2781, 2012 U.S.Dist.LEXIS 166191 (D.Minn. Nov. 20, 2012) ............ 24, 30

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995)..................................................................... 4, 5

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
   No. 11-5127, 2012 U.S.Dist.LEXIS 29718 (S.D.N.Y. Mar. 6, 2012) ................... 31

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007)...................................................................... 26

*Leber v. Citigroup, Inc.*,
    No. 07-9329, 2010 U.S.Dist.LEXIS 25097 (S.D.N.Y. Mar. 16, 2010) ............. 13, 31, 32

*Leber v. Citigroup, Inc.*,
   No. 07-9329, 2011 U.S.Dist.LEXIS 129444 (S.D.N.Y. Nov. 8, 2011) ................... 16

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984)....................................................... 5, 6, 27, 33, 34

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ........................................................................ 30, 31

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987) ....................................................................... 6, 32

*Maher v. Strachan Shipping Co.*,
   68 F.3d 951 (5th Cir. 1995) ................................................................................ 21

*Mahoney v. J.J. Weiser & Co.*,
   564 F.Supp.2d 248 (S.D.N.Y. 2008) ................................................................. 16

*Martin v. Caterpillar, Inc.*,
   No. 07-1009, 2008 WL 5082981 (C.D.Ill. Sep. 25, 2008) .................................. 30

*Martin v. Consultants & Adm'rs, Inc.*,
   966 F.2d 1078 (7th Cir. 1992) ................................................ 15, 16, 17, 18, 20, 21

*Mass. Mutual Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ............................................................................................. 6

*Mehling v. N.Y. Life Ins. Co.*,
   163 F.Supp.2d 502 (E.D.Pa. 2001) .................................................................... 32

*Menard v. CSX Transp., Inc.*,
   698 F.3d 40 (1st Cir. 2012) .................................................................................. 3

*Merrimon v. Unum Life Ins. Co. of Am.*,
   No. 10–447, 2013 U.S.Dist.LEXIS 129619 (D.Me. Sept. 9, 2013) ..................... 28

*Merrimon v. Unum Life Ins. Co. of Am.*,
   No. 10–447, 2013 U.S.Dist.LEXIS 129618 (D.Me. Sept. 11, 2013) .................... 28

*Meyer v. Berkshire Life Ins. Co.*,
   250 F.Supp.2d 544 (D.Md. 2003) ...................................................................... 16

*Mogel v. UNUM Life Ins. Co. of Am.*,
   547 F.3d 23 (1st Cir. 2008) ................................................................................ 35

*Morrissey v. Curran*,
   567 F.2d 546 (2d Cir. 1977) ........................................................... 15, 16, 17, 18

*Musto v. Am. Gen. Corp.*,
   615 F.Supp. 1483 (M.D.Tenn. 1985) ................................................................. 25

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Group, PLC*,
   709 F.3d 109 (2d Cir. 2013) ............................................................................... 24

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ............................................................................................. 4

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
   712 F.3d 705 (2d Cir. 2013) ............................................................................... 29

*Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*,
   698 F.2d 320 (7th Cir. 1983) ........................................................................ 28

*Phillips v. Alaska Hotel & Rest. Employees Pension Fund*,
   944 F.2d 509 (9th Cir. 1991) ........................................................................ 18

*Phillips v. Prudential Ins. Co. of Am.*,
   714 F.3d 1017 (7th Cir. 2013) ...................................................................... 11

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
   722 F.3d 861 (6th Cir. 2013) .......................................................................... 4

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
   919 F.2d 1216 (7th Cir. 1990) ...................................................................... 20

*Rankin v. Rots*,
   278 F.Supp.2d 853 (E.D.Mich. 2003) ........................................................... 33

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) .............................................................................. 6

*Reich v. Johnson*,
   891 F.Supp. 208 (D.N.J. 1995) ..................................................................... 16

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ..................................................................... 30, 31

*Rodi v. So. New England Sch. of Law*,
   389 F.3d 5 (1st Cir. 2004) ........................................................................ 12, 14

*Ruppert v. Principal Life Ins. Co.*,
   796 F.Supp.2d 959 (S.D.Iowa 2010) ........................................................ 30, 31

*Shirk v. Fifth Third Bancorp*,
   No. 05-49, 2008 U.S.Dist.LEXIS 108089  (S.D.Ohio Sep. 26, 2008) .............. 30, 32

*Tibble v. Edison Int'l*,
   729 F.3d 1110 (9th Cir. 2013) ............................................... 17, 18, 19, 21, 30

*Tibble v. Edison Int'l*,
   No. 07-5359, Doc. 26 (C.D.Cal. July 16, 2008) .............................................. 30

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2008 U.S.Dist.LEXIS 9806  (W.D.Mo. Feb. 11, 2008) .................. 30

*Watson v. Consol. Edison of N.Y.*,
   594 F.Supp.2d 399 (S.D.N.Y. 2009) ............................................................. 22

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) ............................................................................. 20

*Westoak Realty & Inv. Co. v. C.I.R.*,
   999 F.2d 308 (8th Cir. 1993) .......................................................................... 5

**Statutes**

29 U.S.C. §1001(a) ........................................................................................ 3

29 U.S.C. §1001(b) ........................................................................................ 3

29 U.S.C. §1002(14)(B) ................................................................................. 6

29 U.S.C. §1002(14)(C) ............................................................................. 6, 7

29 U.S.C. §1002(14)(G) ................................................................................. 6

29 U.S.C. §1002(16)(B) ................................................................................. 7

29 U.S.C. §1002(21)(A)(i) ........................................................................ 33, 35

29 U.S.C. §1002(21)(A)(iii) ......................................................................... 33

29 U.S.C. §1101(b)(2) ................................................................................. 28

29 U.S.C. §1102(a) ........................................................................................ 7

29 U.S.C. §1104(a)(1) .......................................... 1, 4, 12, 13, 22, 23, 24

29 U.S.C. §1104(a)(1)(A) .......................................................................... 1, 4

29 U.S.C. §1104(a)(1)(B) .......................................................................... 1, 4

29 U.S.C. §1104(a)(1)(D) ....................................... 4, 12, 13, 22, 23, 24

29 U.S.C. §1105(a)(2) ................................................................................. 33

29 U.S.C. §1106 ............................................................................................ 5

29 U.S.C. §1106(a) .............................................................................. 12, 31

29 U.S.C. §1106(a)(1)(C) .............................................................................. 6

29 U.S.C. §1106(a)(1)(C)–(D) ................................................................... 12

29 U.S.C. §1106(a)(1)(D) .............................................................................. 6

29 U.S.C. §1106(b) .......................................................................... 6, 12, 31

29 U.S.C. §1106(b)(3) ................................................................................. 32

29 U.S.C. §1108 ................................................................................ 25, 31, 32

29 U.S.C. §1108(b)(5) ............................................................................ 25, 32

29 U.S.C. §1109(a) ........................................................................... 6, 12, 27

29 U.S.C. §1113 ........................................................................................... 21

29 U.S.C. §1113(1) ............................................................................... 14, 15

29 U.S.C. §1113(1)(B) ................................................................................. 14

29 U.S.C. §1113(2) ..................................................................................... 20

29 U.S.C. §1132(a)(2) ............................................................................. 6, 12

**Rules**

Fed.R.Civ.P. 8(a)(2) ............................................................................................. 2

**Regulations**

29 C.F.R. §2509.75-8 ......................................................................................... 33

42 Fed.Reg. 18734 (Apr. 8, 1977) ..................................................................... 24

**Other**

Douglas G. Prince, *Testimony Before ERISA Advisory Council* (Sept. 16, 2009) ........................ 10

Eleanor Laise, *Stable Funds are Looking Shakier*, WALL ST. J. (May 1, 2010) ........................... 11

H.R. REP. No. 93-1280 (1974) ............................................................................ 6

Nat'l Ass'n of Govt. Defined Contribution Administrators, Inc., *What Plan Sponsors Should Know About Stable Value Funds* (2010) ...................................................... 10

Robert A. Rosenblatt, *Insurer's Failure Ensnares Thousands of Casualties*, L.A. TIMES (May 17, 1991) ................................................................................................ 11

Standard & Poor's, *What May Cause Insurance Companies To Fail—And How This Influences Our Criteria*, (June 13, 2013) ................................................................ 11

Virginia Kahn, *In Search of Stable Value, Part One*, BUSINESS FINANCE (Oct. 1, 1997) ............ 11

W. Scott Simon, *Fiduciary Questions in the MassMutual Case, Part Two*, MORNINGSTAR (Jan. 2, 2014) ................................................................................................. 26

W. Scott Simon, *The Fine Print on Stable Value Funds*, MORNINGSTAR (Oct. 4, 2012) ............. 11

## ARGUMENT

Massachusetts Mutual Life Insurance Co. (MassMutual), through its executives named as Defendants in this case, managed its employees' 401(k) plan to benefit itself at the expense of its employees. Plaintiffs do not contend Defendants breached their fiduciary duties merely by investing in MassMutual products or using MassMutual Retirement Services to provide recordkeeping to the Plan. While financial services companies can use their own products as plan investments and to provide plan services, they cannot do so to profit themselves at their employees' expense. Given the enticement such self-service provides to employers to enrich themselves at the expense of their employees' retirement savings, ERISA imposes strict duties upon fiduciaries tempted by that conflict. Fundamental among those duties is that a fiduciary "discharge his duties with respect to a plan *solely* in the interest of the participants and beneficiaries" and that he do so "for the *exclusive* purpose of providing benefits to participants and their beneficiaries and defraying *reasonable* expenses of administering the plan[.]" 29 U.S.C. §1104(a)(1)(A) (emphasis added). Fiduciaries also must carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B). The DOL has repeatedly stated that those fiduciary duties continue to apply even though the use of employer investments and services may be exempted from ERISA's prohibited transactions in certain cases, and has repeatedly emphasized that these conflicted transactions are exempted from the prohibited transaction rules *only* if the arrangements are reasonable for the employees.

Plaintiffs plausibly allege that Defendants did not meet those fundamental duties, but instead abused the allowance granted them to use MassMutual investments and services to charge participants unreasonable expenses and provide imprudent and disloyal investments to enrich

MassMutual. Only by mischaracterizing Plaintiffs' claims as challenging *merely* the investment

in MassMutual products and use of MassMutual recordkeeping services can Defendants argue

that Plaintiffs had actual knowledge of those claims more than three years ago, that those

claimed breaches occurred more than six years ago, or that those claims do not even plausibly

establish a breach. Because that is not what Plaintiffs allege, Defendants' motion to dismiss is

unfounded and should be denied.

## I.  Standard of review

A complaint need provide only "a short and plain statement of the claim showing that the

pleader is entitled to relief." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013)

(citing Fed.R.Civ.P. 8(a)(2)). A complaint meets that standard when it contains "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. The complaint need not contain "detailed factual allegations." *Id*. The court

"accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in

the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). The complaint

must be read as a whole, the plausibility standard should not be applied "mechanically", and the

Court must "draw on its judicial experience and common sense." *García-Catalán*, 734 F.3d at

103. When "[c]ommon sense suggests" the defendant is liable for the alleged misconduct, and

that "modest discovery may provide the missing link" that will allow the plaintiff to go to trial,

dismissal is improper. *García-Catalán*, 734 F.3d at 103, 105 (citation omitted).

"'[S]ome latitude may be appropriate'" in applying the plausibility standard when "a

material part of the information needed is likely to be within the defendant's control" and "it

cannot reasonably be expected" that the plaintiff would have access to certain factual details

without the benefit of discovery. *Id.* at 104 (quoting *Menard v. CSX Transp., Inc.*, 698 F.3d 40,

45 (1st Cir. 2012)). This principle applies to ERISA fiduciary breach cases such as this. Courts

> must be cognizant of the practical context of ERISA litigation. No matter how clever or
> diligent, ERISA plaintiffs generally lack the inside information necessary to make out their
> claims in detail unless and until discovery commences. Thus, while a plaintiff must offer
> sufficient factual allegations to show that he or she is not merely engaged in a fishing
> expedition or strike suit, we must also take account of their limited access to crucial
> information. If plaintiffs cannot state a claim without pleading facts which tend systemically
> to be in the sole possession of defendants, the remedial scheme of the statute will fail, and
> the crucial rights secured by ERISA will suffer.

*Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Granting latitude regarding the

specificity of pleadings is particularly important in ERISA fiduciary breach litigation because the

U.S. Secretary of Labor "depends in part on private litigation to ensure compliance" with ERISA

and thus opposes "unnecessarily high pleading standards" in ERISA cases. *Id.* at 597 n.8.

## II.  ERISA's fiduciary duties.

ERISA fiduciaries are entrusted with protecting "the continued well-being and security of

millions of employees and their dependents [which] are directly affected" by employee benefit

plans. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 n.5 (1993)

(quoting 29 U.S.C. §1001(a)). ERISA protects the "financial soundness" of retirement plans "by

establishing standards of conduct, responsibility, and obligation for fiduciaries of employee

benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the

Federal courts." 29 U.S.C. §1001(a), (b).

"ERISA imposes upon fiduciaries twin duties of loyalty and prudence, requiring them to act

'solely in the interest of [plan] participants and beneficiaries' and to carry out their duties 'with

the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

man acting in a like capacity and familiar with such matters would use in the conduct of an

3

enterprise of a like character and with like aims.'" *Braden*, 588 F.3d at 595 (quoting 29 U.S.C.

§1104(a)(1)(A) and (B)). Fiduciaries must also discharge their duties "in accordance with the

documents and instruments governing the plan insofar as such documents and instruments are

consistent with" other ERISA provisions. 29 U.S.C. §1104(a)(1)(D). ERISA's fiduciary

obligations are "the highest known to the law." *Braden*, 588 F.3d at 598 (quoting *Donovan v.*

*Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)); *Glass Dimensions, Inc. v. State St. Bank &*

*Trust Co*., 931 F.Supp.2d 296, 304 (D.Mass. 2013).

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

*Pegram v. Herdrich*, 530 U.S. 211, 224–25 (2000)(citation omitted). These duties "necessarily

require[] that an ERISA fiduciary not use plan assets for its own purposes." *Pipefitters Local 636*

*Ins. Fund v. Blue Cross & Blue Shield of Mich*., 722 F.3d 861, 869 (6th Cir. 2013).

"The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty

of loyalty ... to administer the trust solely in the interest of the beneficiaries", while "exclud[ing]

all selfish interest and all consideration of the interests of third persons[.]" *Pegram*, 530 U.S. at

224 (quotations and cites omitted). To fulfill that duty, "all decisions regarding an ERISA plan

'must be made with an eye single to the interests of the participants and beneficiaries.'" *Kuper v.*

*Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995)(quoting *Bierwirth*, 680 F.2d at 271). "Self-dealing,

conflicts of interest, or even divided loyalties are inconsistent with fiduciary responsibilities."

*Howell v. Motorola, Inc*., 633 F.3d 552, 566 (7th Cir. 2011).

While ERISA does not prohibit corporate officers of the plan sponsor from serving as plan

fiduciaries, and in that sense wearing two hats, it does require that the officer "wear the fiduciary

hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225. Corporate officers must "avoid

placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." *Bierwirth*, 680 F.2d at 271. "The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000). "When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an *intensive and scrupulous independent investigation* of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard v. Shay*, 100 F.3d 1484, 1488–89 (9th Cir. 1996)(emphasis added, quoting *Leigh v. Engle*, 727 F.2d 113, 125–26 (7th Cir. 1984)).

The duty of prudence imposes "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion" to plan participants. *Kuper*, 66 F.3d at 1458; see also *Braden*, 588 F.3d at 595. The duty of prudence "is an objective standard … that focuses on the fiduciary's conduct preceding the challenged decision." *Braden*, 588 F.3d at 595 (citation omitted). Whether a fiduciary has breached that duty depends on "the totality of the circumstances[.]" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007).

In addition to the general fiduciary duties, certain transactions are prohibited *per se*. 29 U.S.C. §1106. Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries … by categorically barring certain transactions deemed likely to injure the pension plan." *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241−42 (2000) . "Congress replaced the 'arm's-length' standard with a per se rule to 'substantially strengthen' the laws governing prohibited transactions." *Westoak Realty & Inv. Co. v. C.I.R.*, 999 F.2d 308, 310 (8th Cir. 1993)(citations omitted).

Section 1106(a) bars transactions between a plan and a party in interest, including transactions involving the "furnishing of goods, services, or facilities" and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. §1106(a)(1)(C), (D). An employer whose employees are covered by the plan is a party in interest. 29 U.S.C. §1002(14)(C). Additionally, any service provider to a plan, such as the subsidiaries and affiliates of MassMutual in this case, also is a party in interest. 29 U.S.C. §1002(14)(B), (G).

Section 1106(b) bars transactions between a plan and its fiduciaries, as such transactions may involve self-dealing. 29 U.S.C. §1106(b). The purpose of §1106(b) is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995)(quoting H.R. REP. No. 93-1280 (1974)). Given "Congress' overriding concern with the protection of plan beneficiaries," the prohibitions of §1106 must be read broadly. *Leigh*, 727 F.2d at 126. Good faith is no defense. *Id.* at 124; see also *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987).

A fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]. 29 U.S.C. §1109(a). That fiduciary also is "subject to such other equitable or remedial relief as the court may deem appropriate[.]" *Id.* Any participant is authorized to bring an action on behalf of his or her plan to pursue the plan's remedies under §1109(a). 29 U.S.C. §1132(a)(2). Actions under §1132(a)(2) are "brought in a representative capacity on behalf of the plan as a whole" and the remedies under §1109(a) "protect the entire plan[.]" *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985).

### III. Plaintiffs' allegations of fiduciary breaches and prohibited transactions.

Plaintiffs are current and former participants in the MassMutual Thrift Plan, an ERISA-governed defined contribution plan with over 14,000 participants and $1 billion in assets. Doc. 1 ¶¶1, 18–24, 26–28; 29 U.S.C. §1002(2), (34). Plaintiffs bring this action in a representative capacity on behalf of the Plan to recover the Plan's losses and any ill-gotten profits resulting from the alleged fiduciary breaches. *Id*. ¶¶13–14, 25, 105–08.

MassMutual is the Plan sponsor and a party in interest because its employees are covered by the Plan. 29 U.S.C. §1002(16)(B), 1002(14)(C); Doc. 1 ¶34. MassMutual primarily does business through its unincorporated operating divisions, including its Retirement Services division. Doc. 1 ¶32. MassMutual is the recordkeeper and an investment manager to the Plan. *Id*. ¶35. The Plan has two named fiduciaries: the Plan Administrative Committee and the Investment Fiduciary Committee. Doc. 1 ¶¶43–46; 29 U.S.C. §1102(a). MassMutual's CEO is the primary fiduciary to the Plan and is responsible for appointing MassMutual officers to both committees. Doc. 1 ¶¶38, 42–43, 45. The Administrative Committee is responsible for Plan administration, contracting with service providers, and participant communications. *Id*. ¶44. The Investment Committee is responsible for Plan investments. *Id*. ¶46. MassMutual officers are responsible for providing the Plan's investment options and hiring service providers. *Id*. ¶¶36–37. MassMutual's CEO also sets the terms of and enters into a MassMutual Group Annuity Contract (GAC) for the Plan. *Id*. ¶¶4, 42. MassMutual is the signatory for both parties to the GAC. Doc. 22-5 at 2.[1]

Plaintiffs allege that Defendants mismanaged the Plan to benefit MassMutual at the expense of participants in several ways. Doc. 1 ¶¶7–8. MassMutual siphoned funds from its employees' retirement savings by appointing itself as the Plan's recordkeeper, and then collecting fees far in

---

[1] All "Doc." page references are to the ECF header page numbers.

excess of market rates, even though the terms of the Plan required MassMutual to pay those

expenses. *Id*. ¶¶8, 50–65. It provided Plan investments that were unduly expensive and poorly-

performing MassMutual funds, which enriched MassMutual and its affiliates at the expense of

Plan participants, despite the ready availability of superior investment options at much lower

cost. *Id*. ¶¶7–8, 66–81, 95–100. MassMutual also used the Plan for its own business purposes by

including its general account as a Plan investment option, providing itself over $500 million in

working capital from its employees' retirement assets from which it then deducted exorbitant

fees and retained hidden investment profits for itself, all while exposing its employees' savings

to an undiversified risk for which they were not compensated. *Id*. ¶¶8, 82–94.

MassMutual performed all Plan administrative duties, including recordkeeping of participant

accounts. *Id*. ¶¶8, 52; Doc. 22-2 at 68 (§10.03). The Plan requires that "all expenses of

establishing and administering the plan including expenses with respect to the Group Annuity

Contract and the Fixed Income Account Agreement, shall be borne by the Employer as a further

contribution to the Plan." Doc. 1 ¶51; Doc. 22-2 at 71 (§10.11(a)). However, instead of having

MassMutual pay "all expenses" as the Plan required, Defendants caused *the Plan* to pay those

expenses. Doc. 1 ¶53. These expenses were deducted from participant investments in the Plan's

Fixed Interest Account (FIA) and Separate Investment Accounts  (SIAs). *Id.* ¶¶113–18. Those

fees were imposed as a percentage of assets. As Plan assets grew over time (due to additional

contributions or market returns), the asset-based fees paid to MassMutual correspondingly

increased, even though the services provided to the Plan remained the same. *Id.* ¶62. Defendants

failed to monitor and assess from year to year with the increase in Plan assets whether the asset-

based recordkeeping fees paid to MassMutual were reasonable in light of the services provided

to the Plan. *Id.* ¶¶59–63. In 2010 alone, MassMutual received over $5 million in fees from the

Plan. *Id.* ¶61. By comparison, MassMutual's other retirement plan clients, whose fiduciaries are able to negotiate at arm's length on behalf of their employees, paid far less for similar services. *Id.* ¶64. In MassMutual's defined benefit plan, where its own money is at stake, the group annuity contract provides fee terms that are much more favorable to the plan. *Id.* ¶58.

Defendants had complete discretion as to the investments to include in the Plan. *Id.* ¶46; Doc. 22-2 at 11 (§1.32), 35 (§4.01(b)(1)).[2] Despite the many reasonably priced and well-managed investment options available to large 401(k) plans such as this one, for reasons as yet undisclosed Defendants mostly invested the SIAs in MassMutual mutual funds that were unreasonably priced and poor performers. Doc. 1 ¶¶66–67, 78–81. In these mutual funds, MassMutual hired "sub-advisers" to provide the actual investment work at a small fraction of what MassMutual charged in investment management fees. *Id.* ¶68. MassMutual could have avoided the mutual fund fee structure and had that sub-adviser manage SIA assets directly at that smaller sub-adviser fee, but that would have brought in less revenue for MassMutual. *Id.* ¶¶75–77. MassMutual even provided preferred clients discounts on its usual management fees, but did not provide that discount to its employees. *Id.* ¶¶70–71. Other, non-proprietary investments in the same investment categories were available to the Plan at much lower fees than MassMutual charged. *Id.* ¶¶79–81. While Defendants tout the seemingly low cost of MassMutual's S&P 500 mutual fund, Vanguard provided the exact same index investment for half the cost. *Id.* at 25. Since 1998 the DOL has noted that plans with $500 million in assets can invest directly with separate accounts that reduce fees by up to 75% compared to mutual funds. *Id.* ¶¶80–81. Five of the SIAs invested in mutual funds that themselves had lower-cost share classes in which the Plan's SIAs could have been invested. Doc. 22-6 (MGRSX vs. MMAZX, MLUSX vs. MLUZX,

---

[2] Although the Plan *formally* obligated the Investment Committee to select the investment funds, which of the Defendants *actually* performed this fiduciary function remains hidden.

OIGYX vs.OIGIX, OREYX vs. OREIX, PCRRX vs PCRIX).[3] Defendants even could deduct an additional 4% in fees from the SIAs on top of the underlying mutual fund fees. Doc. 1 ¶¶56–59; Doc. 22-5 at 30 (§S1.03(C), (D)).[4] In addition to their excessive fees, the SIAs also failed the Plan's Investment Policy Statement criteria, yet Defendants kept them in the Plan. Doc. 22-14 at 9 (§7.1); Doc. 1 ¶¶97–99. As an example of the damage this imprudence and disloyalty caused the Plan, had the assets in the Capital Appreciation Fund and Large Cap Value Fund been invested in prudent alternatives that were available to the Plan, they would have earned at least an additional $10 million. *Id*. ¶96.

The FIA is an imprudent Plan investment for additional reasons. *Id*. ¶¶82–94. The FIA is an investment in MassMutual's general account, which is a type of investment typically found in much smaller plans.[5] *Id*. ¶¶82–83. The FIA held up to 40% of Plan assets. Doc. 1 ¶82. Under the GAC, MassMutual sets the interest rate on the Fixed Interest Account semi-annually. *Id*. ¶86. Although Defendants did not disclose it, MassMutual deducts an 85 basis point (bps, 0.85%) "risk charge" and a 30–90 bps recordkeeping charge, for a total fee range of 115–175 bps—far in excess of the fees for comparable products. *Id*. ¶88. MassMutual also retains the "spread"

---

[3] Prospectuses showing the available lower-costs shares are available here: MMAZX, https://wwwrs.massmutual.com/retire/pdffolder/prospectus/select.pdf; MLUZX, http://quote.morningstar.com/fund-filing/Summary-Prospectus-Supplement/2013/5/17/t.aspx?t=MLUZX&ft=497&d=ae8c6f5ec18659b5d66bd6178481fbef; OIGIX https://www.oppenheimerfunds.com/digitalAssets/International-Growth-(825)SummaryProspectus-3.30.10-6eb4138d-7db4-4bed-803a-74ff9a02fd6c.pdf; OREIX, https://www.oppenheimerfunds.com/digitalAssets/Real-Estate-Fund-Sum-Prospectus-0ea04882-d2fc-4066-bfcf-a1bd41d0b823.pdf; PCRIX, https://investments.pimco.com/Regulatory/External%20Documents/PIMCO_CommodityRealReturn_SP.pdf.

[4] Defendants *claim* they haven't deducted these fees, but provide nothing to support that claim.

[5] Nat'l Ass'n of Govt. Defined Contribution Adm'rs, Inc., *What Plan Sponsors Should Know About Stable Value Funds* (2010)(general account funds are "most commonly utilized by small and mid-sized plans" and larger plans typically use other types of stable value products), http://www.nagdca.org/documents/StableValueFunds.pdf; Douglas G. Prince, *Testimony Before ERISA Advisory Council* (Sept. 16, 2009)("General Accounts are utilized mostly by small plans"; customized accounts "are typically used by larger plan sponsors"), http://www.procourseadv.com/wp-content/uploads/2013/02/ERISA-Advisory-Council-remarks_3_.pdf.

between what the investments in the general account actually earn and the interest rate credited

to the Plan. *Id*. ¶89; see *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir.

2013). The "spread" can significantly exceed the 115–175 bps fee, and it also is concealed from

participants. Doc. 1 ¶89.

The FIA exposed 40% of the Plan's assets to unnecessary, uncompensated risk. The

supposed "guarantee" of principal and interest was actually subject to the risks of MassMutual's

business operations and the claims of MassMutual's general creditors. *Id*. ¶¶84, 90–91. The risk

of insurance company insolvency is significant.[6] A MassMutual insolvency would be

catastrophic for many participants' retirement savings, especially those who were seeking what

was presented as a low-risk investment. For that reason, prudent fiduciaries of large 401(k) plans

avoid exposing their participants to the undiversified risks and hidden fees of insurance company

general accounts. *Id*. ¶¶90, 94. Most large plans use Synthetic GICs as plan fixed income

options, because they are backed by separate accounts in more than one insurance company that

do not present such a risk of loss. *Id*. ¶¶90, 94.[7] Synthetic GICs also pass along the actual

performance of the underlying investments and have lower costs and transparent fees. *Id*.

Based on these factual allegations, the complaint asserts seven counts. Count I asserts that

Defendants' actions in imposing unreasonable recordkeeping and administrative fees constituted

---

[6] See Eleanor Laise, *Stable Funds are Looking Shakier*, WALL ST. J. (May 1, 2010) (in stable value funds backed by general-account assets, "investors are taking on the risk that this single issuer could go belly up"), http://online.wsj.com/news/articles/SB10001424052748703572504575214723494032604; W. Scott Simon, *The Fine Print on Stable Value Funds*, MORNINGSTAR (Oct. 4, 2012) (discussing pitfalls of general account products, http://www.morningstar.com/advisor/t/64300545/the-fine-print-on-stable-value-funds.htm?&single=true#axzz2vh96dljD; Robert A. Rosenblatt, *Insurer's Failure Ensnares Thousands of Casualties*, L.A. TIMES (May 17, 1991), http://articles.latimes.com/1991-05-17/news/mn-1874_1_executive-life; Standard & Poor's, *What May Cause Insurance Companies To Fail—And How This Influences Our Criteria*, 4–5 (June 13, 2013) (noting "increased number of insurance company failures" over past 3 decades), http://www.standardandpoors.com/spf/upload/Ratings_EMEA/2013-06-13_WhatMayCauseInsuranceCompaniesToFail.pdf.
[7] Virginia Kahn, *In Search of Stable Value, Part One*, BUSINESS FINANCE (Oct. 1, 1997), http://businessfinancemag.com/print/hr/search-stable-value-part-one.

breaches of the duties of loyalty and prudence. Doc. 1 ¶¶109–21. Count II asserts that

Defendants breached their duties of loyalty and prudence by providing participants excessively

expensive and poorly performing investment options. *Id.* ¶¶122–31. Counts III and IV assert

these actions constitute prohibited transactions under 29 U.S.C. §1106(a)(1)(C)–(D) and 29

U.S.C. §1106(b), respectively. Doc. 1 ¶¶132–63. Count V asserts that Defendants breached their

duty to administer the Plan in accordance with the governing plan documents, 29 U.S.C.

§1104(a)(1)(D), by violating Plan §10.11(a), which obligated MassMutual to pay all Plan

expenses. Doc. 1 ¶¶164–72. Counts I–V seek to hold Defendants jointly and severally liable for

restoring to the Plan the losses caused by those breaches and all profits they gained from the

misuse of Plan assets and other appropriate equitable relief under 29 U.S.C. §1109(a). Count VI

asserts an additional basis of liability against MassMutual, Roger Crandall, Stuart H. Reese, and

Robert O'Connell, for breach of their fiduciary duty to properly monitor and replace the

fiduciaries over whom they had authority or control and who caused losses to the Plan. *Id.*

¶¶173–80. Finally, alternatively or in addition to the remedies under §§1132(a)(2) and 1109(a),

Count VII seeks to enjoin further misconduct and to obtain any "other appropriate equitable

relief" under 29 U.S.C. §1132(a)(3). *Id.* ¶¶181–98.

## IV. ERISA's statute of limitations does not bar Plaintiffs' claims.

Plaintiffs are not required to plead around affirmative defenses. See *Jones v. Bock*, 549 U.S.

199, 212, 215–16 (2007). To obtain dismissal on a statute of limitations defense, Defendants

must show that "(i) the facts establishing the defense are definitively ascertainable from the

complaint and the other allowable sources of information, and (ii) those facts suffice to establish

the affirmative defense with certitude." *Rodi v. So. New England Sch. of Law*, 389 F.3d 5, 12 (1st

Cir. 2004)(citation omitted). "The key is whether the complaint and any documents that properly

may be read in conjunction with it show *beyond doubt* that the claim asserted is out of time." *Id.* at 17 (emphasis added).

**A. The six-year limitation is inapplicable.**

Defendants assert that the six-year limitation applies because the initial "decision to use MassMutual products and services was made more than six years ago." That argument is invalid first because Plaintiffs do not contend Defendants breached their duty merely by deciding to use MassMutual products and services. Instead, the breach is in providing imprudent and excessively expensive investment options that provided MassMutual unreasonable compensation in light of the investment management or recordkeeping services it provided. That argument is invalid second because Defendants rely solely on the 2004 Plan document, but adopting plan terms is not a fiduciary act. *CIGNA Corp. v. Amara*, 563 U.S. ___, 131 S. Ct. 1866, 1877 (2011). The fiduciary act is providing plan investment options and retaining plan service providers, *Howell*, 633 F.3d at 567, and the Plan cannot compel fiduciary actions that violate ERISA, 29 U.S.C. §1104(a)(1)(D). The Plan itself does not establish *any* fiduciary decision, much less one made over six years ago. See *Leber v. Citigroup, Inc.*, No. 07-9329, 2010 U.S.Dist.LEXIS 25097 at 19–20 (S.D.N.Y. Mar. 16, 2010)(court could not determine at pleading stage when alleged breaches in selecting proprietary funds and service providers occurred).

If, as they seem to suggest, Defendants blindly followed the Plan *without* engaging in a prudent fiduciary process in providing plan investments, monitoring fees, and retaining service providers, then Defendants committed breach by omission. See *George v. Kraft Foods Global, Inc.,* 641 F.3d 786, 796 (7th Cir. 2011)(failure to "balance the relevant factors and make a reasoned decision" when "a prudent fiduciary would have … is a breach of the prudent man standard of care."). For such breaches, the six-year period does not start until the latest date Defendants could have cured that omission by engaging in a prudent decision-making process

regarding Plan investments and fees, 29 U.S.C. §1113(1)(B), and that well within six years of the complaint. See Doc. 22-14 at 12–13 (fund lineup).

The 2004 Plan also has nothing to do with this case. The funds were listed in "Appendix A" of the 2004 Plan, but that Appendix was deleted as of September 1, 2007 and §4.02 was amended to have the Investment Committee "designate[]" and "modif[y] from time to time" Plan investment options. Doc. 22-9 at 5(¶5). Defendants do not identify any 2007 fund designations, much less identify specific funds they selected over six years ago. The generic fund names in the deleted 2004 Appendix A do not correspond to the names in the current lineup, shown on the 2012 Investment Policy Statement. Compare Doc. 22-10 at 52–54 with Doc. 22-14 at 12–13. Indeed, the vast majority of the SIAs listed in the 2011 GAC appear nowhere on the 2004 Appendix A. Compare Doc. 22-5 at 28–29 with Doc. 22-10 at 52–54. Even were the SIAs the same, the GAC shows that what the SIAs invest in changes periodically. Doc. 22-5 at 28 (listing changes for March 15, 2011). Moreover, many of the funds on Defendants' 2013 list (Doc. 22-6 at 7–8, 10–12), do not even have 5 year histories, meaning they were necessarily added within the limitations period. Thus, despite Defendants' effort to oversimplify the limitations issue, there are many questions that cannot be resolved at the pleading stage. None of the relevant dates that would allow the Court to even consider the defense are "definitively ascertainable" or established "with certitude" in the complaint. *Rodi*, 389 F.3d at 12.

Defendants executed a new GAC every year within the past six years. Doc. 1 ¶54. Even had Defendants established that those GACs were identical from year to year, Plaintiffs' claims as to the GACs executed within six years would not be barred. Defendants improperly focus on the *first* action that is part of the breach. The six-year limitation does not start until "the date of *the last action* which constituted a part of the breach" or "the *latest date*" on which Defendants could

14

have cured their omission. 29 U.S.C. §1113(1) (emphasis added). Defendants' actions and omissions occurred annually (and in any event at least until the December 2011 GAC), when Defendants repeatedly renewed the GAC, thereby affirmatively deciding on the SIAs to include as Plan investments and utilizing the FIA and MassMutual to provide administrative services. Doc. 1 ¶4; Doc. 22-5 at 3, 26–31. The last of those actions occurred within six years before Plaintiffs commenced this action.

Defendants' argument was rejected in *Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078 (7th Cir. 1992), for compelling reasons. DOL filed suit against plan trustees and a service provider (C&A), charging that the trustees breached their fiduciary duties "by awarding noncompetitive contracts to C&A" in 1984 and 1987 and "operating a kickback scheme with C&A[.]" *Id*. at 1082. The court held that although the action over the 1984 contract was barred, the action over the 1987 contract was not, even though the contract provided the same thing. *Id*. at 1085–87. The court explained that

> The flaw in the trustees' argument is that it ignores the continuing nature of a trustee's duty under ERISA to review plan investments and eliminate imprudent ones. If knowledge of an ERISA violation barred claims based on similar future conduct, this continuing fiduciary duty would be severely weakened, and trustees would be left free to engage in repeated violations, so long as they have once been discovered but not sued.

*Consultants*, 966 F.2d at 1087–88 (citations omitted).

*Consultants* relied on *Morrissey v. Curran*, which reversed the dismissal of a claim regarding an imprudent investment that was first included in a plan before ERISA was in force. 567 F.2d 546, 547–48 (2d Cir. 1977). The court explained that ERISA incorporates the trustee's duty at common law "to dispose of improper investments within a reasonable time[.]" *Id*. at 548–49 & n.9. Thus, even if the defendants were not liable for the initial decision, the plaintiffs were entitled to present evidence that a prudent fiduciary under similar circumstances would have

*removed* the allegedly imprudent investment. *Id*. Numerous district courts have recognized the continuing nature of ERISA's fiduciary duties, applying the six-year limitation to bar claims only as to breaches that occurred more than six years earlier, but not those within six years.[8] Holding otherwise

> would recognize no obligation on the part of a plan fiduciary to dispose of unsound investments once he had been neglectful for six years, because only the initial failure to act, not subsequent failures, would give rise to a cause of action, and that action would be time barred.

*Buccino v. Cont'l Assurance Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y. 1983).

The reasoning of these decisions compels rejection of Defendants' contrary arguments. As in *Consultants*, even if Defendants' initial breach in deciding to use some MassMutual products and services in order to benefit themselves occurred more than six years ago, that does not bar claims based on similar later misconduct, such as when they chose each year to engage in self-dealing by signing new GACs. And as in *Morrissey*, even if the imprudent funds were *first* included outside the limitations period, the funds charged excessive fees in varying amounts from year to year within the limitations period and Plaintiffs' allegations plausibly show that a prudent fiduciary would have removed the funds in light of their poor performance and excessive fees within the limitations period. Doc. 1 ¶¶78–79, 99. And in this case the GACs and funds were not even the same for over six years.

---

[8] See, e.g., *Leber v. Citigroup, Inc.*, No. 07-9329, 2011 U.S.Dist.LEXIS 129444 at 14–15 (S.D.N.Y. Nov. 8, 2011); *George v. Kraft Foods Global, Inc.*, 814 F.Supp.2d 832, 852 (N.D. Ill. 2011); *Mahoney v. J.J. Weiser & Co.*, 564 F.Supp.2d 248, 259 (S.D.N.Y. 2008); *Boeckman v. A.G. Edwards Inc.*, 461 F. Supp.2d 801, 814 (S.D.Ill. 2006); *Meyer v. Berkshire Life Ins. Co.*, 250 F.Supp.2d 544, 570 (D.Md. 2003); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 122 F.Supp.2d 444, 463 (S.D.N.Y. 2000); *Reich v. Johnson*, 891 F.Supp. 208, 209 (D.N.J. 1995).

Defendants' reliance on *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), and *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), *petition for cert. pending*, No. 13-550,[9] is misplaced for several reasons. *David* was decided at the summary judgment stage, 704 F.3d at 332, and the limitations issue in *Tibble* required "a three-day bench trial and months of post-trial evidence" to determine whether a prudent fiduciary would have conducted a due diligence review of certain mutual funds based on "changed circumstances" within the limitations period, 729 F.3d at 1120, 1138. Decisions regarding the sufficiency of proof at trial or summary judgment have little relevance at the pleading stage. *García-Catalán*, 734 F.3d at 103–04.

The *David* plaintiffs challenged only the *initial* selection of their employer's proprietary mutual funds as plan investment options, and originally conceded that their claims were barred by the six-year limitation absent fraud or concealment. 704 F.3d at 341–42; *David v. Alphin*, 817 F.Supp.2d 764, 768 n.4, 777 (W.D.N.C. 2011). Although the plaintiffs later sought to add a failure to remove claim, there was no evidence that the funds "*became* imprudent, based on fund performance or increased fees, during the limitations period." *David*, 704 F.3d at 341. Thus, the court construed the claim as merely a challenge to the initial selection, and declined to address a fiduciary's "ongoing duty to remove imprudent investment options in the absence of a material change in circumstances[.]" *Id*. at 341. *David* thus did not address the *continuing* duty to remove disloyal and imprudent investments recognized by the Seventh and Second Circuits, which is at issue in this case. *Consultants*, 966 F.2d at 1087–88; *Morrissey*, 567 F.2d at 548–49 n.9.

*Tibble* undermines ERISA's fiduciary protections by holding that ongoing duties to review investments apply only if there are "significant changes in conditions", a requirement that finds no support in the statute. Cf. 729 F.3d at 1120. The Ninth Circuit's reasoning overlooks the fact

---

[9] *Tibble* was *not* a decision by "the Ninth Circuit, sitting *en banc*[.]" Doc. 21 at 18, 26; see 729 F.3d at 1117.

that ERISA's "prudent man" standard imports the "well established" common law duty of a trustee "to dispose of improper investments within a reasonable time[.]" *Morrissey*, 567 F.2d at 548–49 n.9; *Consultants*, 966 F.2d at 1087–88 (citing *Morrissey*). *Tibble* leaves plan fiduciaries "free to engage in repeated violations", thereby "severely weaken[ing]" ERISA's "continuing fiduciary duty[.]" *Consultants*, 966 F.2d at 1087–88. Indeed, *Tibble* gives fiduciaries an incentive *not* to eliminate imprudent funds but instead to try to "run out the clock" in the hopes of gaining immunity from their breach of duty.

*Tibble* conflates the three-year actual knowledge limitation of §1113(2), with the six-year limitation of §1113(1) and even relies on a prior decision based on the three-year actual knowledge limitation. 729 F.3d at 1119–20 (citing *Phillips v. Alaska Hotel & Rest. Employees Pension Fund*, 944 F.2d 509, 520–21 (9th Cir. 1991)). By extending the logic of *Phillips* to the six-year limitation, *Tibble* disregards the fact that the three-year limitation necessarily starts upon the *first* date that a plaintiff obtains actual knowledge of the breach, whereas the six-year limitation expressly does not start until the *last* date of the breach.

Even if *Tibble*'s "changed circumstances" test were valid, it would be met here. While the Plan's Investment Policy Statement provides that "each fund is expected to perform in the upper third" of its peer group, the Plan's funds failed this standard within the six years preceding this action. Doc. 1 ¶¶98–99. Accordingly, aside from the self-interested decision to use the funds to generate fees for MassMutual, the failure of the funds to meet the IPS performance criteria in recent years was a change in conditions that would have prompted a prudent fiduciary to conduct a renewed due diligence review even under *Tibble*'s incorrect standard. And the growth in Plan assets within the limitations period and corresponding increase in MassMutual's asset-based fees is another change in circumstances that would have prompted a prudent fiduciary to obtain

competitive bids from other vendors to assess whether MassMutual's fees remained reasonable before signing another GAC. Doc. 1 ¶62; *George*, 641 F.3d at 798–800.

The recent Eleventh Circuit decision in *Fuller v. Suntrust Banks, Inc.* is flawed for the same reasons as *Tibble* and *David*. ___F.3d ___, No. 12-16217, 2014 U.S.App.LEXIS 3610 (11th Cir. Feb. 26, 2014).[10] *Fuller* followed *David* and *Tibble* in affirming dismissal on six-year limitations grounds claims that fiduciaries of the SunTrust 401(k) plan breached their duties of prudence and loyalty by selecting SunTrust-affiliated mutual funds for the plan, and then failing to remove or replace them. *Id*. at 7–9. The court found that "the date of the last action which constituted a part of the breach" was when the fiduciaries selected the funds,[11] and that the alleged failure to remove the funds was not "a cognizable breach" separate from the imprudent selection because the fiduciaries' alleged actions or omissions in failing to remove the funds were indistinguishable from the alleged imprudent acts that occurred at the time of selection. *Id*. at 41–43, 45. Thus, as in *David*, the court "decline[d] to decide whether the Committee Defendants had an ongoing duty to remove imprudent investment options from the Plan in the absence of a material change in circumstances." *Id*. at 43–44 (citing *David*, 704 F.3d at 341). In addition, while Fuller's failure-to-remove allegations were indistinguishable from the imprudent selection claims, here Plaintiffs have plausibly alleged circumstances that would have caused a prudent fiduciary to review and consider removing the funds, based on excessive fees and poor performance that failed to meet the Plan's investment criteria. Doc. 1 ¶¶98–99.

In sum, the six-year limitation provides no basis for dismissal.

**B. The three-year limitation is inapplicable.**

Defendants argue only that Plaintiffs had *constructive* knowledge of the fiduciary breaches

---

[10] *Fuller* addresses the Northern District of Georgia cases on which Defendants rely.

[11] Unlike here, there was evidence in *Fuller* of specific dates particular funds were added. *Id*. at 5.

because of Plan communications that purportedly disclosed the use of MassMutual products and services. Doc. 21 at 20–21. First, since the claimed breaches are not merely the use of MassMutual products and services, actual knowledge of that mere fact did not provide Plaintiffs actual knowledge of their claims. Instead, to know of their claims, Plaintiffs had to know of the availability of other better investments for this plan and Defendants' lack of any prudent process for deciding to use MassMutual funds instead. Defendants do not even claim any Plaintiff had such actual knowledge.

Moreover, even were mere knowledge of the proprietary nature of the Plan's funds alone enough to inform Plaintiffs of their claims in this action, the existence of participant communications alone is no more than constructive knowledge, since Defendants provide no evidence that the SPD or Form 5500 on which they rely was actually delivered to Plaintiffs.[12] *Fuller*, 2014 U.S.App.LEXIS 3610 at 29–30. Such constructive knowledge is not the actual knowledge required by §1113(2). 29 U.S.C. §1113(2); *Edes v. Verizon Communs.*, 417 F.3d 133, 141–42 (1st Cir. 2005)(quoting *Consultants*, 966 F.2d at 1085 n.6)); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 194 (2d Cir. 2001); *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999)(quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)). "To charge [plaintiff] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1222 (7th Cir. 1990) (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)). Actual knowledge "requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or

---

[12] The SPD cannot be considered at this stage because the complaint does not refer to it and it is not "central" to Plaintiffs' claims. Cf. *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993).

violation under ERISA[.]" *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995)

(citation omitted). When participants claim that "the fiduciary made an imprudent investment,

actual knowledge of the breach [will] usually require some knowledge of how the fiduciary

selected the investment." *Brown*, 190 F.3d at 859. Even the Ninth Circuit in *Tibble* rejected a

similar argument. See *Tibble*, 729 F.3d at 1120–21.

Here, Plaintiffs do not challenge the mere use of MassMutual's products and services.

Rather, Plaintiffs allege that the process for using MassMutual funds and recordkeeping services

was profoundly tainted by self-interest and imprudence. E.g., Doc. 1, ¶¶3, 7, 12. The SPD does

not disclose that process. Defendants' three-year limitation argument therefore fails.

### C. Plaintiffs need not plead fraudulent concealment with particularity.

In cases of "fraud or concealment," Plaintiffs can commence their action within six years

after they discover the breach. 29 U.S.C. §1113. This incorporates the fraudulent concealment

doctrine. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc*., 76 F.3d 1245, 1255

(1st Cir. 1996). "Fraud or concealment" "refers to steps taken by the defendant to hide the fact of

the breach rather than to the underlying nature of plaintiffs' claim." *Consultants*, 966 F.2d at

1093. Since it is independent of, and not an element of the underlying claim, it need not be

pleaded with particularity under Rule 9(b). *George v. Kraft Foods Global, Inc*., 674 F. Supp.2d

1031, 1046–47 (N.D.Ill. 2009);[13] *Hoppe v. SmithKline Beecham Corp.*, 437 F.Supp.2d 331, 337

n.5 (E.D.Penn. 2006). Defendants' other cases are distinct because the underlying claim involved

fraud, and thus was subject to Rule 9(b). *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 550–51 (6th

Cir. 2012)(plaintiffs had "not adequately alleged any *underlying* fraud", emphasis added);

---

[13] *J. Geils*'s statement that Rule 9(b) applies to fraudulent concealment allegations is dicta because the case was decided based on a lack of evidence at summary judgment as to the "constructive notice" element of fraudulent concealment, and not the sufficiency of the pleadings. 76 F.3d at 1255–56. The district court in *George* declined to follow similar Seventh Circuit dicta for similar reasons. 674 F.Supp.2d at 1047 n.16.

*Watson v. Consol. Edison of N.Y.*, 594 F.Supp.2d 399, 411 (S.D.N.Y. 2009)(breach of duty based on common law fraud).

Here, while Plaintiffs allege that Defendants took steps to conceal their breaches, Doc. 1 ¶¶101–04, the alleged fraud is independent of Defendants' self-interested and imprudent mismanagement of the Plan, and thus not subject to Rule 9(b). *George*, 674 F. Supp. 2d at 1046–47; *Hoppe*, 437 F.Supp.2d at 337 n.5. Whether Defendants fraudulently concealed their breaches and the date of Plaintiffs' discovery cannot be resolved at the pleading stage.

**V. Plaintiffs state valid claims for breach of fiduciary duties.**

### A. Defendants do not challenge Count I, regarding the excessive administrative fees.

In attempting to oversimplify Plaintiffs' claims as a generic challenge to the use of MassMutual products and services, Defendants fail to address Count I. Defendants assert only that "the use of asset-based fees" is not imprudent. Doc. 21 at 34–35. But Plaintiffs do not challenge the mere use of asset-based fees. Defendants did not *assess* whether the asset-based fee provided only reasonable compensation for the Plan's recordkeeping services, particularly as plan assets grew over time. Doc. 1 ¶¶60–64. As the Plan grew, the asset-based compensation to MassMutual increased significantly, without a commensurate increase in services, benefiting MassMutual at the expense of participants. *Id.* ¶¶59, 62–65. Count I therefore states a claim.

### B. Defendants violated the Plan document (Count V)

ERISA requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" other ERISA provisions. 29 U.S.C. §1104(a)(1)(D). Plan §10.11(a) requires that "all expenses of establishing and administering the plan, including expenses with respect to the group annuity contract and fixed income account agreement, shall be borne by the employer as a further contribution to the plan." Doc. 22-2 at 71; Doc. 1 ¶166. Defendants contend that the next section

nullifies this obligation and effectively allows Defendants to foist all Plan expenses onto the participants. Doc. 21 at 24–25. Defendants are mistaken. Section 10.11(b) states:

> To the extent that expenses are not paid by the Employer, they shall be deducted from Participant Accounts, including, but not limited to, expenses related to withdrawals, distributions and loans.

Doc. 22-2 at 71. This refers only to extraordinary fees that are charged directly to the participant (to the extent not paid by MassMutual), such as for withdrawals, distributions, and loans. They are different in kind from the plan-wide, ongoing fees for administration and investment management that the Employer is obligated to pay under §10.11(a). Moreover, the fees contemplated by §10.11(b) are to be "deducted from Participant Accounts." The fees here that Defendants contend are within §10.11(b) were not deducted from participant accounts, they were deducted from the assets of the SIAs and FIA. Doc. 1 ¶¶56, 57. Plaintiffs' account statements show no fee deductions from their accounts. Ex. 1. Therefore, the SIA and FIA fees at issue in this lawsuit are not per-participant fees authorized by §10.11(b), as Defendants contend, but instead are §10.11(a) fees MassMutual was obligated to pay. Defendants breached their §1104(a)(1)(D) duties by having participants pay those fees instead of MassMutual. 29 U.S.C. §1104(a)(1)(D).

### C. "Following the Plan" is not an excuse for breaching ERISA's fiduciary duties.

Defendants assert that the complaint does not plausibly suggest that their fiduciary decisions were motivated by a desire to serve the interests of MassMutual over the participants, because the Plan document required the use of MassMutual funds and services, which supposedly provides an "obvious alternative explanation" for why the fiduciaries would manage the Plan in a way that allowed their employer MassMutual to collect $5 million in annual fees. Doc. 21 at 26. A complaint does not have to "rebut all possible lawful explanations for a defendant's conduct." *Braden*, 588 F.3d at 596. Further, "a reasonable inference need not be 'as compelling as any

opposing inference' one might draw from the same factual allegations" to survive a motion to dismiss. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Group, PLC*, 709 F.3d 109, 121 (2d Cir. 2013). But even assuming Defendant's theory were an "obvious" explanation for what appears to be obvious Plan mismanagement, it is not a "lawful" explanation. Cf. *Iqbal*, 556 U.S. at 682 ("obvious alternative explanation" was that the challenged arrests "were likely *lawful* and justified", emphasis added). The plausibility standard requires a plaintiff to show "more than a sheer possibility that a defendant has acted *unlawfully*." *Id.* at 678 (emphasis added).

Here, Defendants' alternative explanation is unlawful.  A fiduciary cannot just "follow the plan" if doing so is otherwise inconsistent with ERISA. 29 U.S.C. §1104(a)(1)(D). Blind adherence to the terms of the Plan without determining the action is solely in participants' interest, exclusively for the purpose of providing participant benefits or defraying only reasonable administrative expenses, and prudent, is contrary to ERISA's fundamental duties. 29 U.S.C. §1104(a)(1). Conducting "an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties[.]" *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996); see *George,* 641 F.3d at 796. Defendants owed those duties regardless of what they believed the Plan required.

That Defendants claim they qualify for certain prohibited transaction exemptions has no bearing on whether they breached ERISA's fundamental fiduciary duties. See *Krueger v. Ameriprise Fin., Inc*., No. 11-2781, 2012 U.S.Dist.LEXIS 166191 at 41–44 (D.Minn. Nov. 20, 2012); *Eaves v. Penn*, 587 F.2d 453, 459–60 (10th Cir. 1978); *Harris v. Koenig*, 815 F.Supp.2d 26, 35 (D.D.C. 2011); 42 Fed.Reg. 18734 (Apr. 8, 1977)("that a transaction is the subject of an exemption … does not relieve a fiduciary … from certain other provisions of the Act and the Code, including ... the general fiduciary responsibility provisions of section 404 of the Act

[§1104]"). Whether they qualify is an affirmative defense Defendants must plead and prove. Moreover, the facts alleged in the complaint show Defendants would *not* qualify for the §1108(b)(5) exemption. The §1108(b)(5) exemption is available only "*if the plan pays no more than adequate consideration*[.]" 29 U.S.C. §1108(b)(5) (emphasis added); *Musto v. Am. Gen. Corp.*, 615 F.Supp. 1483, 1496 n.8 (M.D.Tenn. 1985). Plaintiffs allege that the Plan paid far more than adequate consideration. Doc. 1 ¶¶53–65, 68, 74–79, 88–90.

### D. Defendants breached their duties.

#### 1. Fixed Interest Account (Count II)

The FIA was an imprudent and disloyal investment because it charged fees far in excess of comparable products, was included for the purpose of giving MassMutual $500 million in working capital from participants' retirement savings, allowed MassMutual to retain "spread" earnings on the underlying investment instead of passing them through to the Plan, and exposed the Plan to a potentially catastrophic risk for which  it was not compensated. Doc. 1 ¶¶82–94. Selecting an investment with excessive cost and risk that provided clear benefits to MassMutual plausibly raises an inference that the process by which Defendants selected the FIA was "tainted by failure of effort, competence, or loyalty", *Braden*, 588 F.3d at 596, if not by an outright desire to enrich MassMutual at the participants' expense. And Defendants' purported "obvious alternative explanation" for their breach of the duty of loyalty—that they included the FIA not based on its merit, but because they thought the Plan required it—merely strengthens the inference that Defendants failed "to conduct an independent investigation into the merits" of the FIA, "the most basic of ERISA's investment fiduciary duties[.]" *Unisys*, 74 F.3d at 435.

Defendants dispute that the FIA exposed the Plan to risk because no participant was required to invest in it. Doc. 21 at 29. The presence of other funds in the menu does not excuse an imprudent fund. "Under ERISA, the prudence of investments or classes of investments offered

by a plan must be judged individually." *DiFelice*, 497 F.3d at 423 (quoting *Langbecker v. Elec.*

*Data Sys. Corp.*, 476 F.3d 299, 308 n.18 (5th Cir. 2007)); *Unisys*, 74 F.3d at 438–41. "[A]

fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other

funds, which individuals may or may not elect to combine with [the imprudent fund] could

theoretically, in combination, create a prudent portfolio." *DiFelice*, 497 F.3d at 423. The fact that

MassMutual has not yet become insolvent is beside the point. Even if the possibility were

remote, MassMutual's failure would wipe out 40% of the Plan.[14] Exposing participants to even a

small chance of such a catastrophic risk was completely unnecessary because there are other

diversified products available which spread the risk among multiple companies, which in fact are

used by the vast majority of large plans. Doc. 1 ¶94; see nn. 5, 7. The 3% interest guaranteed by

the FIA did not adequately compensate for this risk of catastrophic loss.

Defendants do not dispute that MassMutual took a 115–175 bps fee from the FIA; they

contend only that the fee was not excessive given the 3% net interest participants received. Doc.

21 at 30. But if MassMutual had not taken out such an unreasonably high fee, it would have

credited an even higher rate of interest to the FIA. Doc. 1 ¶88. That MassMutual gave

participants something does not justify its taking unreasonable fees from participant investments.

Defendants fault Plaintiffs for not specifically listing any comparable products "backed by a 163

year old company", but Rule 8 does not require such detailed facts. *Iqbal*, 556 U.S. at 678.

Moreover, the very fact that Defendants allowed a fund with such exorbitant fees to remain in

the Plan supports a reasonable inference that they were either unaware of the fees or never

investigated the fees charged by comparable funds, thus violating their duties of prudence.

---

[14] W. Scott Simon, *Fiduciary Questions in the MassMutual Case, Part Two*, MORNINGSTAR (Jan. 2, 2014) ("Fiduciaries … should be concerned not only with the chances of a risk but also with the consequences of a risk"), http://www.morningstar.com/advisor/t/85622713/fiduciary-questions-in-the-massmutual-case-part-two.htm.

*Braden*, 588 F.3d at 596; *Unisys*, 74 F.3d at 435.

Defendants challenge the potential remedy of whether Plaintiffs would be entitled to recover the "spread" earnings that MassMutual retained, arguing that no case "in the history of American jurisprudence" entitles Plaintiffs to such a remedy. Doc. 21 at 30–31 (citing *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-2208-MAP, Doc. 205 at 1–2 (D. Mass. Nov. 22, 2013)). Quibbling about the appropriate remedy for this breach is decidedly premature at the pleading stage, and meritless in any event. In *Prudential*, disgorgement was not available because none of the plaintiffs had shown that they suffered a cognizable legal injury. Doc. 205 at 2. Actual injury was an element of each of the contract-type claims at issue in that case. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 286 F.R.D. 155, 158 (D. Mass. 2012). If the plaintiffs could not establish all of the elements for liability, they could not obtain *any* remedy, save possibly for nominal damages. *Id.* at 159 n.4; Doc. 205 at 3. That is not the case here, where the complaint *does* show all elements for liability under 29 U.S.C. §1109(a). Moreover, in contrast to the contractual claims in Prudential, disgorgement is available under ERISA even in absence of loss to the Plan.

> ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss. … ERISA expressly prohibits the use of assets for purposes other than the best interests of the beneficiaries, and the language of section 1109(a) providing for disgorgement of profits from improper use of trust assets is the appropriate remedy … If ERISA fiduciaries breach their duties by risking trust assets for their own purposes, beneficiaries may recover the fiduciaries' profits made by misuse of the plan's assets.

*Leigh*, 727 F.3d at 122; *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 417 (3d Cir. 2013)("financial loss is not a prerequisite for standing to bring a disgorgement claim under ERISA"); *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406, 1411 (9th Cir. 1988). If disgorgement were unavailable, ERISA's deterrent purposes would be

27

undermined in cases such as this where fiduciaries use Plan assets for their own business

purposes. See *Edmonson*, 725 F.3d at 415–16. While disgorgement of profits is clearly an

appropriate remedy, it is only one of several alternative remedies that Plaintiffs seek, Doc. 1

¶¶121, 131, and the Court has broad discretion to determine whether disgorgement or some other

equitable remedy is  appropriate. See *Merrimon v. Unum Life Ins. Co. of Am.*, No. 10–447, 2013

U.S.Dist.LEXIS 129619 at 32–33 (D.Me. Sept. 9, 2013)("It is difficult to overlook the spread

that Unum earned as the source of damages in this case."); *Id.*, 2013 U.S.Dist.LEXIS 129618 at

4–11 (D.Me. Sept. 11, 2013)(using alternate damages measure).

Defendants' contention that the FIA is a "guaranteed benefit policy" under 29 U.S.C.

§1101(b)(2) lacks merit. Section 1101(b)(2) must be construed "narrowly" and "closely

contain[ed][.]" *John Hancock*, 510 U.S. at 97. The FIA is not a guaranteed benefit policy

because it does not guarantee a "benefit" to plan participants, such as a specific lifetime monthly

payment as in a defined benefit plan. *Id.* at 105. A guaranteed benefit policy must "provide[] a

genuine guarantee of an aggregate amount of benefits payable to retirement plan participants and

their beneficiaries." *Id.* at 106. Merely promising a rate of interest is not a guaranteed benefit.

*Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 327 (7th Cir.

1983); see *John Hancock*, 510 U.S. at 101 (following *Peoria*). Even if the FIA were a guaranteed

benefit policy, Defendants still have a duty to determine whether it is prudent and loyal to

provide it as a Plan investment, and Plaintiffs have plausibly shown that they failed to do so.

### 2. Separate accounts (Count II)

Plaintiffs' allegations plausibly show that Defendants used the MassMutual affiliated funds

despite the ready availability of better options, to benefit themselves at the expense of

participants . Doc. 1 ¶¶66–81, 95–100. These allegations plausibly raise an inference that the

process by which Defendants selected these investments was "tainted by failure of effort,

competence, or loyalty." *Braden*, 588 F.3d at 596.

Plaintiffs allege that Defendants used the MassMutual funds in the SIAs despite their poor performance and high fees because of the benefits that provided to MassMutual, Doc. 1 ¶99, just as the *Braden* plaintiffs alleged their fiduciaries retained underperforming investments for the benefits that provided to the plan trustee, *Braden*, 588 F.3d at 596. Defendants do not dispute that the funds had poor performance, but merely assert that Plaintiffs were required to include specific performance benchmarks and dates in the complaint. Doc. 21 at 36. Such detailed facts are not required at the pleading stage. *Iqbal*, 556 U.S. at 678; *Gipson v. Wells Fargo & Co*., No. 08-4546, 2009 U.S.Dist.LEXIS 20740 at 14 (D.Minn. Mar. 13, 2009).[15] Moreover, the complaint references the IPS, which lists benchmarks and peer groups for each fund, and alleges that the funds failed those criteria. Doc. 1 ¶¶98–99; Doc. 22-14 at 12–13. Accordingly, Plaintiffs' allegations provide Defendants fair notice of the claim that the funds performed poorly yet were retained to benefit MassMutual. *García-Catalán*, 734 F.3d at 103.

Plaintiffs' allegations are far more specific than "a bare allegation that cheaper alternative investments exist in the marketplace." *Braden*, 585 F.3d at 596 n.7 (distinguishing *Hecker v. Deere & Co*., 556 F.3d 575, 586 (7th Cir. 2009)). Plaintiffs point to specific prudent alternatives to Defendants' funds, as did the *Braden* plaintiffs. Doc. 1 at ¶79; *Braden*, 588 F.3d at 590.[16] Plaintiffs do not contend that Defendants were required to find "the cheapest possible fund[.]"

---

[15] *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt*., 712 F.3d 705 (2d Cir. 2013), is inapposite. One of the plaintiffs was the plan fiduciary, and thus "was in a position to plead its claims with greater factual detail than is typically accessible to plaintiffs prior to discovery," yet still alleged no facts other than a decline in price to raise a plausible inference that the investment was imprudent, and did not allege that the defendant failed to conduct a reasonable investigation. *Id*. at 709, 722–23, 727.

[16] Defendants' cites purportedly rejecting comparisons to Vanguard funds are inapposite. Doc. 21 at 33–34. Those cases were brought under §36(b) of the Investment Company Act, which does "not permit a compensation agreement to be reviewed in court for 'reasonableness.'" *Jones v. Harris Assocs. L.P*., 559 U.S. 335, 341 (2010). In contrast, ERISA specifically imposes reasonableness tests. 29 U.S.C. §1103(c)(1), §1104(a)(1)(A)(ii), §1108(b)(2).

Cf. Doc. 21 at 33 (citing *Hecker*, 556 F.3d at 586). However, a reasonable evaluation process would at least take into account the relative costs of other available products, such as the Vanguard funds, and the ability to hire sub-advisers directly to invest Plan funds. Numerous courts in other ERISA fiduciary breach cases over excessive mutual fund fees have found allegations less specific than Plaintiffs' sufficient to state a claim.[17]

Using overpriced and poorly-performing funds for the benefits they provided to MassMutual is not "precisely the result one would expect" from a prudent fiduciary acting exclusively for the benefit of plan participants. Cf. *Braden*, 588 F.3d at 597. Therefore, the inference that the process by which Defendants selected and managed funds in the Plan was "tainted by failure of effort, competence, or loyalty", *id.* at 596, is as plausible here as it was in *Braden*.

Defendants' cases are inapposite because they involved challenges to the mere inclusion of mutual funds in a 401(k) plan, and none involved the conflict of interest that comes with investing in the employer's own products and services. Doc. 21 at 33–34 (citing *Tibble*, *Hecker*, *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), and *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)). Each held that the mere fact that a 401(k) plan offered a menu of unaffiliated retail mutual funds, without more, was not enough to state a plausible claim for breach of fiduciary duty. *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 670; *Renfro*, 671 F.3d at 317; *Tibble*, 729 F.3d at 1134.

Here, Plaintiffs do not allege that the mere presence of mutual funds in the Plan menu was

---

[17] See, e.g., *Krueger*, 2012 U.S.Dist.LEXIS 166191 at 30–31, 43–44; *Ruppert v. Principal Life Ins. Co.*, 796 F.Supp.2d 959, 960 (S.D.Iowa 2010); *George v. Kraft Foods Global, Inc.*, 674 F.Supp.2d 1031, 1049 (N.D. Ill. 2009); *Shirk v. Fifth Third Bancorp*, No. 05-49, 2008 U.S.Dist.LEXIS 108089 at 60–61 (S.D.Ohio Sep. 26, 2008); *Martin v. Caterpillar, Inc.*, No. 07-1009, 2008 WL 5082981 at 5 (C.D.Ill. Sep. 25, 2008); *Tibble v. Edison Int'l*, No. 07-5359, Doc. 26 (C.D.Cal. July 16, 2008); *Tussey v. ABB, Inc.*, No. 06-4305, 2008 U.S.Dist.LEXIS 9806 at 27–28 (W.D.Mo. Feb. 11, 2008); *Beesley v. Int'l Paper Co.*, No. 06-703, 2007 U.S.Dist.LEXIS 62534 (S.D.Ill. Aug. 24, 2007); *Kanawi v. Bechtel Corp.*, No. 06-5566, 2007 U.S.Dist.LEXIS 97994 (N.D.Cal. May 15, 2007).

imprudent. Instead, the imprudence was the use of MassMutual's excessive-cost and poorly performing proprietary funds to benefit themselves at the expense of participants despite the ready availability of better options, while failing to even consider alternatives. Defendants' cases also did not involve claims of self-dealing. In fact, *Loomis* and *Renfro* both specifically note that there had been no allegation that the fiduciary selected the funds to enrich itself at participants' expense. *Loomis*, 658 F.3d at 671; *Renfro*, 671 F.3d at 327 ("plaintiffs have not contended there was any sort of concealed kickback scheme relating to fee payments made to the directed trustee as the quid pro quo for inclusion of particular unaffiliated mutual funds"); cf. *Braden*, 588 F.3d at 596 (reversing dismissal where "[t]he complaint alleges, moreover, that these options were chosen to benefit the trustee at the expense of the participants.").[18]

## VI. Plaintiffs state prohibited transaction claims (Counts III and IV).

To state a claim of prohibited transactions under ERISA, a plaintiff need only allege facts that show a violation of the terms of §1106. *Braden*, 588 F.3d at 601. That "shift[s] the burden" to Defendants to prove that the transaction is exempt under 29 U.S.C. §1108. *Id.*; see also *Ruppert*, 796 F.Supp.2d at 973 (*Braden* applies to both §1106(a) and §1106(b)).

Defendants do not challenge whether Plaintiffs have alleged facts supporting a prima facie case of prohibited transactions under §1106. Defendants argue only that "Plaintiffs fail to plead" that its claimed exemptions "do *not* apply." Doc. 21 at 37–38. "[T]he statutory exemptions established by §1108 are defenses which must be proven by the defendant." *Braden*, 588 F.3d at 601 (citation omitted). "[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised." *Id*. at 601 n.10 (citations omitted); *Bock*, 549 U.S. at 216. The facts regarding

---

[18] See *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11-5127, 2012 U.S.Dist.LEXIS 29718 at 8–10 (S.D.N.Y. Mar. 6, 2012)("allegations of self-dealing are what set apart judicial decisions in *Young* and *Hecker*, where the courts concluded that the plaintiff had not stated a claim, from those in *Leber* and *Braden*, where the courts allowed the plaintiffs' claims to go forward.").

Defendants' affirmative defense are in their possession. "It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts that remain in the control of the parties who stand accused of wrongdoing." *Id*. at 602 (citing *Lowen*, 829 F.2d at 1215).

For their contrary argument, Defendants rely on two district court decisions. Doc. 21 at 38 (citing *Mehling v. N.Y. Life Ins. Co*., 163 F.Supp.2d 502 (E.D.Pa. 2001), and *Leber*, 2010 U.S.Dist.LEXIS 25097). *Mehling* "contains no reasoning that might persuade this Court to depart from the well-reasoned precedent, acknowledged by Defendants, that §1108 provides an affirmative defense, with the burden of evidence upon the Defendants." *Goldenberg v. Indel, Inc*., 741 F.Supp.2d 618, 632 (D.N.J. 2010). *Leber* recognizes that the fiduciary has the burden of proving an exemption applies to §1106(b)(3) allegations. 2010 U.S.Dist.LEXIS 25097 at 29 (citing *Lowen*, 829 F.2d at 1215). Plaintiffs allege that Defendants violated §1106(b)(3) by receiving consideration for their own account. Doc. 1 at ¶155; 29 U.S.C. §1106(b)(3).

Even if Plaintiffs were required to anticipate these defenses, Plaintiffs' allegations undermine the exemptions. Plaintiffs allege that the Plan paid amounts far in excess of "adequate compensation" for investment and administrative services under the GAC, including $5 million to MassMutual in one year alone. Doc. 1 ¶¶53–65, 68, 74–79, 88–90; cf. 29 U.S.C. §1108(b)(5). Assuming the SIAs are even "mutual funds" under PTE 77-3 (which Defendants do not demonstrate), allegations that defendants "engaged in self-interested transactions, profited from the management of Plan assets to the detriment of the Plan, its participants, and beneficiaries, and entered into agreements under which the Plan paid unreasonable fees and expenses" defeat the PTE 77-3 exemption at the pleading stage. *Shirk*, 2008 U.S.Dist.LEXIS 108089 at 45–46.

**VII. The complaint plausibly alleges the liability of each Defendant.**

    **A. CEOs**

Executives who select and retain "their close business associates as plan administrators" have

a duty to monitor the administrators' actions, and cannot "abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management" of the plan. *Leigh*, 727 F.2d at 134–35; 29 C.F.R. §2509.75-8 (D4 and FR-17); 29 U.S.C. §1105(a)(2) (a fiduciary is liable if by failure to comply with duties of prudence and loyalty "he has enabled such other fiduciary to commit a breach"). While Counts I–V assert liability against all Defendants, Count VI asserts an additional basis for liability against MassMutual and its CEOs Roger Crandall, Stuart H. Reese, and Robert O'Connell, for failure to adequately monitor other fiduciaries they appointed. Doc. 1 ¶¶173–80.

Defendants assert the complaint inadequately alleges that the CEOs have discretionary authority as to the conduct described in Counts I–V or that they failed to properly monitor the fiduciary Committees. Doc. 21 at 40–41. Plaintiffs cannot reasonably be expected to plead specific facts about the actual fiduciary process, because they are not privy to that information. *Braden*, 588 F.3d at 595–96.

> [T]he manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case.

*Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D.Mich. 2003).

In any event, Plaintiffs have plausibly alleged that the CEOs exercised discretionary authority or control over the Plan. 29 U.S.C. §1002(21)(A)(i), (iii). The CEO is a fiduciary with respect to the appointment of the Investment Fiduciary and the Plan Administrator. Doc. 1 ¶¶38, 42, 54; Doc. 22-2 at 35 (§4.01(b)(1)), 67 (§10.01); *Leigh*, 727 F.2d at 134. The fiduciary committees consist of the CEOs' close business associates—other MassMutual executives. Doc. 1 ¶¶43, 45; Doc. 22-2 at 35 (§4.01(b)(2)). The CEO also exercised *de facto* control over Plan management through the GAC, which prohibited any "change in Plan operation," including as to

"any Plan investment fund or any change in administrative procedures" that might have an "adverse effect" on MassMutual's "financial experience" (i.e., lower its fees), unless MassMutual (through its CEO) approved the change. Doc. 1 ¶11; Doc. 22-5 at 16 (§6.02). And even though the Plan required the Investment Fiduciary to designate and modify investments (Doc. 22-2 at 35, §4.02), the IPS states that it merely makes recommendations to be approved by "*the Company*[.]" Doc. 22-14 at 4 (¶3.1(c)). The CEOs signed off on this procedure. *Id.* at 10.

Plaintiffs have also plausibly alleged a failure to prudently monitor. While the CEOs "were not obliged to examine every action taken" by their appointees, they "were obliged to take prudent and reasonable action to determine whether the administrators were fulfilling their fiduciary obligations." *Leigh*, 727 F.2d at 135. A prudent monitoring process would have revealed that the other Defendants were managing the Plan in a manner that benefited the Company at the expense of participants and had failed to take appropriate action to prevent excessive fees and to address the poor performance of Plan investments. Unlike *In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d 861, 904 (S.D. Tex. 2004), where the plaintiffs had not alleged "that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause", here that would have been readily apparent—if the CEOs had taken reasonable action to make that determination. *Leigh*, 727 F.2d at 135. Thus, Plaintiffs have plausibly alleged a failure to monitor against the CEO Defendants.[19]

**B. Elaine Sarsynski**

Elaine Sarsynski is "Head of Retirement Services", the MassMutual department responsible for the Plan's recordkeeping. Doc. 1 ¶47; Doc. 22-1 at 25.[20] The recordkeeping fee varied by

---

[19] Although O'Connell was ousted in 2005, Plaintiffs' allegations plausibly show that he remains liable for the breaches under his regime that Defendants fraudulently concealed. Doc. 1 ¶¶100–04.

[20] http://www.linkedin.com/pub/elaine-sarsynski/2a/696/31.

fund. Doc. 1 ¶68. It is a reasonable inference that as head of the department, Sarsynski would exercise discretionary authority or control over any "change in Plan operation", "investment fund[s]", or "administrative procedures" that might affect her department's "financial experience", meaning she could unilaterally control MassMutual's compensation from the Plan. Doc. 1 ¶11; Doc. 22-5 at 16 (§6.02). She also signed off on the IPS, providing that "the Company" must approve investment changes, and it is reasonable to infer that the department head exercised discretionary control in the approval process. Doc. 22-14 at 4 (¶3.1(c)), 10.

### C. MassMutual.

MassMutual exercised fiduciary discretion by unilaterally setting the crediting rate on the FIA and deducting fees at its discretion from the SIAs. Doc. 1 ¶¶10, 56, 57; Doc. 22-5 at 26, 30 (§§S1.03(C), (D)); see *Mogel v. UNUM Life Ins. Co. of Am.*, 547 F.3d 23, 27 (1st Cir. 2008). Moreover, "the Company" approves the Investment Fiduciary's investment recommendations under the IPS. Doc. 22-14 at 4 (¶3.1(c)). It is also responsible for the fiduciary acts of its executives. See *Hamilton v. Carell*, 243 F.3d 992, 1002–03 (6th Cir. 2001); *Howell*, 633 F.3d at 563–64 (assuming without deciding that company is a fiduciary based on the Board's role in appointing administrators to Committee). Thus, MassMutual exercised discretionary control or authority as to Plan administration and the management of its assets, and is properly joined herein as a Plan fiduciary. 29 U.S.C. §1002(21)(A)(i).

### CONCLUSION

For these reasons, the motion to dismiss should be denied.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs believe that oral argument may assist the Court and request that the Court set this matter for oral argument.

Dated: March 14, 2014                    Respectfully submitted,

                                         /s/ Jerome J. Schlichter
                                         Jerome J. Schlichter (admitted *pro hac vice*)
                                         Michael A. Wolff (admitted *pro hac vice*)
                                         Troy A. Doles (admitted *pro hac vice*)
                                         Heather Lea (admitted *pro hac vice*)
                                         Mark G. Boyko (admitted *pro hac vice*)
                                         SCHLICHTER BOGARD & DENTON LLP
                                         100 South Forth Street, Suite 900
                                         St. Louis, MO, 63102
                                         (314) 621-6115
                                         (314) 621-7151 (fax)
                                         jschlichter@uselaws.com
                                         mwolff@uselaws.com
                                         tdoles@uselaws.com
                                         hlea@uselaws.com
                                         mboyko@uselaws.com

                                         *Lead Counsel for Plaintiffs*

                                         Stephen Churchill, BBO#564158
                                         Hillary Schwab, BBO#666029
                                         FAIR WORK, P.C.
                                         192 South Street, Suite 450
                                         Boston, MA 02111
                                         (617) 607-3260
                                         (617) 488-2261 (fax)
                                         steve@fairworklaw.com

                                         *Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2014.

                                         /s/ Jerome J. Schlichter