UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS GORDAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE CO., et al.,<br><br>Defendants. | No. 13-CV-30184-MAP<br><br>Leave to file granted on June 11, 2015 (Doc. 72) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO RENEWED MOTION TO DISMISS**

SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter*
Michael A. Wolff*
100 South Forth Street
St. Louis, MO, 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
mwolff@uselaws.com
*admitted *pro hac vice*

*Lead Counsel for Plaintiffs*

FAIR WORK, P.C.
Stephen Churchill, BBO#564158
Hillary Schwab, BBO#666029
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com

*Local Counsel for Plaintiffs*

# CONTENTS


Contents ..... i

Authorities ..... ii

Argument ..... 1

I. Standard of review ..... 2

II. ERISA's fiduciary duties. ..... 4

III. Plaintiffs' allegations of fiduciary breaches and prohibited transactions. ..... 7

IV. Plaintiffs state valid claims for breach of fiduciary duties. ..... 12

A. Defendants' argument against the sufficiency of Count I and II fail. ..... 13

1. Plan recordkeeping fees (Count I). ..... 13

2. The SIAs (Count II). ..... 14

3. The Fixed Interest Account (FIA) (Count II). ..... 19

B. Plaintiffs state prohibited transaction claims (Counts III and IV). ..... 22

C. Defendants violated the Plan document (Count V) ..... 24

V. ERISA's statute of limitations does not bar Plaintiffs' claims. ..... 25

A. The three-year limitation is inapplicable. 29 U.S.C. §1113(2). ..... 25

B. The six-year limitation is inapplicable. 29 U.S.C. §1113(1). ..... 27

C. Plaintiffs have sufficiently pleaded fraudulent concealment. ..... 31

VI. The complaint plausibly alleges the liability of each Defendant. ..... 32

A. CEOs ..... 32

B. Elaine Sarsynski ..... 34

C. MassMutual. ..... 34

Conclusion ..... 35

Request for Oral Argument ..... 35

## AUTHORITIES

### Cases

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2009 U.S.Dist.LEXIS 26878 (S.D.Ill. Mar. 31, 2009) ....................................... 27

*Amalgamated Clothing & Textile Workers Union v. Murdock*,
861 F.2d 1406 (9th Cir. 1988)................................................................................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................... 2, 15, 18, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 2

*Braden v. Wal-Mart, Inc.*,
588 F.3d 585 (8th Cir. 2009)................................ 3, 4, 5, 12, 13, 15, 16, 18, 19, 21, 22, 23, 32

*Brock v. Nellis*,
809 F.2d 753 (11th Cir. 1987).................................................................................. 26

*Brown v. Am. Life Holdings, Inc.*,
190 F.3d 856 (8th Cir. 1999)............................................................................ 25, 27

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000)..................................................................................... 5

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001)..................................................................................... 27

*Cardigan Mt. Sch. v. N.H. Ins. Co.*,
787 F.3d 82 (1st Cir. 2015)........................................................................................ 2

*Cataldo v. U.S. Steel Corp.*,
676 F.3d 542 (6th Cir. 2012).................................................................................... 32

*Cent. States, SE & SW Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 570 (1985)................................................................................................ 4

*CIGNA Corp. v. Amara*,
563 U.S. ___, 131 S.Ct. 1866 (2011).......................................................................... 29

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013).................................................................................... 29

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007)................................................................................ 6, 20

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982).................................................................................... 4, 5

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983).................................................................................. 29

*Eaves v. Penn*,
587 F.2d 453 (10th Cir. 1978)........................................................................................ 17

*Edes v. Verizon Communs.*,
417 F.3d 133 (1st Cir. 2005)........................................................................................... 27

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013)............................................................................................ 21

*Epstein v. C.R. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006)........................................................................................... 32

*Fifth Third Bancorp v. Dudenhoeffer*,
134 S.Ct. 2459 (2014)................................................................................... 4, 16, 28, 30

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006)............................................................................................ 25

*Fuller v. SunTrust Banks, Inc.*,
744 F.3d 685 (11th Cir. 2014)..................................................................................... 26, 27

*García-Catalán v. United States*,
734 F.3d 100 (1st Cir. 2013)................................................................................ 2, 3, 12, 15

*George v. Kraft Foods Global, Inc.*,
641 F.3d 786 (7th Cir. 2011)...................................................................................... 17, 30

*George v. Kraft Foods Global, Inc.*,
674 F.Supp.2d 1031 (N.D. Ill. 2009)...................................................................... 13, 27, 31

*Gipson v. Wells Fargo & Co.*,
No. 08-4546, 2009 U.S.Dist.LEXIS 20740 (D.Minn. Mar. 13, 2009).................................... 15

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
931 F.Supp.2d 296 (D.Mass. 2013)........................................................................................ 4

*Goldenberg v. Indel, Inc.*,
741 F.Supp.2d 618 (D.N.J. 2010)....................................................................................... 23

*Grajales v. P.R. Ports Auth.*,
682 F.3d 40 (1st Cir. 2012)................................................................................................. 3

*Hamilton v. Carell*,
243 F.3d 992 (6th Cir. 2001)............................................................................................ 35

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000)...................................................................................................... 6, 29

*Harris v. Koenig*,
815 F.Supp.2d 26 (D.D.C. 2011)....................................................................................... 17

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009)................................................................................ 14, 15, 16

*Hoppe v. SmithKline Beecham Corp.*,
437 F.Supp.2d 331 (E.D.Pa. 2006) ........................................................................ 31

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996)................................................................................ 5

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011)........................................................................ 5, 30, 35

*In re Citigroup Erisa Litig.*,
No. 11-7672, 2015 U.S.Dist.LEXIS 63460 (S.D.N.Y. May 13, 2015) ................................. 26

*In re Dynegy, Inc. ERISA Litig.*,
309 F.Supp.2d 861 (S.D. Tex. 2004) ....................................................................... 34

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
286 F.R.D. 155 (D. Mass. 2012) ............................................................................ 21

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
No. 11-2208-MAP, Doc. 205 (D.Mass. Nov. 22, 2013) ........................................... 21

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996)................................................................ 17, 19, 20, 21

*Int'l Bhd. of Teamsters Local No. 710 Pension Fund v. Bank of N.Y. Mellon Corp.*,
No. 13-1844, 2014 U.S.Dist.LEXIS 15246 (N.D.Ill. Feb. 6, 2014) ...................................... 13

*J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*,
76 F.3d 1245 (1st Cir. 1996) ................................................................................ 31

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
510 U.S. 86 (1993)............................................................................................. 22

*Jones v. Bock*,
549 U.S. 199 (2007)...................................................................................... 22, 25

*Jones v. Harris Assocs. L.P.*,
559 U.S. 335 (2010)............................................................................................ 16

*Kanawi v. Bechtel Corp.*,
590 F.Supp.2d 1213 (N.D.Cal. 2008) ..................................................................... 27

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-2781, 2012 U.S.Dist.LEXIS 166191 (D.Minn. Nov. 20, 2012) ........................... 13, 17

*Kuper v. Iovenko*,
66 F.3d 1447 (6th Cir. 1995)................................................................................... 5

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc.*,710 F.3d 57 (2d Cir. 2013)........................................................................... 26

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
No. 11-5127, 2012 U.S.Dist.LEXIS 29718 (S.D.N.Y. Mar. 6, 2012) .................................... 15

*Langbecker v. Elec. Data Sys. Corp.*,
476 F.3d 299 (5th Cir. 2007)........................................................................................ 20

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
No. 07-9329, 2014 U.S.Dist.LEXIS 139001 (S.D.N.Y. Sep. 30, 2014)................................. 27

*Leber v. Citigroup, Inc.*,
No. 07-9329, 2010 U.S.Dist.LEXIS 25097 (S.D.N.Y. Mar. 16, 2010) ................ 16, 19, 23, 30

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984).............................................................. 5, 6, 21, 32, 33, 34

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011)........................................................................................ 14

*Lowen v. Tower Asset Mgmt., Inc.*,
829 F.2d 1209 (2d Cir. 1987)...................................................................................... 6, 23

*Maher v. Strachan Shipping Co.*,
68 F.3d 951 (5th Cir. 1995).......................................................................................... 26

*Martin v. Consultants & Adm'rs, Inc.*,
966 F.2d 1078 (7th Cir. 1992)................................................................................. 27, 31

*Mass. Mutual Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ........................................................................................................ 7

*Mehling v. N.Y. Life Ins. Co.*,
163 F.Supp.2d 502 (E.D.Pa. 2001) ............................................................................... 23

*Menard v. CSX Transp., Inc.*,
698 F.3d 40 (1st Cir. 2012) .............................................................................................. 3

*Merrimon v. Unum Life Ins. Co. of Am.*,
No. 10–447, 2013 U.S.Dist.LEXIS 129619 (D.Me. Sept. 9, 2013).................................. 21, 22

*Merrimon v. Unum Life Ins. Co. of Am.*,
No. 10–447, 2013 U.S.Dist.LEXIS 129618 (D.Me. Sept. 11, 2013)...................................... 21

*Mogel v. UNUM Life Ins. Co. of Am.*,
547 F.3d 23 (1st Cir. 2008) ........................................................................................... 34

*Musto v. Am. Gen. Corp.*,
615 F.Supp. 1483 (M.D.Tenn. 1985) ............................................................................. 17

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
709 F.3d 109 (2d Cir. 2013)............................................................................................. 3

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ........................................................................................................ 5

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013)..................................................................................... 12, 18

*Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*,
698 F.2d 320 (7th Cir. 1983)........................................................................................ 22

*Phillips v. Prudential Ins. Co. of Am.*,
714 F.3d 1017 (7th Cir. 2013)...................................................................................... 10

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
722 F.3d 861 (6th Cir. 2013)........................................................................................ 5

*Puritan Med. Ctr. v. Cashman*,
596 N.E.2d 1004 (Mass. 1992) .................................................................................... 32

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
919 F.2d 1216 (7th Cir. 1990)...................................................................................... 26

*Rankin v. Rots*,
278 F.Supp.2d 853 (E.D.Mich. 2003)......................................................................... 33

*Reich v. Compton*,
57 F.3d 270 (3d Cir. 1995)............................................................................................ 6

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)......................................................................................... 14

*Rodi v. S. New England Sch. of Law*,
389 F.3d 5 (1st Cir. 2004) ...................................................................................... 25, 30

*Romero v. Allstate Corp.*,
404 F.3d 212 (3d Cir. 2005)......................................................................................... 27

*Ruppert v. Principal Life Ins. Co.*,
796 F.Supp.2d 959 (S.D.Iowa 2010)...................................................................... 13, 22

*Shirk v. Fifth Third Bancorp*,
No. 05-049, 2008 U.S.Dist.LEXIS 108089 (S.D.Ohio Sept. 26, 2008). ................................ 24

*Skin Pathology Assocs. v. Morgan Stanley & Co.*,
27 F.Supp.3d 371 (S.D.N.Y. 2014)............................................................................. 23

*Stargel v. SunTrust Banks, Inc.*,
No. 14-13207, 2015 U.S.App.LEXIS 11187 (11th Cir. June 30, 2015)................................. 26

*Tibble v. Edison Int'l*,
135 S.Ct. 1823 (2015) ........................................................................... 19, 27, 28, 29

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013), vacated 135 S.Ct. 1823 (2015)....................................... 16, 25

*Waller v. Blue Cross of Cal.*,
32 F.3d 1337 (9th Cir. 1994)........................................................................................ 25

*Watson v. Consol. Edison of N.Y.*,
594 F.Supp.2d 399 (S.D.N.Y. 2009)............................................................................ 32

*Westoak Realty & Inv. Co. v. C.I.R.*,
999 F.2d 308 (8th Cir. 1993)........................................................................................ 6

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2013)...................................................................................... 29

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
550 F.Supp.2d 416 (S.D.N.Y. 2008), aff'd on other grounds, 325 F.Appx. 31 (2009) ........... 27

**Statutes**

29 U.S.C. §1001(a) ........................................................................................ 4

29 U.S.C. §1001(b) ........................................................................................ 4

29 U.S.C. §1002(14)(C)........................................................................................ 7

29 U.S.C. §1002(16)(B)........................................................................................ 7

29 U.S.C. §1002(16)(G)........................................................................................ 7

29 U.S.C. §1002(2) ........................................................................................ 7

29 U.S.C. §1002(21)(A)(i)........................................................................................ 33, 35

29 U.S.C. §1002(21)(A)(iii)........................................................................................ 33

29 U.S.C. §1002(34) ........................................................................................ 7

29 U.S.C. §1101(b)(2) ........................................................................................ 22

29 U.S.C. §1102(a) ........................................................................................ 7

29 U.S.C. §1103(c)(1)........................................................................................ 16

29 U.S.C. §1104(a)(1)........................................................................................ 1, 4, 17, 28

29 U.S.C. §1104(a)(1)(A) ........................................................................................ 1, 4, 11, 28

29 U.S.C. §1104(a)(1)(A)(ii) ........................................................................................ 16

29 U.S.C. §1104(a)(1)(B) ........................................................................................ 1, 4, 11, 27, 29

29 U.S.C. §1104(a)(1)(D) ........................................................................................ 4, 6, 11, 17, 24, 25, 28, 30

29 U.S.C. §1105(a)(2)........................................................................................ 32

29 U.S.C. §1106........................................................................................ 6

29 U.S.C. §1106(a) ........................................................................................ 11

29 U.S.C. §1106(a)(1)(C) ........................................................................................ 6

29 U.S.C. §1106(a)(1)(C)–(D)........................................................................................ 11

29 U.S.C. §1106(a)(1)(D) ........................................................................................ 6

29 U.S.C. §1106(b)........................................................................................ 6, 11

29 U.S.C. §1106(b)(3) ........................................................................................ 23

29 U.S.C. §1108(b)(2) .......... 16

29 U.S.C. §1108(b)(5) .......... 17, 23

29 U.S.C. §1109(a) .......... 7, 11, 12, 21

29 U.S.C. §1113 .......... 31

29 U.S.C. §1113(1)(B) .......... 30

29 U.S.C. §1132(a)(2) .......... 7, 12

29 U.S.C. §1132(a)(3) .......... 12

**Rules**

Fed.R.Civ.P. 8(a)(2) .......... 2

**Regulations**

29 C.F.R. §2509.75-8 .......... 32

42 Fed.Reg. 18734 (Apr. 8, 1977) .......... 17

**Other Authorities**

Douglas G. Prince, *Testimony Before ERISA Advisory Council* (Sept. 16, 2009), http://www.procourseadv.com/wp-content/uploads/2013/02/ERISA-Advisory-Council-remarks_3_.pdf .......... 10

Eleanor Laise, *Stable Funds are Looking Shakier*, WALL ST. J. (May 1, 2010), http://online.wsj.com/news/articles/SB10001424052748703572504575214723494032604 .......... 11

H.R. REP. No. 93-1280 (1974) .......... 6

Nat'l Ass'n of Govt. Defined Contribution Administrators, Inc., *What Plan Sponsors Should Know About Stable Value Funds* (2010), https://web.archive.org/web/20130531224849/http://www.nagdca.org/documents/StableValueFunds.pdf .......... 10

Robert A. Rosenblatt, *Insurer's Failure Ensnares Thousands of Casualties*, L.A. TIMES (May 17, 1991), http://articles.latimes.com/1991-05-17/news/mn-1874_1_executive-life .......... 11

Standard & Poor's, *What May Cause Insurance Companies To Fail—And How This Influences Our Criteria*, (June 13, 2013), http://www.standardandpoors.com/spf/upload/Ratings_EMEA/2013-06-13_WhatMayCauseInsuranceCompaniesToFail.pdf .......... 11

Virginia Munger Kahn, *In Search of Stable Value, Part One*, BUS. FIN. (Oct. 1, 1997), http://businessfinancemag.com/print/hr/search-stable-value-part-one .......... 11

W. Scott Simon, *Fiduciary Questions in the MassMutual Case, Part Two*, MORNINGSTAR (Jan. 2, 2014), http://www.morningstar.com/advisor/t/85622713/fiduciary-questions-in-the-massmutual-case-part-two.htm .......... 20

W. Scott Simon, *The Fine Print on Stable Value Funds*, MORNINGSTAR (Oct. 4, 2012), http://www.morningstar.com/advisor/t/64300545/the-fine-print-on-stable-value-funds.htm ........................................................................................................................ 11

## ARGUMENT

Massachusetts Mutual Life Insurance Co. (MassMutual), through its executives named as Defendants in this case, managed its employees' 401(k) plan to benefit itself at the expense of its employees. While financial services companies can use their own products as plan investments and to provide plan services, they cannot do so to profit themselves at their employees' expense. ERISA imposes strict duties upon fiduciaries tempted by that conflict. They must act "*solely* in the interest of the participants and beneficiaries" and "for the *exclusive* purpose of providing benefits to participants and their beneficiaries and defraying *reasonable* expenses of administering the plan[.]" 29 U.S.C. §1104(a)(1)(A)(emphasis added). They must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B). Those duties apply even though the use of employer investments and services may be exempted from ERISA's prohibited transactions in certain cases, and these conflicted transactions are exempted from the prohibited transaction rules *only* if the arrangements are reasonable for the employees. Plaintiffs plausibly allege that Defendants breached their duty by imposing unreasonable expenses on Plaintiffs' Plan and providing imprudent and disloyal investments to enrich MassMutual.

The weakness of Defendants' arguments for dismissal is shown by their distortion of the record. Plaintiffs did not say that they should be allowed to pursue their claims merely because "MassMutual has lots of money[.]" Cf. Doc. 74 at 10 (Mem. 1).[1] Defendants misleadingly (and selectively) quote the transcript of the hearing on their first motion to dismiss. When the Court asked whether it should stay this case pending the Supreme Court's decision in *Tibble*, Plaintiffs pointed out a stay would be unfair to the plaintiffs because they would be deprived of even

[1] All "Doc." page references are to the ECF header page numbers.

limited discovery on their fiduciary breach claims (already pending for nearly a year) to find out why Defendants are providing them what appear to be unreasonably expensive and inappropriate investments and services. Doc. 64 at 24:1–34:1, 34:9–22. In contrast to that prejudice, Plaintiffs pointed out that at most MassMutual would suffer a relatively insignificant expense if it provided initial discovery in a case that had a slight possibility of being mooted by *Tibble*. *Id.* at 34:2–22.

This is not a strike suit. Plaintiffs plausibly allege that Defendants have abused their employees' retirement plan to enrich MassMutual through investment management fees and revenue-sharing administrative expenses that are excessive and contrary to Plan terms, investments that pale in comparison to non-proprietary alternatives, and a fixed income account that was unduly risky, all in breach of ERISA's strict fiduciary duties. The Court should deny Defendants' second motion to dismiss and allow Plaintiffs—finally, after almost two years now—to discover what, if any, explanation Defendants have for committing what appear at this point to be clear fiduciary breaches.

## I. Standard of review.

A complaint need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Cardigan Mt. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)(citing *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) and Fed.R.Civ.P. 8(a)(2)). A complaint meets that standard when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations." *Id*. (citation omitted). Nor does the complaint have to demonstrate that Plaintiffs are likely to prevail on their claims. *Cardigan*, 787

F.3d at 84. The court “accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader’s favor.” *Grajales v. P.R. Ports Auth*., 682 F.3d 40, 44 (1st Cir. 2012). The complaint must be read as a whole, the plausibility standard should not be applied “mechanically”, and the Court must “draw on its judicial experience and common sense.” *García-Catalán*, 734 F.3d at 103. When “[c]ommon sense suggests” the defendant is liable for the alleged misconduct, and that “modest discovery may provide the missing link” that will allow the plaintiff to go to trial, dismissal is improper. *Id.* at 103, 105 (citation omitted). A complaint does not have to “rebut all possible lawful explanations for a defendant’s conduct.” *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Further, “a reasonable inference need not be ‘as compelling as any opposing inference’ one might draw from the same factual allegations” to survive a motion to dismiss. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 121 (2d Cir. 2013).

“‘[S]ome latitude may be appropriate’” in applying the plausibility standard when “a material part of the information needed is likely to be within the defendant’s control” and “it cannot reasonably be expected” that the plaintiff would have access to certain factual details without the benefit of discovery. *García-Catalán*, 734 F.3d at 104 (quoting *Menard v. CSX Transp., Inc*., 698 F.3d 40, 45 (1st Cir. 2012)). This principle applies to ERISA fiduciary breach cases such as this. Courts “must be cognizant of the practical context of ERISA litigation.” *Braden*, 588 F.3d at 598.

> No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

*Id.* Granting latitude regarding the specificity of pleadings is particularly important in ERISA fiduciary breach litigation because the U.S. Secretary of Labor "depends in part on private litigation to ensure compliance" with ERISA and thus opposes "unnecessarily high pleading standards" in ERISA cases. *Id.* at 597 n.8.

**II. ERISA's fiduciary duties.**

ERISA protects the "financial soundness" of retirement plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. §1001(a), (b). ERISA imposes "strict standards of trustee conduct ... derived from the common law of trusts[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459, 2465 (2014)(quoting *Cent. States, SE & SW Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)); 29 U.S.C. §1104(a)(1). "ERISA imposes upon fiduciaries twin duties of loyalty and prudence, requiring them to act 'solely in the interest of [plan] participants and beneficiaries' and to carry out their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Braden*, 588 F.3d at 595 (quoting 29 U.S.C. §1104(a)(1)(A) and (B)). Fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" other ERISA provisions. 29 U.S.C. §1104(a)(1)(D). ERISA's fiduciary obligations are "the highest known to the law." *Braden*, 588 F.3d at 598 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 931 F.Supp.2d 296, 304 (D.Mass. 2013). These strict duties "necessarily require[] that an ERISA fiduciary not use plan assets for its own purposes."

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 869 (6th Cir. 2013).

An ERISA fiduciary must "exclude all selfish interest and all consideration of the interests of third persons[.]" *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000). All "decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995)(quoting *Bierwirth*, 680 F.2d at 271). "Self-dealing, conflicts of interest, or even divided loyalties are inconsistent with fiduciary responsibilities." *Howell v. Motorola, Inc*., 633 F.3d 552, 566 (7th Cir. 2011).

While ERISA does not prohibit an employer's corporate officers from serving as plan fiduciaries—in that sense wearing two hats—it does require that the officer "wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225. Corporate officers must "avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." *Bierwirth*, 680 F.2d at 271. "The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Bussian v. RJR Nabisco, Inc*., 223 F.3d 286, 299 (5th Cir. 2000). "When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an *intensive and scrupulous independent investigation* of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard v. Shay*, 100 F.3d 1484, 1488–89 (9th Cir. 1996)(emphasis added, quoting *Leigh v. Engle*, 727 F.2d 113, 125–26 (7th Cir. 1984)).

An ERISA fiduciary has "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion" to plan participants. *Kuper*, 66 F.3d at 1458 (internal quotation marks and citation omitted); see also *Braden*, 588 F.3d at 595. If the terms of

the plan further restrict the fiduciary's actions, the fiduciary must follow those terms. 29 U.S.C. §1104(a)(1)(D). Whether a fiduciary has breached that duty depends on "the totality of the circumstances[.]" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007).

Certain transactions are prohibited *per se*. 29 U.S.C. §1106. Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries … by categorically barring certain transactions deemed likely to injure the pension plan." *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000)(citation omitted). "Congress replaced the 'arm's-length' standard with a per se rule to 'substantially strengthen' the laws governing prohibited transactions." *Westoak Realty & Inv. Co. v. C.I.R.*, 999 F.2d 308, 310 (8th Cir. 1993)(citations omitted).

Section 1106(a) bars transactions between a plan and a party in interest, including transactions involving the "furnishing of goods, services, or facilities" and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. §1106(a)(1)(C), (D). Section 1106(b) bars transactions between a plan and its fiduciaries, as such transactions may involve self-dealing. 29 U.S.C. §1106(b). The purpose of §1106(b) is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995)(quoting H.R. REP. No. 93-1280 (1974)). Given "Congress' overriding concern with the protection of plan beneficiaries," the prohibitions of §1106 must be read broadly. *Leigh*, 727 F.2d at 126. Good faith is no defense. *Id*. at 124; see also *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987).

A fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which

have been made through use of assets of the plan by the fiduciary[.]" 29 U.S.C. §1109(a). That fiduciary also is "subject to such other equitable or remedial relief as the court may deem appropriate[.]" *Id.* Any participant is authorized to bring an action on behalf of his or her plan to pursue the plan's remedies under §1109(a). 29 U.S.C. §1132(a)(2). Actions under §1132(a)(2) are "brought in a representative capacity on behalf of the plan as a whole" and the remedies under §1109(a) "protect the entire plan[.]" *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985).

**III. Plaintiffs' allegations of fiduciary breaches and prohibited transactions.**

Plaintiffs are current and former participants in the MassMutual Thrift Plan, an ERISA-governed defined contribution plan with over 14,000 participants and $1 billion in assets. Doc. 1 ¶¶1, 18–24, 26–28; 29 U.S.C. §1002(2), (34). Plaintiffs bring this action in a representative capacity on behalf of the Plan to recover the Plan's losses and any ill-gotten profits resulting from the alleged fiduciary breaches. Doc. 1 ¶¶13–14, 25, 105–08.

MassMutual is the Plan sponsor and a party in interest because its employees are covered by the Plan. 29 U.S.C. §1002(16)(B) & (G), §1002(14)(C); Doc. 1 ¶34. MassMutual primarily does business through its unincorporated operating divisions, including its Retirement Services division. Doc. 1 ¶32. MassMutual is the recordkeeper and an investment manager to the Plan. *Id*. ¶35. The Plan has two named fiduciaries: the Plan Administrative Committee and the Investment Fiduciary Committee. *Id.* ¶¶43–46; 29 U.S.C. §1102(a). MassMutual's CEO is the primary fiduciary to the Plan and is responsible for appointing MassMutual officers to both committees. Doc. 1 ¶¶38, 42–43, 45. The Administrative Committee is responsible for Plan administration, contracting with service providers, and participant communications. *Id*. ¶44. The Investment Committee is responsible for Plan investments. *Id*. ¶46. MassMutual officers are responsible for providing the Plan's investment options and hiring service providers. *Id*. ¶¶36–37. MassMutual's

CEO also sets the terms of and enters into a MassMutual Group Annuity Contract (GAC) for the Plan. *Id*. ¶¶4, 42. MassMutual executed the GAC both for the Plan and for its own benefit. Doc. 75-4 at 2.

As detailed below, Plaintiffs allege that Defendants breached their duty in three respects: (1) causing the Plan to pay excessive administrative expenses through asset-based investment fees and in violation of the Plan; (2) providing unduly expensive and poor-performing proprietary investment options; and (3) providing a fixed income investment option that was unduly risky and expensive.

1. MassMutual performed all Plan administrative duties, including recordkeeping of participant accounts. Doc. 1 ¶¶8, 52; Doc. 75-1 at 68 (§10.03). The Plan requires that "all expenses of establishing and administering the Plan including expenses with respect to the Group Annuity Contract and the Fixed Income Account Agreement, shall be borne by the Employer as a further contribution to the Plan." Doc. 1 ¶51; Doc. 75-1 at 71 (§10.11(a)). Instead of having MassMutual pay "all expenses" as the Plan required, Defendants caused *the Plan* to pay those expenses. Doc. 1 ¶53. These expenses were deducted from participant investments in the Plan's Fixed Interest Account (FIA) and Separate Investment Accounts (SIAs). *Id.* ¶¶113–18. Those fees were imposed as a percentage of assets. As Plan assets grew over time (due to additional contributions or market returns), the asset-based fees paid to MassMutual correspondingly grew, even though administrative services did not. *Id*. ¶62. From year to year, as Plan assets increased, Defendants failed to monitor the increasing, asset-based recordkeeping fees being diverted to MassMutual to determine whether they were reasonable in light of the services provided to the Plan. *Id*. ¶¶59–63. MassMutual's other retirement plan clients, whose fiduciaries are able to negotiate at arm's length on behalf of their employees, paid far less for similar services. *Id*. ¶64.

MassMutual's defined benefit plan, where its own money is at stake, has fee terms that are much more favorable to the plan. *Id*. ¶58.

2. Defendants had complete discretion over what investments to include in or remove from the Plan. *Id*. ¶46; Doc. 75-1 at 11 (§1.32), 35 (§4.01(b)(1)). Despite the many reasonably priced and well-managed investment options available to large 401(k) plans such as this one, for reasons as yet undisclosed Defendants mostly invested the SIAs in MassMutual mutual funds that were unreasonably priced and poor performers. Doc. 1 ¶¶66–67, 78–81. MassMutual hired sub-advisers to provide the actual investment work in these mutual funds at a small fraction of what MassMutual charged the Plan for investment management fees. *Id.* ¶68.[2] MassMutual could have avoided the mutual fund fee structure and had that sub-adviser manage SIA assets directly at that smaller sub-adviser fee, but that would have brought in less revenue for MassMutual. *Id.* ¶¶75–77. MassMutual provided preferred clients discounts on its usual management fees, but did not provide that discount to its employees. *Id.* ¶¶70–71. Other, non-proprietary investments in the same investment categories were available to the Plan at much lower fees than MassMutual charged. *Id.* ¶¶79–81. For example, MassMutual charged participants twice the fees for its proprietary S&P 500 Index mutual fund than what participants could have paid in Vanguard's S&P 500 Index mutual fund. *Id.* at 25. Since 1998 the DOL has noted that plans with $500 million in assets (this Plan had over twice that) can invest in separate accounts instead of mutual funds and reduce fees by up to 75%. *Id.* ¶¶80–81. Five of the SIA mutual funds themselves had lower-cost share classes in which the Plan could have been invested. Doc. 22-6; Decl. of Kurt Struckhoff ¶¶3–7, exs. 1–5. Defendants kept the proprietary funds in the Plan even though they failed the Plan's Investment Policy Statement criteria. Doc. 75-9 at 9 (§7.1); Doc. 1 ¶¶97–99. As

[2] Defendants even could deduct an additional 4% in fees from the SIAs on top of the underlying mutual fund fees. *Id.* ¶¶56–59; Doc. 75-4 at 30 (§S1.03(C), (D)). They *claim* they haven't and won't do that, but provide nothing to support that claim.

an example of the damage Defendants caused the Plan, had the assets in the Capital Appreciation Fund and Large Cap Value Fund been invested in available prudent alternatives, participants would have earned at least an additional $10 million more in retirement savings. Doc. 1 ¶96.

3. The Fixed Interest Account (FIA) is an investment in MassMutual's general account, a type of investment typically used only in much smaller plans.[3] *Id*. ¶¶82–83; Doc. 75-11 at 34, Doc. 75-7 at 4. The FIA has held up to 40% of Plan assets. Doc. 1 ¶82. MassMutual sets the interest rate on the FIA semi-annually. *Id*. ¶86.[4] Although not disclosed to participants, MassMutual deducts an 85 basis point (bps, 0.85%) "risk charge" and a 30–90 bps recordkeeping charge, for a total fee of 115–175 bps—far in excess of the fees for comparable products. *Id*. ¶88. MassMutual also retains the spread between what the investments in the general account actually earn and the interest rate credited to the Plan, another fact concealed from participants. *Id*. ¶89; see *Phillips v. Prudential Ins. Co. of Am*., 714 F.3d 1017, 1019 (7th Cir. 2013). The spread can significantly exceed the disclosed 115–175 bps fee. Doc. 1 ¶89. MassMutual disclaims any fiduciary responsibility to the participants in its management of the FIA. Struckhoff Decl. ¶17, ex. 15.

The FIA exposes participants to unnecessary, uncompensated risk. The "guaranteed" principal and interest was actually subject to MassMutual's insolvency and the claims of MassMutual's general creditors. Doc. 1 ¶¶84, 90–91. The risk of insurance company insolvency

---

[3] Nat'l Ass'n of Govt. Defined Contribution Adm'rs, Inc., *What Plan Sponsors Should Know About Stable Value Funds* (2010)(general account funds are "most commonly utilized by small and mid-sized plans" and larger plans typically use other types of stable value products), Struckhoff Decl. ¶8, ex. 6; Douglas G. Prince, Testimony Before ERISA Advisory Council (Sept. 16, 2009)("General Accounts are utilized mostly by small plans"; customized accounts "are typically used by larger plan sponsors"), *id.* ¶9, ex. 7.

[4] It does that by focusing on its own return on equity and profits, not participant interests. Struckhoff Decl. ¶16, ex. 14.

is significant.[5] A MassMutual insolvency would be catastrophic for participant retirement savings, especially those who sought what was presented as a low-risk investment. Prudent fiduciaries of large 401(k) plans avoid the risk and hidden fees and spreads of insurance company general accounts by using synthetic guaranteed investment contracts (GICs) as fixed income options, because they are backed by separate accounts with multiple insurance companies and avoid the risk of loss from employer insolvency. *Id.* ¶¶90, 94.[6] Synthetic GICs also pass along the actual performance of the underlying investments and have lower costs and transparent fees. *Id.*

Based on these factual allegations, the complaint asserts seven counts. Count I asserts that Defendants breached 29 U.S.C. §1104(a)(1)(A) & (B) by imposing unreasonable recordkeeping and administrative fees on the Plan. *Id.* ¶¶109–21. Count II asserts that Defendants breached breached 29 U.S.C. §1104(a)(1)(A) & (B) by providing participants excessively expensive and poorly performing investment options. *Id.* ¶¶122–31. Counts III and IV assert these actions constitute prohibited transactions under 29 U.S.C. §1106(a)(1)(C)–(D) and 29 U.S.C. §1106(b), respectively. *Id.* ¶¶132–63. Count V asserts that Defendants breached 29 U.S.C. §1104(a)(1)(D) by violating Plan §10.11(a), which obligated MassMutual to pay all Plan expenses. *Id.* ¶¶164–72. Counts I–V seek to hold Defendants jointly and severally liable for restoring to the Plan the losses caused by those breaches and all profits they gained from the misuse of Plan assets and other appropriate equitable relief under 29 U.S.C. §1109(a). Count VI asserts an additional basis

---

[5] See Eleanor Laise, *Stable Funds are Looking Shakier*, WALL ST. J. (May 1, 2010)("investors are taking on the risk that this single issuer could go belly up"), Struckhoff Decl. ¶10, ex. 8; W. Scott Simon, *The Fine Print on Stable Value Funds*, MORNINGSTAR (Oct. 4, 2012), *id.* ¶11, ex. 9; Robert A. Rosenblatt, *Insurer's Failure Ensnares Thousands of Casualties*, L.A. TIMES (May 17, 1991), *id.* ¶12, ex. 10; Standard & Poor's, *What May Cause Insurance Companies To Fail—And How This Influences Our Criteria*, 4–5 (June 13, 2013)("increased number of insurance company failures" over past 3 decades), *id.* ¶13, ex. 11.

[6] Virginia Munger Kahn, *In Search of Stable Value, Part One*, BUS. FIN. (Oct. 1, 1997), Struckhoff Decl. ¶14, ex. 12.

of liability against MassMutual, Roger Crandall, Stuart H. Reese, and Robert O'Connell, for breach of their fiduciary duty to properly monitor and replace the fiduciaries over whom they had authority or control and who caused losses to the Plan. *Id*. ¶¶173–80. Finally, alternatively or in addition to the remedies under §§1132(a)(2) and 1109(a), Count VII seeks to enjoin further misconduct and to obtain any "other appropriate equitable relief" under 29 U.S.C. §1132(a)(3). *Id*. ¶¶181–98.

## IV. Plaintiffs state valid claims for breach of fiduciary duties.

In contending that the complaint fails to allege any claim of fiduciary breach whatsoever, Defendants rely heavily on non-ERISA cases and completely ignore the Eighth Circuit's admonition in *Braden* that compelling plan participants "make out their claims in detail" with "facts that tend systemically to be in the sole possession of defendants" completely upends the remedial scheme of ERISA. *Braden*, 588 F.3d at 598. They also ignore the well-settled precedent in this Circuit that plaintiffs under such circumstances must be given latitude in the specificity with which they must plead their claims as to information that is "within the defendant's control[.]" *García-Catalán*, 734 F.3d at 104.

In their attempt to avoid those standards, Defendants rely on inapposite and out-of-circuit cases. Cf. Doc. 74 at 19–20 (Mem. 10–11). The lone ERISA case they cite is anomalous. In *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt*., 712 F.3d 705 (2d Cir. 2013), the plaintiff was the plan fiduciary and thus "was in a position to plead its claims with greater factual detail than is typically accessible to plaintiffs prior to discovery[.]" *Id.* at 709. Plaintiffs here are not fiduciaries and do not have that inside access to the particulars of how Defendants breached their duties. The heightened pleading standard imposed in *Pension* itself was controversial, drawing a dissent that pointed out that the majority "ignores the practical reality that plan participants[] often lack access to relevant information and incentivizes fiduciaries to keep their

actions concealed." *Id.* at 734; see also *Int'l Bhd. of Teamsters Local No. 710 Pension Fund v. Bank of N.Y. Mellon Corp.*, No. 13-1844, 2014 U.S.Dist.LEXIS 15246 at 18–19 (N.D.Ill. Feb. 6, 2014)("This Court agrees with the *St. Vincent* dissent that the majority there read *Twombly* and *Iqbal* too strictly and declines to impose a heightened pleading requirement on plaintiffs asserting ERISA imprudence claims[.]").

Under the proper pleading standard for ERISA fiduciary breach cases, as recognized in *Braden*, the overwhelming majority of courts have recognized that allegations of similar specificity to the complaint here state a claim.[7] As detailed above, Plaintiffs allege sufficient circumstantial facts to show that whatever hidden process Defendants engaged in to provide MassMutual excessive compensation through its recordkeeping and investment management fees, it was "tainted by failure of effort, competence, or loyalty[.]" *Braden*, 588 F.3d at 596.

**A. Defendants' arguments against the sufficiency of Count I and II fail.**

**1. Plan recordkeeping fees (Count I).**

Although Defendants throw in a reference to Count I in their argument for the insufficiency of the allegations of Counts I and II (Doc. 74 at 18–25, Mem. 9–16), they do not address Count I's specific allegations of the imprudence and disloyalty of the recordkeeping fees they allowed MassMutual to take from the Plan. They argue only over the comparisons Plaintiffs provide to demonstrate excessive investment management fees (the subject of Count II), contend there is no per se prohibition against proprietary funds and services, and contend underperformance alone does not establish a breach. That does not address Count I. Plaintiffs allege Defendants did not monitor the compensation MassMutual was receiving from Plan investments or assess whether

[7] See, e.g., *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2012 U.S.Dist.LEXIS 166191 at 30–31, 43–44 (D.Minn. Nov. 20, 2012); *Ruppert v. Principal Life Ins. Co.*, 796 F.Supp.2d 959, 960 (S.D.Iowa 2010); *George v. Kraft Foods Global, Inc.*, 674 F.Supp.2d 1031, 1047–49 (N.D. Ill. 2009); Doc. 26 at 39 n.17 (Mem. 30).

the asset-based recordkeeping fees provided only reasonable compensation for the Plan's recordkeeping services, particularly as Plan assets grew over time. Doc. 1 ¶¶59–65. Defendants do not even contend that they ever put the Plan's recordkeeping services out for competitive bidding to determine the market rate for the Plan's administrative services. There is no doubt but that these allegations, if proven, are sufficient to establish a breach of ERISA's fiduciary duties. See *Tussey v. ABB, Inc.*, 746 F.3d 327, 336–37 (8th Cir. 2014), *cert. denied*, 135 S.Ct. 477 (2014).

**2. The SIAs (Count II).**

As to Count II, which addresses the imprudent and disloyal Plan investment options, Defendants' arguments also fail.

1. Defendants contend that the range of fees in the Plan was within a range that they contend somehow was blessed as prudent per se by three other courts. Doc. 74 at 21–22 (Mem. 12–13) (citing *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), and *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)). Those cases are "carefully limited" to their unique facts and certainly do not stand for the per se rule Defendants suggest. *Tussey*, 746 F.3d at 336. They hold only that the mere fact that a 401(k) plan offered a menu of *unaffiliated* retail mutual funds, without more, was not enough to state a plausible claim for breach of fiduciary duty. *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 670; *Renfro*, 671 F.3d at 326–28. Since this case concerns MassMutual's *affiliated* funds and services, there is ample reason here "to think [Defendants] chose these funds to enrich [themselves] at participants' expense[.]" *Tussey*, 746 F.3d at 336 (quoting *Loomis*, 658 F.3d at 671); see also *Renfro*, 671 F.3d at 327. "Such allegations of wrongdoing with respect to fees state a claim for fiduciary breach."

*Tussey*, 746 F.3d at 336 (citing *Braden*, 588 F.3d at 590, 598).[8]

Plaintiffs plausibly show that Defendants used the MassMutual affiliated funds despite the ready availability of better options, to benefit themselves at the expense of participants. Doc. 1 ¶¶66–81, 95–100. Defendants used MassMutual funds in the SIAs despite their poor performance and high fees because of the benefits provided to MassMutual, *id.* ¶99, just as the *Braden* plaintiffs alleged their fiduciaries retained underperforming investments for the benefits provided to the plan trustee, *Braden*, 588 F.3d at 596. Defendants do not dispute that the funds had poor performance, but merely assert that Plaintiffs were required to include specific performance benchmarks and dates in the complaint. Doc. 74 at 24 (Mem. 15). Such detailed facts are not required at the pleading stage. *Iqbal*, 556 U.S. at 678; *Gipson v. Wells Fargo & Co.*, No. 08-4546, 2009 U.S.Dist.LEXIS 20740 at 14 (D.Minn. Mar. 13, 2009). Moreover, the complaint references the Investment Policy Statement (IPS), which lists benchmarks and peer groups for each fund, and alleges that the funds failed those criteria. Doc. 1 ¶¶98–99; Doc. 75-9 at 12–13. Accordingly, Plaintiffs' allegations provide Defendants fair notice of the claim that the funds performed poorly yet were retained to benefit MassMutual. *García-Catalán*, 734 F.3d at 103. These allegations plausibly raise an inference that the process by which Defendants selected these investments was "tainted by failure of effort, competence, or loyalty." *Braden*, 588 F.3d at 596.

Plaintiffs' allegations are far more specific than "a bare allegation that cheaper alternative investments exist in the marketplace." *Id.* at 596 n.7 (distinguishing *Hecker*, 556 F.3d at 586). Plaintiffs point to specific prudent alternatives to Defendants' funds, as did the *Braden* plaintiffs.

---

[8] See also *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11-5127, 2012 U.S.Dist.LEXIS 29718 at 8–10 (S.D.N.Y. Mar. 6, 2012)("allegations of self-dealing are what set apart judicial decisions in *Young* and *Hecker*, where the courts concluded that the plaintiff had not stated a claim, from those in *Leber* and *Braden*, where the courts allowed the plaintiffs' claims to go forward").

Doc. 1 ¶79; *Braden*, 588 F.3d at 590.[9] Plaintiffs do not contend that Defendants were required to find "the cheapest possible fund[.]" Cf. Doc. 74 at 20 (Mem. 11, citing *Hecker*, 556 F.3d at 586). However, a reasonable evaluation process would at least take into account the relative costs of other available products, such as the Vanguard funds, and the ability to hire sub-advisers directly to invest Plan funds. That is particularly the case with the Plan's index funds, where there is no active management that putatively could require unique stock-picking skills of unique advisers. And yet, for reasons as yet unexplained, Defendants provided Plan participants a MassMutual S&P 500 Index fund that cost *twice as much* as what participants could have gotten in the market. Doc. 1 at 25. Moreover, providing participants the higher-cost share class of a mutual fund indisputably is an ERISA violation. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1137–39 (9th Cir. 2013), vacated on other grounds, 135 S.Ct. 1823 (2015).

Using overpriced and poorly performing funds for the benefits they provided to MassMutual is not "precisely the result one would expect" from a prudent fiduciary acting exclusively for the benefit of plan participants. Cf. *Braden,* 588 F.3d at 597. Therefore, the inference that the process by which Defendants selected and managed funds in the Plan was "tainted by failure of effort, competence, or loyalty", *id*. at 596, is as plausible here as it was in *Braden*.

2. Whether proprietary products are mandated by the Plan Document or expressly authorized by ERISA are irrelevant to the question of whether Defendants breached their duty in doing so. The terms of the plan document do not trump ERISA's strict fiduciary duties. *Dudenhoeffer*, 134

[9] Defendants' cites purportedly rejecting comparisons to Vanguard funds are inapposite. Doc. 74 at 21 (Mem. 12). Those cases were brought under §36(b) of the Investment Company Act, which does "not permit a compensation agreement to be reviewed in court for 'reasonableness.'" *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 341 (2010). In contrast, ERISA specifically imposes reasonableness tests. 29 U.S.C. §1103(c)(1), §1104(a)(1)(A)(ii), §1108(b)(2). Even the case on which Defendants rely recognizes that Vanguard funds provide apt comparisons to allege that a plan's investment management fees are excessive. *Leber v. Citigroup, Inc.*, No. 07-9329, 2010 U.S.Dist.LEXIS 25097 at 37–38 (S.D.N.Y. Mar. 16, 2010)(2010 WL 935442).

S.Ct. at 2468–69; 29 U.S.C. §1104(a)(1)(D). Blind adherence to the terms of the Plan without determining the action is solely in participants' interest, exclusively for the purpose of providing benefits or defraying reasonable administrative expenses, and prudent, is contrary to ERISA's fundamental duties. 29 U.S.C. §1104(a)(1). Conducting "an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties[.]" *In re Unisys Sav. Plan Litig*., 74 F.3d 420, 435 (3d Cir. 1996); see also *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011). Defendants owed those duties regardless of what they believed the Plan required. ERISA also does not "expressly authorize" the use of proprietary products and services. It merely exempts those transactions from ERISA's prohibited transaction provisions in certain limited circumstances. Whether Defendants qualify for a prohibited transaction exemption has no bearing on whether they breached ERISA's fundamental fiduciary duties. See *Krueger*, 2012 U.S.Dist.LEXIS 166191 at 41–44; *Eaves v. Penn*, 587 F.2d 453, 459–60 (10th Cir. 1978); *Harris v. Koenig*, 815 F.Supp.2d 26, 35 (D.D.C. 2011); 42 Fed.Reg. 18734 (Apr. 8, 1977)("that a transaction is the subject of an exemption … does not relieve a fiduciary … from certain other provisions of the Act and the Code, including ... the general fiduciary responsibility provisions of section 404 of the Act [§1104]"). Whether they qualify is an affirmative defense Defendants must plead and prove. The complaint shows Defendants would *not* qualify for the exemption in 29 U.S.C. §1108(b)(5), because it is applies only if "*the plan pays no more than adequate consideration*[.]" 29 U.S.C. §1108(b)(5)(emphasis added);[10] *Musto v. Am. Gen. Corp*., 615 F.Supp. 1483, 1496 n.8 (M.D.Tenn. 1985). Plaintiffs allege that the Plan paid far more than adequate consideration. Doc. 1 ¶¶53–65, 68, 74–79, 88–90.

[10] The same "reasonable compensation" limitation applies to the other exemptions Defendants rely on. See Doc. 74 at 29 n.50 (Mem. 20).

3. Plaintiffs allege much more to support their claims of disloyalty and imprudence as to the Plan investment options than "the mere fact of underperformance[.]" Doc. 74 at 24 (Mem. 15). Plaintiffs do not base their claims of disloyalty and imprudence merely upon the fact that Plan investments lost money. That is just one of the factors demonstrating a fund selection and monitoring process "tainted by failure of effort, competence, or loyalty." *Braden*, 588 F.3d at 596. Plaintiffs allege that although the Plan's IPS called for funds that performed in the upper third of their peers, not one of the MassMutual funds did so. Doc. 1 ¶¶98–99. That is not merely claiming poor absolute performance is a breach; it is a demonstration that Defendants did not even follow their own guidelines of prudent and loyal conduct. Defendants contend that this allegation is insufficient because Plaintiffs do not lay out the details of the performance history of every single fund in the Plan. That sort of evidentiary detail is not required. Cf. *Iqbal*, 556 U.S. at 678.

Defendants' cases are off point. In *Morgan Stanley*, the court held that the drop in value of mortgage-backed securities alone was insufficient to support an inference that the fiduciaries breached their duty by failing to sell those securities. 712 F.3d at 722. As the court noted, "Perhaps selling the 'virtually worthless' investments would have been *imprudent* because short-term investors may have caused the market to overcompensate for the risk of default." *Id.* The plaintiffs alleged nothing to support the inference that continuing to hold the securities was imprudent. *Id.* Here, Plaintiffs do not contend that Plan investments became imprudent merely because they lost market value. Instead, Plaintiffs allege that Defendants selected and retained those funds for the fees they generated for MassMutual despite the availability of alternatives that were cheaper and better performers for Plan participants and despite the fact that every fund appeared to fail the retention criteria of the Plan's IPS. As indicated above, *Leber v. Citigroup,*

*Inc.* controversially imposes a heightened pleading standard that has been rejected by other courts and is contrary to the purposes of ERISA. The plaintiffs there alleged generally that Morgan Stanley's funds underperformed relative to unspecified other funds. 2010 U.S.Dist.LEXIS 25097 at 11–12, 38–39. Plaintiffs here point out that the funds' underperformance violated the Plan's own IPS as one factor demonstrating Defendants' disloyalty and imprudence.[11]

**3. The Fixed Interest Account (FIA) (Count II).**

The FIA was an imprudent and disloyal investment because it charged fees far in excess of comparable products, was included for the purpose of giving MassMutual $500 million in working capital from participants' retirement savings, allowed MassMutual to retain undisclosed spread earnings on the underlying investments instead of passing them through to the Plan, and exposed the Plan to a potentially catastrophic risk for which it was not compensated. Doc. 1 ¶¶82–94. Selecting an investment with excessive cost and risk for benefits it provided MassMutual plausibly raises an inference that the process by which Defendants selected the FIA was "tainted by failure of effort, competence, or loyalty", *Braden*, 588 F.3d at 596, if driven not by an outright desire to enrich MassMutual at the participants' expense. Defendants' purported "obvious alternative explanation" for their breach of the duty of loyalty—that they included the FIA not based on its merit, but because they thought the Plan required it—merely strengthens the inference that Defendants failed "to conduct an independent investigation into the merits" of the FIA, "the most basic of ERISA's investment fiduciary duties[.]" *Unisys*, 74 F.3d at 435.

Defendants dispute that the FIA exposed the Plan to risk because no participant was required to invest in it. Doc. 74 at 25–26 (Mem. 16–17). The presence of other funds in the menu does not

---

[11] Defendants' suggestion that Plaintiffs have no claim of disloyalty or imprudence as to two funds that have been in the Plan for more than six years has been rejected outright by the Supreme Court in *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015).

excuse an imprudent fund. "Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually." *DiFelice*, 497 F.3d at 423 (quoting *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 308 n.18 (5th Cir. 2007)); *Unisys*, 74 F.3d at 438–41. "[A] fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may or may not elect to combine with [the imprudent fund] could theoretically, in combination, create a prudent portfolio." *DiFelice*, 497 F.3d at 423. Moreover, the FIA was the only option Plan participants had for a safe, guaranteed principal investment. See, e.g., Doc. 75-11 at 34.

That MassMutual may not yet be insolvent is beside the point. Even if the possibility were remote, MassMutual's failure would wipe out 40% of the Plan and devastate employees' retirement savings.[12] Exposing participants to even a small chance of such a catastrophic risk is completely unnecessary because there are other diversified products available which spread the risk among multiple companies, which in fact are used by the vast majority of large plans. Doc. 1 ¶94; see nn. 3–6.

Defendants do not dispute that MassMutual took a 115–175 bps fee from the FIA; they contend only that the fee was not excessive given the 3% net interest participants received. But if MassMutual had not taken out such an unreasonably high fee, it would have credited an even higher rate of interest to the FIA. Doc. 1 ¶88. That MassMutual gave participants something does not justify its taking unreasonable fees. Defendants fault Plaintiffs for not specifically listing any comparable products "backed by a 163 year old company", but Rule 8 does not require such detailed facts. *Iqbal*, 556 U.S. at 678. Moreover, the very fact that Defendants allowed a fund with such exorbitant fees to remain in the Plan supports a reasonable inference that they were

---

[12] W. Scott Simon, *Fiduciary Questions in the MassMutual Case, Part Two*, MORNINGSTAR (Jan. 2, 2014)("Fiduciaries … should be concerned not only with the chances of a risk but also with the consequences of a risk"), Struckhoff Decl. ¶15, ex. 13.

either unaware of the fees or never investigated the fees charged by comparable funds, thus violating their fiduciary duty. *Braden*, 588 F.3d at 596; *Unisys*, 74 F.3d at 435.

Defendants challenge the potential remedy of returning to the Plan the “spread” earnings that MassMutual retained, arguing that no case “in the history of American jurisprudence” entitles Plaintiffs to such a remedy. Doc. 74 at 27 (Mem. 18, citing *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig*., No. 11-2208-MAP, Doc. 205 at 1–2 (D.Mass. Nov. 22, 2013)). Arguing over the appropriate remedy for this breach has no bearing on the sufficiency of the complaint. In *Prudential*, disgorgement was not available because none of the plaintiffs had shown that they suffered a cognizable legal injury. Doc. 205 at 2. Actual injury was an element of each of the contract-type claims at issue in that case. *Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig*., 286 F.R.D. 155, 158 (D.Mass. 2012). If the plaintiffs could not establish all of the elements for liability, they could not obtain *any* remedy, save possibly for nominal damages. *Id*. at 159 n.4; Doc. 205 at 3. That is not the case here, where the complaint *does* show all elements for liability under 29 U.S.C. §1109(a). Moreover, in contrast to the contractual claims in *Prudential*, disgorgement is available under ERISA even absent a Plan loss. *Leigh*, 727 F.2d at 122; *Edmonson v. Lincoln Nat’l Life Ins. Co*., 725 F.3d 406, 417 (3d Cir. 2013); *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406, 1411 (9th Cir. 1988). Disgorgement of profits is only one of several alternative remedies that Plaintiffs seek, Doc. 1 ¶¶121, 131, and the Court has broad discretion to fashion the appropriate equitable remedy. See *Merrimon v. Unum Life Ins. Co. of Am*., No. 10–447, 2013 U.S.Dist.LEXIS 129619 at 32–33 (D.Me. Sept. 9, 2013); *Id.*, 2013 U.S.Dist.LEXIS 129618 at 4–11 (D.Me. Sept. 11, 2013)(using alternate damages measure).

Defendants erroneously contend that the FIA is a guaranteed benefit policy under 29 U.S.C.

§1101(b)(2). That section must be construed "narrowly" and "closely contain[ed][.]" *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 97 (1993). The FIA is not a guaranteed benefit policy because it does not guarantee a "benefit" to plan participants, such as a specific lifetime monthly payment as in a defined benefit plan. *Id*. at 105. A guaranteed benefit policy must "provide[] a genuine guarantee of an aggregate amount of benefits payable to retirement plan participants and their beneficiaries." *Id.* at 106. Merely promising a rate of interest is not a guaranteed benefit. *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 327 (7th Cir. 1983); *John Hancock*, 510 U.S. at 101 (following *Peoria*). Even if the FIA were a guaranteed benefit policy, Defendants still have a duty to determine that it is prudent and loyal, and Plaintiffs have plausibly shown that Defendants failed to do so.[13]

**B. Plaintiffs state prohibited transaction claims (Counts III and IV).**

To state prohibited transaction claims, a plaintiff need only allege facts that show a violation of §1106. *Braden*, 588 F.3d at 601. That "shift[s] the burden" to Defendants to prove that the transaction is exempt under 29 U.S.C. §1108. *Id.*; see also *Ruppert*, 796 F.Supp.2d at 973. Defendants do not dispute that Plaintiffs allege a prima facie case of prohibited transactions under §1106. Defendants argue only that "Plaintiffs fail to plead" that its claimed exemptions do not apply. Doc. 74 at 29 (Mem. 20). "[T]he statutory exemptions established by §1108 are defenses which must be proven by the defendant." *Braden*, 588 F.3d at 601 (citation omitted). "[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised." *Id*. at 601 n.10 (citations omitted); *Jones v. Bock*, 549 U.S. 199, 216 (2007). The facts regarding Defendants' affirmative defense are in their possession. "It would be perverse to require

[13] *Merrimon*, like *Prudential*, concerned retained asset accounts (RAA) for life insurance proceeds. 758 F.3d 46 (1st Cir. 2014). Even the DOL agreed that the insurer has fully discharged its fiduciary duties under ERISA once it furnishes the beneficiary the RAA. *Id.* at 54. Thus, the proceeds that the insurer retained subject to draw out of the RAA were no longer plan assets or even governed by ERISA at all. *Id.* at 54–55. The same cannot be said of the FIA, which is an ERISA-governed plan investment option.

plaintiffs bringing prohibited transaction claims to plead facts that remain in the control of the parties who stand accused of wrongdoing." *Braden*, 588 F.3d at 602 (citing *Lowen*, 829 F.2d at 1215).

For their contrary argument, Defendants rely on two district court decisions. Doc. 74 at 30 (Mem. 21, citing *Mehling v. N.Y. Life Ins. Co.*, 163 F.Supp.2d 502 (E.D.Pa. 2001), and *Leber*, 2010 U.S.Dist.LEXIS 25097). *Mehling* "contains no reasoning that might persuade this Court to depart from the well-reasoned precedent, acknowledged by Defendants, that §1108 provides an affirmative defense, with the burden of evidence upon the Defendants." *Goldenberg v. Indel, Inc.*, 741 F.Supp.2d 618, 632 (D.N.J. 2010). *Leber* recognizes that the fiduciary has the burden of proving an exemption applies to §1106(b)(3) allegations. 2010 U.S.Dist.LEXIS 25097 at 29 (citing *Lowen*, 829 F.2d at 1215). Plaintiffs allege that Defendants violated §1106(b)(3) by receiving consideration for their own account. Doc. 1 ¶155; 29 U.S.C. §1106(b)(3).[14]

Even if Plaintiffs were required to anticipate these defenses, Plaintiffs' allegations undermine them. Plaintiffs allege that the Plan paid amounts far in excess of "adequate compensation" for investment and administrative services under the GAC, including $5 million to MassMutual in one year alone. Doc. 1 ¶¶53–65, 68, 74–79, 88–90; cf. 29 U.S.C. §1108(b)(5). Assuming the SIAs are even "mutual funds" under PTE 77-3 (which Defendants do not demonstrate), allegations that defendants "engaged in self-interested transactions, profited from the management of Plan assets to the detriment of the Plan, its participants, and beneficiaries, and entered into agreements under which the Plan paid unreasonable fees and expenses" defeat the

[14] In *Skin Pathology Assocs. v. Morgan Stanley & Co.*, 27 F.Supp.3d 371, 372–73 (S.D.N.Y. 2014), a plan fiduciary sued Morgan Stanley for recommending a retirement plan provider who paid kickbacks to Morgan Stanley in return for the business. Since Morgan Stanley was not a fiduciary, the question in that case was whether the kickbacks involved plan assets. *Id.* at 377. Without resolving that issue, the court held that, under DOL regulations, so long as the kickback was disclosed, it was exempt from the prohibited transaction statutes. *Id.* at 377–78. It has nothing to do with the point for which Defendants cite it—whether a plaintiff must plead around a prohibited transaction exemption.

PTE 77-3 exemption at the pleading stage. *Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 U.S.Dist.LEXIS 108089 at 45–46 (S.D.Ohio Sept. 26, 2008).

**C. Defendants violated the Plan document (Count V).**

Fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" other ERISA provisions. 29 U.S.C. §1104(a)(1)(D). Plan §10.11(a) requires that "all expenses of establishing and administering the Plan, including expenses with respect to the Group Annuity Contract and Fixed Income Account Agreement, shall be borne by the Employer as a further contribution to the Plan." Doc. 75-1 at 71; Doc. 1 ¶166. Defendants contend that the next section nullifies this obligation and effectively allows Defendants to foist all Plan expenses onto the participants. Doc. 74 at 30–31 (Mem. 21–22). Defendants are mistaken. Section 10.11(b) states:

> To the extent that expenses are not paid by the Employer, they shall be deducted from Participant's Accounts, including, but not limited to, expenses related to withdrawals, distributions and loans.

Doc. 75-1 at 71. This refers only to individual fees that are charged directly to the participant (to the extent not paid by MassMutual), such as for withdrawals, distributions, and loans. They are different in kind from the Plan-wide, ongoing fees for administration and investment management that the Employer is obligated to pay under §10.11(a). Moreover, the fees contemplated by §10.11(b) are to be "deducted from Participant's Accounts." The fees here that Defendants contend are within §10.11(b) were not deducted from participant accounts, they were deducted from the assets of the SIAs and FIA. Doc. 1 ¶¶56, 57. Plaintiffs' account statements show no fee deductions from their accounts. Doc. 26-2. Therefore, the SIA and FIA fees at issue in this lawsuit are not the per-participant fees authorized by §10.11(b), as Defendants contend, but instead are §10.11(a) fees MassMutual was obligated to pay. Defendants breached their

§1104(a)(1)(D) duties by having participants pay those fees instead of MassMutual.[15]

**V. ERISA's statute of limitations does not bar Plaintiffs' claims.**

Plaintiffs are not required to plead around affirmative defenses. See *Jones,* 549 U.S. at 212, 215–16. To obtain dismissal on a statute of limitations defense, Defendants must show that "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New England Sch. of Law,* 389 F.3d 5, 12 (1st Cir. 2004)(citation omitted). "The key is whether the complaint and any documents that properly may be read in conjunction with it show *beyond doubt* that the claim asserted is out of time." *Id*. at 17 (emphasis added). Defendants have not done so here.

**A. The three-year limitation is inapplicable. 29 U.S.C. §1113(2).**

Defendants contend that since ERISA plaintiffs do not have access to the information that is systemically in the sole possession of defendants and thus must state a claim based on circumstantial evidence alone, knowledge of that circumstantial evidence is actual knowledge of the Defendants' breach, leaving Plaintiffs only three years in which to bring suit over any breach. That kind of circular logic is absurd on its face and writes out of ERISA the six-year limitation period. Even the Ninth Circuit in *Tibble* rejected this argument. See *Tibble*, 729 F.3d at 1120–21 (citing *Brown v. Am. Life Holdings, Inc*., 190 F.3d 856, 859 (8th Cir. 1999), *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1339, 1341 (9th Cir. 1994), and *Frommert v. Conkright*, 433 F.3d 254, 272 (2d Cir. 2006)).

Defendants argue only that Plaintiffs knew from Plan communications that the Plan used

[15] Defendants' reliance on *Tibble*, 729 F.3d at 1127, 1130, is misplaced if only for the reason that the district court decided the meaning of the plan term at issue there after summary judgment, not on a motion to dismiss. In addition, given the difference in text between these cases, *Tibble* has little, if any, bearing on the Court's interpretation of the terms at issue here, especially at the pleadings stage.

MassMutual products and services. Plaintiffs' claimed breaches are not merely the use of MassMutual products and services. Thus, Plaintiffs' actual knowledge of those mere facts did not provide actual knowledge of their claims. Instead, to know of their claims, Plaintiffs had to know of the availability of better investments and recordkeeping arrangements for this Plan and Defendants' lack of any prudent process for deciding to use MassMutual funds and services instead. Defendants do not even claim any Plaintiff had such actual knowledge.[16]

Defendants point to nothing more than indications that something was awry with Plaintiffs' Plan, but that is not "actual knowledge" under §1113(2). For a plaintiff "to have 'actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had *specific knowledge of the actual breach of duty upon which he sues*.'" *Fuller v. SunTrust Banks, Inc*., 744 F.3d 685, 696 (11th Cir. 2014)[17] (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)); see also *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co*., 919 F.2d 1216, 1222 (7th Cir. 1990)(quoting same). The "actual knowledge" requirement is "strictly construed[.]" *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc*., 710 F.3d 57, 67 (2d Cir. 2013). Actual knowledge "requires a showing that plaintiffs *actually knew* not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA[.]" *Maher v. Strachan Shipping Co*., 68 F.3d 951, 954 (5th Cir. 1995)(citation omitted, emphasis added); see also *Romero v. Allstate Corp*., 404 F.3d 212, 226 n.11 (3d Cir.

---

[16] *In re Citigroup Erisa Litig.*, No. 11-7672, 2015 U.S.Dist.LEXIS 63460 (S.D.N.Y. May 13, 2015), concerned retention of employer stock as a plan investment when it plunged in value because of bad investments. Plaintiffs based their claim exclusively on the publicly known facts of Citigroup's travails upon the collapse of the subprime mortgage market, most of which came out over three years before Plaintiffs filed suit. *Id.* at 25–28. The process by which the defendants decided to retain the stock was not at issue in that complaint. That process is very much at issue in the complaint before this Court.

[17] The *Fuller* court later reversed its decision on the six-year limitation in light of *Tibble*. *Stargel v. SunTrust Banks, Inc.*, No. 14-13207, 2015 U.S.App.LEXIS 11187 (11th Cir. June 30, 2015)(per curiam).

2005)); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).[18] When participants claim that "the fiduciary made an imprudent investment, actual knowledge of the breach [will] usually require some knowledge of how the fiduciary selected the investment." *Brown*, 190 F.3d at 859. The same logic applies to arrangements to pay an employer excessive recordkeeping compensation. Defendants do not contend Plaintiffs had any such knowledge and the documents they have submitted do not indicate how (or whether) Defendants compared the Plan's MassMutual investments or services to available alternatives, much less show anything to justify Defendants' facially excessive investment management fees. District courts have repeatedly rejected arguments similar to Defendants' in similar cases. See, e.g., *George*, 674 F.Supp.2d at 1043–44; *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2009 U.S.Dist.LEXIS 26878 at 17 (S.D.Ill. Mar. 31, 2009); *Kanawi v. Bechtel Corp.*, 590 F.Supp.2d 1213, 1226 n.1 (N.D.Cal. 2008).[19] Section 1113(2) does not bar Plaintiffs' claims.

**B. The six-year limitation is inapplicable. 29 U.S.C. §1113(1).**

In light of *Tibble*, Defendants no longer can claim exemption from liability as to Plan investments or practices that have been in place for more than six years. Cf. Doc. 21 at 17–20 (Mem. 8–11); Doc. 32 at 9–15 (Mem. 2–8). Defendants have a continuing duty to remove inappropriate investments and terminate excessive administrative expense regardless how long those investments and expenses have been in the Plan. *Tibble*, 135 S.Ct. at 1828–29.

Defendants attempt to limit *Tibble* to claims of breach of §1104(a)(1)(B), and contend that

---

[18] *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F.Supp.2d 416 (S.D.N.Y. 2008), erroneously equates "notice that something was awry" with actual knowledge and has been distinguished by the same court as not binding. See *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-9329, 2014 U.S.Dist LEXIS 139001 at 14–16 (S.D.N.Y. Sep. 30, 2014). Even the Second Circuit chose to affirm *Young* on grounds other than its erroneous application of the actual knowledge limitations. 325 F.Appx. 31 (2009).

[19] Since the documents on which Defendants rely do not provide actual knowledge of Plaintiffs' claims, the Court need not address whether or when any of the Plaintiffs actually received those documents. See *Fuller*, 744 F.3d at 691; *Edes v. Verizon Communs.*, 417 F.3d 133, 141–42 (1st Cir. 2005)(quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1085 n.6 (7th Cir. 1992)); *Caputo*, 267 F.3d at 194.

Plaintiffs' claims of breach of other parts of §1104 or §1106 are barred because those breaches have been ongoing for more than six years. That does not withstand scrutiny. Although §1104(a)(1)(B) was the only claim at issue in *Tibble*, the reasoning of *Tibble* extends to all of ERISA fiduciary provisions. Although part (B) of §1104(a)(1) is colloquially referred to as the duty of prudence, specifically it is only part of ERISA's four-part "prudent man standard of care" (as part (a) is titled). The "prudent man standard of care" includes not only the standard of care described in part (B), but also the requirement to act "solely in the interests of the participants and beneficiaries" (§1104(a)(1)), to act "for the exclusive purpose of providing benefits ... and defraying reasonable expenses of administering the plan" (§1104(a)(1)(A) (both provisions colloquially referred to as the duty of loyalty), and to act "in accordance with the documents and instruments governing the plan" (§1104(a)(1)(D)). As the Supreme Court has noted, all of §1104(a)(1) is the "duty of prudence" in the broad sense. *Dudenhoeffer*, 134 S.Ct. at 2465.

The trust law principles on which *Tibble* relied themselves are not limited to "imprudence" in the specific sense Defendants suggest, but refer to the continuing duty to ensure investments are "legal and proper", "appropriate", and "suitab[le.]" *Tibble*, 135 S.Ct. at 1828. Those trust law principles clearly encompass all four parts of ERISA's "prudent man standard of care" and, under those principles as applied by *Tibble*, a fiduciary is not relieved from its duty to ensure plan investments and expenses continuously comply with ERISA's strict fiduciary standards by the mere passage of six years. Under *Tibble*, then, §1113(1)'s six-year limitation does not bar any of Plaintiffs' claims.[20]

ERISA's prohibited transactions provisions are equally within the scope of *Tibble*. Those per se violations do not *supplant* the common law principles on which the prudent man standard

[20] Defendants' contention that Plaintiffs' §1104(a)(1)(D) claim is barred because the "Plan design was implemented more than six years before suit was brought" appears to suggest, absurdly, that after six years a fiduciary need no longer follow plan documents.

of case is based, they *supplement* those principles by providing fiduciaries and beneficiaries "brightline rules[.]" *Donovan v. Cunningham*, 716 F.2d 1455, 1464–65 (5th Cir. 1983); *Harris Trust*, 530 U.S. at 241–42. There is no reason under *Tibble* why claims over prohibited transactions (contracting with MassMutual, evaluating and retaining MassMutual's services, causing unreasonable expense to be taken from Plan investments, Doc. 1 ¶¶135, 139, 153–55) should be barred under §1113(1) merely because those transactions have occurred for more than six years.[21]

Defendants at least concede in light of *Tibble* that Counts I and II are not barred by §1113(1) to the extent they assert claims under §1104(a)(1)(B). Doc. 74 at 35 (Mem. 26). Nonetheless, they attempt to whittle even those claims down by contending that they relate only to the *selection* of MassMutual funds that charged excessive investment management fees or paid unreasonable administrative expenses through revenue sharing. To do that, Defendants focus on one word in the title of Count II and ignore the repeated references within Count II to Defendants' "selecting *and retaining*" of those funds. Doc. 1 at 45–48 (emphasis added). Decisions to retain inappropriate funds within the limitations period are not barred, no matter how long those funds have been in the Plan. *Tibble*, 135 S.Ct. at 1828–29.

Defendants focus on the fact that the Plan document was effective as of 2004 is irrelevant. Adopting plan terms is not a fiduciary act. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1877 (2011). The fiduciary act is providing Plan investment options and retaining Plan service providers

---

[21] These transactions are distinct from what was at issue in *Wright v. Oregon Metallurgical Corp.*, in which the plaintiffs contended that the prohibited "transaction" was the fiduciaries' failure to amend the plan to remove a provision mandating a minimum investment in employer stock. 360 F.3d 1090, 1094–96, 1101 (9th Cir. 2013). Defendants' continued reliance on *David v. Alphin* is erroneous because *Tibble* undercut *David*'s premise that "there is no duty to remove funds absent a material change in circumstances" and that the six-year limitation bars claims of breach "based on attributes of the funds that existed at the time of their initial selection[.]" 704 F.3d 327, 341 (4th Cir. 2013); cf. *Tibble*, 135 S.Ct. at 1827. Contrary to Defendants' suggestion, *Stargel* vacated the entire judgment and dismissal in light of *Tibble* without excluding the prohibited transaction claims. 2015 U.S.App.LEXIS 11187 at 2–3.

(*Howell*, 633 F.3d at 567), and the Plan cannot compel fiduciary actions that violate ERISA. *Dudenhoeffer*, 134 S.Ct. at 2468–69; 29 U.S.C. §1104(a)(1)(D). The Plan itself does not establish *any* fiduciary decision, much less one made over six years ago. See *Leber*, 2010 U.S.Dist.LEXIS 25097 at 19–20 (court could not determine at pleading stage when alleged breaches in selecting proprietary funds and service providers occurred).[22]

The 2004 Plan also has nothing to do with the Plan investments. Funds were listed in "Appendix A" of the 2004 Plan, but that Appendix was deleted as of September 1, 2007 and §4.02 was amended to have the Investment Committee "designate[]" and "modif[y] from time to time" Plan investment options. Doc. 75-5 at 5(¶5). Defendants do not identify any 2007 fund designations, much less identify specific funds they selected over six years ago. The generic fund names in the deleted 2004 Appendix A do not correspond to the names in the current lineup, shown on the 2012 Investment Policy Statement. See Doc. 75-6 at 53–56, Doc. 75-9 at 12–13. Indeed, the vast majority of the SIAs listed in the 2011 GAC appear nowhere on the 2004 Appendix A. See Doc. 75-4 at 28–29, Doc. 75-6 at 52–56. Even were the SIAs the same, the GAC shows that what the SIAs invest in changes periodically. Doc. 75-4 at 28 (listing changes for March 15, 2011). Moreover, many of the funds on Defendants' 2013 list (Doc. 22-6 at 7–8, 10–12), do not even have 5 year histories, meaning they were necessarily added within the limitations period. Thus, the six-year limitation does not bar Plaintiffs' claims based on the facts alleged in the complaint. *Rodi*, 389 F.3d at 12.

Defendants executed a new GAC every year within the past six years. Doc. 1 ¶54. Even had

[22] If, as they seem to suggest, Defendants blindly followed the Plan without engaging in a prudent process, then they have breached their duty. See *George*, 641 F.3d at 796 (failure to "balance the relevant factors and make a reasoned decision" when "a prudent fiduciary would have … is a breach of the prudent man standard of care"). For such breaches, the six-year period does not start until the latest date Defendants could have cured that omission by engaging in a prudent decision-making process regarding Plan investments and fees, 29 U.S.C. §1113(1)(B), and that is well within six years of the complaint. See Doc. 75-9 at 12–13 (fund lineup).

Defendants established that those GACs were identical from year to year, Plaintiffs' claims as to the GACs executed within six years would not be barred. Defendants improperly focus on the *first* action that is part of the breach. The six-year limitation does not start until "the date of *the last action* which constituted a part of the breach" or "the *latest date*" on which Defendants could have cured their omission. 29 U.S.C. §1113(1)(emphasis added). Defendants' actions and omissions occurred annually (and in any event at least until the December 2011 GAC), when Defendants repeatedly renewed the GAC, thereby affirmatively deciding on the SIAs to include as Plan investments and utilizing the FIA and MassMutual to provide administrative services. Doc. 1 ¶4; Doc. 75-4 at 3, 26–31. The last of those actions occurred within six years before Plaintiffs commenced this action. It is irrelevant that Defendants chose to execute an identical GAC every year, especially if they engaged in no process to determine whether that was prudent and loyal. *Consultants*, 966 F.2d at 1087–88.

**C. Plaintiffs have sufficiently pleaded fraudulent concealment.**

In cases of "fraud or concealment," Plaintiffs can commence their action within six years after they discover the breach. 29 U.S.C. §1113. "Fraud or concealment" "refers to steps taken by the defendant to hide the fact of the breach rather than to the underlying nature of plaintiffs' claim." *Consultants*, 966 F.2d at 1093. Since it is independent of, and not an element of the underlying claim, it need not be pleaded with particularity under Rule 9(b). *George*, 674 F.Supp.2d at 1046–47;[23] *Hoppe v. SmithKline Beecham Corp.*, 437 F.Supp.2d 331, 337 n.5 (E.D.Pa. 2006).

---

[23] The statement in *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245 (1st Cir. 1996), that Rule 9(b) applies to fraudulent concealment allegations is dictum because the case was decided based on a lack of evidence at summary judgment as to the "constructive notice" element of fraudulent concealment, and not the sufficiency of the pleadings. *Id.* at 1255–56. The district court in *George* declined to follow similar Seventh Circuit dictum for similar reasons. 674 F.Supp.2d at 1047 n.16. Defendants' other cases are distinct because the underlying claim involved fraud, and thus was

Here, Plaintiffs allege that Defendants took steps to conceal their breaches. Doc. 1 ¶¶101–04. That alleged fraud is independent of Defendants' self-interested and imprudent mismanagement of the Plan, and thus not subject to Rule 9(b). Moreover, these allegations show a fiduciary's failure to provide full disclosure, which deprived Plaintiffs of knowledge of the facts giving rise to their cause of action. That alone is sufficient to show fraudulent concealment. *Puritan Med. Ctr. v. Cashman*, 596 N.E.2d 1004, 1010 (Mass. 1992), cited in *Epstein v. C.R. Bard, Inc*., 460 F.3d 183, 189 (1st Cir. 2006).

## VI. The complaint plausibly alleges the liability of each Defendant.

### A. CEOs.

Executives who select and retain "their close business associates as plan administrators" have a duty to monitor the administrators' actions, and cannot "abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management" of the plan. *Leigh*, 727 F.2d at 134–35; 29 C.F.R. §2509.75-8 (D-4 and FR-17); 29 U.S.C. §1105(a)(2). While Counts I–V assert liability against all Defendants, Count VI asserts an additional basis for liability against MassMutual and its CEOs Roger Crandall, Stuart H. Reese, and Robert O'Connell, for failure to adequately monitor other fiduciaries they appointed. Doc. 1 ¶¶173–80.

Defendants assert the complaint inadequately alleges that the CEOs have discretionary authority as to the conduct described in Counts I–V or that they failed to properly monitor the fiduciary Committees. Doc. 74 at 38–39 (Mem. 29–30). Plaintiffs cannot reasonably be expected to plead specific facts about the actual fiduciary process, because they are not privy to that information. *Braden*, 588 F.3d at 595–96.

---

subject to Rule 9(b). *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 550–51 (6th Cir. 2012)(plaintiffs had "not adequately alleged any *underlying* fraud", emphasis added); *Watson v. Consol. Edison of N.Y.*, 594 F.Supp.2d 399, 411 (S.D.N.Y. 2009)(breach of duty based on common law fraud).

> [T]he manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case.

*Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D.Mich. 2003).

Even with their limited knowledge, Plaintiffs have plausibly alleged that the CEOs exercised discretionary authority or control over the Plan. 29 U.S.C. §1002(21)(A)(i), (iii). The CEO is a fiduciary with respect to the appointment of the Investment Fiduciary and the Plan Administrator. Doc. 1 ¶¶38, 42; Doc. 75-1 at 35 (§4.01(b)(1)), 67 (§10.01); *Leigh*, 727 F.2d at 134. The fiduciary committees consist of MassMutual executives subordinate to the CEO. Doc. 1 ¶¶43, 45; Doc. 75-1 at 35 (§4.01(b)(2)). The CEO also exercised *de facto* control over Plan management through the GAC, which prohibited any "change in Plan operation," including as to "any Plan investment fund or any change in administrative procedures" that might have an "adverse effect" on MassMutual's "financial experience" (i.e., lower its fees), unless MassMutual (through its CEO) approved the change. Doc. 1 ¶11; Doc. 75-4 at 16 (§6.02). And even though the Plan required the Investment Fiduciary to designate and modify investments (Doc. 75-1 at 35, §4.02), the IPS states that it merely makes recommendations to be approved by "*the Company*[.]" Doc. 75-9 at 4 (¶3.1(c))(emphasis added). The CEOs signed off on this procedure. *Id.* at 10.

Plaintiffs have also plausibly alleged a failure to prudently monitor. While the CEOs "were not obliged to examine every action taken" by their appointees, they "were obliged to take prudent and reasonable action to determine whether the administrators were fulfilling their fiduciary obligations." *Leigh*, 727 F.2d at 135. A prudent monitoring process would have revealed that the other Defendants were managing the Plan in a manner that benefited the Company at the expense of participants and had failed to take appropriate action to prevent

excessive fees and to address the poor performance of Plan investments. Unlike *In re Dynegy, Inc. ERISA Litig*., 309 F.Supp.2d 861, 904 (S.D.Tex. 2004), where the plaintiffs had not alleged "that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause", here that would have been readily apparent—if the CEOs had taken reasonable action to make that determination. *Leigh*, 727 F.2d at 135. Thus, Plaintiffs have plausibly alleged a failure to monitor against the CEO Defendants.[24]

**B. Elaine Sarsynski.**

Elaine Sarsynski is "Head of Retirement Services", the MassMutual department responsible for the Plan's recordkeeping. Doc. 1 ¶47; Doc. 22-1 at 25.[25] The recordkeeping fee varied by fund. Doc. 1 ¶68. It is a reasonable inference that as head of the department, Sarsynski would exercise discretionary authority or control over any "change in Plan operation", "investment fund[s]", or "administrative procedures" that might affect her department's "financial experience", meaning she could unilaterally control MassMutual's compensation from the Plan. Doc. 1 ¶11; Doc. 75-4 at 16 (§6.02). She also signed off on the IPS, providing that "the Company" must approve investment changes, and it is reasonable to infer that the department head exercised discretionary control in the approval process. Doc. 75-9 at 4 (¶3.1(c)), 10.

**C. MassMutual.**

MassMutual exercised fiduciary discretion by unilaterally setting the crediting rate on the FIA and deducting fees at its discretion from the SIAs. Doc. 1 ¶¶10, 56, 57; Doc. 75-4 at 26, 30 (§S1.03(C), (D)); see *Mogel v. UNUM Life Ins. Co. of Am*., 547 F.3d 23, 27 (1st Cir. 2008). Moreover, "the Company" approves the Investment Fiduciary's investment recommendations under the IPS. Doc. 75-9 at 4 (¶3.1(c)). It is also responsible for the fiduciary acts of its

---

[24] Although O'Connell was ousted in 2005, Plaintiffs' allegations plausibly show that he remains liable for the breaches under his regime that Defendants fraudulently concealed. Doc. 1 ¶¶100–04.

[25] See also http://www.linkedin.com/pub/elaine-sarsynski/2a/696/31.

executives. See *Hamilton v. Carell*, 243 F.3d 992, 1002–03 (6th Cir. 2001); *Howell*, 633 F.3d at 563–64 (assuming without deciding that company is a fiduciary based on the Board's role in appointing administrators to Committee). Thus, MassMutual exercised discretionary control or authority as to Plan administration and the management of its assets, and is properly joined herein as a Plan fiduciary. 29 U.S.C. §1002(21)(A)(i).

**CONCLUSION**

For these reasons, the motion to dismiss should be denied.

**REQUEST FOR ORAL ARGUMENT**

Plaintiffs believe that oral argument may assist the Court and request that the Court set this matter for oral argument.

Dated: August 3, 2015

Respectfully submitted,

/s/ Michael A. Wolff
Jerome J. Schlichter*
Michael A. Wolff*
SCHLICHTER BOGARD & DENTON LLP
100 South Fourth Street, Suite 900
St. Louis, MO 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
mwolff@uselaws.com
*admitted *pro hac vice*

*Lead Counsel for Plaintiffs*

Stephen Churchill, BBO#564158
Hillary Schwab, BBO#666029
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260, (617) 488-2261 (fax)
steve@fairworklaw.com

*Local Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 3, 2015.

/s/ Michael A. Wolff