# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Dennis Gordan, John Hine, Donna
Flieger, Patricia Hurley, Ronald
Lindner, Janice Reynolds, and Sharon
Jewell, individually and as
Representatives of a class of similarly
situated persons, and on behalf of the
MassMutual Thrift Plan,

       Plaintiffs,

v.

Massachusetts Mutual Life Insurance
Co., Roger Crandall, Stuart H. Reese,
Robert O'Connell, Investment
Fiduciary Committee, Plan
Administrative Committee,
Isadore Jermyn, Michael Fanning,
Mary Wilson Kibbe, Debra Palermino,
Michael Rollings, Elaine Sarsynski,
Richard Goldstein, Christine Fini, and
John Does 1-20,

       Defendants.

Civil Action No. 3:13-cv-30184-MAP

**ORAL ARGUMENT REQUESTED**

**LEAVE TO FILE EXCESS PAGES
GRANTED ON  JUNE 11, 2015
(DOC. 72)**

---

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

James O. Fleckner (BBO# 641494)
Alison V. Douglass (BBO# 646861)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000


Attorneys for Defendants

ACTIVE/83326119

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.     The Opposition Does Not Salvage any of the Complaint's Deficient Claims.................... 1

    A.    The Opposition Cannot Salvage Counts I and II for Alleged Breaches of ERISA Fiduciary Duty ........................................................................................ 1

        1.    The Opposition's Argument for a Lower Pleading Standard Lacks Merit ................................................................................................ 2

        2.    Under the Applicable Pleading Standards, the Pleaded "Raw Facts" Fail to Establish a Plausible Inference of a Deficient Process or Any Other Claim. ........................................................ 4

            a.    The Opposition's Arguments Regarding the SIAs Are Unavailing. ................................................................................ 5

            b.    The Opposition's Arguments Regarding the GIA Are Unavailing. ................................................................................ 9

    B.    The Opposition Cannot Salvage Counts III and IV for Alleged Prohibited Transactions. ...................................................................................... 12

    C.    The Opposition Cannot Salvage Count V for Alleged Failure to Follow the Plan Documents. ................................................................................... 14

II.    The Opposition Does Not Salvage Untimely Claims. ..................................... 15

    A.    Plaintiffs' Breach of Fiduciary Duty Claims Are Time-Barred by ERISA's Three Year Statute of Limitations ......................................................... 15

    B.    Plaintiffs' Prohibited Transaction Claims Are Barred By ERISA's Six Year Statute of Repose ..................................................................... 18

    C.    Plaintiffs' Authorities Confirm That They Have Not Adequately Pleaded Fraud or Concealment ....................................................................... 19

III.   The Opposition Does Not Salvage Plaintiffs' Claims Against a Number of Specific Defendants. ................................................................................... 20

    A.    Plaintiffs State No Claim as to the CEO Defendants ........................... 20

    B.    Plaintiffs State No Claim as to Elaine Sarsynski. ................................ 21

    C.    Plaintiffs State No Claim as to MassMutual ....................................... 22

CONCLUSION ................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE(S)

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)..............................................................................................3

*Abbott v. Lockheed Martin Corp.*,
   No. 06-0701, 2009 WL 839099 (S.D. Ill. Mar. 31, 2009) ....................................16, 17

*Arivella v. Lucent Techs., Inc.*,
   623 F. Supp. 2d 164 (D. Mass. 2009) ........................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................ 2-4, 7, 13, 19, 20

*Bell Atlantic Corp v. Twombly*,
   550 U.S. 544 (2007)........................................................................ 1-4, 7, 17, 19, 20

*Braden v. Wal-Mart, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ......................................................................2, 3, 13, 19

*Brieger v. Tellabs, Inc.*,
   629 F. Supp. 2d 848 (N.D. Ill. 2009) .........................................................................8

*Brown v. American Life Holdings, Inc.*,
   190 F.3d 856 (8th Cir. 1999) ....................................................................................18

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1 (1st Cir. 2009).........................................................................................9

*Conkright v. Frommert*,
   559 U.S. 506 (2010)..................................................................................................3

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.*,
   74 F.3d 20 (1st Cir. 1996)...................................................................................20, 21

*DiFelice v. U.S. Airways, Inc.*,
   397 F. Supp. 2d 758 (E.D. Va. 2005) .........................................................................8

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8837-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 7,
   2007) .......................................................................................................................7

*Epstein v. C.R. Bard, Inc.*,
   460 F.3d 183 (1st Cir. 2006).....................................................................................19

ACTIVE/83326119

*Fiene v. V & J Foods, Inc.*,
  962 F. Supp. 1172 (E.D. Wis. 1997) ............................................................19

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ................................................................... 1-4, 13, 19

*In re Franklin Mut. Funds Fee Litig.*,
  478 F. Supp. 2d 677 (D.N.J. 2007) ...............................................................8

*Fuller v. SunTrust Banks, Inc.*,
  744 F.3d 685 (11th Cir. 2014) ....................................................................17

*Garcìa-Catalán v. United States*,
  734 F.3d 100 (1st Cir. 2013) .......................................................................5

*George v. Kraft Foods Global, Inc.*,
  674 F. Supp. 2d 1031 (N.D. Ill. 2009) ...................................................16, 19

*Goldenberg v. Indel, Inc.*,
  741 F. Supp. 2d 618 (D.N.J. 2010) .............................................................13

*Hamilton v. Carell*,
  243 F.3d 992 (6th Cir. 2001) ......................................................................23

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ...............................................................6, 7, 9

*Hecker v. Deere & Co.*,
  496 F.2d 967 (W.D. Wis. 2007) ....................................................................7

*Hoppe v. Smithkline Beecham Corp.*,
  437 F. Supp. 2d 331 (E.D. Pa. 2006) ..........................................................19

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ......................................................................23

*Int'l Brhd. of Teamsters Local No. 710 Pension Fund v. Bank of New York Mellon Corp.*,
  No. 13-1844, 2014 WL 497737 (N.D.Ill. Feb. 6, 2014) .................................4

*J. Geils Employee Ben. Plan v. Smith Barney Shearson, Inc.*,
  76 F.3d 1245 (1st Cir. 1996) ......................................................................19

*John Hancock Mut. Life. Ins. Co. v. Harris Trust & Sav. Bank*,
  510 U.S. 86 (1993) ....................................................................................11

*Kanawi v. Bechtel Corp.*,
  590 F. Supp. 2d 1213 (N.D. Cal. 2008) ......................................................17

iii

*Krueger v. Ameriprise Financial, Inc.*,
   No. 11–cv–02781, 2014 WL 1117018 (D. Minn. Mar. 20, 2014) ........................18, 19

*Leber v. Citigroup, Inc.*,
   2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ................................................................13

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) ......................................................................................21

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ........................................................................................6

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
   732 F.3d 77 (1st Cir. 2013) .......................................................................................4, 5

*Matthews v. Kidder, Peabody & Co., Inc.*,
   No. Civ. A. 99-85, 2000 WL 33726916 (W.D. Pa. Aug. 18, 2000) ...........................19

*Menard v. CSX Transp., Inc.*,
   698 F.3d 40 (1st Cir. 2012) ...........................................................................................4

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) .........................................................................................8

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
   No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ........................7

*Pension Benefit Guaranty Corp. v. Morgan Stanley Inv. Mgt.*,
   712 F.3d 705 (2d Cir. 2013) ....................................................................2, 4, 12, 19

*Peoria Union Stock Yards Co. Ret. Plan v. Penn. Mut. Life Ins. Co.*,
   698 F.2d 320 (7th Cir. 1983) .......................................................................................11

*Puritan Med. Ctr. v. Cashman*,
   596 N.E.2d 1004 (Mass. 1992) ...................................................................................20

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
   No. 11-2208-MAP, slip op. (D. Mass. Nov. 22, 2013) ...............................................12

*Rankin v. Rots*,
   278 F. Supp. 2d 853 (E.D. Mich. 2003) ......................................................................20

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ..........................................................................................6

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009) .........................................................................21

iv

*Shirk v. Fifth Third Bancorp*,
  No. 05-49, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008) ........................................13

*Skin Pathology Assocs. v. Morgan Stanley & Co.*,
  27 F. Supp. 3d 371 (S.D.N.Y. 2014)..........................................................................13

*Stargel v. SunTrust Banks, Inc.*,
  791 F.3d 1309 (11th Cir. 2015) .................................................................................17

*Steele v. Turner Broad. Sys., Inc.*,
  607 F. Supp. 2d 258 (D. Mass. 2009) ........................................................................14

*Tibble v. Edison Int'l*,
  135 S. Ct. 1823 (2015)........................................................................15, 16, 18, 19

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2009) ...................................................................................15

*Tibble v. Edison Int'l*,
  639 F. Supp. 2d 1074 (C.D. Cal. 2009) .....................................................................15

*Tomaselli v. Beaulieu*,
  967 F. Supp. 2d 423 (D. Mass. Aug. 30, 2013) .........................................................19

*Varity Corp. v. Howe*,
  516 U.S. 489 (7th Cir. 1996) .......................................................................................3

*Wolin v. Smith Barney Inc.*,
  83 F.3d 847 (7th Cir. 1996) .......................................................................................19

## STATUTES

29 U.S.C. § 1002(18)(B) (ERISA § 3(18)(B)).................................................................13

29 U.S.C. § 1002(23)(B) (ERISA § 3(23)(B))................................................................12

29 U.S.C. § 1104(a) (ERISA § 404(a))..........................................................................18

29 U.S.C. § 1101(b)(1) (ERISA § 401(b)(1))................................................................15

29 U.S.C. § 1113(1) (ERISA § 413(1)) .........................................................................16

29 U.S.C. § 1113(2) (ERISA § 413(2)) .........................................................................16

29 U.S.C. § 1106 (ERISA § 406).............................................................................12, 18

29 U.S.C. § 1106(a)(1)(D) (ERISA § 406(a)(1)(D)) .....................................................12

29 U.S.C. § 1106(b)(1) (ERISA § 406(b)(1))................................................................12

ACTIVE/83326119

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5)).................................................................12, 13

29 U.S.C. § 1108(b)(8) (ERISA § 408(b)(8)).......................................................................12

**OTHER AUTHORITIES**

29 C.F.R. § 2550.404a-5(c)(2)(ii)(A) ..................................................................................22

75 Fed. Reg. 64910 (Oct. 20, 2010)....................................................................................11

FED. R. CIV. P. 8 ...............................................................................................................19

FED. R. CIV. P. 9(b) ..........................................................................................................19

FED. R. CIV. P. 12(b)(6) ............................................................................... 1-4, 7, 12, 13

Financial Accounting Standards Board, *Definition of a Derivative:*
     *Synthetic Guaranteed Investment Contracts* (March 14, 2011),
     http://www.fasb.org/derivatives/issuea16.shtml .........................................................10

MassMutual, Select Focused Value Fund,
     wwwrs.massmutual.com/retire/pdffolder/investments/rs4700.pdf ...............................8

ACTIVE/83326119

## <u>INTRODUCTION</u>

Shorn of conclusions and rhetoric, the entirely innocuous facts pleaded in the Complaint state no basis for a claim of a breach of any ERISA duty.  Plaintiffs' Opposition ("Opp.") asks this Court, instead, to bypass the mandatory pleading requirements and allow asymmetric discovery in lieu of pleaded facts.  But the Complaint is not subjected to a lower pleading burden because it asserts ERISA claims; to the contrary, the Supreme Court made clear in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014), that claims for breach of ERISA fiduciary duties brought by participants in a 401(k) plan are subject to the same *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), standard as any other civil action.

The Opposition's other arguments also fail.  The Complaint states no claim for prohibited transactions or breach of the terms of the Plan document; the claims are all stale because Plaintiffs had actual knowledge of the facts upon which their Complaint is based more than three years before bringing suit; and a number of the Defendants are not proper parties to this litigation.  For these reasons and others described below and in Defendants' Moving Brief ("Mov. Br.") (Doc. 74),[1] the Complaint should be dismissed.

## <u>ARGUMENT</u>

**I.    The Opposition Does Not Salvage any of the Complaint's Deficient Claims.**

**A.    The Opposition Cannot Salvage Counts I and II for Alleged Breaches of ERISA Fiduciary Duty.**

The Opposition makes two principal arguments as to why the Court should sustain Counts I[2] and II for breach of ERISA fiduciary duties:  (i) that application of the *Twombly*

---

[1] Capitalized terms used herein have the definitions set forth in the Moving Brief.

[2] Plaintiffs argue that Defendants have not specifically challenged Count I.  Opp. at 13.  To be sure, Defendants have not attempted to introduce extraneous facts that are procedurally improper on a Rule 12(b)(6) posture.  However, the insufficiency of the cause of action contained in Count I for alleged disloyalty and imprudence arising from the use

pleading standard to claims brought by plan participants would "completely upend[] the remedial scheme of ERISA," Opp. at 12 (citing *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)), and (ii) that the few raw facts pleaded in the Complaint support a plausible inference that there was a breach of ERISA fiduciary duties. *See* Opp. at 13. Neither of these arguments is correct. Neither salvages the infirm Complaint.

**1. The Opposition's Argument for a Lower Pleading Standard Lacks Merit.**

The Opposition argues that the Court should not apply the Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") standards articulated by the Supreme Court in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to this federal civil action with the same rigor that it would apply in "non-ERISA cases." Opp. at 12. It rejects as "controversial" the Second Circuit's decision in *Pension Benefit Guaranty Corp. v. Morgan Stanley Inv. Mgt.*, 712 F.3d 705 (2d Cir. 2013), that declined to deviate from *Twombly* and *Iqbal* in an ERISA case. Opp. at 12. Instead, the Opposition argues for the "latitude" granted by the Eighth Circuit in *Braden*, on the ground that "compelling plan participants [to] 'make out their claims in detail' with 'facts that tend systemically to be in the sole possession of defendants' completely upends the remedial scheme of ERISA." *Id.* at 12 (*quoting Braden*, 588 F.3d at 598). Plaintiffs are fundamentally wrong.

The Supreme Court has recently confirmed that the *Twombly*/*Iqbal* pleading standards apply to ERISA cases. In 2014, the Supreme Court addressed a case brought by participants of an ERISA-governed plan against the fiduciaries of the plan, alleging that defendants breached ERISA fiduciary duties through imprudent investment decisions. *Dudenhoeffer*, 134 S. Ct. at

---

of MassMutual's own funds and products, paying allegedly excessive fees, and allegedly failing to monitor the Plan (Compl. ¶¶ 113-17) are addressed repeatedly in the Moving Brief, at 9-15. The Moving Brief expressly seeks dismissal of Count I in Sections I.A and II.A.

2464.  After determining that the fiduciaries were not entitled to a "special presumption" that they acted prudently by allowing the plan to continue holding the employer's stock, the Supreme Court agreed that there should be an alternative mechanism to weed out "meritless, economically burdensome lawsuits."  *Id.* at 2470.  It held that "one important mechanism for weeding out meritless claims [is] the motion to dismiss for failure to state a claim."  *Id.* at 2471.  The Court specifically instructed the lower court to "apply the pleading standard as discussed in *Twombly* and *Iqbal*" to the ERISA breach of fiduciary duty claims brought by plan participants.  *Id.*[3]

The Supreme Court affirmed its long line of decisions, dating back almost 20 years, that "recognized that ERISA represents a careful balancing" reflecting "competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, ***or litigation expenses***, unduly discourage employers from offering welfare benefit plans in the first place."  *Dudenhoeffer*, 134 S. Ct. at 2470 (quoting *Conkright v. Frommert*, 559 U.S. 506, 517 (2010); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)) (emphasis added) (internal quotation marks omitted).

Thus, far from agreeing with the *Braden* court's application of a lower pleading standard for suits brought by ERISA plan participants, the Supreme Court confirmed that *Twombly* and *Iqbal* pleading standards apply to ERISA claims, and that, given the balancing of concerns

---

[3] Indeed, *Twombly* itself concerned circumstances where plaintiffs would not, in the ordinary course, have "inside access to particulars" needed to plead direct facts supporting a claim, a set of circumstances that Plaintiffs argue here warrants a lower pleading standard.  Opp. at 12.  *Twombly* was an antitrust case.  *Twombly*, 550 U.S. at 550.  The plaintiffs were telephone customers suing the phone companies.  *Id.*  They did not possess evidence concerning defendants' decision-making process or alleged anti-competitive agreements when they filed their complaint.  *See id.* at 551.  The Court nonetheless required plaintiffs to allege facts giving rise to a plausible inference of anticompetitive conduct:  it is "only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery."  *Id.* at 559.

embodied in the statute, a Rule 12(b)(6) motion is the appropriate mechanism for "weeding out meritless claims." *Dudenhoeffer*, 134 S. Ct. at 2471.[4]

> ## 2. Under the Applicable Pleading Standards, the Pleaded "Raw Facts" Fail to Establish a Plausible Inference of a Deficient Process or Any Other Claim.

When evaluated under the appropriate pleading standards, the Complaint's allegations fail to state a claim.

The first step of analysis under *Twombly* and *Iqbal* is to eliminate statements in the complaint that are not supported by factual allegations. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). As the First Circuit explains, "bald assertion[s]" and "conclusory statement[s]" do not suffice. *Id.* Plaintiffs cannot "camouflage conclusory statements as allegations of fact." *Id.* at 81. "[A]ssertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist" are insufficient to serve as a "passport to discovery or trial." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). As such, the Complaint's conclusory assertions that Plan fiduciaries engaged in a tainted or insufficient process—the crux of Counts I and II (*e.g.*, Compl. ¶¶ 3, 7, 60, 93, 100, 114)—cannot be credited because there is ***no*** pleaded fact about the process. *See* Mov. Br. at 9-11.

---

[4] Plaintiffs are incorrect in arguing that *Morgan Stanley* is controversial and inapposite. *See* Opp. at 12. While *Morgan Stanley* was subject to a dissent, the subsequent *Dudenhoeffer* case was unanimous in holding that meritless ERISA suits should be weeded out under *Twombly* and *Iqbal* when the facts alleged do not rise to the level of a plausible claim. While Plaintiffs' case, *Int'l Brhd. of Teamsters Local No. 710 Pension Fund v. Bank of New York Mellon Corp.*, No. 13-1844, 2014 WL 497737, at *5 (N.D.Ill. Feb. 6, 2014) (Opp. at 13), chose to follow the *Morgan Stanley* dissent, it adhered to *Twombly* and *Iqbal* and held that the facts alleged in that case raised an inference of imprudence, including that defendants allegedly held securities in plaintiffs' plans while selling the same securities for its own account (2014 WL 497737, at *3)—whereas here, to the contrary, Plaintiffs have challenged Defendants for allowing the Plan to use the same investments and services that Defendants generally make available to their customers. Further, *Morgan Stanley* is not inapposite simply because that suit was brought by a fiduciary. *Dudenhoeffer* applies *Twombly* and *Iqbal* to claims brought by participants. *See* 134 S. Ct. at 2471.

4

The second step is to determine whether there are enough "raw facts" to sustain a complaint. *A.G.*, 732 F.3d at 80-81.  Otherwise stated, are the inferences that Plaintiffs seek the Court to draw adorned "by any factual assertions that might lend [them] plausibility." *Id.* at 80.  Here, there are not.  Plaintiffs' case, *Garcìa-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013) (Opp. at 2), held that the alleged facts of "the existence of a dangerous condition [the liquid on the floor upon which plaintiff slipped], not hidden from view, in a public area controlled by the defendant" supported a "plausible inference" of the defendant's actual or constructive knowledge of a dangerous condition.  734 F.3d at 103.  The "raw facts" pleaded here are markedly different and support no plausible inference of a deficient process.  Unlike pleading raw facts including a puddle in plain view on defendants' property, here, the Complaint alleges that the Plan provided a wide range of the same funds, and the same award-winning support services, that Defendants make available to their customers generally—precisely in line with appellate cases dismissing claims as to similar line-ups, and in conformity with clear guidance from Congress and the DOL, who contemplate that a financial services company like MassMutual will offer its own products to its own employees.

### a.     The Opposition's Arguments Regarding the SIAs Are Unavailing.

Plaintiffs do not refute that the Plan offers participants a wide range of investments, managed by a variety of sub-advisors, at costs that fall squarely within the range of fees that three appellate decisions have held do not raise a plausible inference of a breach of duty even where cheaper funds were available in the marketplace.  Mov. Br. at 12-13.[5]  Instead, leaving

---

[5] For brevity, this Reply groups together under the broad category of allegations that there are cheaper investments or products in the marketplace all of Plaintiffs' arguments about the existence of cheaper products from competitors, the use of sub-advised funds without contracting directly with the sub-advisors, the complaint about the use of asset based fees, and the claim that other plans had lower fees.  Had the Complaint plausibly alleged that the fees paid by

aside their conclusory assertions and characterizations, Plaintiffs point to two allegations that

they claim support an inference of a deficient fiduciary process:  (i) the allegation that

Defendants selected MassMutual's own funds and services for the Plan (Opp. at 15); and (ii) the

allegation that the Plan included funds that had "poor performance," and that "not one" of the

funds met the performance objective in the Plan's Investment Policy Statement ("IPS") that the

funds perform in the upper third of their peers.  *Id.* at 15, 18.  Neither of these alleged facts lends

plausibility to the claim that the fiduciary process was flawed.

*First*, Congress and the DOL consider it a "common" and "normal" business practice for

financial services companies to make their investments and services available to their own

employees, and provide exemptive relief that ***expressly permits*** that practice.  Mov. Br. at 14.

Plaintiffs ignore the obvious implication of this fact:  an allegation that the Defendants engaged

in such a legal practice cannot provide an inference that the fiduciaries were disloyal.  Instead,

Plaintiffs attack a straw man of their own construction and argue that satisfaction of a prohibited

transaction exemption cannot satisfy ERISA's other duties.  Opp. at 17.  Plaintiffs' argument

misses the point.  Because Congress and the DOL expressly allow a financial services company

to use its own product, the "raw fact" of such usage does not support a claim that there was a

breach of duty, regardless whether a claim for breach of fiduciary duty can be stated by different

raw facts where an exemption to a prohibited transaction applies.  The Opposition does not refute

that the United States District Court for the Southern District of Florida made precisely this point

---

the Plan's investments or participants were substantially greater than the range of fees held to raise no inference of wrongdoing in *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), and *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)—which it does not—then, conceivably, one or more of these sub-arguments might be relevant to explaining why the fees were outside of that range.  But since the fees here are squarely in line with fees in cases whose dismissal was affirmed by appellate courts, the investments and services here cannot raise an inference of a breach of duty no matter how many ways in which Plaintiffs allege that the fees could have been lower.

ACTIVE/83326119

even after a full trial:  where fiduciaries of an insurance company plan utilized the company's

own products—"the very result Congress [and the DOL] intended to approve by enacting the

§ 408 exemptions—[such act] *does not give rise to an inference of disloyalty*."  *Dupree v.*

*Prudential Ins. Co. of Am.*, No. 99-8837 Civ.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla.

Aug. 7, 2007) (emphasis added).[6]

Plaintiffs likewise twist Defendants' argument that a breach of duty cannot be inferred

from the fact that Defendants implemented the Plan according to its terms.  Mov. Br. at 13 &

n.36.  Plaintiffs argue that "[b]lind adherence to the terms of the Plan" can constitute a breach of

duty if the fiduciaries otherwise fail to act prudently or loyally.  Opp. at 17.  Plaintiffs destroy yet

another straw man in an argument that is entirely irrelevant to Defendants' actual motion, as

explained at Mov. Br. at 13 n.36.  What is relevant is that the Supreme Court has held that, under

Rule 12(b)(6), if the facts pleaded in a complaint "are merely consistent with a defendant's

liability," but are subject to an "obvious alternative explanation" that is lawful, the complaint

should be dismissed.  *Iqbal*, 556 U.S. at 678, 682 (quoting *Twombly*, 550 U.S. at 557, 567)

(internal quotation marks omitted).  Given that the plan document is the "linchpin" of the

statutory structure, a plan line-up that is consistent with the Plan Document mandate that

MassMutual's products and services be utilized provides an obvious alternative explanation to

the challenged conduct.  Mov. Br. at 13 (citing cases).

---

[6] *Cf. Hecker v. Deere*, 496 F. Supp. 2d 967, 972-74 (W.D. Wis. 2007) (dismissing claim because disclosures complied with ERISA regulations), *aff'd*, 556 F.3d at 584-85; *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) (dismissing complaint, stating "[g]iven the defendant's compliance with the law, defendants could not possess the required intent or recklessness"). The Complaint reflects Plaintiffs' disagreement with the statutory exemption, alleging that, notwithstanding the statutory ability of an insurance company to utilize its own products for its own plan, "Plan assets are never [allowed to be] used for the benefit of the plan sponsor."  Compl. ¶ 48.E.  Plaintiffs' Complaint is more properly addressed to Congress and the DOL than to the Court.

*Second*, Plaintiffs' allegations of alleged underperformance also do not nudge their claims across the plausibility line.  As a starting point, Plaintiffs misstate the publicly-available facts when they claim that no fund in the Plan performed in the upper third of its peer group for a five year period.  *See* Opp. at 18.  By way of just one example, public data confirm that Plaintiffs' allegation is false as to the Plan's Select Focused Value Fund, which is sub-advised by Harris Trust.  In the last 10 years, the fund performed not only in the upper third of its peers, but in the top 1% of its peers—beating out 99% of comparable funds.[7]  The fund's five year experience—which, under the IPS, may trigger an "in-depth review" if it falls below the upper third—is almost as impressive, where it performed in the top 7% of its peers.[8]

In any event, the Court need not accept Plaintiffs' invitation to engage in fact-finding regarding fund performance at this stage.  Plaintiffs point to no case holding that an inference of imprudence or disloyalty can be drawn from alleged underperformance of a diversified fund against its benchmark, nor could they, given that "fiduciaries are entitled to substantial latitude[,] and their judgments must not be assessed using 20/20 hindsight."  *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 773 (E.D. Va. 2005); *see also Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 863 (N.D. Ill. 2009) (ERISA "requires prudence, not prescience") (internal quotations omitted).  In other contexts, courts have expressly recognized that "[i]nvesting is not a risk-free endeavor. . . .  An underachieving fund one year may be an overachieving fund the next."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687-88 (D.N.J. 2007) (quoting *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327-28 (4th Cir. 2001)) (dismissing Investment

---

[7] MassMutual, Select Focused Value Fund, wwwrs.massmutual.com/retire/pdffolder/investments/rs4700.pdf (last visited Aug. 18, 2015).

[8] *Id.*  To be sure, the fund had different results in the past quarter, falling in the lowest 3% of its peers.  *Id.*  This volatility, consistent with the notorious unpredictability of the stock market, shows the wisdom of not requiring plan fiduciaries to focus only on a brief snapshot in time and judge each investment decision with the clarity of hindsight.

Company Act claim of breach of fiduciary duty where performance was alleged to be in lowest

15%). Moreover, Plaintiffs' argument that there was a breach of the IPS (Opp. at 19) is incorrect

because the IPS does not mandate removal of funds that fall below certain thresholds, but merely

requires their review. Mov. Br. at 15. Since Plaintiffs make no more than conclusory allegations

that no review was had, the fact that some funds that may have underperformed their benchmark

are included in the Plan raises no more plausible allegation that the review was deficient than the

allegation that other investments have lower fees—ERISA does not require that a plan fiduciary

pick the best fund at the cheapest cost, only that the investments are within a range that is

reasonable. *See Hecker*, 556 F.3d at 586 (lowest fee not required); s*ee generally Bunch v. W.R.

Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009) ("The test of prudence . . . is one of *conduct*, and not

a test of the result of performance of the investment.") (emphasis in original) (internal quotation

marks and citation omitted).

> **b.      The Opposition's Arguments Regarding the GIA Are Unavailing.**

The Opposition also does not salvage the Complaint's specific challenges to the GIA.

*First*, the Complaint does not state a claim that the GIA was an imprudent choice for the

Plan on the asserted ground that it exposed participants to "unnecessary, uncompensated risk."

Opp. at 10. The Opposition's assertion that "[a] MassMutual insolvency would be catastrophic

for participant retirement savings" (*id.* at 11) does not plead any cognizable risk. The

***hypothetical*** risk that Plaintiffs assert is too tenuous, given MassMutual's A++ credit rating.

Moreover, the hypothetical risk of a financial institution's failure would apply to ***any*** provider's

guaranteed investment contracts (GICs), making such investments per se imprudent if Plaintiffs'

argument is to be adopted. Plaintiffs' assertion that only synthetic guaranteed investment

ACTIVE/83326119

contracts are a prudent option (*id.* at 11) ignores the fact that those products are likewise

dependent on the solvency of the financial institutions that provide the guarantees.[9]

Furthermore, synthetic GICs also typically do not require the financial institutions to cover all

losses in those vehicles—for example, they typically do not cover impaired securities.[10]

Plaintiffs' novel request that this Court effectively outlaw traditional GICs in favor of synthetic

GICs is overreaching.  In all events, Plaintiffs' assertion that the GIA's risk was

"uncompensated" falls flat in the face of the irrefutable fact that the GIA guaranteed and paid a

minimum crediting rate of 3.00% or more at all relevant times, including throughout the financial

crisis.[11]

     *Second*, Plaintiffs do not plausibly allege that MassMutual used the GIA to gain access to

working capital.  *See* Opp. at 19.  Merely offering the GIA in conformity with the Plan

Document's requirement does not ensure that even a single dollar of participant-directed

investments will be invested in the GIA among the dozens of options in the Plan.  As described

above, the Complaint pleads no fact whatsoever concerning the fiduciaries' process, certainly

none that plausibly suggests that such process was "tainted" by improper motivation, as argued

at Opp. at 19.

---

[9] Indeed, one of Plaintiffs' sources on stable value products describes how, during the financial crisis of 2008-2009, synthetic GICs that utilized wrap contracts experienced market value declines that "caused issues with liquidity and wrap contracts," resulting in the "perfect storm," as "wrap providers themselves were affected by the crisis." Declaration of Kurt C. Struckhoff ("Struckhoff Decl.") (Doc. 79) Ex. 6 at 3 (*What Plan Sponsors Should Know About Stable Value Funds*).  The many new sources that Plaintiffs submit with their Opposition to bolster their allegations that the GIA is imprudent are extraneous to the Complaint and do little more than amplify that there are a variety of stable value products in the market from which fiduciaries make selections based on their plan objectives. *See, e.g.*, *id.*, Ex. 12 at 2 (*In Search of Stable Value, Part One*) (comparing traditional GICs, under which the insurer bears the risk of market loss, with synthetic GICs, under which "the plan and its participants absorb changes in the value of the underlying assets").

[10] Financial Accounting Standards Board, *Definition of a Derivative: Synthetic Guaranteed Investment Contracts*, March 14, 2011, http://www.fasb.org/derivatives/issuea16.shtml.

[11] *See* Declaration of Sean E. Soyars ("Soyars Decl.") (Doc. 26-1) Ex. 1 (Ms. Reynolds' account statement showing effective annual interest rate of 3.5% as of 2010).

ACTIVE/83326119

*Third*, Plaintiffs' argument that the pleaded "cost" of the GIA was too expensive (Opp. at 19-20) (which Defendants do not concede is accurate) does not state a claim because the argument fundamentally misapprehends the unique nature of a fixed income account.  The DOL has provided the appropriate guidance, exempting fixed income accounts from its fee disclosure rules given that "[t]he most essential information for . . . fixed investment alternatives is the contractual interest rate paid to [participant] accounts and the term of the investment during which [participant] monies are shielded from market price fluctuations and reinvestment risks."[12] In other words, it is the fixed return, not the fees, that matters for the GIA.  It is implausible that this fixed income product, currently returning over 3% net of all expenses, is too expensive given its return in today's market.

*Fourth*, the Opposition does not refute that the assets underlying the GIA are not plan assets, and Plaintiffs are therefore not entitled to any earnings thereon beyond the contractual crediting rate.  Plaintiffs' own articles state that where a plan invests in a "general account" GIC, such as the GIA, the plan "owns an insurance company GIC contract, but not the underlying investments, which are invested in the insurance company's general investment account." Struckhoff Decl. Ex. 6 at 1 (*What Plans Sponsors Should Know About Stable Value Funds*).  The Opposition's cases do not support a different conclusion because those cases (unlike here) involved investment products that did not pay a guaranteed benefit.[13]  Further, Plaintiffs' argument that the GIA does not guarantee a "benefit" (Opp. at 22) is baseless.  The GIA offers a

---

[12] Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans Final Rule, 75 Fed. Reg. 64910, 64916 (Oct. 20, 2010).

[13] For example, *Peoria Union Stock Yards Co. Ret. Plan v. Penn. Mut. Life Ins. Co.*, 698 F.2d 320, 327 (7th Cir. 1983), specifically noted that the contract at issue there did not guarantee a "fixed payout."  Likewise, *John Hancock Mut. Life. Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 103 (1993), involved the payment of benefits that varied depending on the investment return credited to the plan's account.  Here, the GIA guarantees a fixed crediting rate.  *See* Mov. Br. at 4-5.

ACTIVE/83326119

guaranteed rate of return which is added to Participant Accounts. In a defined contribution plan

such as the Plan, a participant's account balance *is* the benefit. *See* ERISA § 3(23)(B), 29 U.S.C.

§ 1002(23)(B) ("The term 'accrued benefit' means . . . in the case of a plan which is an

individual account plan, the balance of the individual's account.").[14]

### B. The Opposition Cannot Salvage Counts III and IV for Alleged Prohibited Transactions.

The Opposition asserts that the prohibited transaction claims should not be dismissed

because (i) *any* complaint alleging the existence of a prohibited transaction can proceed past a

Rule 12(b)(6) motion, even if it is clear from the face of the pleading that an exemption applies,

and (ii) the Complaint disproves that any exemptions apply. Opp. 22-24. It is wrong on both

counts.

Where, as here, a plan utilizes investment products managed by the plan sponsor or its

affiliate, the transaction would *automatically* constitute a prohibited transaction absent some

exemption. *See, e.g.*, ERISA §§ 406(a)(1)(D), (b)(1), 29 U.S.C. §§ 1106(a)(1)(D), (b)(1). But

Congress explicitly provided exemptions for this type of plan in ERISA §§ 408(b)(5) and (b)(8),

29 U.S.C. §§ 1108(b)(5) and (b)(8). Allowing a plaintiff to allege nothing more than the

elements of Section 406 to survive a motion to dismiss would allow *any* participant in the plan of

a financial services company that availed itself of the exemption to unlock the keys to

discovery—and the "in terrorem" consequences flowing therefrom—simply by alleging that her

company did what Congress expressly allowed. *Cf. Morgan Stanley*, 712 F.3d at 719. This

---

[14] Plaintiffs also misconstrue Defendants' argument and this Court's decision in *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-2208-MAP, slip op. at 1-2 (D. Mass. Nov. 22, 2013) ("*SGLI*"). Defendants, and this Court, did not suggest that disgorgement of profits can never be an appropriate remedy absent harm, as argued in Opp. at 21. Rather, this Court held in *SGLI*, slip op. at 2, that no case in "the history of American jurisprudence has found disgorgement to be appropriate in circumstances remotely like the one presented to this court, or on the scale contemplated by Plaintiffs' counsel," which is equally the case with the unprecedented relief Plaintiffs' seek here as to the GIA, having already received in excess of a 3.00% return on this guaranteed, fixed account.

would render these exemptions and Rule 12(b)(6) effectively meaningless, directly contrary to the Supreme Court's admonition in *Dudenhoeffer* that the rule be used under ERISA to "weed[] out meritless claims." 134 S. Ct. at 2471. Indeed, in this and other contexts, courts dismiss claims where the face of the complaint shows that the statutory exemption is met. *See, e.g.*, Mov. Br. at 20-21 (citing cases).[15]

Here, the Complaint does not plead any "raw facts" that would defeat the statutory exemption. Plaintiffs' bald allegation that cheaper products and services are available in the market fails to plead that the Plan paid more than "adequate consideration" for insurance products within the meaning of ERISA § 408(b)(5), 29 U.S.C. §1108(b)(5). Plaintiffs do not dispute that "adequate consideration" is defined by statute as the "fair market value of the asset as determined in good faith by the trustee," or that the Complaint does not plead that the Plan paid more than fair market value for the GAC; instead, they argue the inapposite proposition that cheaper investments were available. *Compare* Mov. Br. at 20 (quoting ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B)) *with* Opp. at 17.[16] This does not defeat the statutory exemption.

---

[15] The Opposition's reliance on *Braden* as a key to unlock the door to discovery (Opp. at 22-23) again fails because *Braden* misconstrues the *Iqbal* pleading standard, which compels dismissal in the first instance. *See supra* § I.A.1. Unlike Plaintiffs' case, *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 632 (D.N.J. 2010) (Opp. at 23), the Defendants here expressly do not "acknowledge" precedent that would shift the burden onto them at the pleading stage.

Plaintiffs are similarly wrong in characterizing *Skin Pathology Assocs. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371 (S.D.N.Y. 2014) as inapplicable. Opp. at 23 n.14. There, the court explicitly granted a Rule 12(b)(6) motion as to a complaint alleging prohibited transactions where the relevant exemptions applied. 27 F. Supp. 3d at 377-78. The Court here similarly need not force Defendants to prove, through discovery, that the exemptions apply where they are evident from the Complaint.

[16] As to PTE 77-3's application to the SIAs that invest in mutual funds, Plaintiffs do not dispute that each of the four stated conditions to that PTE are met under the allegations here; instead they rely on *Shirk v. Fifth Third Bancorp*, No. 05-49, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008), for the proposition that their claims should proceed to discovery. *Compare* Mov. Br. at 20 n.52, *with* Opp. at 23-24. *Shirk* was decided before *Iqbal* and is therefore irrelevant as to the appropriate pleading standard. As the Court explained in *Leber v. Citigroup, Inc.*, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010), in a part not disputed by Plaintiffs, "a complaint must allege a course of conduct actionable under the relevant statute. Where, as here, the 'well-pleaded facts [of a prohibited transaction claim] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief,' *Iqbal*, 556 U.S. at 679, and accordingly must be dismissed."

13

**C.      The Opposition Cannot Salvage Count V for Alleged Failure to Follow the Plan Documents.**

The Opposition abandons the pleaded allegations (at Compl. ¶¶ 167-69) that all Plan expenses must be paid by MassMutual, and instead argues that, while some fees can be paid by Participant Accounts within the Plan, the fees that Plaintiffs challenge from the investment funds are not such allowable fees.  *See* Opp. at 24-25.  Plaintiffs' new theory is just as infirm as their pleading.

*First*, the Moving Brief revealed the falsity of the Complaint's allegation that the Plan Document required MassMutual to bear "all expenses" of the Plan, given that the Plan Document specifically authorizes Plan expenses "to be deducted from Participant Accounts."  *Compare* Compl. ¶ 166 (quoting Plan § 10.11(a)) *with* Mov. Br. at 22 (quoting Plan § 10.11(b)).  Unable to maintain their pleaded claim, Plaintiffs recast their Complaint, arguing that participants can only be required under the Plan Document to pay "individual" and not "Plan-wide" fees.  Opp. at 24. Plaintiffs' new theory cannot salvage claims that were inadequately pleaded in the Complaint; it is axiomatic that Plaintiffs cannot amend their Complaint through their Opposition.  *See Steele v. Turner Broad. Sys., Inc.*, 607 F. Supp. 2d 258, 263 (D. Mass. 2009).

*Second*, Plaintiffs' unpleaded characterization that Plan § 10.11(b) does not apply here (Opp. at 24) has no basis in any event.  The plain language of § 10.11(b) authorizes Participant Accounts to bear "expenses [that] are not paid by [MassMutual] . . . ***including, but not limited to,*** expenses related to withdrawals, distributions and loans."  Plan Document at MM-DG-00095, § 10.11(b), Douglass Decl. Ex. 1 (emphasis added).  Nowhere does the language suggest it is only limited to the listed categories.  Further, as to the SIAs, Plaintiffs have not pleaded that they actually were assessed any fees other than the fees paid by the mutual funds held within the

14

SIAs.  Mov. Br. at 6.[17]  The fees of the funds were paid by the funds themselves, not participants

and not the Plan—such fees are not plan assets.  *See, e.g.*, *Tibble v. Edison Int'l*, 639 F. Supp. 2d

1074, 1082-83 (C.D. Cal. 2009); ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) (mutual fund assets

are not plan assets).[18]  As to the GIA, the only relevant metric is the guaranteed return, as

described above.[19]

## II.    The Opposition Does Not Salvage Untimely Claims.

Nothing in the Opposition salvages Plaintiffs' untimely claims.  Plaintiffs argue that not

only are they exempt from pleading anything about the actual process that Plan fiduciaries

employed in asserting their claims, but also that the Court should ignore ERISA's three year

statute of limitations in deciding whether they have alleged sufficient circumstantial facts.  Opp.

at 25-27.  And they argue that the Supreme Court's guidance as to the contours of a duty of a

prudence applies equally to statutory prohibited transaction claims.  *Id.* at 27-29.  They are

wrong on both issues.

### A.    Plaintiffs' Breach of Fiduciary Duty Claims Are Time-Barred by ERISA's Three Year Statute of Limitations.

Contrary to the Opposition, Plaintiffs have not pleaded that anything was "awry" as to the

Plan (Opp. at 26)—indeed, for that reason alone, the Complaint should be dismissed.  *See supra*

---

[17] The Opposition admits that the only fees were those assessed by the funds.  Opp. at 24.

[18] Plaintiffs' argument that the portion of *Tibble*'s summary judgment decision that rejected identical claims "has little, if any, bearing" here "given the difference in text between these cases" (Opp. at 25 n.15) is entirely misplaced given that the two provisions are functionally the same: the provision Plaintiffs challenge here states that "all expenses . . . shall be borne by the employer" (Compl. ¶ 166 (quoting Plan § 10.11(a)), whereas the challenged language in the *Tibble* plan stated "[t]he cost of the administration of the Plan will be paid by the Company."  729 F.3d 1110, 1127 (9th Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 1823 (2015).

[19] To the extent that expenses of the funds held within the SIAs or the GIA are viewed for purposes of  Plan § 10.11 as fees of the Plan, given that all funds are held within Participant Accounts, then, as a practical matter, all of the fees at issue are, in effect, coming from the assets within Participant Accounts (i.e., from the funds held in the accounts).  *See* Plan Document at MM-DG-00035-37, §§ 1.32, 1.41, 1.42, Douglass Decl. Ex. 1 ("Participant's Account shall equal the sum of the value of the Participant's [investment options]").  In either event, there has been compliance with the Plan Document:  fund fees either fall outside of § 10.11(a) because they are not Plan expenses, or they fall within Plan § 10.11(b)'s exception.

ACTIVE/83326119

§ I.A.2.  Further, ERISA's statute of limitations does apply to their allegations of circumstantial facts that, they argue, create an inference that the fiduciary process for Plan decisions gave rise to a breach of ERISA fiduciary duty.

Applying the terms of ERISA's three year limitations provision contained in Section 413(2), 29 U.S.C. § 1113(2), does not "write[] out of ERISA the six-year" repose period contained in Section 413(1), 29 U.S.C. § 1113(1), as Plaintiffs argue at Opp. at 25.  The two provisions, like any limitations and repose provisions, serve entirely different purposes; one is designed to prevent would-be plaintiffs from engaging in excessive delay before asserting their rights, the other to limit the time within which a fiduciary may be liable for its actions.  *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 173 (D. Mass. 2009) (contrasting section 413(1) as a "prototypical 'statute of repose" which "refers exclusively to the conduct of the defendant" to section 413(2), a "standard statute of limitations, requiring that a plaintiff file suit within a certain period from the time he or she becomes aware of the injury suffered") (internal quotation marks omitted).  Here, Plaintiffs assert that the key reason that their Complaint should not be dismissed—even though appellate courts have affirmed dismissal of complaints challenging plans that have the same type of mutual funds with the same fee levels, even where allegedly cheaper products (like Vanguard funds) were available—is that here, their claims address "MassMutual's *affiliated* funds and services."  Opp. at 14 (emphasis in original).  It is undisputed that Plaintiffs knew of that allegedly transformative fact.

None of Plaintiffs' cases salvages the Complaint.  Many do not address claims, like here, that challenge the open practice of a financial services company using its own products for its own plan.  *See, e.g.*, *Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015); *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031 (N.D. Ill. 2009); *Abbott v. Lockheed Martin Corp.*, No. 06-

0701, 2009 WL 839099 (S.D. Ill. Mar. 31, 2009); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d

1213 (N.D. Cal. 2008).  In the only case that Plaintiffs cite that did address a similar claim

challenging the use by a financial services company of its own product, *Fuller v. SunTrust Banks,*

*Inc.*, 744 F.3d 685 (11th Cir. 2014), there was a disputed fact as to whether certain documents

had been given to plaintiffs, as none of the documents there "had to be filed with any

government agency."  *Id.* at 696, *abrogated on other grounds by Stargel v. SunTrust Banks, Inc.*,

791 F.3d 1309 (11th Cir. 2015).  Here, by contrast, (1) Defendants cite documents publicly filed

with the DOL, which show the use of MassMutual's own funds and services for more than three

years prior to Plaintiffs' filing the Complaint (Mov. Br. at 24 & n.57), and (2) Plaintiffs do not

contest that they knew that the Plan used proprietary funds and services more than three years

prior to the filing of the Complaint.

Plaintiffs instead try a different tact.  They argue that there is no record that they knew (1)

"of the availability of better investments and recordkeeping arrangements for this Plan" or (2) of

"Defendants' lack of any prudent process."  Opp. at 26.  Neither of these arguments is availing,

even if the Complaint could survive a *Twombly* challenge, which it cannot, as described above.

It runs contrary to common sense to suggest that Plaintiffs, as current or former Plan participants

(and therefore current or former employees of MassMutual or certain affiliates, or eligible

agents), had no knowledge that MassMutual's competitors provided other products and services,

whether or not others might have viewed those competing offerings as "better."  Further, since

Plaintiffs' allegations are all based on circumstantial facts, when they knew those facts is critical

to the statute of limitations inquiry and to Plaintiffs' awareness of a potential claim.  None of the

cases cited in the Opposition stand for the proposition that, where a complaint is based on

circumstantial facts, plaintiffs' knowledge of those circumstantial facts is irrelevant to the statute of limitations inquiry.

To the extent that Plaintiffs believe that they have claims based on publicly available circumstantial facts, they should not be allowed to sit idly by when they know those public facts. Accordingly, the Complaint should be dismissed based on the three year limitations period.

**B.      Plaintiffs' Prohibited Transaction Claims Are Barred By ERISA's Six Year Statute of Repose.**

Plaintiffs are incorrect that their prohibited transaction claims survive ERISA's six year statute of repose as to funds that were added to the Plan line-up more than six years ago. Prohibited transaction claims are not subject to the same analysis as that utilized by the Supreme Court in *Tibble*.

*Tibble* addressed the ongoing duty to monitor that is part and parcel of the duty of prudence under Section 404(a), 29 U.S.C. § 1104(a).  The Supreme Court did not address prohibited transaction claims, and the Court's analysis does not apply to ERISA Section 406, 29 U.S.C. § 1106, which focuses on specific transactions authorized by the fiduciary.  Indeed, Plaintiffs' own authorities demonstrate that a prohibited transaction claim is not subject to the *Tibble* ongoing-duty analysis.  As the Eighth Circuit explained in *Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999), prohibited transaction claims are addressed to the investment itself, whereas allegations of imprudence look at the process employed in making the investment decision.  Accordingly, a claim alleging a prohibited transaction is apparent from "an examination of the" plan assets themselves—either the transaction is prohibited or it's not— how the fiduciary arrived at the decision to enter the transaction is irrelevant.  *Id.*; *Krueger v. Ameriprise Financial, Inc.*, No. 11–cv–02781, 2014 WL 1117018 (D. Minn. Mar. 20, 2014)

18

followed this logic and dismissed prohibited transaction claims as time-barred given disclosure of the actual transaction.[20]  *Id.* at *11-14.  Accordingly, *Tibble*'s focus on the fiduciary process required under trust law is irrelevant to analyses of prohibited transactions.

### C.    Plaintiffs' Authorities Confirm That They Have Not Adequately Pleaded Fraud or Concealment.

The Opposition fails to salvage Plaintiffs' fraud or concealment allegations, precluding Plaintiffs' last attempt to avoid application of the statutes of limitations and repose.  The Opposition argues that the Complaint's allegations of fraud and concealment (Compl. ¶¶ 101-02) are not subject to Fed. R. Civ. P. 9(b) ("Rule 9(b)") because the underlying claims do not sound in fraud.  Opp. at 31-32.  Plaintiffs improperly reject as "dictum" the only First Circuit ERISA case on point, *J. Geils Employee Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996).  Opp. at 31 n.23.[21]

To the contrary, the *J. Geils* standard is not dicta; it is binding in the First Circuit.[22]  In fact, far from supporting Plaintiffs' proposition, Plaintiffs' First Circuit case, *Epstein*, extends *J. Geils* beyond the ERISA context and makes clear that Rule 9(b) applies to allegations of fraudulent concealment even where the underlying claim does not sound in fraud.  460 F.3d at

---

[20] Plaintiffs cited an earlier decision in the *Krueger* litigation, Opp. at 13, as a case following the erroneous *Braden* standard.  But the *Krueger* court was bound by Eighth Circuit precedent and provides no independent basis to support Plaintiffs' argument that this Court should similarly follow *Braden* as opposed to *Dudenhoeffer* and *Morgan Stanley*.

[21] That two district courts outside this circuit, *George.*, 674 F. Supp. 2d at 1046-47 and *Hoppe v. Smithkline Beecham Corp.*, 437 F. Supp. 2d 331, 337 n.5 (E.D. Pa. 2006), held differently (*see* Opp. at 31) carries little weight, especially where courts in those circuits disagree with one another.  *See Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1183-84 (E.D. Wis. 1997) (following *Wolin v. Smith Barney Inc.*, 83 F.3d 847 (7th Cir. 1996), requiring Rule 9(b) compliance); *Matthews v. Kidder, Peabody & Co., Inc.*, No. Civ. A. 99-85, 2000 WL 33726916, at *28 (W.D. Pa. Aug. 18, 2000) ("It is well-established . . . that fraudulent concealment must be pled with the particularity required to meet the heightened standards of [Rule] 9(b).").  In any event, because the Complaint contains no "raw fact" of fraudulent concealment, and Plaintiffs make no argument that it does, the fraudulent concealment allegations do not even satisfy Rule 8 under *Twombly* and *Iqbal*.

[22] *See Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 442-43 (D. Mass. Aug. 30, 2013) (declining to toll statute of limitations because complaint did not satisfy Rule 9(b), citing *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183 (1st Cir. 2006), and the cases it cites).

19

189-90 (dismissing claims for a wide array of torts, statutory violations and breach of contract, and refusing to toll claims based on fraudulent concealment, where the complaint "fails to explain the time, place, content or significance of the 'facts' that [defendant] allegedly concealed and entirely fails to explain how [defendant]'s actions constituted fraud as to him") (citing *Puritan Med. Ctr. v. Cashman*, 596 N.E.2d 1004, 1010 (Mass. 1992)).

### III.   The Opposition Does Not Salvage Plaintiffs' Claims Against a Number of Specific Defendants.

#### A.   Plaintiffs State No Claim as to the CEO Defendants.

In attempting to sustain claims against the CEO Defendants, Plaintiffs once again seek to disregard the *Twombly/Iqbal* standard, insisting they cannot be required to plead "specific facts" about what the CEO Defendants did or did not do "because they are not privy to that information."  Opp. at 32.  As described, *supra* § I.A.1., Plaintiffs' position is flatly incorrect; they cannot seek discovery in the hope that something turns up.  The Opposition's reliance on the pre-*Twombly/Iqbal* case, *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003) (Opp. at 33), is entirely misplaced given the later mandates of the Supreme Court and First Circuit.

Nor do any of the raw facts set forth in the Complaint suggest that the CEOs had relevant fiduciary status.  *See generally Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (fiduciary status is dependent on discretion over plan decisions; "it is the driver, not the vehicle, that chooses the route").  The CEOs are not alleged to have taken any action as to the GAC or any other aspect of the Plan in a fiduciary capacity.  Plaintiffs' argument that the CEOs can be fiduciaries because the GAC states that it would be a breach of the agreement for the "Investor" to make certain changes absent all parties' agreement (Opp. at 33) cannot establish the CEOs' fiduciary status as the cited language says nothing at all about the CEOs' role.

ACTIVE/83326119

Similarly, though the CEO signed the IPS, the document itself makes clear that the IPS was adopted by the "Investment Fiduciary Committee" and that the relevant CEO only acknowledged receipt. IPS at MM-DG-00410, Douglass Decl. Ex. 8. Because no "raw fact" places the CEO Defendants in the drivers' seat as to Plan decisions, they are not proper parties and should be dismissed. Mov. Br. at 29-30; *see Cottrill*, 74 F.3d at 21-22.

The Opposition is also unavailing in attempting to establish derivative liability of the CEOs. Plaintiffs argue that the CEOs, as the people who appointed Plan fiduciaries, must have known about a deficient process, and yet the CEOs did nothing to stop it (even though there never was a deficient process). Opp. at 33-34. Not only have Plaintiffs failed to establish a claim as to any of the Plan fiduciaries based on their bald and unsupported assertions, but their allegations against the CEOs add no new facts that could establish a separate breach by the CEOs, or any knowledge by the CEOs that the appointed fiduciaries were acting improperly.[23] Plaintiffs' claims must be dismissed as mere conjecture. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 413 (S.D.N.Y. 2009) (rejecting "inference stacked upon inference" and dismissing claims), *aff'd*, 387 Fed. Appx. 72 (2d Cir. 2010).[24]

### B.      Plaintiffs State No Claim as to Elaine Sarsynski.

The Opposition similarly fails to salvage claims against Ms. Sarsynski, the "head" of MMRS, a non-fiduciary service provider to the Plan. Mov. Br. at 31-32. Plaintiffs rely on the

---

[23] The Opposition incorrectly relies on *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) (Opp. at 32-34), a case that reviewed the sufficiency of evidence offered at trial, not the sufficiency of pleadings.

[24] Plaintiffs admit that one CEO, Mr. O'Connell, left MassMutual more than six years prior to their filing the Complaint, and they argue that claims against him can be salvaged through their fraudulent concealment theory. *See* Opp. at 34 n.24. As discussed *supra* § II.C., Plaintiffs fail to adequately plead fraudulent concealment sufficient to toll ERISA's statues of repose or limitations as to any claim against any Defendant, and make no allegation whatsoever—not even conclusory, speculative, bald assertions—that Mr. O'Connell engaged in any fraudulent concealment in the six years he was not at MassMutual. Should any part of the Complaint survive (which it should not), at a minimum, Mr. O'Connell should be dismissed.

same provisions of the GAC and IPS that they assert creates fiduciary status for the CEOs—the ability of MassMutual (through MMRS) to agree to amendments to the GAC acting as a counterparty, and that Ms. Sarsynski "signed off on the IPS." Opp. at 34. Like the CEOs, Ms. Sarsynski's name only appears as one who would "acknowledge" the IPS—she did not "adopt" it. IPS at MM-DG-00410, Douglass Decl. Ex. 8. Adoption of the IPS was done instead by the Investment Fiduciary Committee. *Id.* Similarly, Ms. Sarsynski is nowhere mentioned in the GAC section cited by the Opposition. *See* Opp. at 34; GAC at MM-DG-00179, § 6.02, Douglass Decl. Ex. 4. Accordingly, because Plaintiffs provide no basis to infer that Ms. Sarsynski actually participated in any investment approval process, or otherwise had discretionary fiduciary authority with respect to the fees challenged in the Complaint, she should be dismissed from the case.

### C.  Plaintiffs State No Claim as to MassMutual.

The Opposition also does not salvage claims against MassMutual. The Opposition argues that the Company "deduct[ed] fees at its discretion from the SIAs." Opp. at 34. But the Complaint contains *no* allegation that such fees were ever deducted; to the contrary, the Opposition *concedes* that "no fee deductions" were made from Plaintiffs' accounts, consistent with the documents in the record: the SPD and Participant Fee Disclosure Statement submitted by Defendants, and Ms. Reynolds' account statement submitted by Plaintiffs. Opp. at 24 (citing Soyars Decl.); Douglass Decl. Exs. 2 (2013 SPD), 6 (Participant Disclosures), 10 (2008 SPD). Plaintiffs have not pointed to any such fee being deducted from the SIA, notwithstanding the requirement that any fee be disclosed to Plaintiffs, as plan participants. 29 C.F.R. § 2550.404a-5(c)(2)(ii)(A). Further, the Opposition argues that the Company set the "crediting rate on the [GIA]" (Opp. at 34), but, as described above, managing the general account is not a fiduciary act

22

because the underlying assets are not plan assets, and the Company was acting as a counterparty to the Plan—not on behalf of the Plan—when setting the crediting rate.  *See supra* § I.A.2.b.; Mov. Br. at 18-19, 32.

The Opposition also argues that the Company is a fiduciary because, it asserts, under the IPS "'the Company' approves the Investment Fiduciary's investment recommendations."  Opp. at 34.  This is misleading.  The IPS says only that among the Investment Fiduciary's responsibilities is "recommending investment choices and investment options for the Plans to the Company."  IPS at MM-DG-00403, ¶ 3.1(c), Douglass Decl. Ex. 8.  The IPS does not say that the Company then approves of the investment recommendations, and, moreover, the governing Plan Document instead grants this power to the Investment Fiduciary.  Plan Document at MM-DG-00059, § 4.01(b)(1), Douglass Decl. Ex. 1 (Investment Fiduciary's "duties shall include . . . approving investment options").

Because the Opposition's arguments for the Company's fiduciary status are all contradicted by the documents, Plaintiffs' own admissions and the law, all claims against the Company should be dismissed.[25]

---

[25] Neither of the cases cited in the Opposition for alleged corporate liability can sustain the claims against MassMutual.  Opp. at 35.  In *Hamilton v. Carell*, 243 F.3d 992, 1001 (6th Cir. 2001), the court affirmed judgment for the company, and expressly "decline[d]" to determine if respondeat superior liability exists under ERISA. *Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011) involved a scenario where the company's board of directors had an appointment role over plan fiduciaries, which is not alleged to be the case here.  The Opposition does not refute the contrary authorities cited in the Moving Brief.  *See* Mov. Br. at 32.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in Defendants' moving brief, the

Complaint should be dismissed with prejudice.


Dated:  August 18, 2015                              Respectfully Submitted,

                                                     DEFENDANTS.

                                                     By their attorneys,

                                                     /s/ James O. Fleckner
                                                     James O. Fleckner (BBO# 641494)
                                                     Alison V. Douglass (BBO# 646861)
                                                     Goodwin Procter LLP
                                                     Exchange Place
                                                     53 State Street
                                                     Boston, MA 02109
                                                     T: 617-570-1000
                                                     F: 617-523-1231
                                                     JFleckner@goodwinprocter.com
                                                     ADouglass@goodwinprocter.com

ACTIVE/83326119

## <u>CERTIFICATE OF SERVICE</u>

       I, James O. Fleckner, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 18, 2015.

                           /s/ James O. Fleckner