UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS GORDAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE CO., et al.,<br><br>    Defendants. | Case No. 13-CV-30184-MAP |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

**I. INTRODUCTION**

The above-referenced action, originally filed on November 5, 2013, alleges, among other things, that Defendants breached their duties under the Employee Retirement Income Security Act (ERISA) by (1) causing unreasonable administrative expenses to be charged to the Plans; (2) providing unreasonably priced and poor-performing investment options; and (3) providing a fixed income investment option that was unduly risky and expensive. Defendants dispute these allegations and denied and continue to deny liability for any alleged breaches or ERISA violations. Prior to filing this action, Class Counsel, for almost an entire year, extensively researched and investigated this matter. Since the filing, Class Counsel has seen this case through the briefing and argument of two motions to dismiss, conducted substantial settlement discovery, and obtained, through the

1

settlement of this matter, a significant recovery.[1] In particular, the Settlement provides not only a substantial monetary recovery for the MassMutual Thrift Plan and the Massachusetts Mutual Life Insurance Company Agent Pension Plan (collectively the "Plan" or "Plans"), but, moreover, it provides significant future and affirmative relief for a period of *four years* that ensures the prudent management and administration of the Plans.

The Settlement provides a $30.9 million Settlement Fund, returning significant money to current and former MassMutual employees who are or were participants in the Plans. In addition, the Settlement provides substantial future relief, over a period of four years, which secures the prudent operation and administration of the Plans.

The monetary payment and additional affirmative relief terms will provide meaningful relief to all class members. Under the Settlement's "Plan of Allocation," the Settlement Class will share the monetary recovery based on a formula which considers the alleged injury to each class member.[2] The actual recovery per Class Member will depend on the number of Class Members who are eligible for an award and the Class Member's average quarterly account balances during the Class Period, among other factors.

In light of the litigation risks further prosecution of this action would inevitably

---

[1] The fully executed settlement agreement, dated June 15, 2016, ("Settlement" or "Settlement Agreement") is attached hereto as Exhibit A to the Declaration of Jerome J. Schlichter ("Schlichter Decl.").

[2] All capitalized terms have the meaning assigned to them in Article 2 of the accompanying Settlement Agreement, unless otherwise specified herein.

entail, the parties have jointly requested that the Court: (1) preliminarily certify the Settlement Class; (2) preliminarily approve the proposed Settlement; (3) approve the proposed form and method of notice to the Settlement Class; and (4) schedule a hearing at which the Court will consider final approval of the Settlement.

## II. THE CLAIMS IN THE CASE

The complaint asserts seven counts. Doc. 1. Count I asserts that Defendants breached 29 U.S.C. §1104(a)(1)(A) and (B) by imposing unreasonable recordkeeping and administrative fees on the Plans. *Id.* ¶¶109–21. Count II asserts that Defendants breached 29 U.S.C. §1104(a)(1)(A) and (B) by providing participants excessively expensive and poorly performing investment options. *Id.* ¶¶122–31. Counts III and IV assert these actions constitute prohibited transactions under 29 U.S.C. §1106(a)(1)(C)–(D) and 29 U.S.C. §1106(b), respectively. *Id.* ¶¶132–63. Count V asserts that Defendants breached 29 U.S.C. §1104(a)(1)(D) by violating Plan §10.11(a), which obligated MassMutual to pay all Plan expenses. *Id.* ¶¶164–72. Counts I–V seek to hold Defendants jointly and severally liable for restoring to the Plans the losses caused by those breaches and all profits they gained from the misuse of Plan assets and other appropriate equitable relief under 29 U.S.C. §1109(a). Count VI asserts an additional basis of liability against MassMutual, Roger Crandall, Stuart H. Reese, and Robert O'Connell, for breach of their fiduciary duty to properly monitor and replace the fiduciaries over whom they had authority or control and who caused losses to the Plan. *Id.* ¶¶173–80. Finally, alternatively or in addition to the remedies under §§1132(a)(2) and 1109(a), Count VII seeks to

3

enjoin further misconduct and to obtain any "other appropriate equitable relief" under 29 U.S.C. §1132(a)(3). *Id.* ¶¶181–98.

**The Action**

Although this litigation began on November 5, 2013, with the filing of Plaintiffs' complaint, Class Counsel's investigation of this matter commenced over *one year* prior to that filing in late 2012. In investigating this matter, Class Counsel leveraged its experience in litigating many breach of fiduciary cases over the last decade, by analyzing the fiduciary structure, the investment option selections and the administration of the Thrift Plan. In addition, Class Counsel spent months reviewing publicly filed documents, personally met with Class Members, researched and reviewed participant communications provided by Class Members, and exhaustively researched the management structure of the Thrift Plan. In advance of the filing of their lawsuit, Class Counsel, with the assistance of their clients, reviewed a variety of key documents related to the operation of the Thrift Plan.

Defendants filed a Motion to Dismiss Plaintiffs' Complaint on January 14, 2014, seeking dismissal on all claims asserted by Plaintiffs. Doc. 20. Defendants' Motion to Dismiss, among other bases, invoked the applicable statutes of limitations and asked the Court to analyze when the alleged wrongdoing occurred for purposes of determining whether certain of Plaintiffs' claims were time-barred. Doc. 20. Six days prior to oral argument on Defendants' Motion to Dismiss, the Supreme Court granted certiorari in *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), cert. granted, 135 S.Ct. 43 (2014) (No. 13-550). The question upon which the

Supreme Court granted certiorari directly embraced whether a claim that ERISA plan fiduciaries breached their duty of prudence by offering higher-cost retail-class mutual funds to plan participants, even though identical lower-cost institution-class mutual funds were available, is barred by 29 U.S.C. §1113(1) when fiduciaries initially chose the higher-cost mutual funds as plan investments more than six years before the claim was filed. 135 S.Ct. 43.  Given the impact that the Supreme Court's decision in *Tibble* could have on the then-pending motion, the Court denied Defendants' Motion to Dismiss without prejudice and stayed litigation between Plaintiffs and Defendants during the pendency of the Supreme Court ruling.  Doc. 67.

Defendants renewed their Motions to Dismiss on July 2, 2015 after the Court decided *Tibble*.  Doc. 73.  The parties argued the renewed motion before the Court on December 2, 2015.  Doc. 83.  Plaintiffs' Motion for Leave to Amend was denied on March 15, 2016.  Doc. 92.  Defendants' renewed Motion to Dismiss was and is pending at the time of settlement. Doc. 95.

With Defendants' motion to dismiss under advisement, the parties discussed settlement through private mediation. However, before Plaintiffs, through Class Counsel, agreed to engage in any substantive settlement discussions, Plaintiffs requested the production of a variety of categories of documents that were exclusively in the possession and control of Defendants. Those documents included, but were not limited to, the following categories:

- Insurance policies applicable to providing coverage to the fiduciaries or of the Plans;
- Plan documents, summary plan descriptions, and Form 5500s;
- Plan investment policy statements and investment guidelines;
- Investment Fiduciary Committee and Plan Administrative Committee meeting minutes and accompanying materials;
- Agreements and contracts that relate to or are applicable to the Plans;
- Fees, commissions, and expenses paid, directly or indirectly, by the Plans;
- Compensation and payments received by Mass Mutual from or as a result of the Plans;
- Plan invoices;
- Plan service provider contracts, fee schedules, invoices, presentations, and compensation with respect to the Plans;
- Documents related to the monitoring and oversight of the performance and the fees and/or costs of the Plan's service providers;
- Plan investment option asset amounts, performance, and fees;
- Plan consultant reports;
- Documents related to the crediting rates offered to clients invested in the Fixed Interest Account;
- Documents related to the fees and expenses for administration and management of the Fixed Interest Account;
- Documents related to the compensation paid to the sub-advisers of the Plan separate investment accounts; and,
- Section 408(b)(2) disclosures relating to Plan service provider services and compensation.

In total, Defendants produced almost 43,000 pages of settlement discovery materials. In preparing for mediation, Class Counsel spent hundreds of hours thoroughly reviewing and extensively analyzing these materials.

With Class Counsel's due diligence review complete, the parties engaged a national mediator, Hunter Hughes, to conduct settlement discussions. The mediation took place in April of 2016 in the city of New York. Mr. Hughes has significant experience complex civil litigation, including ERISA excessive fee class actions. Although the parties made significant progress during that all-day mediation, the mediation ended without a final agreement. Discussions continued

6

for another two months covering, among other things, extensive non-monetary relief.

On June 15, 2016, the parties reached an agreement on all issues and signed the Settlement Agreement. The terms of the parties' settlement are memorialized in the Settlement Agreement.

## III. THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for releases and for the dismissal of this action as provided for in the Settlement Agreement, Defendants will make available to Class Members the benefits described below. The parties have consented to the Court's continuing jurisdiction over certain matters for a period of four years in the event there is any dispute as to the implementation and compliance with the terms of the Settlement. Class Counsel agrees to take any necessary enforcement action, without additional cost to the Settlement Class.

### A. Monetary Relief

Defendants will deposit $30,900,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries as well Class Counsel's Attorneys' Fees and Costs, Administrative Expenses of the Settlement, and Class Representatives' Compensation as described in the Settlement Agreement.

### B. Non-Monetary Relief

In addition to the monetary component of the Settlement, Defendants have

agreed to significant non-monetary relief, for a period of four years, all to the benefit of participants. In particular, an Independent Fiduciary must determine that the Settlement meets the requirements of Prohibited Transaction Class Exemption ("PTE") 2003-39 and is fair and reasonable. Defendants agree to use an Independent Consultant who has specific expertise with stable value investments. Within one year of the Settlement Effective Date, the Independent Consultant will evaluate and make recommendations regarding the investment structure of the Fixed Interest Account, including, but not limited to, considering a general account investment versus a separate account or synthetic model.

For a period of four years and beginning no later than six months after the Settlement Effective Date, Defendants shall ensure that the Plans' participants are charged no more than $35 per participant for standard recordkeeping services (e.g., excluding charges for unique individual transactions such as loan processing).  No later than one month after the Settlement Effective Date, and continuing for four years thereafter, fees paid to the Plans' recordkeeper will not be set or determined on a percentage-of-plan-assets basis.

To the extent the Plans' Fiduciaries include any member who directly reports to Mass Mutual's CEO, those fiduciaries and their job titles shall be identified in an annual participant statement, such as a Summary Plan Description. Each year during the Settlement Period, the Plan's Fiduciaries will attend a fiduciary responsibility presentation provided by experienced ERISA counsel and an independent investment consultant. Defendants shall supply Class Counsel with an

annual notice confirming the satisfaction of this obligation.

Within six months after the Settlement Effective Date, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall review and evaluate all investment options then offered in the Plans. In evaluating each investment option in the Plans, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall consider, without limitation, (1) the lowest-cost share class available for any particular mutual fund considered for inclusion in the Plans; (2) collective investment trusts and single client separate account investments; and (3) passively managed funds for each category or fund offering that will be made available under the Plans.  For any style or class of investment, the Independent Consultant to the Plans shall provide the Plan Fiduciaries with at least three finalists to consider in making their selection.  If collective investment trusts or separately managed accounts are utilized, the Plan Fiduciaries shall secure most-favored-nations treatment for the benefit of the Plans.

During the Settlement Period, the Independent Consultant and the Plan Fiduciaries shall ensure that all investment options provided in the Plans comply with the Plans' Investment Policy Statement ("IPS").  To the extent any investment option triggers a review under the terms of the IPS, the Independent Consultant and the Plan Fiduciaries shall engage in a process to determine whether to remove, retain or monitor the investment option over a defined period of time.  This process shall be documented in writing and made part of the Plan Fiduciaries' meeting materials.

In the event the Plans offer a separate account that invests in a mutual fund that utilizes a sub-advisor, the Investment Consultant, in evaluating the reasonableness of the fund's fees, shall consider the portion of the fund's fees that is paid to the sub-advisor and the portion of the fund's fee charged in addition to the sub-advisor fee. In conducting this evaluation, the Investment Consultant shall compare the fees paid by similar institutional clients over $1 billion in assets for investments with the same or similar asset class and investment style.

The Plan Fiduciaries, on behalf of the Plans, will contract with the Plans' recordkeeper to obtain participant statements that comply with all applicable Department of Labor participant-disclosure regulations. The Plan Fiduciaries and Defendants shall provide accurate participant communications throughout the Settlement Period.

These terms provide value to the Plan in addition to the monetary amount.

### C. Notice and Class Representatives' Compensation

The notice costs and all costs of administration of the Settlement will come out of the $30,900,000 Gross Settlement Amount. Incentive payments to the seven named Plaintiffs in an amount to be approved by the Court would also be paid out of the Gross Settlement Amount. Plaintiffs will seek $15,000 for each of the Named Plaintiffs. This amount is well in line with precedent recognizing the value of individuals stepping forward to represent classes — particularly in a case like this one, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there are significant risks, including the risk of no

recovery, the risk of alienation from their employers and peers, and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success. *Krueger v. Ameriprise Fin.,* Inc., 2015 U.S. Dist. LEXIS 91385, *10−11 (D. Minn. July 13, 2015)(approving awards of $25,000 to each of the named plaintiffs); *Tussey v. ABB, Inc.*, 2012 U.S. Dist. LEXIS 157428, *33–34 (W.D. Mo. Nov. 2, 2012)(J. Laughrey) (approving awards of $25,000 to each of three named plaintiffs in 401(k) fee ERISA class action); *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *13–14 (S.D. Ill. Jan. 31, 2014)(J. Herndon)(approving $25,000 to each of six surviving named plaintiffs in 401(k) fee settlement and noting that "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). The total award requested for the Named Plaintiffs represents just over one-half of one percent of the Settlement Fund.

### D. Attorneys' Fees and Costs

Class Counsel will request attorneys' fees to be paid out of a common fund, the Qualified Settlement Fund, in an amount not more than one-third of the Gross Settlement Amount, or $10,300,000.00 as well as reimbursement for costs incurred of no more than $75,000.00. "Courts have long recognized that a lawyer who recovers a 'common fund' for the class she represents is entitled to be paid a reasonable attorneys' fee and her expenses prior to the distribution of the balance to the class." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *9 (D. Mass. Aug. 17, 2005; see also *Boeing Co. v. VanGemert*, 444 U.S.

11

472, 478 (1980). In "ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options and the reasonableness of defined contribution plan fees," federal "courts have consistently awarded one-third contingent fees." *Krueger,* 2015 U.S. Dist. LEXIS 91385 at *8–9; *Beesley v. Int'l Paper Co.*, 2014 U.S.Dist. LEXIS 12037, *7 (S.D.Ill. Jan 31, 2014) citing *Will v. General Dynamics Corp.*, 2010 U.S.Dist. LEXIS 123349, *9 (S.D.Ill. Nov. 22, 2010); see also *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280 (D. Minn. 1997)(J. Rosenbaum)(approving one-third fee of $86 million class settlement). In addition, a one-third fee to Class Counsel is also provided for in the contract with the Named Plaintiffs. Schlichter Decl. ¶4.

Although Class Counsel will not request a fee greater than one-third of the monetary recovery, the extensive future relief provided in the Settlement benefitting participants for a period of at least four years adds meaningful value in addition to the monetary amount. This results in the requested attorney fee award being lower than a one-third award. Moreover, Class Counsel will not seek an award of additional fees from the Settlement Class for the following: (1) the interest earned on the Gross Settlement Amount; (2) communications with Class Members or Defendants during the four-year Settlement Period and review of related documents; and (3) work required if mediation or enforcement of the Settlement Agreement is necessary. *Smith v. Krispy Kreme Doughnut Corp.*, 2007 U.S. Dist. LEXIS 2392, at *10–11. (M.D. N.C. January 10, 2007). Further, Class Counsel bears the risk of half of the costs of pursuing the settlement if the settlement is not

approved or is otherwise terminated. Settlement Agreement, Article 11. A formal application for attorneys' fees and costs and for named plaintiff awards will be made at least 30 days prior to the deadline for class members to file objections to the Settlement.

## IV. ARGUMENT

The first step in approving any proposed settlement in a class action is a preliminary review by this Court. *Hochstadt v. Boston Sci. Corp.,* 708 F. Supp. 2d 95, 97 FN1 (D. Mass. 2010). "At the preliminary approval stage, the judge must either approve or disapprove the proposed settlement." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 n.4 (D. Mass. 2004). Only after the second step, a fairness hearing, has taken place, may the court finally approve the settlement. *Hochstadt*, 708 F. Supp. 2d at 97 n.1., see also Manual for Complex Litigation, Fourth, §13.14, at 172-73 (Fed. Jud. Ctr. 2004) ("Manual Fourth"). The Court is not required at the preliminary stage to make any final determinations:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id*. § 21.632, at 321. Again, preliminary approval is only the first step in a two-step process required before a class action may be finally settled. *Id*. at 320. In some cases this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id*.

In this matter, the Court should preliminarily approve the Settlement for the

reasons that: (1) the proposed Settlement was the product of extensive arm's length negotiations; (2) the Settlement was executed only after Class Counsel conducted significant pre-settlement investigation and discovery; (3) Class Counsel have concluded that the Settlement is fair, reasonable, and adequate; and, (4) the Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Class Members. See *City P'ship. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996); see also, *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62–63 (D. Mass. 2010), *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

### a. The Settlement is the product of extensive arm's length negotiations

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. See *City P'ship.* 100 F.3d at 1043 (noting a strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations); see also *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). As mentioned above, this Settlement is the result of lengthy, contentious and complex arm's-length negotiations between the parties and a national mediator. These negotiations extended over a period of months. Counsel on each side is experienced and thoroughly familiar with the factual and legal issues presented. It is recognized

that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *EEOC v. Faribault Foods, Inc.*, 2008 U.S.Dist. LEXIS 29132, *12 (D. Minn. March 28, 2008) (J. Kyle).

### b. The Settlement was executed only after significant pre-settlement investigation

As mentioned above, Class Counsel conducted substantial pre-filing investigation and conducted in-depth analysis of over 43,000 pages of documents produced by Defendants. These documents, along with Class Counsel's independent investigation files, were electronically indexed and sorted, and thereafter individually examined and analyzed by an attorney. In addition, Class Counsel thoroughly reviewed and analyzed additional documents provided by the Plaintiffs and other documents obtained from public filings with the Department of Labor. Class Counsel's expertise, obtained over a period of ten years successfully litigating these cases aided with the assistance of consultants intimately familiar with financial services industry practices, investment management, recordkeeping, and retirement industry practices, coupled with the voluminous investigative files and discovery, allowed significant development of the facts and theories supporting a successful resolution of these claims. See e.g. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999).

### c. Class Counsel believe the Settlement is fair, reasonable, and adequate

Class Counsel is very experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement

15

plans under ERISA. Class Counsel is intimately familiar with this unique and complex area of law, as noted by other courts considering cases alleging ERISA breaches of fiduciary duty with respect to fees and investments in 401(k) plans. *Tussey v. ABB, Inc.*, 2012 U.S.Dist. LEXIS 157428, *10 (W.D.Mo. Nov. 2, 2012)("Plaintiffs' attorneys are clearly experts in ERISA litigation"); *Beesley v. Int'l Paper Co.*, 3014 U.S.Dist. LEXIS 12037, *4–5 (S.D.Ill. Jan 31, 2014)(J.Herndon)("The Court remains impressed with Class Counsel's navigation of the challenging legal issues involved in this trailblazing litigation and Class Counsel's commitment and perseverance in bringing this case to this resolution."). It is Class Counsel's opinion that the Settlement is fair and reasonable. Schlichter Decl. ¶ 2. As set forth above, the Settlement provides a substantial monetary relief component in the amount of $30,900,000. In addition, the Settlement provides substantial and comprehensive non-monetary relief. At the final approval hearing, Plaintiffs will present expert declarations opining as to the value of this relief. Finally, independent of Class Counsel's opinion as to the reasonableness of the Settlement, the parties will also submit the settlement terms to an Independent Fiduciary who will provide an opinion on the Settlement's fairness before the final approval hearing.

### d. The Settlement is fair, reasonable, and adequate to warrant sending notice to the Settlement Class

Due process and Rule 23(e) do not require that each Class Member receive notice, but do require that class notice be "reasonably calculated, under the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the proposed form and method of notice of proposed settlement agreed to by the parties satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1). Plaintiffs' proposed forms of Settlement Notices are attached to the Settlement. The proposed notice plan will fully apprise Class Members of the existence of the lawsuit, the Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and extent of the release, (iii) the maximum fees Class Counsel will seek; (iv) the procedure and timing for objecting to the Settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The notice plan consists of multiple components designed to reach Class Members. First, the Settlement Notice will be sent by first-class mail to the current or last known address of all Class Members after entry of the Preliminary Approval Order. Addresses of the Class Members are maintained by the Plans' recordkeeper, who use this information for, *inter alia*, mailing plan notices, participant communications, and other plan-related information. Class Members include both

current and former employees and agents Defendants and their affiliates. In addition to the Settlement Notice, Class Counsel will develop a dedicated website, www.MassMutualRetirementPlanSettlement.com, solely for the settlement, and a link to that website will appear on Class Counsel's website, www.uselaws.com. The notice plan also includes a requirement for follow-up by the Settlement Administrator for those Class Members whose notice letters are returned because they no longer reside at such address.

Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate. *See* Newberg on Class Actions, § 8.34.

## V. CONCLUSION

For these reasons, the Joint Motion for Preliminary Approval of Class Settlement should be granted.

Dated: June 15, 2016                     Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Troy A. Doles (admitted *pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Phone: (314) 621-6115
Fax: (314) 621-5934
jschlichter@uselaws.com
tdoles@uselaws.com

Lead Counsel for Plaintiffs

>Stephen Churchill, BBO#564158
>Hillary Schwab, BBO#666029
>FAIR WORK, P.C.
>192 South Street, Suite 450
>Boston, MA 02111
>Phone: (617) 607-3260
>Fax: (617) 488-2261
>steve@fairworklaw.com
>hillary@fairworklaw.com

>Local Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

 I hereby certify that on June 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

           /s/ Jerome J. Schlichter