UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS GORDAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MASSACHUSETTS MUTUAL LIFE INSURANCE CO., et al., <br><br> Defendants. | No. 13-CV-30184-MAP |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

## I. INTRODUCTION

This Settlement provides significant monetary relief, $30.9 million, and very substantial affirmative relief that will benefit virtually every participant in the MassMutual-sponsored plans that are the subject of this Settlement. Those plans include the MassMutual Thrift Plan and the Massachusetts Mutual Life Insurance Company Agent Pension Plan (collectively the "Plan" or "Plans").

Plaintiffs filed this action three years ago and alleged, among other things, that Defendants breached their duties under the Employee Retirement Income Security Act (ERISA) by: (1) causing unreasonable administrative expenses to be charged to the Plans; (2) providing unreasonably priced and poor-performing investment options; and (3) providing a fixed income investment option that was unduly risky and expensive. Defendants dispute these allegations and denied and continue to deny liability for any alleged breaches or ERISA violations.

The Settlement was the product of extensive arm's-length negotiations preceded by a great deal of pre-filing work, consisting of a detailed analysis of the Plan's

1

investment options and expenses paid to the Plan's service providers, and consulting with experts. In addition Plaintiffs obtained, thoroughly reviewed, and analyzed substantial settlement-related discovery from Defendants related to their operation and administration of not only the Thrift Plan but also the Massachusetts Mutual Life Insurance Company Agent Pension Plan. In developing the facts and theories, Plaintiffs used their expertise regarding the 401(k) industry, consulted with experts, and reviewed additional publically available documents, literature in the field of investment management, fiduciary practices, recordkeeping practices, and finance. After lengthy and protracted discussions, and with the assistance of a nationally recognized mediator, the parties reached an agreement on monetary terms and agreed on non-monetary terms over two months later. In light of the litigation risks further prosecution of this action would inevitably entail, the parties have jointly requested that the Court grant final approval to the proposed Settlement. Doc. 129 (Joint Motion). Plaintiffs submit this memorandum in support of this joint request.

## II. BACKGROUND

### A. Claims

The complaint asserts seven counts. Doc. 1. Count I asserts that Defendants breached 29 U.S.C. §1104(a)(1)(A) and (B) by imposing unreasonable recordkeeping and administrative fees on the Plans. *Id*. ¶¶109–21. Count II asserts that Defendants breached 29 U.S.C. §1104(a)(1)(A) and (B) by providing participants excessively expensive and poorly performing investment options. *Id*. ¶¶122–31. Counts III and IV assert these actions constitute prohibited transactions under 29

U.S.C. §1106(a)(1)(C)–(D) and 29 U.S.C. §1106(b), respectively. *Id.* ¶¶132–63. Count V asserts that Defendants breached 29 U.S.C. §1104(a)(1)(D) by violating Plan §10.11(a), which obligated MassMutual to pay all Plan expenses. *Id.* ¶¶164–72. Counts I–V seek to hold Defendants jointly and severally liable for restoring to the Plans the losses caused by those breaches and all profits they gained from the misuse of Plan assets and other appropriate equitable relief under 29 U.S.C. §1109(a). Count VI asserts an additional basis of liability against MassMutual, Roger Crandall, Stuart H. Reese, and Robert O'Connell, for breach of their fiduciary duty to properly monitor and replace the fiduciaries over whom they had authority or control and who caused losses to the Plan. *Id.* ¶¶173–80. Finally, alternatively or in addition to the remedies under §§1132(a)(2) and 1109(a), Count VII seeks to enjoin further misconduct and to obtain any "other appropriate equitable relief" under 29 U.S.C. §1132(a)(3). *Id.* ¶¶181–98.

### B. The Action

Although this litigation began on November 5, 2013 with the filing of Plaintiffs' complaint, Class Counsel's investigation of this matter commenced over *one year* prior to that filing in late 2012. In investigating this matter, Class Counsel leveraged its experience in litigating many breach of fiduciary cases over the last decade, by analyzing the fiduciary structure, the investment option selections and the administration of the Thrift Plan. Doc. 120-05 ¶¶13–14. In addition, Class Counsel spent months reviewing publicly filed documents, personally met with Class Members, researched and reviewed participant communications provided by Class Members, and exhaustively researched the management structure of the

3

Thrift Plan. In advance of the filing of their lawsuit, Class Counsel, with the assistance of their clients, reviewed a variety of key documents related to the operation of the Thrift Plan.

Defendants filed a Motion to Dismiss Plaintiffs' Complaint on January 14, 2014, seeking dismissal of all claims asserted by Plaintiffs. Doc. 20. Defendants' Motion to Dismiss, among other grounds, invoked the applicable statutes of limitations and asked the Court to analyze when the alleged wrongdoing occurred for purposes of determining whether certain of Plaintiffs' claims were time-barred. Doc. 20. Six days prior to oral argument on Defendants' Motion to Dismiss, the Supreme Court granted certiorari in *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), cert. granted, 135 S.Ct. 43 (2014) (No. 13-550), a case also handled by Class Counsel. The question upon which the Supreme Court granted certiorari was whether a claim that ERISA plan fiduciaries breached their duty of prudence by offering higher-cost retail-class mutual funds to plan participants, even though identical lower-cost institution-class mutual funds were available, is barred by 29 U.S.C. §1113(1) when fiduciaries initially chose the higher-cost mutual funds as plan investments more than six years before the claim was filed. 135 S.Ct. 43. Given the impact that the Supreme Court's decision in *Tibble* could have on the then-pending motion, the Court denied Defendants' Motion to Dismiss without prejudice and stayed litigation between Plaintiffs and Defendants during the pendency of the Supreme Court ruling. Doc. 67.

Defendants renewed their Motions to Dismiss on July 2, 2015 after the Court

4

decided *Tibble*. Doc. 73. The parties argued the renewed motion before the Court on December 2, 2015. Doc. 83. Plaintiffs' Motion for Leave to Amend was denied on March 15, 2016. Doc. 92. Defendants' renewed Motion to Dismiss was pending at the time of Settlement. Doc. 95.

With Defendants' motion to dismiss under advisement, the parties discussed settlement through private mediation. However, before Plaintiffs, through Class Counsel, agreed to engage in any substantive settlement discussions, Plaintiffs insisted on the production of a variety of categories of documents that were exclusively in the possession and control of Defendants. Those documents included, but were not limited to, the following categories:

- Insurance policies applicable to providing coverage to the fiduciaries or of the Plans;
- Plan documents, summary plan descriptions, and Form 5500s;
- Plan investment policy statements and investment guidelines;
- Investment Fiduciary Committee and Plan Administrative Committee meeting minutes and accompanying materials;
- Agreements and contracts that relate to or are applicable to the Plans;
- Fees, commissions, and expenses paid, directly or indirectly, by the Plans;
- Compensation and payments received by MassMutual from or as a result of the Plans;
- Plan invoices;
- Plan service provider contracts, fee schedules, invoices, presentations, and compensation with respect to the Plans;
- Documents related to the monitoring and oversight of the performance and the fees and/or costs of the Plan's service providers;
- Plan investment option asset amounts, performance, and fees;
- Plan consultant reports;
- Documents related to the crediting rates offered to clients invested in the Fixed Interest Account;
- Documents related to the fees and expenses for administration and management of the Fixed Interest Account;
- Documents related to the compensation paid to the sub-advisers of the Plan separate investment accounts; and,
- Section 408(b)(2) disclosures relating to Plan service provider services and

compensation.

In total, Defendants produced almost 43,000 pages of settlement discovery materials. In preparing for mediation, Class Counsel spent hundreds of hours thoroughly reviewing and extensively analyzing these materials.

With Class Counsel's due diligence review complete, the parties engaged a national mediator, Hunter Hughes, to conduct settlement discussions. The mediation took place in April of 2016 in New York City. Mr. Hughes has significant experience complex civil litigation, including ERISA excessive-fee class actions. Although the parties made significant progress during that all-day mediation, the mediation ended without a final agreement. Discussions continued for another two months covering, among other things, extensive non-monetary relief.

On June 15, 2016, the parties reached an agreement on all issues and signed the Settlement Agreement. The terms of the parties' settlement are memorialized in the Settlement Agreement.

### C. Terms of the Proposed Settlement

In exchange for releases and for the dismissal of this action as provided for in the Settlement Agreement, Defendants will make available to Class Members the benefits described below. The parties have consented to the Court's continuing jurisdiction for a period of four years in the event there is any dispute as to the implementation and compliance with the terms of the Settlement. Class Counsel agrees to take any necessary enforcement action, without additional cost to the Settlement Class.

1. **Monetary Relief**

Defendants will deposit $30,900,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries per the Plan of Allocation, as well Class Counsel's Attorneys' Fees and Costs, Administrative Expenses of the Settlement, and Class Representatives' Compensation as described in the Settlement Agreement.

2. **Non-Monetary Relief**

In addition to the monetary component of the Settlement, Defendants have agreed to far reaching and highly valuable non-monetary relief, during the four-year settlement period, all to the benefit of participants as follows:

a. Defendants agree to use an Independent Consultant who has specific expertise with stable value investments. Within one year of the Settlement Effective Date, the Independent Consultant will evaluate and make recommendations regarding the investment structure of the Fixed Interest Account, including, but not limited to, considering a general account investment versus a separate account or synthetic model.

b. For a period of four years and beginning no later than six months after the Settlement Effective Date, Defendants shall ensure that the Plans' participants are charged no more than $35 per participant for standard recordkeeping services (e.g., excluding charges for unique individual transactions such as loan processing). No later than one month after the Settlement Effective Date, and continuing for four years thereafter, fees paid

7

to the Plans' recordkeeper will not be set or determined on a percentage-of-plan-assets basis.

   c. To the extent the Plans' Fiduciaries include any member who directly reports to MassMutual's CEO, those fiduciaries and their job titles shall be identified in an annual participant statement, such as a Summary Plan Description.

   d. Each year during the Settlement Period, the Plan's Fiduciaries will attend a fiduciary responsibility presentation provided by experienced ERISA counsel and an independent investment consultant. Defendants shall supply Class Counsel with an annual notice confirming the satisfaction of this obligation.

   e. Within six months after the Settlement Effective Date, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall review and evaluate all investment options then offered in the Plans. In evaluating each investment option in the Plans, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall consider, without limitation, (a) the lowest-cost share class available for any particular mutual fund considered for inclusion in the Plans; (b) collective investment trusts and single client separate account investments; and (c) passively managed funds for each category or fund offering that will be made available under the Plans. For any style or class of investment, the Independent Consultant to the Plans shall provide the Plan Fiduciaries with at least three finalists to

consider in making their selection. If collective investment trusts or separately managed accounts are utilized, the Plan Fiduciaries shall secure most-favored-nations treatment for the benefit of the Plans.

    f. During the Settlement Period, the Independent Consultant and the Plan Fiduciaries shall ensure that all investment options provided in the Plans comply with the Plans' Investment Policy Statement ("IPS"). To the extent any investment option triggers a review under the terms of the IPS, the Independent Consultant and the Plan Fiduciaries shall engage in a process to determine whether to remove, retain or monitor the investment option over a defined period of time. This process shall be documented in writing and made part of the Plan Fiduciaries' meeting materials.

    g. In the event the Plans offer a separate account that invests in a mutual fund that utilizes a sub-advisor, the Investment Consultant, in evaluating the reasonableness of the fund's fees, shall consider the portion of the fund's fees that is paid to the sub-advisor and the portion of the fund's fee charged in addition to the sub-advisor fee. In conducting this evaluation, the Investment Consultant shall compare the fees paid by similar institutional clients with over $1 billion in assets for investments with the same or similar asset class and investment style.

    h. The Plan Fiduciaries, on behalf of the Plans, will contract with the Plans' recordkeeper to obtain participant statements that comply with all applicable Department of Labor participant-disclosure regulations.

      i. The Plan Fiduciaries and Defendants shall provide accurate participant communications throughout the Settlement Period.

These terms provide highly valuable benefits to the MassMutual employees and retirees in addition to the monetary amount. Indeed, the potential value of just a *portion* of this affirmative relief has been calculated to exceed the monetary amount and be nearly $47 million. Doc. Doc. 120 at 6.

As an additional provision to avoid Prohibited Transaction Class Exemption ("PTE") 2003-39, an Independent Fiduciary after extensive review of the Settlement, found the Settlement and requested attorneys' fees and costs were fair and reasonable.

### D. Preliminary Settlement Approval and Motions for Fees and Costs

On June 22, 2016, the Court certified the class action for settlement purposes only (Doc. 112) and on June 27, 2016 granted preliminary approval to the Settlement (Doc.113). Notices were initially mailed out to 32,550 Class Members on August 19, 2016. The Settlement Administrator re-mailed notices returned undeliverable by performing advanced address searches using participant Social Security Numbers for 988 of those notices, and an additional 345 were remailed to addresses provided by the U.S. Postal Service.[1] On September 2, 2016, Plaintiffs filed a Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards for Named Plaintiffs. Doc. 119.

---

[1] The Settlement Administrator will provide a declaration prior to the Final Hearing.

### E. Class Member Reaction

Each Class Member was provided the opportunity to object to the Settlement by writing the Court and lodging their formal objection to the Settlement or any component of the Settlement. Notices were mailed to 32,550 Class Members. With an objection deadline of October 3, 2016, as of October 19, 2016, only two Class Members have filed an objection of any kind to any portion of the Settlement or Plaintiffs' Motion for Attorneys' Fes, Reimbursement of Expenses, and Case Contribution Awards for Named Plaintiffs. Neither objection provides a legitimate reason for this Court not to finally approve this Settlement or approve Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards for Named Plaintiffs. The first objector (Doc. 122) merely suggests that Class Counsel's attorneys' fees should be borne by MassMutual, not through the settlement proceeds. This objector does not offer any opposition to the Settlement itself or the amount of the requested attorneys' fees and should thus be overruled. As explained below, considering all factors, the net monetary recovery provided to the class represents an outstanding recovery. The second objector (Doc. 124) requests that he be excluded from the Settlement class. However, given that the Court certified this matter as a non-opt out Rule 23(b)(1) class, no Class Member may opt out. Doc. 112 at 3. Thus, this objection should also be overruled.

### F. Support for the Settlement and Class Counsel's Efforts.

Since the submission of the Settlement for preliminary approval, the AARP, the Pension Rights Center and the Centre for Fiduciary Excellence, LLC have filed declarations in this matter resoundingly supporting this Settlement and the efforts

of Class Counsel. Doc. 120-01; Doc. 120-02; Doc. 125-01. In addition, the Independent Fiduciary has offered its approval to all aspects of the Settlement, including Class Counsel's request for attorneys' fees. Exhibit 1 to Motion.

## III. ARGUMENT

This Court may approve a class action settlement only if it is fair, adequate and reasonable. *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City Pshp. Co. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir. 1996); s*ee United States* v. *Cannons Engineering Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989). Although the First Circuit has not adopted any single list of factors in approving a settlement, this Court may consider the following: (1) whether the Settlement is the product of extensive arm's length negotiations; (2) whether the Settlement was executed only after significant pre-settlement investigation and discovery; (3) whether Class Counsel believes the Settlement is fair, reasonable, and adequate; and (4) whether the Settlement is adequate which includes a look at (a) the relative strength of Plaintiffs' case on the merits and the strength of Defendants' defenses, (b) the anticipated duration and expense of additional litigation, and (c) the degree of opposition to the Settlement. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005). For the reasons previously explained in Plaintiffs' Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement (Doc. 107), and for those additional reasons briefly explained

below, the Settlement is fair, adequate and should be finally approved.

### A. The Settlement is fair because it is the product of extensive arm's length negotiations.

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. See *City P'ship.*, 100 F.3d at 1043 (noting a strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations); see also *Newberg on Class Actions* §11.41 at 11–88 (3d ed. 1992). As explained above, this Settlement is the result of lengthy, contentious, and complex arm's-length negotiations between the parties and a national mediator. Defendants' counsel is experienced and thoroughly familiar with the factual and legal issues presented in this case. Class Counsel is the preeminent firm for employees and retirees, the pioneer in 401(k) excessive fee litigation,[2] and has achieved numerous settlements with both substantial monetary as well as non-monetary relief, as here. Doc. 120-2 ¶17; Doc. 120-4 ¶4−10. Thus, the settlement is the product of the diligent and hard-fought efforts of exceptionally experienced counsel on behalf of Plaintiffs.

### B. The Settlement was executed only after significant pre-settlement investigation and discovery.

Class Counsel conducted substantial pre-filing investigation and conducted in-depth analysis of over 43,000 pages of documents produced by Defendants. Doc. 120 at 6−7. These documents, along with Class Counsel's independent investigation files, were electronically indexed and sorted, and thereafter individually examined

---

[2] Floyd Norris, *What a 401(k) Plan Really Owes Employees*, New York Times, Oct. 16, 2014, available at http://www.nytimes.com/2014/10/17/business/what-a-401-k-plan-really-owes-employees.html?_r=0.

and analyzed by an attorney. In addition, Class Counsel thoroughly reviewed and analyzed additional documents provided by the Plaintiffs and other documents obtained from public filings with the Department of Labor and the Securities and Exchange Commission. *Id.* at 5−7; *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73. Class Counsel's expertise, obtained over a period of ten years initiating 401(k) excessive fee cases when no one else had done so, and successfully litigating these cases was highly valuable to developing the case. Using consultants intimately familiar with financial services industry practices, investment management, recordkeeping, and retirement industry practices, coupled with the voluminous investigative files and discovery, allowed Class Counsel develop the facts and theories supporting a successful resolution of these claims. Doc. 120-5; see *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 77 (D. Mass. 1999).

### C. Class Counsel believes the Settlement is fair, reasonable, and adequate.

Class Counsel is highly experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. Doc. 120-5; Doc. 120-2. Class Counsel is intimately familiar with this unique and complex area of law, as noted by other courts considering cases alleging ERISA breaches of fiduciary duty with respect to fees and investments in 401(k) plans. *Tussey v. ABB, Inc.*, 2012 U.S.Dist.LEXIS 157428, *10 (W.D.Mo. Nov. 2, 2012)("Plaintiffs' attorneys are clearly experts in ERISA litigation"); *Beesley v. Int'l Paper Co.*, 3014 U.S.Dist.LEXIS 12037, *4–5 (S.D.Ill. Jan 31, 2014)("The Court remains impressed with Class Counsel's navigation of the

challenging legal issues involved in this trailblazing litigation and Class Counsel's commitment and perseverance in bringing this case to this resolution."); *Spano v. Boeing*, No. 06-743, Doc. 587, at 4 (S.D. Ill. March 31, 2016)("Schlichter, Bogard & Denton added great value to the Class throughout the litigation through the persistence and skill of their attorneys."); *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 184622, at *8 (C.D.Ill Oct. 15, 2013)(describing Class Counsel as the "preeminent firm in 401(k) fee litigation," and noting that it has "invested such massive resources and persevered in the face of the enormous risks of representing employees and retirees in this area"). It is Class Counsel's opinion that the Settlement is fair and reasonable. Doc. 107-1, ¶2. As set forth above, the Settlement provides a substantial monetary relief component in the amount of $30,900,000. In addition, the Settlement provides valuable long-term comprehensive non-monetary relief. As noted above, the potential value of just a *portion* of this affirmative relief has been calculated to be nearly $47 million. Doc. Doc. 120 at 6.

### D. The Settlement is Clearly Adequate.

In assessing the adequacy of the Settlement, the Court may consider the following relevant and applicable factors: (1) the relative strength of Plaintiffs' case on the merits and the strength of Defendants' defenses; (2) the anticipated duration and expense of additional litigation; and (3) the degree of opposition to the Settlement. Together, these factors weigh heavily in favor of this Court finding that the proposed Settlement is adequate.

1. **The Settlement is reasonable in light of the relative strength of Plaintiffs' Case on the Merits.**

The Settlement obtained here represents an outstanding recovery in light of both the strength of the Plaintiffs' claims but also in light of the strength of Defendants' defenses. Doc. 120-2 ¶21. Although the Court did not rule on Defendants' motion to dismiss prior to this Settlement, Defendants raised significant challenges and arguments in their defense. Doc. 120 at 25 (Court noted that it was "wrestling" with a decision on Defendants' motion to dismiss). Indeed, this makes the recovery obtained herein all the more notable. The monetary recovery of $30.9 million is substantial, and, the affirmative relief obtained by Class Counsel creates potential savings that exceeds the value of the monetary relief. As noted above, on *portions* of the affirmative relief alone, Class Counsel has demonstrated an additional value to the class of nearly $47 million. Doc. 120 at 6.

2. **The Settlement avoids lengthy and costly litigation**

Without this Settlement, multiple, unavoidable stages of litigation would be experienced that would not only be time-consuming but very costly to all parties, including Class Members. In *Tussey v. ABB*, No. 06-4305 (W.D. Mo.), seven experts testified at trial, and the two Defendants had 15 or more lawyers present in the courtroom throughout the month long trial. In addition, all parties, including plaintiffs, had a technology team present throughout. Plaintiffs' counsel's firm expended over $2,000,000 in expenses by the conclusion of the trial, and continues to carry them today. That case is on its second appeal after being filed almost 10 years ago. Despite the plaintiffs' success on the claims not subject to appeal, class

members have still not received any compensation for their losses. Thus far in this litigation, the parties have extensively litigated Defendants' motion to dismiss and a determination was not made on that motion. Assuming Plaintiffs' prevailed at the motion to dismiss stage, additional significant challenges remain at the District Court level, including class certification, summary judgment, and trial. Indeed, "[t]his case has the potential to impose enormous costs on all of the parties." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72.

        3.    **The Class Members have reacted favorably to the settlement.**

As this Court is aware, the Settlement Administrator implemented a comprehensive notice program. As of the filing of this memorandum and with an objection deadline of October 3, 2016, of the 32,550 Class Members that received a notice, only two Class Members submitted objections. As noted above, one objection does not lodge any dispute with the Settlement itself or the amount of the attorneys' fees and the other Class Member wants to opt out of the Settlement. As explained above, both objections should be overruled, and this Settlement overwhelmingly supported by the Class should not be delayed. Indeed, with only two objections of any kind offered, it is clear that there is overwhelming support for the approval of this Settlement. *See Chakejian v. Equifax Info. Servs., LLC,* 275 F.R.D. 201, 212 (E.D. Pa. 2011)(two objectors in a class of approximately forty thousand weights in favor of approving the settlement).

In addition to the near unanimous support for the Settlement by Class Members, the Independent Fiduciary has thoroughly reviewed all aspects of the

Settlement, including the Class Counsel's request for fees, and has provided its approval. See Doc. 129-1.

## IV. CONCLUSION

For these reasons, the Joint Motion for Final Approval of Class Settlement should be granted.

Dated: October 19, 2016      Respectfully submitted,


/s/  Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON LLP
Jerome J. Schlichter (admitted *pro hac vice*)
Troy A. Doles (admitted *pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Phone: (314) 621-6115
Fax: (314) 621-5934
jschlichter@uselaws.com
tdoles@uselaws.com

*Lead Counsel for Plaintiffs*

Stephen Churchill, BBO#564158
Hillary Schwab, BBO#666029
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 19, 2016.

                                        /s/ Jerome J. Schlichter