UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS GORDAN, et al., | |
| Plaintiffs, | |
| v. | No. 13-CV-30184-MAP |
| MASSACHUSETTS MUTUAL LIFE INSURANCE CO., et al., | |
| Defendants. | |

**SETTLEMENT AGREEMENT**

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and the Defendants.

**1.      Article 1 – Recitals**

1.1      On November 5, 2013, Dennis Gordan, John Hine, Donna Flieger, Patricia Hurley, Ronald Lindner, Janice Reynolds, and Sharon Jewell, on behalf of themselves and all participants in the MassMutual Thrift Plan (the "Thrift Plan"), filed a Complaint (Case No. 13-30184-MAP) against Massachusetts Mutual Life Insurance Company ("MassMutual") and various individuals and committees alleged to have fiduciary responsibility for the Plan (collectively with MassMutual, "Defendants") in the United States District Court for the District of Massachusetts as representatives of a putative class asserting various claims of breaches of fiduciary duty and prohibited transactions, and seeking relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Defendants dispute all claims.

1.2      Defendants filed a Motion to Dismiss Plaintiffs' Complaint on January 14, 2014, seeking dismissal on all claims asserted by Plaintiffs. Doc. 20. Defendants' Motion to Dismiss, among other bases, invoked the applicable statutes of limitations and asked the Court to analyze when the alleged wrongdoing occurred for purposes of determining whether certain of Plaintiffs' claims were time-barred. Doc. 20. Six days prior to oral argument on Defendants' Motion to Dismiss, the Supreme Court granted certiorari in a case called *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), *cert. granted*, 135 S.Ct. 43 (2014) (No. 13-550). The question upon which the Supreme Court granted certiorari directly embraced whether a claim that ERISA plan fiduciaries breached their duty of prudence by offering higher-cost retail-class mutual funds to plan participants, even though identical lower-cost institution-class mutual funds were available, is barred by 29 U.S.C. § 1113(1) when fiduciaries initially chose the higher-cost mutual funds as plan investments more than six years before the claim was filed. 135 S.Ct. 43. Given the impact that the Supreme Court's decision in *Tibble* could have on the then-pending motion, the Court denied Defendants' Motion to Dismiss without prejudice and stayed litigation between Plaintiffs and Defendants during the pendency of the Supreme Court ruling. Doc. 67.

1.3      Defendants renewed their Motions to Dismiss on July 2, 2015 after the Court decided *Tibble*. Doc. 73. The parties argued the renewed motion before the Court on December 2, 2015.  Doc. 83. Plaintiffs' Motion for Leave to Amend was denied on March 15, 2016. Doc. 92. Defendants' renewed Motion to Dismiss was pending at the time of settlement. Doc. 95.

1.4      With Defendants' motion to dismiss under advisement, the parties discussed settlement

through private mediation. Through extensive informal document production, intense document analysis and review, and an in-person mediation through a private mediator, Hunter Hughes, at the offices of Seyfarth Shaw LLP in New York City, New York on April 1, 2016, the parties reached a preliminary agreement. Through continued, extensive discussions, the parties' finally reached an agreement. The terms of the parties' settlement are memorialized in this Settlement Agreement.

1.5     The Class Representatives and Class Counsel consider it desirable and in the Class Members' best interests that the claims against Defendants be settled on behalf of the Class Representatives and the Class upon the terms set forth below, and they have concluded that such terms are fair, reasonable, and adequate and that this settlement will result in benefits to Class Representatives and the Class.

1.6     Defendants deny all liability to Plaintiffs, deny all of the claims made in the Class Action, deny all allegations of wrongdoing made in any of the complaints in this action, and deny that Plaintiffs or the Plans suffered any losses. Defendants further maintain that they acted prudently at all times and in all respects with regard to the Plan, that they complied with their duty of loyalty to the Plans and with the conditions for relevant exemptive relief under ERISA and related regulations, and that they are without any fault or liability. This Settlement Agreement, and the discussions between the settling parties preceding it, shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' part of any fault or liability whatsoever.

1.7     The Settling Parties have concluded that it is desirable that the class action be finally settled upon the terms and conditions set forth in this Settlement Agreement.

1.8     Therefore, the Settling Parties, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree to the terms of this Settlement Agreement.

2.      **Article 2 – Definitions**

As used in this Settlement Agreement and the Exhibits attached hereto, unless otherwise defined, the following terms have the meanings specified below:

2.1     "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notices to the Class; (b) related tax expenses (including taxes and tax expenses as described in Paragraph 5.3); (c) all expenses and costs associated with the distribution of funds pursuant to the Plan of Allocation, excluding the fees of the Plans' recordkeeper associated with implementing this Settlement Agreement, facilitating the distribution of funds pursuant to the Plan of Allocation, and gathering the data necessary to prepare the Plan of Allocation; (d) all fees and expenses of the Independent

Fiduciary, Settlement Administrator, and Escrow Agent; and (e) all fees, expenses, and costs associated with providing notices required by CAFA. Excluded from Administrative Expenses are Defendants' internal expenses and the Settling Parties' respective legal expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

2.2    "Active Account" means an individual investment account in the Plans with a balance greater than $0.00.

2.3    "Alternate Payee" means a person other than a participant in either of the Plans or Beneficiary who is entitled to a benefit under the Plans as a result of a Qualified Domestic Relations Order.

2.4    "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and to be provided in the future during the Settlement Period. The amount of Attorneys' Fees for Class Counsel shall not exceed $10,300,000.00, which shall be recovered from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $75,000.00, which also shall be recovered from the Gross Settlement Amount.

2.5    "Authorized Former Participant" means a Former Participant who has submitted a completed, satisfactory Former Participant Claim Form by the Claims Deadline set by the Court in the Preliminary Order and whose Former Participant Claim Form is accepted by the Settlement Administrator.

2.6    "Beneficiary" means a person who currently is entitled to receive a benefit under either of the Plans that is derivative of the interest of a Plan participant, other than an Alternate Payee. A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

2.7    "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715.

2.8    "Claims Deadline" means a date that is no later than ten (10) calendar days before the Fairness Hearing.

2.9    "Class" means that Settlement Class proposed for certification, which is comprised of all current and former participants and beneficiaries of the MassMutual Thrift Plan and the Massachusetts Mutual Life Insurance Company Agent Pension Plan who carried a positive balance in either of the Plans between November 5, 2007 and March 31, 2016. Excluded from the Class are Defendants and present and former members of the IFC and PAC during the Class Period.

2.10   "Class Action" means *Dennis Gordan, et al. v. Massachusetts Mutual Life Insurance Co., et al.,* Case No. 13-30184 in the United States District Court for the District of Massachusetts.

**2.11**  "Class Counsel" means Schlichter, Bogard & Denton LLP, 100 S. Fourth St., Suite 1200, St. Louis, Missouri, 63102.

**2.12**  "Class Members" means all individuals in the Class.

**2.13**  "Class Period" means the period from November 5, 2007 through and including March 31, 2016.

**2.14**  "Class Representatives' Compensation" means an amount to be determined by the Court, but not to exceed $15,000.00 for each Class Representative, which shall be paid from the Gross Settlement Amount.

**2.15**  "Confidentiality Agreement" means the Confidentiality Agreement executed by the Settling Parties on January 28, 2016.

**2.16**  "Court" means the United States District Court for the District of Massachusetts.

**2.17**  "Current Participant" means a person who participated in either of the Plans during the Class Period and on March 31, 2016 had an Active Account balance.

**2.18**  "Defendants" means Massachusetts Mutual Life Insurance Company; Roger Crandall; Stuart H. Reese; Robert O'Connell; Investment Fiduciary Committee; Plan Administrative Committee; Isadore Jermyn; Michael Fanning; Mary Wilson Kibbe; Debra Palermino; Michael Rollings; Elaine Sarsynski; Richard Goldstein; and Christine Fini.

**2.19**  "Defense Counsel" means counsel for Defendants (Goodwin Procter LLP).

**2.20**  "Escrow Agent" means Commerce Bank, or another entity agreed to by the Parties.

**2.21**  "Fairness Hearing" means the hearing scheduled by the Court to consider: (a) any objections from the Class to the Settlement Agreement; (b) Class Counsel's Petition for Attorneys' Fees and Costs and Class Representatives' Compensation; and (c) whether to finally approve the Settlement pursuant to Fed. R. Civ. P. 23.

**2.22**  "Final Approval" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as Exhibit 5 hereto.

**2.23**   "Final" means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The

Settling Parties agree that absent an appeal or other attempted review proceeding, the period after which the Final Approval becomes Final is thirty (30) calendar days after the entry of the Final Approval.

2.24    "Former Participant" is a person who participated in either of the Plans during the Class Period and on March 31, 2016, did not have an Active Account.

2.25    "Former Participant Claim Form" means the form described generally in Paragraph 6.7 and substantially in the form attached as Exhibit 1.

2.26    "Gross Settlement Amount" means the sum of Thirty Million Nine-Hundred Thousand Dollars and no/100 ($30,900,000), contributed to the Qualified Settlement Fund pursuant to Article 5. The Gross Settlement Amount shall be the full and sole monetary payment to the Class, Plaintiffs, and Class Counsel made on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement.

2.27    "Independent Fiduciary" means Evercore Trust Company, N.A., who is a fiduciary to the Plans that has no relationship to or interest in any of the Settling Parties and is mutually agreed to by the Settling Parties.

2.28    "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel; (b) all Class Representatives' Compensation as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, and (3) an amount estimated for adjustments of data or calculation errors.

2.29    "Plaintiffs" means the Class Representatives and the Class Members.

2.30    "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount pursuant to Article 6 below.

2.31    "Plan Fiduciaries" means the Investment Fiduciary Committee (the "IFC") and the Plan Administrative Committee (the "PAC"), collectively.

2.32    "Plan Sponsor" means Massachusetts Mutual Life Insurance Company.

2.33    "Plans" shall mean and refer to the MassMutual Thrift Plan and the Massachusetts Mutual Life Insurance Company Agent Pension Plan

2.34    "Preliminary Order" means the order proposed by the Settling Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Order to be filed by Class Representatives through Class Counsel, as described in Paragraph 3.2 and in substantially the form attached hereto as Exhibit 2.

**2.35**   "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, settlement fund account to be established and maintained by the Escrow Agent pursuant to Article 5 hereof and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

**2.36**   "Released Parties" means (a) each Defendant, (b) each Defendant's past, present, and future parent corporation(s), (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (d) with respect to (a) through (c) above, all of their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, the Plans' fiduciaries (with the exception of the Independent Fiduciary), administrators, service providers, (including their owners and employees), consultants, subcontractors, officers, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, insurers, co-insurers, reinsurers, shareholders, accountants, auditors, advisors, consultants, trustees, associates, spouses, heirs, executors, and all persons acting under, by, through, or in concert with any of them.

**2.37**   "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action with respect to the Plans:

   **2.37.1**   That were asserted in the Class Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences asserted in the Class Action whether or not pleaded in the Complaint;

   **2.37.2**   That arise out of, relate to, are based on, or have any connection with: (1) the structure, management, monitoring, servicing, administration, size and/or expenses of the Plans; (2) the selection, monitoring, oversight, retention, fees, expenses, performance of the investment options available under the Plans; (3) the selection, monitoring, oversight, retention, fees, expenses, performance of the Plans' other services or service providers, including without limitations administrative and/or recordkeeping services, (4) fees, costs, or expenses charged to, paid, or reimbursed by, or authorized to be paid or reimbursed by the Plans, (5) disclosures, filings or failures to disclose information regarding the Plans' investment options, fees, expenses, performance, services or service providers, (6) disclosures or failures to disclose relationships among fiduciaries, service providers, and investment managers for the Plans, (7) engaging in self-dealing or prohibited transactions, and/or (8) collecting or being authorized to collect compensation based on a percentage of total assets;

   **2.37.3**   That would be barred by the doctrine of *res judicata* based on the entry of the Final Approval order;

**2.37.4**   That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plans or any member of the Settlement Class pursuant to the Plan of Allocation; or

**2.37.5**   That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone;

**2.37.6**   "Released Claims" specifically exclude (1) those claims not related to 2.37.2(1)−(8) above; (2) claims of denial of benefits from the Plans; or (3) labor or employment claims unrelated to the Plans, including but not limited to employment discrimination or wrongful termination and claims arising from conduct outside of the Class Period.

**2.38**   "Settlement" refers to the agreement embodied in this Settlement Agreement and its Exhibits.

**2.39**   "Settlement Administrator" means Analytics Consulting, LLC, an independent contractor to be retained by Class Counsel.

**2.40**   "Settlement Agreement Execution Date" means that date on which the final signature is affixed to this Settlement Agreement.

**2.41**   "Settlement Effective Date" means the date on which the Final Approval order has become Final, provided that by such date the Settlement has not been terminated pursuant to Article 11.

**2.42**   "Settlement Notice" means the Notices of Class Action Settlement and Fairness Hearing to be mailed by first class mail to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Order, in substantially the form attached hereto as Exhibit 3 and Exhibit 4. The Settlement Notice also shall inform Class Members of a Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representatives' Compensation. The Settlement Notice shall inform Former Participants of the Claims Deadline by which they must file a completed Former Participant Claim Form to be eligible for a distribution pursuant to the Plan of Allocation.

**2.43**   "Settlement Period" means the period of time that begins on the Settlement Effective Date and ends four years after the Settlement Effective Date.

**2.44**   "Settlement Website" means the internet website established pursuant to Paragraph 12.3.

**2.45**   "Settling Parties" means the Defendants and the Class Representatives, on behalf of themselves and each of the Class Members.

**3.**      **Article 3 – Review and Approval by Independent Fiduciary, Preliminary Settlement Approval, and Notice to the Class**

**3.1**      The Independent Fiduciary shall be retained by MassMutual, on behalf of the Plans, to determine independently whether to approve and authorize the settlement of Released Claims on behalf of the Plans.

     **3.1.1**      The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39") in making its determination, for the purpose of the EBAC's reliance on PTE 2003-39.

     **3.1.2**      The Independent Fiduciary shall notify the Plan Fiduciaries, directly or through the Plan Fiduciaries' Secretaries, of its determination in writing (with copies to Class Counsel and Defense Counsel), which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

     **3.1.3**      All fees and expenses associated with the Independent Fiduciary's determination and performance of its other obligations in connection with the Settlement will constitute Administrative Expenses to be deducted from the Gross Settlement Amount.

     **3.1.4**      The Plan Fiduciaries, Defense Counsel, and Class Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent Fiduciary can review the Settlement Agreement.

**3.2**      Class Representatives, through Class Counsel, shall file with the Court motions seeking preliminary approval of this Settlement Agreement, class certification for settlement purposes only, and for entry of the Preliminary Order in substantially the form attached hereto as Exhibit 2.  Defendants will not oppose those motions. The Preliminary Order to be presented to the Court, as to the Class Action, shall, among other things:

     **3.2.1**      Grant the motion to certify the class for settlement purposes only;

     **3.2.2**      Approve the text of the Settlement Notice, to be provided to Class Members identified by the Settlement Administrator, and the Former Participant Claim Form, to be provided to Former Participants, to notify them of the Fairness Hearing and that notice of changes to the Settlement Agreement, future orders regarding the Settlement, modifications to the Class Notice, changes in the date or timing of the Fairness Hearing, or other modifications to the Settlement, including the Plan of Allocation, may be provided to the Class through the Settlement Website without requiring additional mailed notice;

     **3.2.3**      Determine that pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Settlement Notices constitute the best notice practicable under

the circumstances, provide due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and comply fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

**3.2.4**   Cause the Settlement Administrator to mail by first class mail the Settlement Notice to each Class Member identified by the Settlement Administrator and the Former Participant Claim Form to each Former Participant identified by the Settlement Administrator based upon the data provided by the Plans' respective recordkeeper(s);

**3.2.5**   Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against the Defendants, the Released Parties, or the Plans;

**3.2.6**   Set the Fairness Hearing for no sooner than one hundred twenty (120) calendar days after the date the Motion for Entry of the Preliminary Order is filed, in order to determine whether: (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Approval order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representatives' Compensation, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

**3.2.7**   Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to appear or supporting documents must be filed at least thirty (30) days prior to the scheduled Final Approval Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above;

**3.2.8**   Provide that the Settling Parties may, but are not required to, serve discovery requests, including requests for documents and notices of deposition not to exceed two (2) hours in length, on any objector within ten (10) days of receipt of the objection and that any responses to discovery or depositions must be completed within ten (10) days of the discovery request being served on the objector;

**3.2.9**   Provide that any party may file a response to an objection by a Class Member at least ten (10) days before the Fairness Hearing;

**3.2.10**  Set a deadline of no later than ten (10) calendar days before the Fairness Hearing

by which each Former Participant must file a Former Participant Claim Form with the Settlement Administrator in order to be considered for a distribution pursuant to the Plan of Allocation; and

**3.2.11**   Provide that the Fairness Hearing may, without further direct notice to the Class, other than by notice to Class Counsel, be adjourned or continued by order of the Court.

**3.3**   Defense Counsel shall respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that are reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. The actual and reasonable expenses of any third party, including the Plans' recordkeeper(s), that are necessary to perform such work shall be Administrative Expenses to be deducted from the Gross Settlement Amount.

**3.3.1**   The Settlement Administrator shall be bound by the Confidentiality Agreement and any further non-disclosure or security protocol required by the Parties.

**3.3.2**   The Settlement Administrator shall use the data provided by Defendants and the Plans' recordkeeper(s) solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

**3.3.3**   The Settling Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

**3.4**   By the date and in the manner set by the Court in the Preliminary Order, and unless otherwise set forth below, the Settlement Administrator shall:

**3.4.1**   Cause to be mailed to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibit 3 and Exhibit 4 or a form subsequently agreed to by the Parties and the Court. The Settlement Notice shall be sent by first-class mail, postage prepaid, to the last known address of each Class Member provided by the Plans' recordkeepers (or their respective designees) through Defense Counsel, unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by the Plans' recordkeepers (or their respective designees). Class Counsel also shall post a copy of the Settlement Notice on the Settlement Website. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-mail such documents one additional time.

**3.4.2**   Cause the Former Participant Claim Form, which shall be in substantially the form attached as Exhibit 1, or a form subsequently agreed to by the Parties and

the Court, to be included with the Settlement Notice that is mailed to the Former Participants.

**3.4.3**    Have prepared and provided CAFA notices to the Attorney General of the United States, the Secretary of the Department of Labor, and the Attorneys General of all states in which members of the Class reside, as specified by 28 U.S.C. § 1715, within ten (10) calendar days of Class Representatives' filing of the Settlement Agreement and proposed Preliminary Order. Subject to Court approval, the costs of such notice shall be paid from the Qualified Settlement Fund and shall be considered Administrative Expenses.

**4.     Article 4 – Final Settlement Approval**

**4.1**    No later than ten (10) business days before the Fairness Hearing, Class Counsel and Defense Counsel shall submit to the Court a mutually agreed upon motion for entry of the Final Approval order (attached hereto as Exhibit 5), which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Approval order in accordance with this Settlement Agreement. The Final Approval order as proposed by the Settling Parties shall provide for the following, among other things as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

**4.1.1**    For approval of the Settlement of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plans and the Class and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

**4.1.2**    For a determination pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

**4.1.3**    For dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class, or derivatively to secure relief for the Plans, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement, except for retention of jurisdiction to enforce the terms of the Settlement Agreement;

**4.1.4**    That each member of the Class and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, shall be (i) conclusively deemed to have, and by operation of the Final Approval order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plans, and the Released Parties from all Released Claims, and (ii) barred from suing Defendants, the Plans, or the Released Parties in any

action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members have executed and delivered a Former Participant Claim Form, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

4.1.5    That the Plans and each member of the Class (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) on behalf of the Plans shall be (i) conclusively deemed to have, and by operation of the Final Approval order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants and the Released Parties from all Released Claims, and (ii) barred from suing Defendants or the Released Parties in any action or proceeding alleging any of the Released Claims, even if the Plans or any member of the Class on behalf of the Plans may thereafter discover facts in addition to or different from those which the Plans or any member of the Class on behalf of the Plans now knows or believes to be true with respect to the Class Action and the Released Claims;

4.1.6    That each member of the Class shall release Defendants, Defense Counsel, Class Counsel, the Released Parties, and the Plans for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

4.1.7    That all applicable CAFA requirements have been satisfied;

4.1.8    That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Current Participant and each Authorized Former Participant pursuant to the Plan of Allocation approved by the Court;

4.1.9    That, with respect to payments or distributions to Authorized Former Participants, all questions not resolved by the Settlement Agreement shall be resolved by the Settlement Administrator in its sole and exclusive discretion;

4.1.10   That, with respect to any matters that arise concerning the implementation of distributions to Current Participants (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan Fiduciaries pursuant to the applicable law and governing Plan terms; and

**4.1.11** That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

**4.2** The Final Approval order shall provide that upon its entry all Settling Parties and the Plans shall be bound by the Settlement Agreement and by the Final Approval order.

**5. Article 5 – Establishment of Qualified Settlement Fund**

**5.1** No later than two (2) business days after entry of the Preliminary Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this Paragraph including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and their insurers, and thereafter to cause the appropriate filing to occur.

**5.2** For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in Paragraph 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 5.3 hereof.

**5.3** Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (1) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (2) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or

13

accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither Defendants, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4     Within ten (10) business days after (a) the Preliminary Order is entered, or (b) the escrow account described in Paragraph 5.1 is established and the Escrow Agent shall have furnished to Defendants and their insurers in writing the escrow account name, IRS W-9 Form, and all necessary wiring instructions, whichever occurs later, funding of the Gross Settlement Amount shall occur as follows: (a) Defendants' insurers shall deposit the sum of twenty-eight million, eight hundred ten thousand dollars ($28,810,000) and (b) MassMutual shall deposit the sum of two million, ninety thousand dollars ($2,090,000) into the Qualified Settlement Fund, which payments, totaling $30,900,000, shall together constitute Gross Settlement Amount.

5.5     The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.6     The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.7     Within one-hundred twenty (120) calendar days after the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows: (a) first, all Attorneys' Fees and costs shall be paid to Class Counsel within five (5) business days after the Settlement Effective Date; (b) second, all Administrative Expenses not paid previously shall be paid within five (5) business days after the Settlement Effective Date; (c) third, any Class Representatives' Compensation ordered by the Court shall be paid within five (5) business days after the Settlement Effective Date; (d) fourth, a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid,

(2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, (3) an amount estimated for adjustments of data or calculation errors; and (e) fifth, the Net Settlement Amount will be distributed pursuant to the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

5.8     The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting and withholding obligations, if any, for amounts distributed from it. Defendants, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

5.9     No later than February 15 of the year following the calendar year in which Defendants, their insurers, or agents make a transfer to the Qualified Settlement Fund pursuant to the terms of this Article 5, Defendants, their insurers, or agents shall timely furnish a statement to the Escrow Agent, or the Settlement Administrator on its behalf, that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B3(e)(2)(ii), and shall attach a copy of the statement to their federal income tax returns filed for the taxable year in which Defendants, their insurers, or agents make a transfer to the Qualified Settlement Fund.

**6.     Article 6 – Plan of Allocation**

6.1     After the Settlement Effective Date, the Settlement Administrator shall cause the Net Settlement Amount to be allocated and distributed to the Authorized Former Participants and to the Plans for distribution to the Current Participants in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court.

6.2     To be eligible for a distribution from the Net Settlement Amount, a person must be a Current Participant or an Authorized Former Participant, Beneficiary, or Alternate Payee of such a person. Current Participants shall receive their settlement payments as contributions to their Plan accounts as described in this Article 6 unless, as of the date of the settlement payments, they no longer have an account in either of the Plans. Authorized Former Participants shall receive their settlement payments in the form of checks as described in this Article 6.

6.3     Beneficiaries will receive checks as described in this Article 6 in amounts corresponding to their entitlement as beneficiaries of the Current Participant or of the Authorized Former Participant with respect to which the payment is made. Alternate Payees will receive checks if and to the extent they are entitled to receive a portion of a Current Participant's or Authorized Former Participant's allocation under this Article 6 pursuant to the terms of the applicable Qualified Domestic Relations Order. The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to

Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court.

**6.4**     Payments to Authorized Former Participants and Current Participants shall be calculated by the Settlement Administrator pursuant to the Plan of Allocation as follows:

**6.4.1**     The Settlement Administrator shall obtain from the Plans' recordkeeper(s) the quarter-ending account balances for all Class Members during the Class Period as well as the quarter-ending account balances in the Fixed Interest Account, Premier Capital Appreciation Fund, Select Large Cap Value Fund, and Premier Core Value Equity Fund.

**6.4.2**     The Settlement Administrator shall obtain, in writing, an agreement among the Plan Fiduciary, Class Counsel, and the Settlement Administrator on the Net Settlement Amount, and the amount apportioned to the Class Members as follows:

The Settlement Administrator shall determine the number of points ($1 = 1 point) for each Authorized Former Participant and Current Participant by determining the average of the quarter-ending account balances for each Authorized Former Participant and Current Participant over the entirety of the class period. Next, the Settlement Administrator shall determine the points for each Authorized Former Participant and Current Participant by determining the average of the quarter-ending account balances for each Authorized Former Participant and Current Participant invested in the Fixed Interest Account over the entirety of the class period. Next, the Settlement Administrator shall determine the points for each Authorized Former Participant and Current Participant by determining the average of the quarter-ending account balances for each Authorized Former Participant and Current Participant invested in each of the following three funds known as the Premier Capital Appreciation Fund, Select Large Cap Value Fund, and Premier Core Value Equity Fund. The points for each Authorized Former Participant and Current Participant shall be added under this formula and the Net Settlement Amount shall be allocated pro rata under this formula to each Authorized Former Participant and Current Participant.

**6.4.3**     For each Current Participant and Authorized Former Participant, the Settlement Administrator will calculate the total amount due to each Current Participant and Authorized Former Participant pursuant to Paragraphs 6.4.2.

**6.4.4**     The Settlement Administrator shall utilize the calculations required to be performed herein for (a) making the required distributions to Authorized Former Participants; and (b) instructing Defendants as to the amounts to be distributed to Current Participants and calculating the total amount to deposit in the Plans to fulfill this instruction.

**6.4.5**    Unless the Settling Parties agree in writing, the total amount of all checks to be written by the Settlement Administrator to Former Participants, plus the total amount of all credits that Defendants are instructed to make to Current Participants may not exceed the Net Settlement Amount. Nothing in this Paragraph 6.4.5 is intended to modify the requirements of Paragraph 6.5 below. In the event that the Settlement Administrator determines that the Plan of Allocation would otherwise require payments exceeding the Net Settlement Amount, the Settlement Administrator is authorized to make such changes as are necessary to the Plan of Allocation such that said totals do not exceed the Net Settlement Amount.

**6.5**    Current Participants will not be required to submit a Former Participant Claim Form to receive a settlement payment. The Settlement Administrator shall complete all payment calculations for all Current Participants and Authorized Former Participants within sixty (60) calendar days after the Settlement Effective Date. Within two (2) business days after the Settlement Administrator has completed all payment calculations for all Current Participants, the Settlement Administrator will provide MassMutual with an Excel spreadsheet containing the name, Social Security number, and the amount of the settlement payment for each of the Current Participants. Thereafter, within ten (10) business days' written notice to MassMutual, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the issuer of the Plans' group annuity contracts, Massachusetts Mutual Life Insurance Company, in the aggregate amount of all settlement payments payable to Current Participants. MassMutual (or its designee) shall direct the issuer of the Plans' group annuity contracts, Massachusetts Mutual Life Insurance Company, to credit the individual account of each Current Participant in an amount equal to that stated on the spreadsheet provided by the Settlement Administrator in relation to such Current Participant. The settlement payment for each Current Participant will be invested in accordance with such Current Participant's investment elections then on file. If there is no investment election on file for any Current Participant, then such Current Participant shall be deemed to have directed such payment to be invested in the Plans' "Qualified Default Investment Alternative," as defined in 29 C.F.R. § 2550.404c-5. The settlement payment will be reflected in the Current Participant's Plan account as additional earnings. MassMutual shall process all Current Participant transactions within thirty (30) calendar days of receiving direction from the Plan Fiduciaries (or their designee) for any Current Participant. The Plan may be amended, to the extent necessary, to reflect the settlement allocation to Current Participants' accounts in accordance with this Article 6

**6.6**    If, as of the date when distributions pursuant to this Settlement Agreement are made, a Current Participant no longer has an Active Account, he or she will be treated as an Authorized Former Participant for purposes of the settlement distribution only and will receive his or her payment from the Settlement Administrator in one settlement check as described in Paragraph 6.7. A Current Participant who no longer has an Active Account on the date of his or her Settlement distribution need not complete a Former Participant Claim Form. Settlement payments that cannot be made by Massachusetts Mutual Life Insurance Company, the issuer of the Plans' group annuity contracts, within thirty (30)

calendar days of receiving direction from MassMutual (or its designee) because the Class Member no longer has an Active Account shall be returned by Massachusetts Mutual Life Insurance Company, the issuer of the Plans' group annuity contracts, to the Settlement Administrator for distribution under this Paragraph 6.6 within ten (10) calendar days thereafter.

6.7     For each Authorized Former Participant, the Settlement Administrator will issue a single check from the Qualified Settlement Fund and mail it to the address of such Authorized Former Participant listed in his or her Former Participant Claim Form or, in the case of ambiguity or uncertainty, to the address of such person as determined by the Settlement Administrator using commercially reasonable means. The Settlement Administrator shall advise Authorized Former Participants that any distribution pursuant to the Settlement is rollover eligible and of their right to rollover such an amount. The Settlement Administrator shall follow proper rollover instructions provided by an Authorized Former Participant. The Settlement Administrator shall: (i) calculate and withhold any applicable taxes from settlement payments to Authorized Former Participants; (ii) report such payments and remit such tax withholdings to the Internal Revenue Service and applicable state revenue agents; and (iii) issue appropriate tax forms to the Authorized Former Participants.

6.8     This Plan of Allocation is based upon preliminary data regarding the Class Members who may be entitled to settlement payments. If the Settlement Administrator concludes that it is impracticable to implement any provision of this Plan of Allocation, the Settling Parties will modify promptly the terms of this Plan of Allocation and present such modified terms first to the Independent Fiduciary for its review and approval and second to the Court for its approval. Direct mailed notice to Class Members of such proposed modification of the Plan of Allocation shall not be required. However, notice of such proposed modification shall be posted on the Settlement Website within five (5) business days of the date that the proposed modification is submitted to the Court for its approval. If the proposed modification is implemented, notice of such modification shall be posted on the Settlement Website within five (5) business days of the date that the modification was implemented.

        The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation.

6.9     Within ten (10) business days of completing all aspects of this Plan of Allocation, the Settlement Administrator shall send to Class Counsel, Defense Counsel, and Defendants one or more affidavits stating the following: (a) the name of each Class Member to whom the Settlement Administrator sent the Settlement Notice or the Former Participant Claim Form, and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Settlement Notice or the Former Participant Claim Form; (c) the name of each Class Member whose Settlement Notice or Former Participant Claim Form was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Settlement Notice or Former Participant Claim Form for each such Class Member; and (e) the name of each Class Member to whom the

Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable.

6.10    The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Class Counsel, and Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be considered to be wages by the Settling Parties.

6.11    Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

6.12    All checks issued pursuant to this Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

6.13    No sooner than thirty(30) calendar days following the end of the Settlement Period, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs and taxes, shall be paid to the Plans for the purpose of defraying administrative fees and expenses of the Plans that would otherwise be charged to the Plans' participants. In no event shall any part of the Qualified Settlement Fund be used to reimburse any Defendant or otherwise offset settlement related costs incurred by any Defendant.

6.14    The Net Settlement Amount to be allocated and distributed to the Authorized Former Participants and to the Plans for distribution to the Current Participants in accordance with the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

**7.        Article 7 – Attorneys' Fees and Costs**

**7.1**     Class Counsel will seek to recover their attorneys' fees, not to exceed one-third of the Gross Settlement Amount ($10,300,000.00), and litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $75,000.00, which shall be recovered from the Gross Settlement Amount.

**7.2**     Class Counsel will file a motion for an award of Attorneys' Fees and Costs at least thirty (30) days before the deadline set in the Preliminary Order for objections to the proposed settlement, which may be supplemented thereafter. Defendants will take no position with the Court regarding Class Counsel's request for Attorneys' Fees and Costs, to the extent it does not exceed the amounts set forth in Article 7, and shall take no position with the Court regarding any request for Class Representatives' Compensation that does not exceed $15,000.00 per Class Representative.

**8.        Article 8 – Release and Covenant Not to Sue**

**8.1**     As of the Settlement Effective Date, the Plans (subject to Independent Fiduciary approval as required by Paragraph 3.1) and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plans and all Released Parties from the Released Claims, whether or not such Class Members have executed and delivered a Former Participant Claim Form, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

**8.2**     As of the Settlement Effective Date, the Class Members and the Plans (subject to Independent Fiduciary approval as required by Paragraph 3.1), expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement pursuant to the procedures set forth in this Settlement Agreement.

**8.3**     Class Counsel, the Class Members, or the Plans, may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants, the Plans, and the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and

the Plans shall expressly, upon the entry of the Final Approval order, be deemed to have, and by operation of the Final Approval order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Members and the Plans acknowledge and shall be deemed by operation of the Final Approval order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

8.4    Each Class Member and the Plans hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Approval order, the Class Members shall be conclusively deemed to, and by operation of the Final Approval order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Also, the Class Members with respect to the Released Claims shall, upon entry of the Final Approval order, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

## 9.    Article 9 – Representations and Warranties

9.1    The Settling Parties represent:

9.1.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations among their counsel, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

9.1.2    That they assume the risk of mistake as to facts or law;

9.1.3    That they recognize that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement;

9.1.4    That they have read carefully the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each individual executing this Settlement Agreement on behalf of each of the Settling Parties; and

**9.1.5**     That they have made such investigation of the facts pertaining to the Settlement and all matters pertaining thereto, as they deem necessary.

**9.2**     Each individual executing this Settlement Agreement on behalf of a Settling Party does hereby personally represent and warrant to the other Settling Parties that he/she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that each such individual represents or purports to represent.

**10.**     **Article 10 – Additional Terms**

**10.1**     Defendants agree to comply with the Additional Terms set forth in this Article 10 for the duration of the Settlement Period, and the Court shall maintain jurisdiction to enforce these additional terms.

**10.2**     The Settling Parties agree that the Independent Fiduciary must determine that the Settlement meets the requirements of Prohibited Transaction Class Exemption ("PTE") 2003-39.

**10.3**     Defendants agree to continue to use Aon Hewitt or to engage another Independent Consultant who has specific expertise with stable value investments. Within one year of the Settlement Effective Date, the Independent Consultant will evaluate and make recommendations regarding the investment structure of the Fixed Interest Account, including, but not limited to, considering a general account investment versus a separate account or synthetic GIC model.

**10.4**     Beginning no later than six months after the Settlement Effective Date, and continuing for a period of at least four years thereafter, the Defendants shall ensure that the Plans' participants are charged no more than $35 per participant for standard recordkeeping services (e.g., excluding charges for unique individual transactions such as loan processing).

**10.5**     To the extent the Plans' Fiduciaries include any member who directly reports to Mass Mutual's CEO, those fiduciaries and their job titles shall be identified in an annual participant statement, such as a Summary Plan Description.

**10.6**     Each year during the Settlement Period, the Plan's Fiduciaries will attend a fiduciary responsibility presentation provided by experienced ERISA counsel and the Independent Consultant. Defendants shall supply Class Counsel with an annual notice confirming the satisfaction of this obligation.

**10.7**     Within six months after the Settlement Effective Date, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall review and evaluate all investment options then offered in the Plans. In evaluating each investment option in the Plans, the Plan Fiduciaries, with the assistance of the Independent Consultant, shall consider, without limitation, (1) the lowest-cost share class available for any particular mutual fund considered for inclusion in the Plans; (2) collective investment trusts and single client separate account investments; and (3) passively managed funds for each category or fund

offering that will be made available under the Plans.  For any style or class of investment, the Independent Consultant to the Plans shall provide the Plan Fiduciaries with at least three finalists to consider in making their selection.  If collective investment trusts or separately managed accounts are utilized, the Plan Fiduciaries shall secure most-favored-nations treatment for the benefit of the Plans

10.8   In the event that the Plans offer a separate account that invests in a mutual fund that utilizes a sub-advisor, the Independent Consultant in evaluating the reasonableness of the fund's fees shall consider the portion of the fund's fees that is paid to the sub-advisor and the portion of the fund's fee charged in addition to the sub-advisor fee.   In conducting this evaluation, the Independent Consultant shall compare the fees paid by similar institutional clients over $1 billion in assets for investments with the same or similar asset class and investment style.

10.9   Beginning no later than one month after the Settlement Effective Date, and continuing for a period of at least four years thereafter, fees paid to the Plans' recordkeeper will not be set or determined on a percentage-of-plan-assets basis.  Nothing in this paragraph shall dictate how fees paid to the Plans' recordkeeper shall be allocated among the Plans' participants.

10.10   The Plan Fiduciaries, on behalf of the Plans, will contract with the Plans' recordkeeper to obtain participant statements that comply with all applicable DOL participant-disclosure regulations.

10.11   The Plan Fiduciaries and Defendants shall provide accurate participant communications throughout the Settlement Period.

10.12   During the Settlement Period, the Independent Consultant and the Plan Fiduciaries shall ensure that all investment options provided in the Plans comply with the Plans' Investment Policy Statement ("IPS").  To the extent any investment option triggers a review under the terms of the IPS, the Independent Consultant and the Plan Fiduciaries shall engage in a process to determine whether to remove, retain or monitor the investment option over a defined period of time.  This process shall be documented in writing and made part of the Plan Fiduciaries' meeting materials.

10.13   The Court shall maintain jurisdiction to enforce the settlement for a period of four years.

10.14   Any portion of the Net Settlement Amount remaining after distributions, including costs and taxes, shall be paid to the Plans.  In no event shall any part of the Qualified Settlement Fund be used to reimburse any Defendant or otherwise offset settlement-related costs incurred by any Defendant, except as to third-party expenses described above and as would be appropriately chargeable to the Plans under applicable law.

11.   **Article 11 – Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination**

11.1   The Settlement Agreement shall automatically terminate, and thereby become null and

void with no further force or effect if:

**11.1.1** Pursuant to paragraph 3.1, (1) either the Independent Fiduciary does not approve the Settlement Agreement, or disapproves the Settlement Agreement for any reason whatsoever or the Plan Fiduciary reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by the PTE; and (2) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by the PTE.

**11.1.2** The Preliminary Order and the Final Approval order are not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

**11.1.3** The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

**11.1.4** This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

**11.1.5** The Preliminary Order or Final Approval order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

**11.2** If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants, their agents, or insurers pro rata based on their contributions to the Qualified Settlement Fund within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Paragraph 11.4.

**11.3** It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or Class Representatives' Compensation.

**11.4** In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and Defendants, on the other hand.

**11.5** CAFA notice will be served timely on the appropriate officials by the Settlement Administrator as provided in Paragraph 3.4.3.

**12.**    **Article 12 – Public Comments Regarding the Class Action or Settlement Agreement**

**12.1**    In addition to the obligations set forth in the Confidentiality Agreement, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement, except that they may discuss the negotiations with the Class Members, the Independent Fiduciary and the Settling Parties' tax advisors, provided in each case that they (a) secure written agreements with such persons or entities that such information shall not be further disclosed and (b) comply with this Article 12 in all other respects.

**12.2**    The Settling Parties and Class Counsel further agree that they each will not at any time publicly disparage or encourage or induce others to publicly disparage any of the Settling or Released Parties or disparage them in writing.

**12.3**    Class Counsel will establish a Settlement Website on which it will post the following documents or links to the following documents on or following the date of the Preliminary Order: the operative Complaint, Settlement Agreement and its Exhibits, Settlement Notice, Former Participants Claim Form, Class Representatives' Motion for Attorneys' Fees and Costs and Award of Compensation to Class Representatives, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information"). No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing. Class Counsel will take down the Settlement Website no later than one year after the Settlement Effective Date or thirty (30) calendar days after the receipt of the affidavit(s) referenced in Paragraph 6.9, whichever is earlier.

**13.**    **Article 13 – General Provisions**

**13.1**    The undersigned counsel, on behalf of themselves and the Settling Parties, agree to cooperate fully with each other in seeking Court approvals of the Preliminary Order and the Final Approval order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms.

**13.2**    Within sixty (60) calendar days after the Settlement Period, the Settling Parties shall either return to the producing parties, or destroy, all documents produced in discovery under a claim of confidentiality pursuant to the Confidentiality Agreement, including but not limited to documents produced under a claim of privilege. Each Settling Party shall serve a written notice to each producing party certifying that the Settling Party has carried out the obligations imposed by this Paragraph 13.2. The Settling Parties, Class Counsel, and Defense Counsel agree that at all times they will honor the requirements of the Confidentiality Agreement, notwithstanding Settlement of the Action.

**13.3**    This Settlement Agreement, whether or not consummated, and any negotiations or

proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of Defendants of any wrongdoing, fault, or liability whatsoever by any of Defendants, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding, and Defendants expressly deny and disclaim any such wrongdoing, fault, or liability, and deny each and every claim asserted in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual.

13.4   Neither the Settling Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (ii) the determination of the Independent Fiduciary; (iii) the management, investment, or distribution of the Qualified Settlement Fund; (iv) the Plan of Allocation as approved by the Court; (v) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (vi) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (vii) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

13.5   Only Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Class Counsel shall provide the monitoring necessary to assure compliance with the Settlement Agreement and any action to enforce the Settlement Agreement during the Settlement Period without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

13.6   This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, Massachusetts law.

13.7   Class Counsel, Defense Counsel, and the Settling Parties agree that any and all disputes concerning compliance with the Settlement Agreement shall be exclusively resolved as follows:

13.7.1   If Class Counsel, Defense Counsel, or a Settling Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, the party

raising the dispute shall first promptly give written notice under the Settlement Agreement to the other party including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; (c) a statement of the remedial action sought; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute;

13.7.2   Within twenty (20) days after receiving the notice described in Paragraph 13.7.1, the receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position;

13.7.3   For a period of not more than twenty (20) days following mailing of the response described in Paragraph 13.7.2, the Settling Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute;

13.7.4   If the dispute is not resolved during the period described in Paragraph 13.7.3, either party may request that the Court resolve the dispute;

13.7.5    In connection with any disputes concerning compliance with the Settlement Agreement, the Settling Parties agree that each party shall bear its own fees and costs unless the Court orders otherwise.

13.8   The Settling Parties agree that the Court has personal jurisdiction over the Class and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes concerning compliance with this Settlement Agreement. Any requests for the Court's assistance to resolve any such disputes may be submitted to the Court and/or asserted in response to any claim asserting a violation of the Settlement Agreement.

13.9   The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

13.10   Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

13.11   The headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they

shall not be limiting but shall be deemed to be followed by the words "without limitation."

13.12   Before entry of the Preliminary Order and approval of the Independent Fiduciary, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approves such modification or amendment in writing. Following entry of the Preliminary Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

13.13   This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto.

13.14   The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

13.15   Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

13.16   The provisions of this Settlement Agreement are not severable.

13.17   All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement. No party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

13.18   All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit 1 – Former Participant Claim Form; Exhibit 2 – Preliminary Order; Exhibit 3 – Notice of Class Action Settlement and Fairness Hearing to Current Participants; Exhibit 4 – Notice of Class Action Settlement and Fairness Hearing to Former Participants; and Exhibit 5 – Final Approval order.

13.19   No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the Settlement

Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

**13.20** Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier:

IF TO THE CLASS REPRESENTATIVES:

Jerome J. Schlichter (jschlichter@uselaws.com)
Michael A. Wolff (mwolff@uselaws.com)
Troy A. Doles (tdoles@uselaws.com)
Heather Lea (hlea@uselaws.com)
Kurt Struckhoff (kstruckhoff@uselaws.com)
SCHLICHTER, BOGARD & DENTON, LLP
100 S. Fourth St., Suite 1200
St. Louis, Missouri 63102
Tel: (314) 621-6115
Fax: (314) 621-5934

IF TO DEFENDANTS:

James O. Fleckner (jfleckner@goodwinprocter.com)
Alison V. Douglass (adouglass@goodwinprocter.com)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231

ON BEHALF OF PLAINTIFFS Dennis Gordan, John Hine, Donna Flieger, Patricia Hurley, Ronald Lindner, Janice Reynolds, and Sharon Jewell, individually and as Representatives of the Class.

Dated: *June 15, 2016*

SCHLICHTER, BOGARD & DENTON, LLP

Jerome J. Schlichter (admitted pro hac vice)
Michael A. Wolff (admitted pro hac vice)
Troy A. Doles (admitted pro hac vice)
Heather Lea (admitted pro hac vice)
Kurt Struckhoff (admitted pro hac vice)
SCHLICHTER, BOGARD & DENTON
100 S. Fourth St., Suite 1200
St. Louis, Missouri 63102
Tel: (314) 621-6115
Fax: (314) 621-5934
Attorneys for Plaintiffs and Class Representatives

ON BEHALF OF ALL DEFENDANTS

GOODWIN PROCTER LLP

James O. Fleckner (BBO# 641494)
Alison V. Douglass (BBO# 646861)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231